DJ **RECEIVED**

9/18/2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### IN THE UNITED STATES DISTRICT COURT FOR DISTRICT OF ILLINOIS
### (EASTERN DIVISION)

═══════════════════════════════════════════════════════════════

| | | |
|---|---|---|
| **MICHAEL O. LIVINGSTONE** | : | *Jury Trial Demanded* |
| Plaintiff | : | |
| **v.** | : | |
| | : | |
| **DEVRY UNIVERSITY, INC.;** | : | **20CV5567** |
| | : | |
| **ADTALEM GLOBAL EDUCATION, INC** | : | |
| **f/k/a DeVry Education Group;** | : | |
| | : | |
| **KELLER GRADUATE SCHOOL OF MANAGEMENT;** | : | |
| | : | |
| **BOARD OF TRUSTEES OF DEVRY UNIVERSITY;** | : | |
| | : | JUDGE WOOD |
| **DEVRY UNIVERSITY ONLINE BOOKSTORE;** | : | MAGISTRATE JUDGE JANTZ |
| | : | |
| **OFFICE OF REGISTRAR SERVICES** | : | |
| Keller Graduate School of Management, DeVry University | : | |
| | : | |
| **JAMES BARTHOLOMEW** | : | |
| being sued in his official capacity as 2019 | : | |
| *then*-President and Chief Executive Officer, DeVry University; | : | |
| | : | |
| **SHANTANU BOSE, Ph.D.** | : | |
| being sued in his official capacity as | : | Civil Case No._____ |
| Provost and Chief Academic Officer, DeVry University; | : | |
| | : | |
| **LENORE GOLDBERG, J.D**, | : | |
| being sued in her official capacity as National Dean, | : | |
| Keller Graduate School of Management, DeVry University; | : | |
| | : | |
| **JONATHAN AGRESTA** | : | |
| being sued in his official capacity as Student | : | |
| Code of Conduct Administrator for Pennsylvania & | : | |
| Assistant Dean of Academic Excellence, DeVry University; | : | |
| | : | |
| **DEB KOFFMAN** | : | |
| being sued in her official capacity as | : | |
| Operation Support Coordinator II, DeVry University; | : | |
| | : | |
| **KRISTINE KEARNEY** | : | |
| being sued in her Official capacity as | : | |
| Student Support Advisor, DeVry University; | : | |

*Plaintiff's Complaint.*

**MEGAN MIHELICH**                                          :
being sued in her official capacity as                      :
as Student Support Advisor II, DeVry University;            :
                                                            :
**JACOB R. GORDON**                                         :
being sued in his official capacity as                      :
Course Instructor for MIS-535 class in                      :
March 2017 session, Visiting Professor, DeVry University;    :
                                                            :
**ALAN SHIKOWITZ**                                          :
being sued in his official capacity as                      :
Student Conduct Appeal Reviewer, DeVry University;          :
                                                            :
**MILAN HAVEL, PhD**                                        :
being sued in his official capacity as                      :
Course Instructor for Finance 515 class,                    :
September 2019 session, Visiting Professor,                 :
DeVry University;                                           :
                                                            :
**MACK MOFIDI, PhD**                                        :
being sued in his official capacity as                      :
Assistant Dean of Academic Excellence, DeVry University;    :
                                                            :
**PAUL KOHARA**                                             :
being sued in his official capacity as  Professor,          :
DeVry University;                                           :
                                                            :
**ARISSA BRYANT**                                           :
being sued in her official capacity as                      :
Student Support Academic Adviser, DeVry University;         :
                                                            :
**JOCELYN RUSSELL, PhD**                                    :
being sued in her official capacity as                      :
Northeast Student Code of Conduct hearing Panelist,         :
DeVry University;                                           :
                                                            :
**JEEVAN D'SOUZA, PhD**                                     :
being sued in his official capacity as                      :
Northeast Student Code of Conduct hearing Panelist,         :
DeVry University;                                           :
                                                            :
**EWA SCHMITZ, DM**                                         :
being sued in her official capacity as Northeast Student    :
Code of Conduct hearing Panelist, DeVry University;         :
                                                            :
                                                            :

*Plaintiff's Complaint.*

**WENDY FINLAY, DBA**                                           :
being sued in her official capacity as Course instructor        :
MGMT 600 Class, July 2020 session, Professor,                   :
Keller Graduate School of Management, DeVry University;         :
                                                                :
**HUYNH THANH HO**                                              :
being sued in his official capacity as DeVry University         :
Graduate Student, MGMT 600 class, July 2020 session             :
Keller Graduate School of Management, DeVry University;         :
                                                                :
**SEAN MULHERN**                                                :
being sued in his official capacity as                          :
DeVry University Graduate Student,                              :
MGMT 600 class, July 2020 session                               :
Keller Graduate School of Management, DeVry University;         :
                                                                :
**IBIRONKE MAJEKODUNMI**                                        :
being sued in her official capacity as                          :
Graduate Student, MGMT 600 class, July 2020 session             :
Keller Graduate School of Management, DeVry University;         :
                                                                :
                                                                :
                              *Defendants*                      :

================================================================

## PLAINTIFF'S COMPLAINT

## TABLE OF CONTENTS

                                                    **Page Nos.**

A.    INTRODUCTION…………………………………………………………..5
B.    PARTIES & ADDRESSES…………………………………………….6-12

C.    JURISDICTION AND VENUE……………….…..………………….......12-14

D.    FACTUAL BACKGROUND & NATURE OF THIS COMPLAINT………...14-50

COUNT ONE……………………………………………………………………..50-54

COUNT TWO………………………………………………………………….54-59

COUNT THREE………………………………………………………………..59-63

COUNT FOUR……………………………………………….………….......59-63

*Plaintiff's Complaint.*

COUNT FIVE………………………………………..…………………………….……63-66

COUNT SIX………………………………………………………………………......66-69

COUNT SEVEN……………………………………………………………………......69-71

COUNT EIGHT…………………………………………………………...……………71-75

COUNT NINE………………………………………………………………………....75-79

COUNT TEN……………………………………………………………………….…80-82

COUNT ELEVEN………………………………………………………………….......83-88

COUNT TWELVE……………………………………………………………...…….89-99

COUNT THIRTEEN……………………………………………………........……106-108

COUNT FOURTEEN……………………………………………………………..108-113

COUNT FIFTEEN……………………………………………………...…...…………113-115

COUNT SIXTEEN……………………………………………………………....116-118

COUNT SEVENTEEN…………………………………………………………….119-124

COUNT EIGHTEEN……………………………………………………………......124-126

COUNT NINETEEN………….….…………………………………………………126-132

COUNT TWENTY……………………………………………………………….....…132-142

COUNT TWENTY-ONE…………………………………………………………143-148

COUNT TWENTY-TWO …………………………………………………………......148-150

COUNT TWENTY-THREE…………………………………………………………151-152

COUNT TWENTY-FOUR…………………………………………………………......152-154

COUNT TWENTY-FIVE………………………………………………………....155-157

COUNT TWENTY-SIX……………………………………………………………………157

COUNT TWENTY-SEVEN ………………………………………………………......158-159

COUNT TWENTY-EIGHT……………………………………………………………159-164

COUNT TWENTY-NINE…………………………………………………………164-166

COUNT THIRTY………………………………………………………...……....166-172

COUNT THIRTY-ONE……………………………………………………………172-174

COUNT THIRTY-TWO…………………………………………………………....174-176

*Plaintiff's Complaint.*

COUNT THIRTY-THREE…………………………………………………………...168-174

COUNT THIRTY- FOUR…………………………..……………...………..≥…174-176

COUNT THIRTY-FIVE……………………………………………………….....…176-178

COUNT THIRTY-SIX……………………………………………………….…..…179-182

COUNT THIRTY-SEVEN……………..………………………………..………...182-184

COUNT THIRTY-EIGHT…………………………………………………...…185-188

    E.     RELIEF REQUESTED …………………………….………….…..……......188
    F.     JURY TRIAL DEMAND………………………….…………….………..……188
    G.    FEDERAL RULES OF CIVIL PROCEDURE 65 AFFIDAVIT…………...…....188
    H.    AFFIDAVIT OF PLAINTIFF MICHAEL O. LIVINGSTONE……………..…….188

## A.  <u>INTRODUCTION</u>

This is an exhaustive Civil Rights Complaint by Plaintiff Mr. Michael O. Livingstone, proceeding *pro se*, by way of this Federal Complaint against Defendants ADTALEM GLOBAL EDUCATION, INC, f/k/a DeVry Education Group; DEVRY UNIVERSITY INC; KELLER GRADUATE SCHOOL OF MANAGEMENT; as well as all the other above-named individual Defendants and officials of DeVry University (collectively " the University" or "DeVry University" or "DeVry"). Plaintiff pleads all causes of action or legal injuries within the meaning of Article III of our US Constitution that have occurred since Plaintiff's enrollment at the University in November 2015 to date that are not barred by statute of limitation.

This is a *pro se* complaint and so this District Court is reminded about the "duty to construe [the] pleadings liberally and apply the applicable law, irrespective of whether [plaintiff has] mentioned it by name." *Rose v. Ortiz,* No.14-1738, 2015 WL 9216589, at *1(D.N.J. Dec. 16, 2015)(citing *Mala v.Crown Bay Marina, Inc*., 704 F.3d 239, 244 (3d Cir. 2013)).

Plaintiff states as follows:

*Plaintiff's Complaint.*

## B.  <u>PARTIES & ADDRESSES</u>

*1.*      Plaintiff **MICHAEL O. LIVINGSTONE** ("Plaintiff "or "Livingstone") is a New

Jersey-based Citizen of the United States of America and a young adult black male with origins

from the Republic of Ghana, West Africa. Plaintiff is a full-time matriculated graduate student

and a candidate for Master of Business Administration (MBA) degree at Defendant DeVry

University and its Keller Graduate School of Management. Plaintiff's address is: 2100

Haddonfield Road -1302, Pennsauken, New Jersey 08110. For all correspondence with this

Court, Plaintiff's mailing address is: **<u>P. O. Box 34246, Philadelphia, Pennsylvania 19101.</u>**


*2.*      Defendant **DEVRY UNIVERSITY, INC**., ("DeVry" or "DeVry University") is

being sued its official capacity as an **Illinois**-based for-profit educational institution with its

principal place of business and administrative headquarters in Illinois. DeVry University is one

of the nation's largest for-profit educational institution that can sue and be sued and cannot assert

sovereign immunity. <u>See</u> *Daghlian v. DeVry University, Inc.,* 582 F. Supp. 2d

1231 (C.D. Cal. 2008). DeVry University offers online and hybrid courses. DeVry University

provides educational services throughout the United States with Local Campuses in about

twenty-five (25) States across America. DeVry operates two (2) local campuses and offices in

New Jersey at: North Brunswick, and Paramus.[1] *See* also Pages 59-60 of  the 2019-2020 Student

Handbook.[2] DeVry University operates and maintains its headquarters at:

<u>1200 E. Diehl Road, Naperville, Illinois 60563.</u>

---

[1]        *See*, https://www.devry.edu/about/campus-locations/new-jersey/north-brunswick.html

[2]        https://www.devry.edu/content/dam/devry_edu/d/student-handbook.pdf

*Plaintiff's Complaint.*

    *3.*       Defendant **ADTALEM GLOBAL EDUCATION, INC** ("Adtalem") is being

sued as **Illinois**-based nationwide parent company of DeVry University  with vicarious liability.

Adtalem is a publicly traded, for-profit Organization, post-secondary Delaware-incorporated

educational corporation. Adtalem was formerly known as DeVry Education Group until May 25,

2017. [3] Adtalem is licensed to operate together with its sister Corporation, DeVry University,

Inc. Adtalem maintains its principal place of business in Illinois at:[4] 500 W. Monroe Street, Suite

28, Chicago, Illinois 60661

    *4.*       Defendant **KELLER GRADUATE SCHOOL OF MANAGEMENT** ("Keller")

is being sued in its official capacity as **Illinois**-based and nationwide for-profit graduate level

Business School of DeVry University. Keller offers in-person, online, and hybrid format of

academic courses with local campuses nationwide. Keller is licensed to operate with DeVry

University in New Jersey by the New Jersey Office of the Secretary of Higher Education

(Trenton, NJ). *See,* https://www.devry.edu/about/accreditation.html, under "Approvals by State."

Keller operates two (2) local campuses and offices in New Jersey at: North Brunswick and

Paramus. [5] Keller maintains its principal place of business, headquarters, administrative offices,

and address at:1200 E. Diehl Road, Naperville, Illinois 60563l.

---

[3]       All references herein to "Adtalem" include the acts of its predecessor, DeVry Education
         Group. *See also,* https://www.insidehighered.com/quicktakes/2017/05/03/devry-rebrand-
         adtalem-global-education

[4]       *See,* https://www.adtalem.com/

[5]       See, https://www.devry.edu/about/campus-locations/new-jersey/north-brunswick.html;

       *See* also official Keller Catalog published at:
       https://www.devry.edu/content/dam/devry_edu/d/Keller_Catalog.pdf

*Plaintiff's Complaint.*

5.      Defendant **BOARD OF TRUSTEES OF DEVRY UNIVERSITY** is being sued as an **Illinois**-based nationwide administrative governing body of DeVry University and its Keller Graduate School of Management, which maintains an administrative office at DeVry University's principal place of business and address at: 1200 E. Diehl Road, Naperville, Illinois 60563l.

6.      Defendant **OFFICE OF REGISTRAR SERVICES** (the "Registrar") is **Illinois**-based nationwide entity being sued in its official capacity as Office of Registrar Services at DeVry University and its Keller Graduate School of Management, which maintains its principal place of business and address at:1200 E. Diehl Road, Naperville, Illinois 60563l.

7.      Defendant **DEVRY UNIVERSITY ONLINE BOOKSTORE** ("Bookstore") is being sued as a **New York**-based third party vendor at 160 Finn Court, Farmingdale, New York 11735, that is contracted by DeVry University and its Keller Graduate School of Management to provide, print, and ship mandatory and/or required course Textbooks and School supplies purchased online by students of DeVry University and its Keller Graduate School of Management, and therefore maintains an address at: 1200 E. Diehl Road, Naperville, Illinois 60563l.

8.      Defendant **JAMES BARTHOLOMEW** is an **Illinois**-based male individual being sued in his official capacity as 2019 then-President and Chief Executive Officer of DeVry University and its Keller Graduate School of Management and maintains its principal place of business and address at: 1200 E. Diehl Road, Naperville, Illinois 60563l.

9.      Defendant **SHANTANU BOSE, Ph.D.** is an **Illinois**-based male individual being sued in his official capacity as Provost and Chief Academic Officer of DeVry University and its

Keller Graduate School of Management, which maintains an address and principal place of business at: <u>1200 E. Diehl Road, Naperville, Illinois 60563l</u>.

10.     Defendant **LENORE GOLDBERG, J.D.**, is an **Illinois**-based female individual being sued in her official capacity as National Dean of Keller Graduate School of Management, DeVry University, and she an office at the principal place of business and address  of DeVry University at:<u>1200 E. Diehl Road, Naperville, Illinois 60563l</u>.

11.     Defendant **JONATHAN AGRESTA** is a **Pennsylvania**-based Caucasian male individual being sued in his official capacities as Assistant Dean of Academic Excellence-Northeast Group and Student Code of Conduct Administrator for Pennsylvania students of DeVry University and its Keller Graduate School of Management, which maintains an address and principal place of business at:<u>1200 E. Diehl Road, Naperville, Illinois 60563l</u>.

12.     Defendant **DEB KOFFMAN** is a **Pennsylvania**-based female individual being sued in her official capacity as Operations Support Coordinator, II, of DeVry University and its Keller Graduate School of Management, which maintains its which maintains its principal place of business and address at:<u>1200 E. Diehl Road, Naperville, Illinois 60563l</u>.

13.     Defendant **KRISTINE KEARNEY** is an **Illinois-**based female individual being sued in her official capacity as Student Support Advisor at DeVry University and its Keller Graduate School of Management, which maintains its principal place of business address at: <u>1200 E. Diehl Road, Naperville, Illinois 60563l</u>;

14.     Defendant **JACOB R. GORDON** is a **Florida**-based Caucasian male individual being sued in his official capacity as a non-tenured Adjunct Visiting Professor and Course Instructor for the March 2017 session MIS-535 class at DeVry University and its Keller

*Plaintiff's Complaint.*

Graduate School of Management, which maintains its principal place of business and address at:1200 E. Diehl Road, Naperville, Illinois 60563l.

15.     Defendant **MEGAN MIHELICH** is an **Illinois-**based female individual being sued in her official capacity as Student Support Advisor II of DeVry University and its Keller Graduate School of Management, which maintains its principal place of business and address at:1200 E. Diehl Road, Naperville, Illinois 60563l.

16.     Defendant **ALAN SHIKOWITZ** is a **New York-** based Caucasian male individual being sued in his official capacity as Student Conduct Appeal Reviewer of DeVry University and its Keller Graduate School of Management, which maintains its principal place of business and address at:1200 E. Diehl Road, Naperville, Illinois 60563l.

17.     Defendant **MILAN HAVEL, PhD** is a **Minnesota-**based Caucasian male individual being sued in his official capacity as Adjunct Visiting Professor and Course Instructor for Managerial Finance ("FIN 515") class during the September 2019 session at DeVry University and its Keller Graduate School of Management, which maintains its principal place of business and address at:1200 E. Diehl Road, Naperville, Illinois 60563l.

18.     Defendant **MACK MOFIDI, Ph.D.** is a **California**-based male individual being sued in his official capacity as Assistant Dean of Academic excellence at DeVry University and its Keller Graduate School of Management, which maintains its principal place of business and address at:1200 E. Diehl Road, Naperville, Illinois 60563l.

19.     Defendant **PAUL KOHARA** is a **California**-based male individual being sued in his official capacity as Professor at DeVry University and its Keller Graduate School of Management, which maintains its principal place of business and address at:1200 E. Diehl Road, Naperville, Illinois 60563l.

*Plaintiff's Complaint.*

*20.* Defendant **ARISSA BRYANT**, is an **Ohio**-based female individual being sued in her official capacity as Student Support Academic Adviser at DeVry University and its Keller Graduate School of Management, which maintains its principal place of business and address at:<u>1200 E. Diehl Road, Naperville, Illinois 60563l.</u>

*21.* Defendant **JOCELYN RUSSELL**, **Ph.D.** is a **Pennsylvania**-based female individual being sued in her official capacity as Student Code of Conduct hearing Panelist at DeVry University and its Keller Graduate School of Management, which maintains its principal place of business and address at:<u>1200 E. Diehl Road, Naperville, Illinois 60563l.</u>

*22.* Defendant **JEEVAN D'SOUZA, Ph.D.** is a **New York**-based Asian male individual being sued in his official capacity as Northeast Student Code of Conduct hearing Panelist at DeVry University and its Keller Graduate School of Management, which maintains its principal place of business and address at:<u>1200 E. Diehl Road, Naperville, Illinois 60563l.</u>

*23.* Defendant **EWA SCHMITZ, D.M.** is an **Illinois**-based female individual being sued in her official capacity as Northeast Student Code of Conduct hearing Panelist at DeVry University and its Keller Graduate School of Management, which maintains its principal place of business and address at:<u>1200 E. Diehl Road, Naperville, Illinois 60563l.</u>

*24.* Defendant **WENDY FINLAY, DBA** ("Dr. Finlay," or "Professor Finlay" or "defendant Dr. Finlay") is a **New York**-based black female individual being sued in her official capacity as Professor and Course Instructor during the graduate level class called Business Planning  Seminar ("MGMT 600"), July 2020-August 2020 session at DeVry University and its Keller Graduate School of Management, which maintains its principal place of business and address at:<u>1200 E. Diehl Road, Naperville, Illinois 60563l.</u>

*Plaintiff's Complaint.*

25.     Defendant **HUYNH THANH HO** (a.k.a. "Peter" or "David") is a **Maryland-**based Asian light-skinned male individual being sued in his official capacity as DeVry University Graduate Student during the Business Planning  Seminar class ("MGMT 600"), July 2020-August 2020 session at DeVry University and its Keller Graduate School of Management, which maintains its principal place of business and address at:1200 E. Diehl Road, Naperville, Illinois 60563l.

26.     Defendant **SEAN MULHERN** is a **California**-based Caucasian male individual being sued in his official capacity as DeVry University Graduate Student, Business Planning Seminar ("MGMT 600"), July 2020-August 2020 session at DeVry University and its Keller Graduate School of Management, which maintains its principal place of business and address at:1200 E. Diehl Road, Naperville, Illinois 60563l.

27.     Defendant **IBIRONKE MAJEKODUNMI** (a.k.a. "Ronke") is a **California**-based black female individual being sued in her official capacity as DeVry University Graduate Student, Business Planning  Seminar class ("MGMT 600"), July 2020-August 2020 session, DeVry University, Keller Graduate School of Management, which maintains its principal place of business and address at:1200 E. Diehl Road, Naperville, Illinois 60563l.


## C.  JURISDICTION AND VENUE

28.     This U.S. District Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this Complaint pleads many causes of action under Federal Law.

29.     This U.S. District Court has Diversity Jurisdiction pursuant to U.S. Code § 1332 because Illinois is the principal place of business for Defendants Adtalem Education Group, DeVry University, and Keller Graduate School of Management. The individual officials and

*Plaintiff's Complaint.*

defendants of DeVry University reside in different States of the Country such as Illinois, California, New York, Pennsylvania, Florida, and Minnesota.

    *30.*     This District Court exercises supplemental jurisdiction over Plaintiff's State Law claims pursuant to 28 U.S.C. § 1367 and U.S.C § 1332.

    *31.*     Venue is right in the District of Illinois because when adjudicating a motion to dismiss for improper venue in the case of *Negash v. DeVry Univ.*, No. 17-10256, 2018 WL 1570625, at *8 (E.D. Mich. Mar. 30, 2018), for example, the Court stated that "DeVry is not a resident of Michigan" although DeVry appears to maintain local campuses in Michigan just like it does in New Jersey. Courts have transferred many federal cases against DeVry from other Districts to Illinois District. Conversely, in the case of *Polly v. Adtalem Global Educ., Inc.,* No. 16 CV 9754, 2019 WL 587409 (N.D. Ill. Feb. 13, 2019), this Illinois District Court stated that " Adtalem lives here" and so venue was right in this Court.

    *32.*     Venue is proper in this Courthouse pursuant to 28 U.S.C. § 1391(b)(1) within the DuPage County vicinage of this United States District Court for District of Illinois, Eastern Division Courthouse because of the following:

(i)   Defendants Adtalem, DeVry University, Keller Graduate School of Management conduct business and maintains their national headquarters, administrative leadership offices, and local campuses and offices at Naperville, Illinois, which falls within the Bergen County of the geographical vicinage of this Court. This forum is convenient because the defendant entities (Adtalem, DeVry, Keller, Registrar) live here. Defendants Bartholomew, Bose, and Goldberg) are also Senior level administrative officials of DeVry and Keller who maintain their physical offices here in Illinois.

*Plaintiff's Complaint.*

(ii)    The alleged violations of Plaintiff's Federal and State Law rights occurred on the internet,

Telephone, while Plaintiff  is a resident of New Jersey and local student at the DeVry's

local campus of North Brunswick, New Jersey. The events giving rise to Plaintiff's claims

alleged herein occurred in New Jersey. (*See* Exhibit 6D).

For all these reasons, although Plaintiff initiated this action in the U.S. District Court for

District New Jersey (Trenton) docketed case number 19-cv-20531-BRM-DEA, Plaintiff

withdrew the action *without prejudice* to commence it here in this Court, without Fed. R.Civ.

Proc. 4 process service, without adjudication of the complaint, without any substantive motions

adjudicated, and without defendants entering any appearance on the docket.


## D.  FACTUAL BACKGROUND & NATURE OF THIS COMPLAINT

*33.*    Plaintiff Michael O. Livingstone ("Livingstone" or "Plaintiff") is a matriculated

full-time Graduate Student at defendant Keller Graduate School of Management of defendant

DeVry University since November 2015.

*34.*    By letter dated October 31, 2015, DeVry University granted Plaintiff admission

into its Keller Graduate School of Management to pursue the Master of Business Administration

("MBA") academic degree program.

*35.*    Plaintiff is currently a candidate for Master of Business Administration ("MBA")

degree at Keller Graduate School of Management of DeVry University having completed

didactic coursework in three (3) concentrations, namely: General Management, Health Services

Management, and Management Information Systems.

*36.*    Plaintiff applied to graduate in January 2020 session for his MBA degree in the

three concentrations (*see* generally Exhibits 9A & 9B).

*Plaintiff's Complaint.*

37.     Plaintiff is in good academic standing with high cumulative Grade Point Average ("GPA") currently at 3.5 on a 4.0 scale with most "A" final grades at defendant Keller Graduate School of Management, DeVry University.

38.     The issues presented in this lawsuit prevent Plaintiff from graduating, especially the dispute regarding the MATH 533 class. Otherwise, Plaintiff has completed all coursework for his MBA degree.

39.     On January 21, 2019, Plaintiff earned a Graduate Certificate in Entrepreneurship from defendants Keller Graduate School of Management and DeVry University.

40.     On October 26, 2019, Plaintiff earned another Graduate Certificate in Health Services Management from defendants Keller Graduate School of Management and DeVry University. This certificate was requested this year 2020.

41.     At Keller Graduate School of Management, DeVry University, each Semester is divided into two accelerated eight (8) week sessions.

42.     Each session of a semester is billed separately. [6]

43.     Since Plaintiff's matriculation in November 2015 at Keller Graduate School of Management, DeVry University, Plaintiff has seamlessly enrolled and completed about twenty-six (26) graduate-level classes at the University.

44.     The alleged discrepancies, alleged discriminations, and class registration malpractices by the University surrounding the classes at issue in this Complaint drastically reduced Plaintiff's GPA to 3.5 whereas Plaintiff was almost 4.0 cumulative GPA. After the

---

[6]     *See* Page 7 of the Keller Catalog, https://www.devry.edu/content/dam/devry_edu/d/Keller_Catalog.pdf stating that "Keller delivers courses in a session format, with two eight-week sessions offered each semester."

*Plaintiff's Complaint.*

issues are addressed in Plaintiff's favor, Plaintiff's GPA could be restored to its previous higher

GPA of 3.9 on a 4.0 scale.

45.     DeVry University is a premier University without strong and high accreditations.

Although DeVry claims it is accredited, the University's MBA program is **not** accredited by the

higher accreditation board for most Business Schools called the Association to Advance

Collegiate Schools of Business ("AACSB") and so DeVry and Keller are not on the AACSB's

published list of accredited Business Schools. [7]

46.     Plaintiff believes his high GPA might rather advocate for him instead of the

unpopular name of DeVry University also because of the impact of recent national fraud lawsuit

cases or false advertising cases: *Federal Trade Commission v. DeVry Education Group, Inc. et*

*al,* Central District of California, Case No: 2:2016-cv-00579 (cacd). [8] See  also *McCormick, et*

*al. v. Adtalem Global Education Inc*., et al. Case No. 2018-CH-04872 (Cir. Ct. Cook Cty.)

47.     As a part of Plaintiff's MBA degree requirements, in May 2016 session, Plaintiff

enrolled and completed the graduate-level online class called Financial Accounting-Managerial

Use and Analysis ("ACCT 504") at Keller Graduate School of Management of DeVry

University. A non-tenured Adjunct Professor, Ms. Malinda Marsh, was the course instructor.

48.     Plaintiff was unsuccessful in the May 2016 session ACCT 504 class also because

(i) Defendant DeVry University Online Bookstore sent Plaintiff the wrong mandatory Textbook

---

[7]     *See*, https://www.aacsb.edu/accreditation/accredited-schools

[8]     This is exemplified by the fact that even when President Trump recently nominated a former DeVry University official to the U.S. Department of Education, Fraud, Fraud was attached to that former DeVry Dean, public opinion questioned the credibility of the official. See, https://www.politico.com/story/2017/08/30/julian-schmoke-jr-trump-education-department-college-enforcement-242176

*Plaintiff's Complaint.*

at the time (*see* email thread Exhibit 10A); (ii) the Course instructor did not teach the course material or provide any lecture; and (iii) Plaintiff got sick; as well as other matters.

49.     Plaintiff submitted grade appeal at the time to the University against the May 2016 session's ACCT 504 class. The grade appeal was processed at DeVry University by academic specialist, Ms. Kelly Day, acting as Coordinator, to facilitate the appeal to the administrative offices of the Dean (s) and ultimately to then-Provost, Vice President, Academic Affairs (Donna M.Lorraine,Ph.D).

50.     On July 20, 2016, by email letter, Dr. Donna Rekau addressed the grade appeal without addressing the discrepancy regarding the Textbook.

51.     The University did not provide Plaintiff with a grade appeal hearing regarding the ACCT 504 March 2016 class.

52.     In March 2019 session, Plaintiff repeated the ACCT 504 online class and succeeded with a final "A-" grade. The Course Instructor was a tenured Associate Professor, Dr. Arlene Goodman.

53.     Around March 2019, Defendant Online Bookstore sent Plaintiff the correct Textbook as a courtesy replacement without cost although the previous damage to Plaintiff's academic grade in ACCT 504 May 2016 session was not cured (*see* email thread Exhibit 10A).

54.     Plaintiff filed a timely grade appeal, Case No. 08878845, with the University for a straight "A" grade for the March 2019 session's ACCT 504 class because of processing delays of ADA disability Accommodations and other academic factors.

55.     To date, the University has ignored Plaintiff's grade appeal case no. 08878845 against the March 2019 session's ACCT 504 class without addressing the issues raised therein.

*Plaintiff's Complaint.*

56.     In March 2017 session, as part of Plaintiff's MBA degree requirements, Plaintiff enrolled and completed the online graduate level class called Managerial Applications of Information Technology ("MIS-535") earning final grade "B." The Course Instructor was a non-tenured visiting adjunct Professor: defendant Jacob R. Gordon.

57.     Getting to the end of that MIS 535 class, Plaintiff encountered medical complications. As a result, Plaintiff could not complete the last requirement of the MIS 535 class, which was an audio recorded PowerPoint presentation of the course project worth 75 points.

58.     By emails dated April 10, 2017, 12:57 AM and May 2, 2017, 1:49 AM, Plaintiff informed defendant Gordon about his medical condition preventing him from completing outstanding requirements of the MIS 535 class.

59.     By email dated April 30, 2017, 11:56 PM, Plaintiff filed a timely grade appeal against MIS 535 to defendant Gordon. Defendant Gordon ignored the grade appeal.

60.     Around October 5, 2018, Plaintiff submitted a formal grade appeal against the MIS 535 grade to DeVry University Administration with Case No.08314829. That grade appeal was assigned to the University's  Brent Ward, Ph.D., and Virgil Mensah-Dartey, Ph.D.

61.     Dr. Mensah-Dartey did not adjudicate Plaintiff's grade appeal about the MIS 535 class. Dr. Mensah-Dartey claimed that the University says he should "simply close it" and if Plaintiff sues, "the University has Lawyers," he added. Plaintiff responded that just because the University has Lawyers does not mean a grade appeal should be ignored.

62.     To date, the University has disregarded and ignored Plaintiff's grade appeal case No.08314829 regarding the MIS-535 March 2017 session class.

*Plaintiff's Complaint.*

63.    During the July 2018 session, Plaintiff successfully completed the University's graduate level class called Managerial Decision-Making ("MGMT 530"). Plaintiff earned a final straight "A" grade. The course instructor was Mary Welsh, Ph.D.

64.    By email dated Tuesday August 7, 2018 at 2:23 PM, Dr. Welsh advised Plaintiff to seek Accommodations under the Americans with Disabilities Act ("ADA") from the University's designated ADA Officer.

65.    By follow-up email dated Friday August 10, 2018 at 4:42 PM, then-Faculty Chair for Northeast Group, Professor John Kavouras, of DeVry University agreed with Dr. Welsh that Plaintiff should seek ADA accommodations from the University's ADA Officer. *See* attached email Exhibit 4B.

66.    DeVry University concurs with the statement of Professor Kavouras urging Plaintiff to reach out to the University's designated ADA Officer, (not anyone else), for ADA accommodations because it is documented and published in both the University's own Catalogs and Student Handbooks that Students can reach the University's designated ADA Officer directly to process ADA accommodations. *See* Page 132 of the DeVry-Keller Catalog at https://www.devry.edu/content/dam/devry_edu/d/Keller_Catalog.pdf providing as follows, for example. *See also* Page 10 of the University's Student Handbook, *see also* https://www.devry.edu/content/dam/devry edu/d/student-handbook.pdf.

67.    By emails to the University's designated ADA Officer in August 2018, Plaintiff completed the necessary paperwork and applied for ADA accommodations.

68.    By email dated August 10, 2018 at 7:09 PM (attached Exhibit 4A), the University's designated ADA Accommodations Officer, Ms. Adrienne Farmby-Taylor, notified Plaintiff that Plaintiff has been granted online student ADA accommodations.

*Plaintiff's Complaint.*

69.    By email dated Sunday, March 10, 2019 11:59:35 AM, Plaintiff notified Dr.

Arlene Goodman about his 1.5x ADA accommodation notice without copying any third person.

In a reply email that day, Dr. Goodman applied the 1.5x ADA extensions to Plaintiff's

assignments in the ACCT 504 March 2019 session class and she copied her faculty chairperson:

Dr. John MacCatherine.

70.    Plaintiff's medical condition worsened during Week 2 of the ACCT 504 March

2019 session class and so Plaintiff risked incurring late penalties.

71.    By email dated Thursday, April 11, 2019 3:06 AM to Dr. Goodman (Exhibit 4C),

Plaintiff stated this to Dr. Goodman:

> "…I prefer to work directly with you rather than ADA office interventions. I
> wanted to give you a Courtesy phone call. However, as part of pain
> management medical advice, I am unable to call…"

72.    With the prior August 7, 2018 advice of Dr. Welsh and Professor Kavouras in

mind to seek ADA accommodations, Plaintiff reached out to Ms. Adrienne Farmby-Taylor, who

then followed up with Dr. Goodman by phone calls and emails to both Plaintiff and Dr.

Goodman to determine necessary accommodations for Plaintiff's medical condition since

Plaintiff already has the 1.5x ADA Accommodation. *See* email attached Exhibit 3A dated April

4, 2019, 5:55 PM stating the following:

> "Hi Michael, …. I will be out of the office on Friday and Monday. Should
> you wish to speak to me let me know what time I can reach you on
> Tuesday or any other day next week. Wishing you well…"

73.    By email dated June 14, 2019 at 6:40 PM (Exhibit 1A), Defendant Jonathan

Agresta included Exhibit 3A as part of evidence within a disciplinary hearing package zip file

seeking to impose disciplinary action against Plaintiff on grounds that Defendant Agresta finds it

*Plaintiff's Complaint.*

"intimidating" that Plaintiff directly reached out to the ADA Officer for ADA accommodations in the ACCT 504 class instead of reaching the course instructor (Dr. Goodman) for ADA accommodations. Meanwhile, Dr. Goodman is not the University's ADA Officer. Both Professor Kavouras and the University itself urged Plaintiff to directly reach the ADA officer to process ADA accommodations (Exhibit 4B).

74.     By email dated April 3, 2019 at 3:38 PM, the University's ADA Officer decided that the right path is to modify by extending Plaintiff's prior ADA accommodations. The ADA officer sent this email to Plaintiff and copied Dr. Goodman:

> Hi Michael,
> I hope this email finds you well…. We can work with you to modify your accommodations if you wish to do so. I have also reached out to Dr. Goodman to discuss your concerns. I look forward to speaking with you tomorrow.
> Have a great day,
> Adrienne
> Adrienne Farmby Taylor | Accommodations Coordinator…

75.     The ADA Officer sent the necessary ADA accommodations forms to Plaintiff and Plaintiff's Physician to complete them as part of the required ADA accommodations process. Plaintiff completed the forms and authorized Ms. Taylor to contact Plaintiff's Specialist Physician at Penn Medicine for medical documents and certifications.

76.     By email dated April 25, 2019 at 1:02 PM, Ms. Farmby-Taylor obtained Plaintiff's completed parts of the ADA forms from Plaintiff and she informed Plaintiff about processing other necessary medical verifications directly from Plaintiff's Doctors. Ms. Farmby-Taylor stated the following:

> Hi Michael,
> Yes, I have requested additional documentation from Dr. Brod's office and I also left a voice mail for him or someone on his staff to contact me regarding the information that we need in order to move forward with your

*Plaintiff's Complaint.*

> request….I will notify you when I receive the documents or a return phone
> call from your doctor. I work Monday-Friday, please let me know if you
> need additional assistance.
> Have a great day,
> Adrienne
> Adrienne Farmby Taylor | Accommodations Coordinator

77. By email dated April 30, 2019, 9:40 AM (Exhibit 4D), Ms. Farmby-Taylor

approved modifications to the prior August 2018 ADA accommodations letter and she sent

"updated ADA Accommodations Notification Letter." The modified ADA accommodations

letter states the following in attached email Exhibit 4D:

> Dear Michael:
> DeVry has received your request for accommodation(s) under the
> Americans with Disabilities Act and determined that the following
> accommodation(s) can be made for your online courses:
> • **1.5x minutes on all tests/quizzes/exams-**
> A student with this accommodation will get 1.5X the number of minutes
> to take the exam as the non-accommodated student population. This
> extension is a multiplier of minutes and does not allow for additional
> attempts or days. The student is still required to finish the exam by the
> latest 11:59 MT the last day of the exam. It is the student's responsibility
> to save periodically so that the examinations will not time out. *For
> example, if the non-accommodated population of the class gets two hours
> to take a quiz and the accommodated student's letter states 1.5X, then they
> will receive 3 hours.
>
> • **2.0 x on individual assignments**, if needed, not to exceed week 8
> deadline (not threaded discussions)- This accommodation provides 2.0X
> the amount of time on assignments not threaded discussions and not to
> exceed the last day of the course. This does not cover those assignments in
> a group setting which must still be completed on time, according to the
> dates in the syllabus. You may request information from your professor
> concerning Week 8 assignments starting Monday week 7.
> *For example if an assignment was due on Sunday then the student with
> this extension would have to turn in the assignment the following Sunday
> by 11:59 p.m. MST….
> Please let us know if you have any questions or concerns.
>
> Best Wishes,
> Adrienne Taylor
> Accommodations Coordinator

*Plaintiff's Complaint.*

*78.* With the prior August 10, 2018 recommendation of Professor John Kavouras in mind (Exhibit 4B) and his extension of open arms to Plaintiff to reach out to him if Plaintiff ever needs assistance, by email dated April 26, 2019, 4:42 PM, attached as "Exhibit 3D," Plaintiff reached out to Professor Kavouras for guidance regarding the ACCT 504 class and the updated ADA accommodations letter regarding how to address Dr. Goodman about the late penalties while the ADA officer was processing the ADA accommodation extensions.

*79.* By email dated April 27, 2019, 12:04 AM (attached Exhibit 2C), Professor Kavouras replied to Plaintiff that he is no longer faculty chairperson and so he is referring Plaintiff to another University Administrator (i.e. Dr. Bhupinder Sran) to guide Plaintiff.

*80.* Professor Kavouras advised that the ACCT 504 grade can be changed retroactively even if the class session ends. So, Plaintiff should not worry too much about getting the penalties alleviated right away. The other administrators such as Dr. Bhupinder Sran also affirmed retroactive grade change in the email thread (Exhibit 2C).

*81.* Retroactive grade changes is consistent with the University's published policy in the Keller Catalog (Page 104).

*82.* Dr. Bhupinder Sran referred Plaintiff to DeVry's Assistant Dean of Academic Excellence, Dr. John MacCatherine, who is also the Faculty Manager of Dr. Goodman. *See* Exhibit 2C at Page 3.

*83.* Dr. John MacCatherine took over the matter and directed Plaintiff to file a grade appeal about the ACCT 504 March 2019 session class before he can address Plaintiff's concerns.

*84.* By email dated April 28, 2019, 11:46 AM (attached Exhibit 3C., Page 1), Dr. MacCatherine wrote this:

Michael:

*Plaintiff's Complaint.*

> Please submit all of you [sic] outstanding work by the time Dr. Goodman
> specified. In order for me to address your concerns, please work with your
> support advisor to submit a grade appeal along with any documentation
> you have to support your concerns. I will review everything in the context
> of the course requirements and your ADA accommodation and determine
> what if any adjustments can be made.
> Thank you very much!
> Dr. John
> John MacCatherine, PhD PMP CPLP SPHR Assistant Dean of Academic
> Excellence, Arizona and Nevada

85.     On May 7, 2019, Plaintiff filed a formal electronic Grade Appeal to DeVry

University regarding Dr. Goodman's ACCT 504 March 2019 session class. The Case Number

for that grade appeal is  08878845 at DeVry University. The University disregarded the grade

appeal.

86.     By email dated May 7, 2019, 2:30 PM, Plaintiff informed Dr. MacCatherine that

he has filed the grade appeal. In support of the grade appeal, Plaintiff attached both his first ADA

notice and the modified ADA accommodations note from the ADA Officer (Exhibits 4A and

4D). Plaintiff advocated that the late penalties should be waived because processing time of the

ADA accommodations should not have a bearing upon Plaintiff's work.

87.     Plaintiff argued  within the ACCT 504 grade appeal that the processing time of

the ADA modified accommodation should not attract late penalties against his ACCT 504 scores

from Weeks 2-7 assignments because it is not Plaintiff's fault that the ADA Officer was away

during some days. Plus, document processing with Doctors and large Hospitals such as Penn

Medicine takes some time. Plaintiff argued that he did his part to notify Dr. Goodman and the

University about his health and he availed himself for ADA modified accommodation extensions

to be processed by Ms. Farmby-Taylor.

88.     To date, nobody in the University has addressed Plaintiff's grade appeal case no.

08878845 regarding the ACCT 504 March 2019 session class.

*Plaintiff's Complaint.*

89.     Since May 7, 2019 when Plaintiff filed the grade appeal about ACCT 504 March 2019 session class with the University, Plaintiff has not received notification from Dr. MacCatherine and the University about the outcome of that grade Appeal Case Number 08878845 despite Dr. MacCatherine's email (Exhibit 3C) urging Plaintiff to file that grade appeal for him to review it.

90.     By emails dated June 14, 2019 at 6:40 PM & 6:41 PM contained within the June 2019 student conduct hearing packet (Exhibits 1A, 3A-3I), Defendant Agresta notified Plaintiff about violation of the University's Student Code of Conduct inter alia because Plaintiff sought and processed ADA accommodations from the University's ADA officer.

91.     Defendant Agresta attached a Zip File to that conduct hearing packet as evidence against Plaintiff including Plaintiff's previous ADA accommodation correspondence during the processing of ADA accommodations with the University's ADA Officer.

92.     The attached Exhibits 3A-3I herewith are the exact exhibits Defendant Agresta included within the disciplinary hearing packet Zip File that was appended to defendant Agresta's June 14, 2019 email (Exhibit 1A) charging Plaintiff for violating the DeVry Student Code of Conduct also because Plaintiff  requested, properly processed, and obtained ADA accommodations from the University's ADA officer.

93.     Within the June 2019 conduct zip file packet (Exhibits 1A, 3A-3I), Defendant Agresta charged Plaintiff for student code of conduct violation on grounds that Plaintiff reached out beyond his March 2019 ACCT 504 course instructor to the University's designated ADA Accommodations Officer to "get his way" by seeking ADA accommodations from the ADA Officer, not the course instructor (Exhibit.1A, p.2). Defendant Agresta attached Exhibits 3A & 3G to the hearing packet zip file.

*Plaintiff's Complaint.*

94.     Plaintiff denied any misconduct on his part on grounds that just as Professor

Kavouras stated in Exhibit 4B and in consonance with the University's own ADA

accommodations policies in the published catalogs, it was Plaintiff's responsibility to seek ADA

accommodations through the University's designated ADA Officer, not through the course

instructors such as Dr. Goodman because unlike designated trained ADA Officers, course

instructors are not trained to handle and process requests for ADA accommodations. Plaintiff

denied any misconduct for reaching out to the University's designated ADA Accommodations

Officer.

95.     Within the June 2019 conduct packet also (Exhibits 1A, 3A-3I), Defendant

Agresta charged and sanctioned Plaintiff for student code of conduct violation on grounds that it

was bad "incident of character reference" for Plaintiff to reach out to DeVry Professor John

Kavouras for guidance (Ex.1A, p.2). In support of this allegation of bad character reference,

defendant Agresta attached Exhibit 3D as evidence. *See* also Exhibit 2C for full details about

this.

96.     Within emails (Exhibit 2B), Plaintiff also denied any misconduct or intimidation

for merely reaching out to Professor Kavouras for administrative guidance because email Exhibit

4B shows Professor Kavouras never took issue with Plaintiff reaching out to him. *See* also

attached email Exhibits 4A & 4B for historical background evidence in 2018 as to why Plaintiff

reached Professor Kavouras in particular in 2019.

97.     Without any evidential record of alleged June 13, 2019 phone call within the June

2019 conduct hearing packet (emails Exhibits 1A, 3A-3I), Defendant Agresta also charged and

sanctioned Plaintiff for being "rude" in a telephone call Plaintiff placed through DeVry

University Central phone on June 13, 2019 to defendants Deb Koffman and Kristine Kearney

*Plaintiff's Complaint.*

regarding delayed processing of Plaintiff's textbook credit balance refund. Plaintiff denies being

rude to anybody and Plaintiff denied saying defendant Deb Koffman was "stupid" doing a

"stupid" job.

98.     Within the June 2019 conduct hearing packet (emails Exhibits 1A, 3A-3I),

Defendant Agresta charged and summoned Plaintiff for disciplinary action for violating Article

III of the Student Conduct Code on grounds that Plaintiff threatened to sue Keller or Plaintiff

asserted his right "to sue Keller" during his June 13, 2019 telephone conversation with defendant

Kearney.

99.     Plaintiff denied any conduct violation inherent in that because a "threat to sue"

the University in Court or asserting the right to petition is not actionable threat of physical

violence or misconduct. Only "true threats" of physical violence are actionable or punishable

(*see* Ex.1A, p.2). Plaintiff admits asserting his right to sue Keller for his money. That is not

misconduct.

100.    Also within the June 2019 conduct hearing packet (emails Exhibits 1A, 3A-3I),

Defendant Agresta seized, summoned, and charged Plaintiff for violating Article III of the

student code of conduct on grounds that Plaintiff sent so-called "intimidation emails" to his

March 2019 session ACCT 504 class course instructor (Dr. Arlene Goodman) because Plaintiff

copied multiple Deans, a Professor, and more especially because Plaintiff copied the University

Provost (Defendant Shantanu Bose) on that email April 27, 2019 Exhibit 3I. Defendant Bose did

not personally indicate any problem with Plaintiff copying him on that email.

101.    Defendant Agresta included the aforementioned "intimidation email" as part of

the Zip file attached to the June 2019 conduct hearing packet email (Exhibit 1A).

*Plaintiff's Complaint.*

102.    Plaintiff denied any misconduct of intimidation because the content of that email (Exhibit 3I) is purely about a detected glitch or ambiguity within a multiple choice question in the ACCT 504 class assignment.

103.    Plaintiff denied any misconduct of intimidation because that email (Exhibit 3I) does not show any actionable intimidation of physical violence at all on its face. It is purely academic content.

104.    Plaintiff denied any actionable "intimidation" in that email (Exhibit 3I) also because Plaintiff believes he had a right to voice his academic concerns to University Administrators in authority to deal with the perfunctory academic systems and ambiguous academic questions that only distract and compromise quality of education.

105.     Plaintiff copied administrators on that email (Exhibit 3I) because the University's administration always seek student feedback, as in Exhibit 4C, for example. Plaintiff found the perfunctory academic issue in the March 2019 ACCT 504 class as an opportunity to give a more contextual feedback to the University's administration about issues or academic concerns students such as Plaintiff are facing at DeVry.

106.    Plaintiff copied the University Provost, Defendant Bose, on that email (Exhibit 3I) because the University's President (Defendant Bartholomew) has expressly stated in his opening messages published within the Keller Academic Catalog that all the University's faculty and administrative staff exist to support Students and so students should not hesitate to reach out to them.

107.    Defendant Agresta attached a second email within the June 2019 conduct packet (Exhibits 1A, 3A-3I) regarding Plaintiff reporting a technical glitch to the University's IT help desk when the March 2019 ACCT 504 course portal prevented Plaintiff from submitting his

*Plaintiff's Complaint.*

school work (*see* email thread Exhibit 3C for details).The content of that email shows that Plaintiff reached out to IT Help Desk and administrative Dean Dr. MacCatherine regarding what to do and they re-opened the portal for Plaintiff to submit his work. There was no actionable intimidation of physical violence in that email because Plaintiff has duty to report technical glitches and perfunctory educational systems affecting his academic work.

*108.* Within the June 2019 conduct packet (Exhibits 1A, 3A-3I), Defendant Agresta also seized, charged, and sanctioned Plaintiff for violating Article III of the DeVry student code of conduct on grounds that Plaintiff copied the U.S. Department of Education's Office of Civil Rights ("OCR") to allege racial discrimination (*see* Exhibit 1A, pp.3-4) that happened during Plaintiff's November 2017 session Business Economics 545 graduate course (*see* email Exhibit 2A for actual full version of that email details for the date).

*109.* Plaintiff denied any misconduct of actionable physical intimidation in that email (Exhibit 2A cited within the conduct hearing packet Exhibit 1A, pp.3-4) because Plaintiff has responsibility to report appearances of racial discrimination to a federal enforcement agency such as the OCR and/or to complain to University administrators about racial discrimination and hostile educational environment.

*110.* Within the June 2019 conduct hearing zip file packet (Exhibits 1A; 3A-3I), Defendant Agresta also summoned, charged, and sanctioned Plaintiff for violating Article III of the DeVry student code of conduct on grounds that Plaintiff has past bad character incident of filing grade appeals or seeking Incomplete grades (*see* Exhibit.1A, p.3).

*111.* Plaintiff denied any misconduct on grounds of filing grade appeals with the University because the University's own contractual published Catalog provides Grade Appeals

*Plaintiff's Complaint.*

and Incomplete Grade, as required by the Education Amendments Act of 1972,

https://www.devry.edu/content/dam/devry_edu/d/Keller_Catalog.pdf,  at Pages 102 & 104.

*112.*    Plaintiff filing grade appeals with the University is not misconduct because *see*

Exhibit 3C at Page, for example, DeVry's own Assistant Dean, Dr. John MacCatherine, directed

Plaintiff in an April 28, 2019 email to "file a grade appeal" regarding the ACCT 504 March 2019

session's class before  he could review Plaintiff's concerns. *See* also Exhibit 11A for email dated

Jul 11, 2019, 5:59 PM where DeVry's tenured Associate Professor Kathrine Henson-Mack, PhD

tells Plaintiff *inter alia* to file an official grade appeal about the MATH 533 Class.

*113.*    Plaintiff avers that it is not misconduct or misbehavior to file grade appeals

whereas University administrators and course instructors themselves even instructed Plaintiff to

"file grade appeal."

*114.*    Defendant Agresta  also accused and sanctioned Plaintiff for conduct violation by

attaching to the June 2019 conduct packet a one year old August 17, 2018 allegation (Exhibit 1A,

p.3) claiming that Plaintiff was "rude" when he "refused to verify his identity" during a live chat

on the University's website and Plaintiff was "unable to end a live chat session well" on the

University's website with defendant Megan Mihelich when Plaintiff requested information about

who is Keller's new "Main Dean" (or National Dean) and Center Dean for Philadelphia Campus.

*115.*    Plaintiff denied any misconduct during that live chat while pointing out in email

Exhibit 2B to Defendant Agresta that if indeed Plaintiff refused to "verify his identity" on that

live chat, then credibility of that claim is questionable regarding how the same Defendant

Mihelich thinks it was actually Plaintiff who did that live chat to begin with.

*116.*    The University did not conduct the June 20, 2019 disciplinary hearing in-person.

*See* Exhibit 1A, pp.6-9 describing the format and forum of the hearing. Plaintiff objected to a

*Plaintiff's Complaint.*

virtual hearing on procedural grounds that it is not a *proper* forum for due process hearing if the University cannot conduct the hearing in-person on one of its local campuses regardless of the panel members being drawn from other campuses in different States nationwide (Exhibit 2B). Plaintiff requested that the June 20, 2019 conduct hearing should be conducted in-person on one of the University's local campus offices in New Jersey or Pennsylvania (*see also* generally email Exhibits 3E, 3F, and Ex.1A).

117.    Plaintiff participated in the June 20, 2019 disciplinary hearing without an Attorney, adviser, or witness.

118.    None of the University's witnesses attended the June 20, 2019 code of  conduct hearing.

119.    The University recorded the June 20, 2019 conduct hearing (Plaintiff will subpoena it soon).

120.    During the June 20, 2019 disciplinary hearing, the Panel members (defendants Russell, Schmitz, and D'Souza) expressed their confusion about exactly what is Plaintiff's conduct violation.

121.    During that June 20, 2019 disciplinary hearing, Defendant D'Souza demanded evidence of the June 13, 2019 telephone conversation where Plaintiff allegedly said Defendant Deb Koffman was doing a stupid job so that the panel can hear it for themselves and make a judgment. However, Defendant Agresta advised the Panelists that there was no recorded telephone call evidence. Yet, he proceeded with the hearing absent any evidence and absent Defendant Koffman attending the hearing to be cross-examined for credibility assessment of their statements.

*Plaintiff's Complaint.*

122.    During the June 20, 2019 conduct hearing, defendant D'Souza demanded that the alleged intimidation emails from Plaintiff should be placed on the screen for members of the Panel to determine for themselves whether Plaintiff actually violated the DeVry University Student Conduct Code or not.

123.    During the June 20, 2019 disciplinary hearing, Plaintiff denied unsubstantiated allegations that he said defendant Koffman was stupid or she was doing a stupid job verifying student information that would still be verified anyway by the Student Support Advisers when she transfers the telephone call to the student support advisers on DeVry Central.

124.     Plaintiff clarified that he was concerned with the waste of time inherent in that telephone procedure and he thinks only the Student Support Advisers themselves should verify his information since the phone call would be transferred to them anyway.

125.    During the June 20, 2019 disciplinary hearing, Plaintiff asserted that it was unlawful for the University to seize and summon him to a disciplinary hearing for reaching out to the University's ADA Officer (Ms. Adrienne Farmby Taylor) to seek ADA accommodations and processing.

126.    During the June 6, 2019  student conduct  hearing, Plaintiff argued that consistent with the University's own Catalogs and Student Handbooks, University Administrators such as Professor Kavouras properly advised Plaintiff to seek ADA accommodations from the ADA Officer, and not from course instructors such as Dr. Goodman.

127.    By email dated June 21, 2019, 12:14 PM (Exhibit 5E), Defendant Agresta notified Plaintiff that the University has imposed a disciplinary sanction "warning and reprimand" against Plaintiff pursuant to Article IV, Sanctions, 1.(a) in violation of Article III of the DeVry student code of conduct in light of the allegations in the hearing package (Ex.1A).

*Plaintiff's Complaint.*

*128.*     The June 2019 sanction warning letter is contained within Exhibit 5E. Plaintiff was given seven (7) days to appeal.

*129.*     Defendant Agresta  directed Plaintiff  to send his appeal against the code of conduct violation to the same Defendant Agresta. *Id*

*130.*     Page 18 of the 2018-2019 DeVry Student Handbook's code of conduct procedures provides in Page 18 that "…Appeals must be processed by an individual with **no prior involvement** in initial determination or hearing… (emphasis added). *See* Exhibit 6A.

*131.*     By email dated June 24, 2019 at 12:45 PM, Plaintiff argued that defendant Agresta participated in the June 20, 2019 hearing; therefore, he should not be receiving or handling Plaintiff's Appeal (Exhibit 6A). Defendant Agresta did not recuse himself from receiving Plaintiff's appeal.

*132.*     By email dated June 28, 2019 at 10:00 PM, Plaintiff submitted his appeal to defendant Agresta. (Exhibit 6A).

*133.*     By email dated July 1, 2019 at10:06 AM, Defendant Agresta advised Plaintiff that he has forwarded the appeal to the appeal reviewer without disclosing the name of the appeal reviewer.

*134.*     The name of the  student conduct board appeal reviewer is also undisclosed in the 2018-2019 DeVry Student Handbook.

*135.*     By email dated July 1, 2019 at 4:01 PM, defendant Alan Shikowitz notified Plaintiff about the outcome of his appeal (Exhibit 6A). Without any explanation, Defendant Shikowitz upheld the June 2019 disciplinary sanctions of  "warning and reprimand."

*Plaintiff's Complaint.*

*136.*    Plaintiff believes and therefore avers that Defendant Agresta personally selected

Defendant Shikowitz to review Plaintiff's June 2019 student conduct code violation appeal

because the  student handbook does not authorize Defendant Shikowitz to be  appeal  reviewer.

*137.*    Following the June 2019 conduct proceedings, around July 12, 2019, Plaintiff sent

emails and electronic documents to the University's Registrar through Student Support Adviser,

Ms. Sayena Sadekin. Plaintiff declared that he does not want to have anything to do with

DeVry's Pennsylvania Campus and he does not want Pennsylvania campus officials to handle

any of his files. Plaintiff never authorized anybody to designate his campus location as

Philadelphia, Pennsylvania campus.

*138.*    In July 2019, Plaintiff changed his campus location from online student to North

Brunswick, New Jersey, location with the assistance of Ms.Sadekin (Exhibit 6D).

*139.*     In November 2018 session, Plaintiff enrolled in the online graduate level class

Applied Managerial Statistics ("MATH-533") at DeVry University. The course instructor was a

Associate Professor, Kathrine Henson-Mack, Ph.D.

*140.*    Consistent with the provisions for Incomplete Grades in Pages 98-99 of the 2018-

2019 Keller Catalog[9] (*see* extracted pertinent part of the Keller Catalog attached herewith as

Exhibit 11B), Plaintiff and Dr. Henson-Mack agreed and processed Incomplete grade for the

MATH 533 Class (Exhibit 11A) due to Plaintiff's illness (Exhibits 11A.1-11A.2).

*141.*    Around January 31, 2019, consistent with the University's Catalog provisions in

Exhibit 11D, Plaintiff contacted Dr. Henson-Mack to extend the Incomplete grade when the

Incomplete grade was about to turn to default failing grade (Exhibit 11A).

---

[9]     2018-2019 Keller Catalog,
https://www.devry.edu/content/dam/dvu/www_devry_edu/d/Keller_Catalog.pdf

*Plaintiff's Complaint.*

*142.* On January 31, 2019 Dr. Henson-Mack left a voicemail on Plaintiff's phone (Exhibit 11A.5) and she stated at the end of her voicemail (Exhibit 11C) to Plaintiff that she could do an F-grade over-rule later on after the Incomplete grade changes to default fail grade (Exhibit 11C) if Plaintiff is unable to submit all the remaining coursework before the Incomplete grade becomes a default fail grade.

*143.* On or around July 11, 2019, the same Defendant Agresta who previously summoned and sanctioned Plaintiff in June 2019 on grounds that Plaintiff's filing of grade appeals with the University is "bad character incident" (Exhibit 1A), conspired with Dr. Henson-Mack (as evidenced in July 11, 2019 email Exhibit 11A.8) to stop Dr. Henson-Mack from changing the default F-grade with the F-overrule she previously provided at the end of her January 31, 2019 voicemail to Plaintiff (Ex.11C).

*144.* Around July 11, 2019, defendant Agresta directed Dr. Henson-Mack to tell Plaintiff to file the MATH 533 grade appeal specifically to him, not to anybody else (Exhibit 11A.8) instead of filing the grade appeal electronically to the University for processing by an Academic Specialist, as it was done by Ms. Kelly Day in 2016, *supra*, and Dr. MacCatherine in 2019.

*145.* Plaintiff reminded defendant Agresta about his prejudice against filing grade appeals (Exhibit 11A.10) last June 2019 where the same defendant Agresta mischaracterized Plaintiff's filing of grade appeals as bad "past character incident reference." Yet, in July 2019, the same defendant Agresta wanted Plaintiff to file his grade appeal regarding the MATH 533 class to him.

*146.* By emails, Plaintiff asked defendant Agresta to recuse himself as the decision maker of Plaintiff's MATH 533 grade appeal. Agresta did not recuse.

*Plaintiff's Complaint.*

147.    On October 31, 2019, Defendant Agresta declined to recuse himself and he proceeded to deny Plaintiff's MATH 533 grade appeal citing pretextual excuses (Ex.11A.11) without referring the grade appeal to an academic specialist and to the University's Provost and Chief Academic Officer for final decision making.

148.    Defendant Agresta is not the final arbiter of grade appeals at the University.

149.    Academic Affairs Provost of a University such as defendant Shantanu Bose is the final arbiter of grade appeals in the University, as it was previously done in March 2016 by Provost Dr. Donna Rekau, *supra*, when Plaintiff appealed the ACCT 504 grade (Exhibit 16A).

150.    As part of MBA degree academic requirements, Plaintiff enrolled in the University's graduate level class called Managerial Finance ("FIN 515"), September 2019 session,

151.    FIN 515 class was an eight (8) week accelerated online class calendared to run between September 2, 2019 – October 26, 2019.

152.    Defendant Milan Havel, Ph.D ("Dr. Havel," or "Defendant Havel") was the Course Instructor for FIN 515.

153.    By email dated September 1, 2019, 10:17 PM, Plaintiff sent his ADA accommodations note (Exhibit 4D) to Defendant Havel to apply the 1.5x ADA extensions towards the weekly assignments for FIN 515 coursework. Defendant Havel applied the 1.5x ADA extensions (Exhibit 12A).

154.    The University and defendant Havel used a third party educational software system for the FIN 515 class provided by the Textbook's publisher called Cengage Publishing.

155.    Cengage Software was incorporated and synchronized into the FIN 515 course pages that is powered by Canvas Instructure ("Canvas").

*Plaintiff's Complaint.*

*156.* To complete FIN 515 weekly homework and quizzes, students log into DeVry's course portal canvas interface and then DeVry's canvas provides a tab link to Cengage for student to complete their Homework and Quizzes.

*157.* Plaintiff encountered numerous technical glitches with the synchronization between DeVry Canvas and Cengage systems in FIN 515 class.

*158.* Plaintiff contacted Defendant Havel regarding the technical glitches between the Canvas and Cengage systems. Defendant Havel claimed he does not know how to do it and he referred Plaintiff to DeVry IT help desk, who in turn referred Plaintiff to Cengage (Exhibit 6E).

*159.* By email dated Fri, Jan 11, 2019 at 2:48 PM (Exhibit 7A), DeVry University informed students that Federal Student Financial Aid processing is delayed as result of new merger or ownership and new contracting with the U.S. Department of Education.

*160.* DeVry University does not provide on-campus or off-campus housing or dormitories for students. Students have to find their own housing.

*161.* Plaintiff is a recipient of federal student financial aid for his cost of attendance at DeVry University, which includes tuition, fees, room and board for his own off-campus housing payment.

*162.* Plaintiff encountered non-ADA medical extenuating circumstances during the FIN 515 class.

*163.* By email dated, September 30, 2019, 1:52 PM (Exhibit 7C), one of DeVry University's Financial Aid and Student Support Central Managers, Mr. Daniel McMahon, who is familiar with the financial aid processing delays, encouraged Plaintiff that they would ensure Plaintiff becomes successful in the FIN 515 class despite the financial aid processing delays:

> "…were you able to reach out to your professor already or work with one of our Student Support Advisors about your current class? If not, please

*Plaintiff's Complaint.*

        call Student Central at 877-496-9050 and we would be happy to work with you on a plan to be successful in the class."

    *164.*    By email dated October 18, 2019, 2:09 PM (Exhibit 7D, pp.2-3), Plaintiff requested for extensions from Defendant Havel on grounds of non-ADA extenuating circumstances such as  loss of housing associated with the financial aid  delays to allow Plaintiff to submit his outstanding Homework and Quizzes from Weeks 1-6 of the FIN 515 class. Defendant Havel ignored that email.

    *165.*    By email dated October 22, 2019, 11:37 AM (Exhibit 7D, pp.6-8), Plaintiff reiterated his request to defendant Havel for extension to submit outstanding course work in FIN 515 on grounds of extenuating circumstances. Plaintiff also requested for Incomplete grade.

    *166.*     Plaintiff copied his designated Student Support Adviser in the person of defendant Arissa Bryant, and Mr. Daniel McMahon.

    *167.*    Defendant Arissa Bryant is specifically named within the prior June 20, 2019 disciplinary warning letter. (*Cf* Exhibit 5E, p.4) as part of the channel of communication to act as Plaintiff's advocate and to help escalate concerns to the appropriate administrator. Still, Plaintiff received no response from Defendant Havel or any of the DeVry officials.

    *168.*    Plaintiff contacted DeVry Central student support center and inquired about the whereabouts of defendant Arissa Bryant. The Student Support center indicated that they will send Ms. Bryant a message to get back to Plaintiff. Still, Plaintiff did not hear from Ms. Bryant

    *169.*    Plaintiff requested to speak to a Faculty Manager with supervisory authority over Dr. Havel. A different Student Support Adviser received Plaintiff's concerns about Defendant Havel and created the Case No. 09351347 at DeVry for a Faculty Manager to address it.

    *170.*    Around October 24, 2019, Plaintiff followed up with the Case No. 09351347. DeVry University's Student central informed Plaintiff that the Faculty Manager has instructed

*Plaintiff's Complaint.*

Dr. Havel to get back to Plaintiff and Dr. Havel has responded on the case that he would get back to Plaintiff that same day. However, Dr. Havel did not get back to Plaintiff on either October 23 or the next day of October 25.

171.    Around October 24, 2019, Plaintiff contacted DeVry Central student support advising center in North Brunswick, New Jersey, to attempt to reach a New Jersey local campus Complaint Administrator. Plaintiff was referred to Illinois DeVry Central.

172.    By email dated October 22, 2019 at 4:20 PM (Exhibit 6G), Plaintiff requested Incomplete grade for the FIN 515 class from Defendant Havel. Without any explanation, Defendant Havel declined to give Plaintiff Incomplete grade, *Id*. Plaintiff electronically signed his part of the Incomplete grade request through the DocuSign electronic system by the Registrar.

173.    By emails around October 23, 2019 (Exhibit 6H), Plaintiff asserted that he would file a discrimination complaint against Dr. Havel to the U.S. Department of Education's Office of Civil Rights ("OCR") because he felt he was disparately treated or discriminated when Defendant Havel declined Plaintiff's Incomplete request without any basis. Plaintiff copied the OCR on that email.

174.    By email dated October 29, 2019 at 10:43am (Exhibit 6I), Plaintiff decried, condemned, and asserted his right to bring a "negligence of duty" and "failure to train" causes of action against Defendant Havel.

175.    By email dated October 24, 2019 at 10:23 AM (Exhibit 7D, pp.10-11), Plaintiff continued to look for the whereabouts of Ms. Bryant to act as Plaintiff's coordinator.

*Plaintiff's Complaint.*

176.    Plaintiff contacted one of the long-time responsive Student Support Advisers in the person of Ms. Tennille Husbands, whom Plaintiff knew from previous years of being a Student at Keller.

177.    Ms. Husbands promptly responded to Plaintiff and explained that defendant Bryant called Plaintiff on the phone. *Id.* However, she could not get a hold of Plaintiff. Plaintiff replied to Ms. Husbands to give his correct phone number to defendant Bryant to contact him. *Id.* Plaintiff received no phone calls or missed phone call from Ms. Bryant.

178.    Defendant Bryant failed to use email to reach Plaintiff if phone was not working out considering the fact that she was copied on Plaintiff's emails.

179.    With June-July 2019 conduct sanction warning letter's proscribed "channel of communication" in mind (*cf.* Exhibit 5E) and the fact that Plaintiff was no longer a Pennsylvania campus student, the next step was for Plaintiff to reach out to a Dean.

180.    Plaintiff knew from experience at Keller that online students are designated to the National Dean's office because the previous National Dean for Keller, Oscar Gutierrez, PhD directly assisted Plaintiff in the past 2016-2017 (*see* Exhibits 12B.1 and Exhibit 12.B.2).[10]

181.    By email dated Fri, Oct 25, 2019 at 9:40 PM (Exhibit 7D, pp.13-18), Plaintiff wrote to the National Dean for Keller Graduate School of Management students, defendant Lenore Goldberg, J.D. Plaintiff copied some of the National Dean's subordinate regional Deans on the email because Plaintiff used generic email construction so that they can channel the email to the National Dean.

---

[10]    Exhibits 12 B.1-B.2 establishes that Plaintiff followed the channel of communication because when Plaintiff first matriculated at DeVry and Keller back in 2016 and 2017 as "online student," then-National Dean of Keller, Oscar Gutierrez, was Plaintiff's Dean who solved problems for him. Dr. Gutierrez quickly solved problems for Plaintiff and he told Plaintiff that he should feel free to contact him anytime. Similarly, when Plaintiff changed his campus to online student in July 2019, his dean or Complaint administrator is Keller national Dean Lenore Goldberg.

*Plaintiff's Complaint.*

*182.* Plaintiff did not copy any Provosts in that email Exhibit 7D unlike the previous Exhibit 3I that was used against Plaintiff during the June 2019 conduct hearing.

*183.* By email dated October 26, 2019, 10:58 AM, Dean Lenore Goldberg promptly responded to Plaintiff as follows:

> Hi, Michael – thank you for reaching out to us. I understand your concern and I will do my best to help you. Given that it's Saturday, I need a couple of days to work through read through the documents, work through issues with the instructor and evaluate the best course of action. I'm hopeful that we will have a resolution by Monday. This slight delay won't impact the any potential extensions.
> Let me know if you have any questions in the meantime….

*184.* Defendant Goldberg did not take any issue that one of her Keller Students has contacted or reached out to her about a problem.

*185.* By email dated October 28, 2019 at 10:20 AM, Plaintiff supplemented the record for Dean Goldberg (Exhibit 7D, pp.22-23).

*186.* By emails copied to the Deans dated October 28, 2019 at 11:14 AM and October 28, 2019, 1:53 PM, Dr. Havel responded (Exhibit 7D, pp.25-26) claiming that he has extended Weeks 6-8 FIN 515 outstanding Cengage homework and quizzes for Plaintiff. Weeks 7-8 coursework was already completed and submitted on time and so that aspect required no extensions.

*187.* By email dated October 28, 2019, 10:06 PM, Plaintiff issued nine (9) rebuttals (Ex. 7D, pp.28-31) against the unsubstantiated statements of Defendant Havel.

*188.* After a series of email interactions with Plaintiff in Exhibit 7E, Defendant Agresta fixed the perfunctory technical problems between the Cengage and Canvas systems affecting erroneous or unreported scores in Plaintiff's grade book for FIN 515 class.

*Plaintiff's Complaint.*

189.    Plaintiff drew the attention of Defendants Agresta and Goldberg to the fact that Defendant Havel has failed to honor his own statement to Plaintiff that he has extended Week 5 Homework and Quiz for FIN 515. *Id.* Exhibit 7E.

190.    Plaintiff only received extensions for Weeks 5 & 6 module's outstanding coursework for FIN 515 only extensions (Exhibit 7E) for the extenuating circumstances. Plaintiff completed them with full scores thereby making Plaintiff's final grade "C." There still remains Weeks 1- 4 module's outstanding quizzes and homework. *See* Exhibit 12C for final Canvas Gradebook record of scores with course syllabus.

191.    Around October 31, 2019, Plaintiff noticed that defendant Havel has posted his final grade for the FIN 515 class and recorded by the University's Registrar as "FAIL" whereas Plaintiff's grade was not a failing grade at the time Defendant Agresta took over the matter from Defendant Havel to work on the discrepancies. Defendant Agresta later submitted a change of grade for Plaintiff to change the Fail grade to "C."

192.    Without explanation, by email dated October 29, 2019, 3:28 PM, defendant Agresta notified Plaintiff about new student conduct code violation charges claiming that Plaintiff has violated Article III of the student conduct code. Upon further inquiry, defendant Agresta explained that it is related to Plaintiff's correspondence with defendant Havel and reaching out to University administrators such as defendant Goldberg (i.e. emails within Exhibit 7D).

193.    Plaintiff asserted to Defendant Agresta that no part of his correspondence with defendants Goldberg and Havel constitutes misconduct.

194.    Defendant Agresta scheduled a student code of conduct disciplinary hearing on November 14, 2019 (Exhibit 7F).

*Plaintiff's Complaint.*

195. By email dated October 30, 2019, 4:59 PM (Exhibit 7F, p.10), Plaintiff asked defendant Agresta to recuse himself because of his biases from previous June 2019 disciplinary proceedings and assign the new November 2019 disciplinary proceedings to the New Jersey student conduct code administrators.

196. Defendant Agresta is only authorized by the Handbook as designated code administrator for Pennsylvania Students, not New Jersey students, or online students. *See* Pages 59-60 of the Student Handbook Code of Conduct listing "Moustafa Ahmed" as the Code Administrator for New Jersey.

197. DeVry Student Handbook, Page 62, also declares that online students are assigned to Illinois Student Code Administrators. Defendant Agresta is not listed as code administrator for Illinois. He is listed as code administrator for Pennsylvania alone. *See* Page 61 of the Student Handbook.

198. Defendant Agresta declined to recuse himself from the November 14, 2019 disciplinary proceedings, despite procedural objections on the record.

199. DeVry Student Handbook designates Student Code Administrators by States, not by region.

200. During the November 2019 student conduct proceedings, Plaintiff raised procedural objections on the record (*see* Exhibit 14A) that Defendant Agresta should recuse himself from the proceedings because he is not the designated Code of Conduct Administrator for Online Students and New Jersey campus students such as Plaintiff Livingstone.

201. Defendant Agresta is designated as Pennsylvania Student Code Administrator, not New Jersey.

*202.* Plaintiff believes and therefore avers that motivated by bad-faith, retaliatory animus, and racial hatred against Plaintiff, Agresta declined to recuse himself; thereby, forcing himself to handle the proceedings against the authority of the contractual provisions in the Code/Handbook.

*203.* Plaintiff asked Defendant Agresta to recuse the northeast group hearing Panelists (i.e. Defendants Russell, D'Souza, and Schmitz) and empanel a new one because of they are the same panelists decision makers from prior June 2019 conduct hearing becoming the November 2019 conduct hearing panelists too (*see* Exhibit 14A) to avoid the risk of systemic bias and prejudice stemming from familiarity with last June 2019's conduct hearing proceedings causing the November 2019 hearing to be unfair with partiality. Agresta did not recuse the Panelists either.

*204.* Around November 13, 2019, Plaintiff sent a Memorandum to the Panelists that addressing the allegations (Exhibit 14B).

*205.* On November 14, 2019, the November 2019 conduct hearing occurred by telephone, internet, or WebEx. It was not an in-person hearing. It was a virtual hearing. Plaintiff attended without an Attorney or an Adviser.

*206.* During the November 14, 2019 conduct hearing, Plaintiff objected to the absence of the complainants or witnesses (i.e. Defendants Havel, Kohara, and Mofidi) because Plaintiff has credibility questions about their statements of accusation. Agresta declined to sustain the objection and he proceeded with the November 2019 hearing.

*207.* During the November 14, 2019 hearing, Defendant Agresta mischaracterized Plaintiff's written email assertions to defendant Havel reporting racial and disability

*Plaintiff's Complaint.*

discrimination to the OCR as "intimidating and threatening" under Article III of the student

conduct code.

208.    During the November 14, 2019 hearing, the hearing panelists (defendants Russell,

D'Souza, and Schmitz) ignored Plaintiff's discrimination claims when the Panelists failed to

refer Plaintiff to file a discrimination complaint within the University's anti-discrimination office

or encourage Plaintiff to file a discrimination complaint elsewhere such as the OCR to enforce

the anti-discrimination policy of the University and Civil Rights Act.

209.    The hearing Panelists failed to act against Plaintiff's discrimination allegations

thereby condoning, encouraging, and fomenting racial and disability discrimination in the

University and retaliating against Plaintiff with adverse disciplinary sanctions.

210.    On November 15, 2019, Plaintiff received adverse disciplinary sanctions of

probation, suspension, and limited order contained in the attached Exhibit 14C from Defendant

Agresta.

211.    Plaintiff believes and therefore aver that all findings are pretextual excuses to

retaliate against Plaintiff or to cause Plaintiff from suing the University and Defendants for

asserting his right to complain against Discrimination to a federal anti-discrimination agency

such as the OCR.

212.    Plaintiff denies the November 15 conduct finding in Exhibit 14C that he falsified

information during the November 14 conduct hearing itself regarding MATH 533  as the

remaining class because the November 14 conduct hearing was a virtual hearing via phone and

WebEx with intermittent technical signal fluctuations on the lines and background noise. So,

either Plaintiff did not hear, or he *clearly* did not hear some questions about his remaining

classes, regarding MATH 533, for example, on the other end of his line.

*Plaintiff's Complaint.*

213.    Plaintiff has objected to using virtual technology forum for such due process hearings. Plaintiff believes and therefore avers that this finding shows that Defendant Agresta was relentlessly looking for anything at all he can use as a pretextual excuse to retaliate against Plaintiff.

214.    Plaintiff denied the November 15 conduct finding in Exhibit 14C that he falsified information during the November 14 conduct hearing regarding MATH 533 as a remaining class for him to graduate because in Plaintiff's email-Memorandum (Exhibit 14B) a day before that November 14 hearing, Plaintiff already gave the panel his graduation degree audit reports (Ex.9A) showing MATH 533 on it as a remaining class.

215.    During the November 14, 2019 hearing, the Panelists stopped Plaintiff from going through the documents and presenting all his defense orally.

216.    The Panelists stated that they have reviewed all the documents Plaintiff sent them and so there is no need for Plaintiff to go through them again. Plaintiff was therefore confused when asked about his remaining classes to graduate whereas the Panelists already had Exhibit 9A showing the disputed remaining class.

217.    The Panelists claimed that they already reviewed everything and Plaintiff need not go through them again, there was no need to ask Plaintiff a question about his remaining classes that was already answered with Exhibit 9A. So, Plaintiff was confused, tricked, and trapped by the panelists during the hearing; thereby, making the November 14 hearing unfair with bad-faith from the panelists too.

218.    There still remains unsettled legal issues about MATH 533 class, which Plaintiff brings before this Court within this Complaint.

*Plaintiff's Complaint.*

219. Plaintiff denies the November 15, 2019 conduct finding in Exhibit 14C that he falsified information in his email to DeVry IT help desk.

220. During the November 14 hearing, after Plaintiff presented his defense with clear and convincing evidence, the panelists could not question Plaintiff's rebuttal against that allegation at all given the exculpatory evidential emails in Exhibit 12E Plaintiff presented.

221. Defendant Havel stated in his emails to Plaintiff that he has "extended all assignments" in FIN 515 class and he further directed Plaintiff to tell DeVry Canvas IT Helpdesk to tell Cengage "to mirror the extensions."

222. In the November 15 sanctions notice, defendant Agresta truncated Plaintiff's emails out of context and cited it in the sanction notice (Ex.14C) as a finding of misconduct.

223. Plaintiff avers that the University denied him a fair hearing because unquestioned emails during the hearing were later used in surprise against him in the sanction notice of findings.

224. Plaintiff denies the November 15, 2019 conduct finding in Exhibit 14C claiming that he did not follow proper communication channels when addressing concerns about FIN 515 class with Defendant Goldberg because defendant Goldberg never said Plaintiff has violated the student conduct code by reaching out to her. Indeed, the evidential email October 26, 2019 at 10:58 AM, supra, from defendant Goldberg to Plaintiff shows that defendant Goldberg rather took issue with the fact that Plaintiff delayed reaching out to her.

225. Plaintiff has now sued defendant Goldberg because she is the overall Keller National Dean of the Keller and she did nothing to stop defendant Agresta from taking adverse action against Plaintiff for reaching out to defendant Goldberg. If it was misconduct for a

student to reach out to their dean, then defendant Goldberg should have said so in her October 26, 2019 email.

226.    Plaintiff  has now  sued defendant  Goldberg because no  matriculated  student should be suspended for reaching out to their dean.

227.    Plaintiff  has now sued defendant Goldberg because defendant Goldberg knew that defendant Agresta was going to take adverse disciplinary action against Plaintiff for reaching out to her regarding FIN 515. Yet, Defendant Goldberg did not stop Agresta despite the fact that defendant Goldberg welcomed plaintiff reaching out to her.

228.    During the November 14, 2019 hearing, Plaintiff addressed the allegation that he did not follow proper channels of communication by referring to attached Exhibit 7D, which demonstrates that Plaintiff followed  proper channels of communications outlined in Exhibit 5E. However, the actors within that same channel of communication, such as defendant Arissa Bryant, failed to perform their duty to connect Plaintiff to the appropriate  complaint administrator at the time.

229.    During the November 14, 2019 hearing, none of the Panelists raised any questions about "channel of communication" at all after Plaintiff presented his defense with clear and convincing evidence.

230.    Plaintiff  appealed the November 2019 disciplinary  sanctions to defendant Shikowitz. Without any explanation, defendant Shikowitz  denied Plaintiff's appeal.

231.    In May-June 2020 session, Plaintiff  returned to the University and completed the online graduate class course called innovation in technology ("MIS 540") with Dr. Peter Newman. Plaintiff earned a final grade straight "A" in the MIS 540 class.

*Plaintiff's Complaint.*

232.    In July 2020 -August 2020 session, Plaintiff enrolled and completed the class called Business Planning Seminar (MGMT 600) class  at the University with Defendant Dr. Wendy Finlay. The final grade posted is "B." This MGMT 600 class did not accommodate Plaintiff's ADA  extensions  because Weeks 3-8 modules of the class  assignments required group work.

233.    The MGMT 600 class was simulation class that uses a software called CAPSIM/CAPSTONE.

234.     The University and the Registrar failed to disclose within the academic catalogs and within the title of the class that MGMT 600 is a simulation class, not a typical class where students could write a business plan.

235.    The MGMT 600 class required all students to work in groups. So, Plaintiff's ADA accommodations was not used to extend all assignments by one week. Plaintiff was part of the "Chester group"  of students in the MGMT 600 class.

236.    Plaintiff enrolled in the graduate online class called Managing Organizational Change ("HRM 587") for the current  September 2020-October 2020 session as part of academic requirements for his second-degree track in Master of Public Administration ("MPA") degree. Most classes that are already completed under the MBA track also count towards the MPA track.

237.    This September 2020, the University administratively dropped Plaintiff's HRM 587 class and placed Plaintiff on interim suspension, scheduled and provided continuance if student disciplinary proceedings conduct on grounds that Plaintiff *inter alia* sent a court-filed cease-and desist  notice to defendant Agresta and copied the University's in-house General Legal Counsel/Vice President on the  email notifying defendant Agresta (*see* generally Exhibit 25). The

*Plaintiff's Complaint.*

University also claims that Plaintiff sent emails to defendant Finlay where Plaintiff talks about

protests. *Id.* The University also claims that Plaintiff's emails to defendant Finlay are threatening

to the extent that Plaintiff cautioned against mass shootings by referring a 2010 Connecticut

mass shooting over perceptions of racial discrimination. *Id.*

238.    Plaintiff avers that these September 2020 allegations are frivolous and malicious.

239.    Plaintiff has completed all his MBA degree classes. There still remains legal

disputes about the MATH 533 class so that Plaintiff can graduate for his MBA degree.

## COUNT ONE

### RETALIATION & DISCRIMINATION UNDER
### AMERICANS WITH DISABILTIES ACT ("ADA");
### SECTION 504 OF THE REHABILITATION ACT OF 1973

### (Michael O. Livingstone v. Defendants DeVry, Keller, Adtalem)

240.    Plaintiff incorporates herein by reference each and every one of the allegations

contained in the preceding paragraphs as though fully set forth at length herein.

241.    The conduct of Defendants, as set forth hereinabove, constitutes conduct under

color of law which deprived Plaintiff's rights.

242.    In 2018, Plaintiff was advised by the University's Faculty members, especially

Dr. Mary Welsh and Professor Kavouras (Exhibit 4A) to seek ADA accommodations if

Plaintiff's medical conditions persist.

243.    The University's published contractual Catalogs and Student Handbook urges

eligible students to obtain ADA accommodations by contacting the University's designated

ADA Officer to start ADA accommodation application processing. *See* Page 10 of DeVry 2018-

2019 Student Handbook. *See* also Keller Catalog.

*Plaintiff's Complaint.*

244.    Course instructors are not trained to handle and process medical information for ADA  accommodations.

245.    Both DeVry University and the ADA statute does not say students with disability should contact their course instructors for the Professors themselves to process ADA accommodations for them.

246.    In August 2018, Plaintiff obtained ADA accommodations from DeVry University and its Keller Graduate School of Management and it was processed and granted by Ms. Adrienne Farmby -Taylor who is one of the designated ADA Officers at Defendants DeVry University and its Keller Graduate School of Management.

247.    In April 2019, Plaintiff obtained ADA accommodations modifications from the University's ADA officer and it was fully processed with medical signatures and verifications and granted by Ms. Adrienne Taylor – a designated ADA Officer at DeVry University.

248.    In June 2019, Defendant Agresta subjected Plaintiff to adverse disciplinary proceedings claiming that Plaintiff reached beyond his March 2019 ACCT 504 course instructor to the ADA Officer to obtain the April 2019 ADA accommodations.

249.    In June 2019, Defendant Agresta summoned, sanctioned, and subjected Plaintiff to adverse disciplinary action *inter alia* on grounds that Plaintiff has past incidents of character reference of reaching out to University Administrators "to get his way" which includes Plaintiff reaching out to the University's ADA officer for ADA accommodation processing (Exhibit1A, page 2).

250.    Plaintiff  avers that it is not "Plaintiff's way," but rather, it is "the Law's way" for humm to  reach out to the ADA  officer to process ADA  accommodations because the federal

*Plaintiff's Complaint.*

ADA statute and the University required Plaintiff to reach the ADA officer for ADA accommodation.

251.    As evidence against Plaintiff, defendant Agresta attached to the June 2019 conduct hearing packet zip file (Exhibit 1A, p.1)  Exhibits 3A, 3B, 3C, 3D, 3G where "ADA" is specifically mentioned in Plaintiff's emails  that were sent or received from the University's ADA Officer.

252.    Defendant Agresta specifically included in the Zip File attached to the June 2019 conduct hearing packet Plaintiff's pertinent email correspondences reaching out to University's ADA Officer for ADA accommodations.

253.    Plaintiff believes and therefore avers that Defendant Agresta was motivated with actual malice and animosity to intentionally retaliate and discriminate against Plaintiff for reaching out to the designated ADA Officer to process ADA Accommodations because Plaintiff's June 14, 2018 emails issued rebuttals to Defendant Agresta that Plaintiff has a right to reach out to the University's ADA officer to obtain ADA accommodations without being subjected to adversarial disciplinary proceedings (Exhibit 2B). Yet, Defendant Agresta failed to amend the June 2019 hearing packet to eliminate all references to ADA processing.

254.    Plaintiff avers that it was not a mistake on defendant Agresta's part because Agresta ignored Plaintiff's cautionary rebuttals within Exhibit 2B urging him to amend the June 2019 conduct packet by eliminating all ADA references.

255.    Defendant Agresta did not amend the June 2019 conduct hearing packet notices and its attachments to eliminate ADA correspondence matters therein. Defendant Agresta proceeded to impose adverse disciplinary sanctions warning against Plaintiff to tarnish Plaintiff's record against his liberty interests in his clean records.

*Plaintiff's Complaint.*

256.    To the extent that Plaintiff formally appealed the June 2019 disciplinary sanctions to defendant Shikowitz (Exhibit 6A) wherein Plaintiff reiterated that he cannot be subjected to disciplinary action for properly reaching out to the University's ADA officer to process ADA accommodations, defendant Shikowitz and the University also condoned this intentional discrimination and retaliation under the ADA statute and Section 504.

257.    Defendants individually and/or collectively, and/or intentionally retaliated against Plaintiff by summoning Plaintiff for June 2019 disciplinary hearing because Plaintiff reached out beyond his March 2019 session ACCT 504 course instructor (Dr. Goodman) to the University's ADA officer for ADA accommodations processing.

258.    As a direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief order by this Court to vacate and expunge the June 2019 disciplinary record entirely, as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable Attorneys' fees.

259.    As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Michael O. Livingstone has been caused and will continue indefinitely into the future to be caused severe mental anguish, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

260.    WHEREFORE, because of the alleged intentional discrimination and malicious intent herein, pursuant to Section 504 of the Rehabilitation Act of 1973 damages, Plaintiff Michael O. Livingstone demands judgment against Defendants Adtalem, DeVry University, and Keller Graduate School of Management jointly, severally and/or severally for compensatory,

*Plaintiff's Complaint.*

exemplary, and punitive damages in an amount in excess of $10 million exclusive of interest and costs to deter.

261.     WHEREFORE, consistent with damages clause under the ADA statute, Plaintiff demands preliminary, declaratory, and permanent injunctive relief to vacate and expunge the adverse June 2019 disciplinary record and sanctions from Plaintiff's files at the University without making references to it; and such other and further relief as the Court may deem just and equitable; and enjoin defendants from further retaliations against Plaintiff regarding his ADA accommodations.

## COUNT TWO

### DISCRIMINATION UNDER
### AMERICANS WITH DISABILTIES ACT ("ADA");
### Section 504 of the Rehabilitation Act of 1973

### (Michael O. Livingstone v. DeVry, Keller, Adtalem)

262.     Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

263.     The conduct of defendants, as set forth hereinabove, constitutes conduct under color of law which deprived Plaintiff's rights.

264.     At all times during the September 2019 session FIN 515 class, Defendant Havel was aware that Plaintiff is an American with a Disability (Exhibits 12A; 4D).

265.     As a matriculated graduate student enrolled in the University's FIN 515 class, Plaintiff had a right under the University's contractual published Handbook and Catalogs (Exhibit 11B) to request for Incomplete grade to allow him some time to complete outstanding coursework due to extenuating circumstances that are not ADA disability related at all, such as

*Plaintiff's Complaint.*

loss of housing and other non-ADA medical issues, to allow Plaintiff to complete outstanding

Homework and Quizzes for the FIN 515 class.

266.     By email dated October 22, 2019 at 11:37 AM, Plaintiff submitted a timely

request with documentation of extenuating circumstances in support of his request for

Incomplete grade for FIN 515 class to defendant Havel and the University Registrar before FIN

515 class ended (Exhibits 6G; 7D)

267.     Without any explanation in an email dated on October 22, 2019 at 5:36 PM,

Defendant Havel refused to grant Plaintiff's request for Incomplete grade citing arbitrary reasons

that Plaintiff is "not qualified" for the Incomplete grade (Exhibit 6G) notwithstanding the fact

that ADA students are equally qualified to seek Incomplete grades.

268.     To the extent that Defendants might claim that Plaintiff was not qualified to

receive Incomplete grade because of Plaintiff's scores in FIN 515, whereas a passing score is

necessary to receive incomplete grade for remaining coursework, this should be construed as a

pretextual excuse to discriminate under ADA because Plaintiff's final score in FIN 515 is a

passing score grade "C" (*see* also Exhibit 12C).

269.     To the extent that Defendant Havel might claim that he denied Plaintiff's

incomplete grade request on grounds that he already applied Plaintiff's ADA Accommodation

extensions to the weekly assignments and so he is not required to go beyond those ADA

accommodation extensions, Plaintiff avers that is a pretextual excuse to discriminate under the

ADA because Plaintiff clarified that he is not seeking additional ADA extensions at all and his

ADA status should not be used to discriminate his request for extension or incomplete grade like

every other student might get extensions of  time (*see* email dated October 22, 2019 at 11:37 AM

at point No. 5, i.e. Ex. 6G, page 2). Plaintiff clarified that his loss of housing is not ADA matter.

*Plaintiff's Complaint.*

His medical condition is not ADA. Not all extenuating circumstances or medical issues are disability within the meaning of ADA statute.

270.    The University's contractual 2019-2020 Academic Catalog makes the following provision for incomplete grades for *all* students with regardless of ADA accommodation or no ADA accommodations, for example (Exhibit 11B):

>    …Incompletes, designators of I, are granted in exceptional situations only, such as when illness or work-related travel is documented and when substantial course requirements have already been completed. Students must submit a Request for Course Incomplete form and obtain approval from the professor and the appropriate academic administrator prior to the grade roster deadline in order for an incomplete to be granted….

*See*, Page 99 of Keller Catalog https://www.devry.edu/d/Keller_Catalog.pdf

271.    Just as any student can get Incomplete grade based upon non-disability related extenuating circumstances such work –travel or medical issues, students with disability should equally be able to get Incomplete grades for non-disability related extenuating circumstances.

272.    Plaintiff asserted that he is not seeking ADA extensions or Incomplete grade based on ADA, but rather, Plaintiff is seeking extensions or incomplete grade based on normal extenuating circumstances every other student can seek.

273.    Plaintiff emphasized that just because he has ADA accommodation extensions does not mean he cannot seek other extensions or Incomplete grade based upon extenuating circumstances that can happen to every other student such as loss of housing or other non-ADA medical issues.

274.    Plaintiff avers that just as any student can seek incomplete grade for work travel, students with ADA accommodation notices like him can also seek incomplete grade for work travel or other extenuating circumstances such as loss of housing or medical issues.

*Plaintiff's Complaint.*

275.    Defendant Havel used Plaintiff's disability against him when defendant Havel stated that he is not required to go beyond Plaintiff's ADA accommodation extensions to give Plaintiff any other extension and incomplete grade any other student can get.

276.    Plaintiff avers that as a pretextual excuse to discriminate against his disability, in denying the Incomplete grade and extensions, Defendant Havel claimed that Plaintiff's Weeks 1-4 outstanding weekly Homework and Quizzes in FIN 515 class is long overdue for him to extend them and/or assign Incomplete grade. The class was not yet over. Hence, nothing was long overdue.

277.    Inasmuch as Plaintiff requested for non-ADA extensions and Incomplete grade while FIN 515 class was still ongoing, Plaintiff's request was not long overdue and the Weeks 1-4 outstanding coursework was not overdue.

278.    Even after a class is over, the University could still receive and grade outstanding coursework. (*see* example Exhibit 12B.2).

279.    Plaintiff avers that it was a pretextual excuse when Defendant Havel declined to grant Plaintiff request for extensions and/ or Incomplete grade on grounds that he never knew Plaintiff was dealing with extenuating circumstances until near the end of FIN 515 class. This is not true because Plaintiff called Defendant Havel and left him a voice-message. Defendant Havel never returned Plaintiff's phone call unlike other Keller Professors do. Moreover, by email dated, September 30, 2019, 1:52 PM (Exhibit 7C), one of DeVry University's Student Central Managers, Mr. Daniel McMahon, stated that even if Plaintiff was unable to reach out to his Professor already, the University would be happy to work with Plaintiff on a plan to be successful in the FIN 515 class.

*Plaintiff's Complaint.*

280.    Plaintiff avers that Defendants discriminated him under the ADA statute by using his preexisting ADA accommodation extension (Ex.4D) as grounds to deny him other non-ADA extensions and incomplete grade despite documented extenuating circumstances because just as non- ADA students can get non-ADA extensions and incomplete grades to complete their coursework based on extenuating circumstances, students with disability should also be able to get non-ADA extensions or incomplete grades with documented extenuating circumstances to complete their coursework.

281.    The record shows that defendant Havel granted extensions to the entire members of FIN 515 class without ADA accommodations or otherwise even though those similarly-situated students never requested for extensions. *See* Exhibit 12E for Canvas announcements from Defendant Havel dated October 28, 2019 and October 30, 2019.

282.    Plaintiff avers that Defendant Havel was motivated by bad-faith, ill-will, and actual malice against Plaintiff when he denied extensions to Plaintiff and granted other similarly situated students extensions for which those similarly-situated students never requested.

283.    As a direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Michael O. Livingstone has suffered and continues to suffer irreparable injury and humiliation about his disability which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief from this Court to enjoin defendants to re-open the remaining Weeks 1-4 Homework and Quizzes for FIN 515 class in both Canvas and Cengage systems for Plaintiff to complete them within 1-2 Weeks of the Court's Order and change Plaintiff's final grade for FIN 515 class; as well as damages in an amount to be determined by the Court and reasonable costs of bringing this lawsuit.

*Plaintiff's Complaint.*

284.    WHEREFORE, in accordance to the damages clauses of Section 504 of the Rehabilitation Act, Plaintiff demands exemplary, compensatory, and punitive damages in excess of $10 million exclusive of interest and costs; preliminary and permanent injunctive relief and award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

285.    WHEREFORE, pursuant to the damages clause of the ADA Statute, Plaintiff Michael O. Livingstone demands preliminary and permanent injunctive relief against Defendants -- Adtalem, DeVry University and its Keller Graduate School of Management jointly, severally and/or severally, for declaratory, preliminary, and permanent injunctive relief to Order the University to unlock the remaining weekly Modules 1-4 outstanding Homework and Quizzes in both Canvas and Cengage for Plaintiff to do them within November -December 2019, change Plaintiff's FIN 515 grade and supply a copy of Plaintiff's academic transcript reflecting the change of grade to the Court.

## COUNT THREE---NEGLIGENCE OF DUTY &

## COUNT FOUR— NEGLIGENT FAILURE TO TRAIN

### (Michael O. Livingstone v. Milan Havel; DeVry University; Keller Graduate School of Management; Adtalem Education Group Inc.)

286.    Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

287.    The conduct of Defendants, as set forth hereinabove, constitutes conduct under color of Law which deprived Plaintiff's rights.

*Plaintiff's Complaint.*

288.    Defendants DeVry University, Keller Graduate School of Management, and Adtalem Education Group Inc., designed the online FIN 515 class using DeVry's Canvas online portal and the Cengage textbook Publisher's software system synchronization for students to do weekly Homework and Quizzes.

289.    Defendants DeVry University, Keller Graduate School of Management, and Adtalem Education Group Inc., recruited, employed, and hired Defendant Havel as course instructor to teach the FIN 515 class in September 2019 session.

290.    Plaintiff paid tuition and fees to be taught the course material in FIN 515 from the expertise of a trained Teacher.

291.    Defendant Havel failed to perform paid teaching services to Plaintiff because throughout the accelerated eight weekly modules of the class, not once did Defendant Havel prepare and post a PowerPoint recorded lecture or *WebEx* recorded conference to explain or teach the concepts of the FIN 515 course material to students unlike other equally employed course instructors at the University do in their online classes.

292.    To the extent that defendants may argue that Defendant Havel participated in weekly discussion activities of the class, mere discussion postings do not constitute "tuition."

293.    Plaintiff avers that weekly written discussion postings (similar to Facebook postings) about the FIN 515 course material with amateur classmates cannot replace rendition of paid "tuition" from the expertise of the course instructor himself.

294.    Defendants failed to codify and designate the FIN 515 class within their course registration systems that FIN 515 class is an "independent study" class.

295.    Defendant Havel failed to perform his paid tuition duties because he never responded to Plaintiff's request for actual academic feedback as to why Plaintiff's answer to a

*Plaintiff's Complaint.*

question on the Week 7 Homework was erroneous; thereby, failing to perform his paid teaching

duty at the detriment of Plaintiff's paid tuition money. *See* Plaintiff's email dated Oct 23, 2019,

11:05 AM (Exhibit 6H at page 2) requesting to feedback:

> …Week 7 Homework is completed and submitted after three consecutive sleepless nights of working on it. One question was graded wrong by the system. I had someone review it and they also think the system graded it wrong although it is correct. Please take a look at that question in Week 7 Homework and provide me academic feedback….

It is the duty of the course instructor to provide academic feedback and assessment for students

to learn from academic mistakes pertaining to the FIN 515 class for improvement.

296.    By ignoring and failing to address Plaintiff's academic question in the October 23

email, Defendant Havel did not perform his paid teaching duty to Plaintiff Livingstone.

297.    Plaintiff avers that the University failed to train Defendant Havel about making

extensions in Cengage in conjunction with Canvas when the University hired and recruited

defendant Havel as the course instructor for September 2019 FIN 515 class (Exhibit 12E).

298.    Defendant Havel claims that he does not know how to perform extensions for

Homework and Quizzes in the Cengage system and transport scores from Cengage to Canvas

grade book. Defendant Havel also claims he only works for DeVry's canvas and so he directed

Plaintiff to rather contact Cengage and DeVry IT help desk.

299.    Defendant Havel knew or he should have been trained about these systems that

are used to teach the FIN 515 Class.

300.    By direct and proximate cause of the negligent failure of Defendant Havel to

perform his paid teaching duty to actually teach the course material and to explain the financial

theory concepts in the FIN 515 Class, Plaintiff had to spend more time on the course material

*Plaintiff's Complaint.*

without any proper pedagogic guidance, which negatively-affected Plaintiff's academic performance.

301.    Both DeVry IT help desk and Cengage support center stated in emails and telephone to Plaintiff that it is the responsibility of Defendant Havel as the Course instructor to contact them to do changes on Canvas and Cengage (*see* Exhibits 6E and 6F).

302.    When Defendant Agresta later took over the situation to solve the problem and he worked with Canvas to transport Weeks 5 & 8 scores from Cengage into Canvas gradebook (Exhibit 7E), he communicated directly with Cengage without telling Plaintiff to contact Cengage for anything.

303.    As the course instructor for FIN 515, Defendant Havel should have been trained by the University or he *should have known* how to work with both Cengage and Canvas and communicate directly with Cengage instead of telling student Plaintiff Michael Livingstone to perform that duty.

304.    By direct and proximate cause of the negligent failure of Defendant Havel to directly contact Cengage Support and DeVry's IT Help Desk at the time to address apparent technical glitches between the two systems for FIN 515 class, this resulted in Plaintiff sending more emails and strings of emails to find solutions from other University administrators, which in turn resulted in the University summoning and seizing Plaintiff for disciplinary hearing (Exhibits 7F, 7D; 8A-8M; 14C), and which has in turn wasted Plaintiff's time and distracted his academic focus.

305.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants Adtalem, DeVry University, Keller Graduate School of Management, jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of

*Plaintiff's Complaint.*

$5million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive

relief order to vacate and expunge the November 2019 disciplinary record and sanctions without

making references to it; an award of reasonable Attorneys' fees, costs and other costs and

disbursements in this action; and such other and further relief as the Court may deem just and

equitable.

## COUNT FIVE

### BREACH OF THE DUTY OF GOOD-FAITH & FAIR-DEALING; NEGLIGENCE; GROSS NEGLIGENCE

**(Michael O. Livingstone v. Paul Kohara; Mack Mofidi, Milan Havel; DeVry University; Keller Graduate School of Management; Adtalem Education Group Inc.)**

*306.*     Plaintiff incorporates herein by reference each and every one of the allegations

contained in the preceding paragraphs as though fully set forth at length herein.

*307.*     The conduct of Defendants, as set forth hereinabove, constitutes conduct under

color of Law which deprived Plaintiff's rights.

*308.*      Defendant James Bartholomew, DeVry University's 2019 then-President, stated

in his opening Welcome Message of the published contractual Keller Graduate School of

Management Academic Catalog [11] that the University's staff and faculty will act in Good Faith

and Fair Dealing to support students to be successful students at DeVry when he stated this:

> Dear Student, Welcome to the DeVry University family, and
> congratulations on taking this important step toward realizing your
> educational goals. Know that our talented faculty and committed student
> support staff will be there for you every step of the way. It is our goal to
> help you become a successful student, and ultimately, a successful
> graduate of DeVry University….

---

[11]      See, https://www.devry.edu/content/dam/devry_edu/d/US_Catalog.pdf at Page 5

*Plaintiff's Complaint.*

309.    In 2019, after attempts to resolve technical and academic issues directly with Defendant Havel failed, Plaintiff contacted DeVry Student Support center for faculty management to address the issues.

310.    Whereupon, the University created the Case No.09351347 for Plaintiff at DeVry.

311.    Notwithstanding the University President's cataloged message, *supra,* members of the University's Faculty Management (Defendants Mofidi and Kohara) failed to reach student Plaintiff Michael Livingstone in the spirit of good-faith and fair-dealing to ascertain the scope of things, to assess Plaintiff's problems with the FIN 515 class, and to provide solutions or directions

312.    The record within the November 2019 student conduct hearing packet (Exhibits 8A-8M) at Exhibit 8G suggests that defendants Mofidi and Kohara conspired with defendant Havel to injure Plaintiff by forwarding Plaintiff's issue and emails to Defendant Agresta, instead of reaching out to student Plaintiff Michael Livingstone to assess the problem and offer any resolutions.

313.     In the spirit of the University President's message, *supra,* other DeVry University course instructors, administrative faculty members, and Deans in the past acted in good faith to address Plaintiff's concerns about a class or pointed Plaintiff in the right direction under University policies.

314.    When Plaintiff needed extensions back in July 2018 MGMT 530 class from Dr. Welsh, for example, Dr. Welsh connected Plaintiff to her Faculty Manager, Professor John Kavouras. Professor Kavouras then reached out to Plaintiff at the time and advised Plaintiff to apply for ADA accommodations if his medical conditions persist. (*See* Exhibit 4B).

*Plaintiff's Complaint.*

315.     Similarly, when Plaintiff encountered some academic problems with Dr. Goodman during the ACCT 504 March 2019 session, Dr. Goodman connected Plaintiff to her faculty chairperson, Dr. MacCatherine, who then handled the technical glitches at the time and asked Plaintiff to file a grade appeal at the time for him to review Plaintiff's other concerns. (*See* Exhibit 3C, Page 1).

316.     Conversely, in November 2019, Defendant Havel and Assistant faculty management deans (defendants Kohara and Mofidi) never reached out in good –faith to Plaintiff to see the scope of things and deal with the matter. Instead, they ignored Plaintiff and forwarded Plaintiff's emails to conspire with Defendant Agresta to take adverse action against Plaintiff merely for voicing his concerns.

317.     By direct and proximate cause of the negligent failure of Defendants Mofidi and Kohara to respond to Plaintiff's emails and concerns about Dr. Havel at the time, this resulted in Plaintiff sending more emails and strings of emails to find solutions from other administrators including Plaintiff contacting defendant Keller's National Dean (Lenore Goldberg), for example. (*See* also Ex. 8G at point No.4).

318.     As a further direct and proximate result the negligent failure of Defendants Mofidi and Kohara to respond to Plaintiff's emails and concerns about Dr. Havel at the time, this caused Plaintiff to look for his own complaint administrator (defendant Keller's National Dean, Lenore Goldberg), which has led to adverse disciplinary sanctions on baseless grounds that Plaintiff contacted a higher administrator without following proper communication channels (Exhibit 14C).

319.     As a further direct and proximate cause, this caused the University to be summoning and seizing Plaintiff for adverse November 2019 disciplinary hearing (Exhibits 7F,

*Plaintiff's Complaint.*

7D; Exhibits 8A-8M), which has in turn wasted Plaintiff's time, stigmatized Plaintiff's record, and distracted his academic focus all to his detriment.

*320.*     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants against Adtalem, DeVry University and its Keller Graduate School of Management, and Defendant Havel, jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $1million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to vacate and expunge the November 2019 disciplinary proceedings /sanction; and an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT SIX

1. **DISPARATE TREATMENT UNDER ADA STATUTE ;**
2. **DISPARATE TREATMENT BASED ON NATIONAL ORIGIN AND/OR RACE UNDER CIVIL RIGHTS ACT OF 1964**

**(Michael O. Livingstone v. DeVry University;
Keller Graduate School of Management; Adtalem Education Group Inc.)**

*321.*     Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*322.*     The conduct of Defendants, as set forth hereinabove, constitutes conduct under color of Law which deprived Plaintiff's rights.

*323.*     Plaintiff is a US Citizen.

*324.*      Plaintiff is a black male individual with origins from the Republic of Ghana, West Africa. Plaintiff speaks with an African accent.

*Plaintiff's Complaint.*

*325.*     Plaintiff requested for extensions from Defendant Havel to submit his outstanding coursework for Weeks 1-6 modules of FIN 515 class during September 2019 session due to documented extenuating circumstances.

*326.*     Defendant Havel declined to grant Plaintiff's request for extensions. After administrative interventions, the University ultimately allowed extension and opened the locked modules for only Weeks 5 & 6 module's assignments for Plaintiff to complete his Homework and Quizzes for those modules. (*See* Exhibit 7E).

*327.*      In a general announcement to the entire class, defendant Havel announced that he has extended all the assignments for the entire class to complete by end of the class on October 30, 2019. *See* Exhibit 12E for Canvas announcements from Defendant Havel dated October 28, 2019 and October 30, 2019. So, defendant Havel granted extensions to other similarly-situated students who never requested for the extension and who never produced any documentation of extenuating circumstances unlike Plaintiff Livingstone did.

*328.*     Plaintiff believes and therefore avers that motivated by prejudice and bad-faith against the fact that Plaintiff has ADA accommodations, Defendant Havel denied Plaintiff's non –ADA requests for extensions and he rather granted extensions to other able students – students in they FIN 515 class who did not even need extensions and students who never requested for those extensions at all.

*329.*     Plaintiff believes and therefore avers that motivated by prejudice and stereotypes against Plaintiff's race as a black man with indigenous accent from West Africa, defendant Havel treated Plaintiff differently, denied Plaintiff extensions, and he granted unsolicited extensions to other similarly-situated student classmates of FIN 515 class.

*Plaintiff's Complaint.*

*330.*     Specifically, on October 28-30, 2019, Defendant Havel announced that he has given extensions to other similarly-situated students in the FIN 515 Class to complete all assignments (Exhibit 12E, Pages 7 & 8) although the students of the class never requested for the extensions and they never provided any documentation of extenuating circumstances for the extensions unlike Plaintiff Livingstone who requested for extensions based on documented extenuating circumstances.

*331.*     As a direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff has suffered and continues to suffer grave mental anguish, humiliation to his national origin and race and disability, and loss of his enjoyment of life.

*332.*     As a further direct and proximate cause, Plaintiff has otherwise suffered in his feelings and peace of mind with irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief from this Court to enjoin defendants to re-open the remaining Weeks 1-4 module Homework and Quizzes for FIN 515 class in both Canvas and Cengage systems for Plaintiff to complete them within 1-2 Weeks of the Court's Order and change Plaintiff's final grade for September 2019 session of the FIN 515 class.

*333.*     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants against Adtalem, DeVry University, Keller Graduate School of Management, jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $5million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive to enjoin the University to unlock the course modules and extend Weeks 1-4 Homework and Quizzes in both canvas and Cengage portals for Plaintiff to submit the outstanding work and change the FIN 515 grade; and an award of reasonable Attorneys' fees, costs and other costs and

*Plaintiff's Complaint.*

disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT SEVEN

### NEGLIGENT MISREPRESENTATION;
### FALSE REPRESENTATION

**(Michael O. Livingstone v. Milan Havel; DeVry University; Keller Graduate School of Management; Adtalem Education Group Inc.)**

*334.*     Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*335.*     The conduct of Defendants, as set forth hereinabove constitutes conduct under color of Law which deprived Plaintiff's rights.

*336.*      In September 2019, Defendant Havel received Plaintiff's ADA accommodations notice and applied the 1.5X extensions to all of Plaintiff's Weekly Homework and Quizzes in both DeVry Canvas course portal and Cengage Publisher's software (Exhibits 12A; 4D) systems that FIN 515 class used.

*337.*     Later in October 2019, the same Defendant Havel claimed that he does not know how to do extensions for the Homework and Quizzes in Cengage (*see* Exhibit 12E).

*338.*     Given that Defendant Havel was able to perform the extensions in September 2019 in both Canvas and Cengage, the same Defendant Havel knew or should have known how to perform the extensions in both Cengage and Canvas in October 2019 as well.

*339.*     Inasmuch as Defendant Havel was able to do the extensions in September 2019 in both Canvas and Cengage, the same Defendant Havel falsely, intentionally, and willfully

*Plaintiff's Complaint.*

misrepresented to Plaintiff that he does not know how to do the extensions in both Cengage and Canvas in October 2019 (Exhibit 12E).

*340.* Defendant Havel also posted a Fail (F) final grade to the University Registrar for Plaintiff around October 30, 2019 although Plaintiff's final grade at the time in his grade book was not a Fail grade at all.

*341.* Notwithstanding the fact that Defendant Agresta acted under the auspices of defendant Goldberg to change the Fail grade to "C" after addressing the plethora of perfunctory technical glitches, Defendant Havel cannot be exonerated for false misrepresentation by maliciously posting a bad (F) grade to the Registrar that was not consistent with the actual scores in the gradebook at the time of posting the grade.

*342.* By direct and proximate cause of the alleged negligent misrepresentation of Defendant Havel, this resulted in Plaintiff sending more emails and strings of emails seeking solutions from University Administrators, wasting Plaintiff's time, and distracting his academic focus.

*343.* As a further direct and proximate result of the unlawful behavior of Defendant Havel, the University rather summoned and seized Plaintiff for disciplinary action (Exhibits 7F; 7D; 8A-8M), which has in turn wasted Plaintiff's time, inflicted loss of enjoyment of life, stigmatized Plaintiff's record, and distracted Plaintiff's academic focus.

*344.* WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants Adtalem, DeVry University, Keller Graduate School of Management, and Defendant Havel jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $5million exclusive of interest and costs; preliminary, declaratory, and permanent

*Plaintiff's Complaint.*

injunctive relief; an award of reasonable Attorneys' fees, costs and other costs and disbursements

in this action; and such other and further relief as the Court may deem just and equitable.


## COUNT EIGHT

### NEGLIGENT FAILURE TO ACT AGAINST RACIAL DISCRIMINATION UNDER TITLE VI of the CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000d;
### &
### RETALIATION UNDER TITLE VI of the CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000d

**(Michael O. Livingstone v. DeVry University; Keller; Adtalem.)**


*345.* Plaintiff incorporates herein by reference each and every one of the allegations

contained in the preceding paragraphs as though fully set forth at length herein.

*346.* The conduct of Defendants, as set forth hereinabove constitutes conduct under

Color of Law which deprived Plaintiff's rights.

*347.* Plaintiff avers that the inaction and *repeated inaction* of Defendants against

Plaintiff's discrimination complaints flies in the face of the anti-discrimination clause of the Title

VI Civil Rights Act of 1964.

*348.* DeVry University participates in the federal student financial aid programs, which

also requires the University to comply with the Civil Rights Act of 1964 against racial

Discrimination.

*349.* The University has published anti-discrimination policy in its Catalogs and

Handbooks.

*350.* In an email dated October 23, 2019 at 11:05 AM to Defendant Havel, Plaintiff

asserted his rights; Plaintiff alleged racial discrimination; and Plaintiff complained and copied

*Plaintiff's Complaint.*

the OCR on it (*see* Exhibit 6H). As a faculty member of the University, Defendant Havel failed

to refer Plaintiff to the University's anti-discrimination officer for regarding plaintiff's

allegations of discrimination

351. In a November 4, 2019 email from Defendant Agresta sending a disciplinary

Conduct hearing packet to Plaintiff, Defendant Agresta attached Plaintiff's October 23, 2019

email that was copied to the Office of Civil Rights (OCR) wherein Plaintiff alleged and reported

racial discrimination.

352. Defendant Agresta summoned and seized Plaintiff for a November 14, 2019

disciplinary hearing on grounds that Plaintiff has complained against discrimination to the OCR

(*see* Exhibit 8F contained with the hearing package zip file Exhibits 8A-8M).

353. In the November 4, 2019 conduct hearing packet, Defendant Agresta

characterized Plaintiff's October 23, 2019 email complaining about racial discrimination to the

OCR as "bullying behavior" for which Plaintiff should be disciplined (*see* conduct hearing

packet Exhibit 8B, Page 1 within exhibits 8A-8M).

354. Plaintiff avers that the OCR, EEOC, and the Civil Rights Act of 1964 requires all

Universities (especially Universities that participate in Federal Student Financial aid programs)

to have a designated anti-discrimination Officer at the University to receive, investigate, and act

upon allegations of discrimination under Civil Rights Act of 1964.

355. Instead of Defendants Havel and Agresta referring Plaintiff and Plaintiff's Oct 23,

2019 email alleging racial discrimination to the University's designated trained anti-

discrimination Officer for Investigation and action against Plaintiff's allegations of

discrimination, Defendant Havel and Defendant Agresta rather summoned Plaintiff for

*Plaintiff's Complaint.*

November 14, 2019 disciplinary action hearing and on November 15, 2019, Defendant Agresta imposed adverse disciplinary sanctions against Plaintiff (Ex.14C).

356.    Plaintiff avers that the proper thing defendants Agresta and Havel knew or should have known to do when a student alleges racial discrimination is to refer the student to the University's designated anti-discrimination officer, not refer the student for disciplinary action.

357.    Defendants, all of them, individually and/or collectively, intentionally retaliated against Plaintiff by summoning Plaintiff for November 14, 2019 disciplinary hearing and sanctioning him with adverse disciplinary action because Plaintiff complained and asserted his rights against racial discrimination to the OCR in Plaintiff's emails.

358.    Specifically, Plaintiff's email Exhibit (8F) dated October 23, 2019 at 8:015AM which is contained within the zip file of the November 2019 student conduct hearing packet (Exhibits 8A-8M) alleges racial and disability discrimination to the University and copies the external federal anti-discrimination agency (OCR) on it.

359.    Specifically, Plaintiff's email dated October 25, 2019 at 9:40PM to defendant Goldberg (Exhibit 8D, pp.26-30) that was included within the November 2019 conduct hearing packet (Exhibits 8A-8M) also alleges racial and disability discrimination.

360.    During the November 14, 2019 student conduct hearing, Defendant Agresta claimed before the Panelists that Plaintiff asserted his right to complain about discrimination to the OCR and so that is against Article III of the DeVry Student Code of Conduct as intimidation and threatening and bullying.

361.    Plaintiff avers that complaining report discrimination is not physical threat, intimidation, or bullying at all.

*Plaintiff's Complaint.*

362. During the November 14, 2019 hearing, Defendant Agresta mischaracterized the aforementioned written email assertions by Plaintiff to report racial and disability discrimination to the OCR "intimidating and threatening" against Article III of the student conduct code.

363. The hearing Panelists (i.e. defendants Russell, D'Souza, and Schmitz) also condoned, aided and abetted in discrimination, by virtue of their failure to act and refer Plaintiff to file a discrimination complaint within the University itself or encourage Plaintiff to file a discrimination complaint elsewhere such as the OCR.

364. The University, the Panelists, the Defendants--Agresta, Havel, Kohara, Mofidi – all them-- knew or *should have known* that they have a duty to discourage discrimination in the University and to act against discrimination. Yet, these defendants failed to refer Plaintiff to the University's anti-discrimination Officer (if any)or to encourage Plaintiff to report the alleged discrimination to the OCR for investigation and remedies.

365. Plaintiff avers that Defendants, individually and/or collectively, intentionally retaliated against Plaintiff in the institution, investigation, prosecution, and assessment and imposition of adverse disciplinary proceedings that distracted Plaintiff's academic focus, distracted his peace of mind, and denied Plaintiff's enjoyment of the rights, privileges, and reasonable expectations of a student enrolled at the University, because of Plaintiff's race as well as suspicion and mistrust of Plaintiff's motivations based on false stereotypes concerning Plaintiff's cultural and moral background.

366. WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants, DeVry University; Keller Graduate School of Management; Adtalem Education Group Inc. jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $7million exclusive of interest and costs; declaratory relief, preliminary and

*Plaintiff's Complaint.*

permanent injunctive relief order by this Court to strike, vacate, reverse, set aside, and nullify the

November 15, 2019 adverse disciplinary sanctions and records contained within Exhibit 14C; an

award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and

such other and further relief as the Court may deem just and equitable.


## COUNT NINE

### CHARACTER ASSASINATION;
### DEFAMATION;FALSE LIGHT.

**(Michael O. Livingstone v. Defendants Jonathan Agresta;
DeVry University; Keller Graduate School of Management;
Adtalem Education Group Inc.)**

*367.*    Plaintiff incorporates herein by reference each and every one of the allegations

contained in the preceding paragraphs as though fully set forth at length herein.

*368.*    The conduct of Defendants, as set forth hereinabove, constitutes conduct under

color of law which deprived Plaintiff's rights.

*369.*    At all times mentioned herein, Plaintiff was a law abiding Citizen of the United

States and the State of New Jersey, student at DeVry University and its Keller Graduate School

of Management who enjoyed the respect, confidence, and esteem of his neighbors, as well as of

all others in the community, and has never been guilty of any crime, offense, or violation of the

law which would tend to lessen the respect, confidence, and esteem he has enjoyed, and to which

he was entitled.

*370.*    Defendant Agresta well knowing the facts set forth in the preceding paragraph

concerning Plaintiff's reputation in the community and with intent to injure Plaintiff and bring

him into public scandal and disgrace, knowingly and maliciously, or with reckless disregard for

*Plaintiff's Complaint.*

the truth, or negligently and carelessly published or caused to be published the scandalous,

defamatory, and libelous statements of and concerning Plaintiff Livingstone.

371.    Specifically, Defendant Agresta stated in the November 2019 conduct hearing

packet that Plaintiff has "bullying behavior" for complaining against racial and disability

discrimination in Plaintiff's November 23, 2019 email (*see* within Exhibit 8b).

372.    The statements contained in the written communications identified and described

above reflect upon Plaintiff's conduct as well as his character and reputation whereas defendant

Agresta described Plaintiff as a columbine "bully" with an "ongoing behavior."

373.    Plaintiff has no ongoing "behavior," but rather, Plaintiff made expressions and

assertions of his rights (Exhibit 8b). Plaintiff has no criminal convictions for any bullying.

374.    Even if defendants are privileged to defame and assassinate Plaintiff's character

by virtue of their capacities as school administrators, for the purposes of good procedure and fair

hearing, this defamatory innuendo has cast a negative shadow upon the November 14, 2019

disciplinary proceedings.

375.    Defendant Agresta knew or should have known that the statements contained in

the written communications identified and described above were false when made, and

Defendants published them either intentionally and maliciously or with reckless disregard for

their truth or falsity, or negligently, and carelessly.

376.    The false and defamatory statements contained in the written communications

identified and described above applies to Plaintiff; were understood by the Panelists and

recipients of the statements to have a defamatory meaning; and were understood or reasonably

understood by the recipients of the statements as intended to be applied to Plaintiff to extent that

it prejudiced Plaintiff before the Panelists.

*Plaintiff's Complaint.*

377. The publication of the false and defamatory statements contained in the written communications identified and described above and other similar false and defamatory statements of which Plaintiff is not yet aware, may have been, and may continue to be republished and so Plaintiff demands presumed, compensatory, economic and punitive damages for the harm flowing from any and all such republications of the false and character assassination in addition to damages for the harm flowing from their initial publications.

378. To the extent that Defendants may attempt to assert in their own defense the privileged character of the occasion on which the false statements and character assassination were published, any such conditional or judicial privilege was abused by Defendants and thereby waived and forfeited especially because Plaintiff's assertion of rights and complaining about racial discrimination to the OCR.

379. The aforementioned false and defamatory statements that Plaintiff has "bullying behavior" was made maliciously, intentionally, recklessly, and falsely, by words, innuendo, inference and the manner in which they were presented held Plaintiff out to public scorn and ridicule and attributed improper conduct, including conduct of a criminal nature as a bully to the hearing Panel.

380. The aforementioned defamatory character assassination were in no manner privileged nor did the aforementioned constitute fair comment on matters of public concern.

381. The aforementioned false and defamatory statements were published with knowledge that said statements, innuendo, inference and manner in which they were presented were false and/or with reckless disregard for whether said material was false.

382. The written communications were published in a negligent manner without adequately investigating the underlying facts.

*Plaintiff's Complaint.*

383. The statements and implications set forth above were false, and Defendants either knew or should have known at the time of publication that they were false.

384. The statements and implications set forth above constitute character assassination publications which are actionable per se, are libels per se, and were published with actual malice.

385. The above statements have severely injured and caused special harm to Plaintiff in that they have tended to (a) blacken his reputation; (b) expose him to hatred, contempt, ridicule and humiliation; (c) ascribe to him characteristics incompatible with the proper conduct expected of a law abiding and trustworthy citizen; and (d) prejudiced him before members of the conduct hearing panel.

386. As a direct and proximate result of the intentional, malicious, reckless, negligent and/or careless statements and charges contained in the written communications identified and described above and their publication to third parties, Plaintiff's reputation and esteem in the University's community has been adversely affected.

387. Plaintiff has sustained grave mental anguish, humiliation, and loss of his enjoyment of life by calling him a bully for asserting his rights to complain about discrimination to the OCR.

388. As a direct and proximate result, Plaintiff has otherwise suffered in his feelings and peace of mind to his great financial loss and damage.

389. The conduct of Defendants in publishing the aforementioned false and defamatory statements was outrageous and Defendant Agresta acted in bad faith and/or with reckless disregard and indifference to the truth and to the interests of Plaintiff for which Plaintiff claims an additional sum for punitive damages.

*Plaintiff's Complaint.*

390.     As a result of Defendants' malicious publication of the false and defamatory statements complained of herein, Plaintiff is entitled to recover from Defendants such presumed, compensatory and economic damages that will compensate him for his actual financial loss, injury to his personal, educational, and business reputation; mental anguish, suffering and severe emotional distress; and in addition, punitive damages which will punish Defendants for malicious libels, and will deter Defendants from repetition of similar libels in the future.

391.     The false light in which Plaintiff was placed would be highly offensive to a reasonable person in that it amounted to a major misrepresentation of Plaintiff's character, history, activities or beliefs in a manner that could reasonably be expected to cause a reasonable man to take serious offense, and in this case, the Panelists took offense.

392.     Defendant Agresta had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed before the disciplinary board and beyond.

393.     Defendant Agresta is therefore liable to Plaintiff in damages for the tort of character assassination and/or libelous defamation by mischaracterizing Plaintiff as a bully for asserting his rights to reports discrimination to the OCR.

394.     WHEREFORE, Plaintiff Michael O. Livingstone hereby demands judgment against Defendants, jointly, severally and/or severally, in an amount in excess of $1million exclusive of interest, costs; a preliminary and permanent injunctive order to strike, vacate and expunge the November 2019 disciplinary records to prevent further deprivation of Plaintiff's constitutional rights and the rights of other DeVry University students; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

*Plaintiff's Complaint.*

## COUNT TEN

### ABUSE OF PROCESS

### (Michael O. Livingstone v. Defendants DeVry University Inc.; Keller Graduate School of Management; Adtalem Education Group Inc.)

*395.*      Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*396.*      The conduct of Defendants, as set forth hereinabove, constitutes conduct under Color of Law which deprived Plaintiff's rights.

*397.*      The U.S.Department of Education's Office of Civil Rights ("OCR") is a federal agency that is responsible for enforcing five federal civil rights laws that prohibit discrimination based on race, color, national origin, sex, disability, and age by recipients of federal financial assistance.

*398.*      In an October 23, 2019 at 11:05 AM email to defendant Havel, Plaintiff asserted his rights, Plaintiff alleged racial discrimination, and Plaintiff complained and copied the OCR on it (*see* Exhibit 6H). This email was included in the hearing packet zip file that defendant Agresta presented as evidence against Plaintiff.

*399.*      Plaintiff avers that by subjecting him to disciplinary proceedings and imposing adverse disciplinary sanctions upon him for asserting his rights and for complaining against discrimination to the OCR, the University has abused the student disciplinary process.

*400.*      Plaintiff avers that by subjecting him to disciplinary proceedings for complaining about poor quality of education and the perfunctory Cengage and Canvas systems that were used to teach FIN 515 class, the University has abused and misused the student conduct process.

*Plaintiff's Complaint.*

*401.* The University has published an anti-discrimination policy within its contractual Catalogs and Handbooks. Yet, when Plaintiff complained about racial discrimination, the University ignored it and the University rather subjected Plaintiff to disciplinary action.

*402.* Plaintiff is not obligated to use the University's own anti-discrimination office (if any) as the forum to complain against racial discrimination under the Civil Rights Act of 1964. Plaintiff chose a different forum. Plaintiff chose to use the OCR.

*403.* In a November 4, 2019 email from Defendant Agresta sending a disciplinary Conduct hearing packet to Plaintiff, Defendant Agresta attached Plaintiff's October 23, 2019 email that was copied to the OCR. Defendant Agresta summoned Plaintiff for a November 14, 2019 disciplinary conduct hearing on grounds that Plaintiff has *inter alia* complained against racial discrimination to the OCR (*see* Exhibit 8F contained with the hearing package zip file Exhibits 8A-8M).

*404.* The Civil Rights Act of 1964 requires all Universities (especially Universities that participate in Federaltudent Financial aid programs) to have a designated anti-discrimination officer at the University to receive, investigate, and act upon allegations of discrimination under Civil Rights Act of 1964. Defendant Agresta and the panelists never referred Plaintiff to any anti-discrimination officer.

*405.* Defendants Havel and Agresta referred Plaintiff's October 23, 2019, 11:05 AM email alleging racial discrimination to November 14, 2019 disciplinary action hearing without referring the discrimination complaint to a designated anti-discrimination officer within the University for investigation and action against alleged discriminators.

*406.* Plaintiff avers that the proper thing Defendants Agresta and Havel knew or should have known to do when a student alleges racial discrimination is to refer the student to the

*Plaintiff's Complaint.*

University's own designated anti-discrimination officer, not refer the student for adverse disciplinary action.

407.    Article III of DeVry University Student Conduct Code is against Students who take matters into their own hands with physical violence, not against students like Livingstone who seek administrative remedies against discrimination. Absolutely no parts of Plaintiff's year 2019 emails makes any actionable threats of physical violence in violation of Article III.

408.    Plaintiff avers that Defendants, all of them, individually and/or collectively, intentionally abused the disciplinary conduct process by summoning and seizing and /or sanctioning Plaintiff for an adverse November 14, 2019 disciplinary hearing because Plaintiff complained and asserted his rights against racial discrimination to the OCR in Plaintiff's November 23, 2019 email.

409.    Plaintiff bring this cause of action for this Court to enjoin DeVry University and its officials to come up with an in-house neutral anti-discrimination officer who can receive, investigate, and act upon allegations of discrimination.

410.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants, DeVry University; Keller Graduate School of Management; Adtalem Education Group Inc. jointly, severally and/or severally, for compensatory, exemplary, and punitive damages in an amount in excess of $11million exclusive of interest and costs; declaratory relief, preliminary and permanent injunctive relief order to strike, vacate, and reverse and expunge the Plaintiff's November 2019 disciplinary record; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

*Plaintiff's Complaint.*

## COUNT ELEVEN

### 42 U.S.C. §1985 (3) - CONSPIRACY TO DEPRIVE CIVIL RIGHTS; UNDUE INFLUENCE; TORTIOUS AND INTENTIONAL INTERFERENCE

### (Michael O. Livingstone v. Defendants DeVry University; Keller Graduate School of Management; Adtalem Education Group Inc.)

*411.*    Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*412.*    The conduct of Defendants, as set forth hereinabove, constitutes conduct under Color of Law which deprived Plaintiff's rights.

*413.*    As a graduate student at DeVry University, Plaintiff avers that he has fundamental right or fundamental civil right to his continued education undeterred.

*414.*    Plaintiff avers that part of fulfilling his fundamental right to continued education at DeVry University and its Keller Graduate School of Management was to complete MATH 533 class as part of the MBA degree requirements.

*415.*    In December 2018, Plaintiff contracted with his November 2018 session MATH 533 course instructor, Dr. Henson-Mack, for incomplete grade in accordance with the contractual provisions of the University's Academic Catalog (Exhibit 11B). (*See* also Exhibit 11A for threaded sequence of emails). Plaintiff supported his request for the incomplete grade with documents. Dr. Henson-Mack granted the Incomplete grade (I) designator and processed it through the defendant Registrar.

*416.*    When the Incomplete grade was about to expire and turn to fail grade by default, Plaintiff contacted Dr. Henson-Mack on time by email dated January 31, 2019 at 3:35 PM and explained with documents (Ex.11A.4) and photos in email dated June 29, 2019 at 7: 34PM (Ex.11A.7) that Plaintiff's condition has not improved, and so Plaintiff requests the Incomplete

*Plaintiff's Complaint.*

grade to be extended as provided in the Keller Academic Catalog at Page 77 providing for

extending Incompletes,

https://www.devry.edu/content/dam/dvu/www_devry_edu/d/Keller_Catalog.pdf

> …Incompletes, designators of I, are granted in exceptional situations only, such as when illness or work-related travel is documented and when substantial course requirements have already been completed. Students must submit a Request for Course Incomplete form and obtain approval from the professor and the appropriate academic administrator prior to the grade roster deadline in order for an incomplete to be granted. Designators of I are counted in attempted hours but are not counted in any GPA computations. If remaining coursework has not been completed by the end of week four of the next session, I designators automatically become grades of F or designators of U, **unless written approval granting an extension has been obtained** from the chief location administrator/academic advisor…

> (emphasis added)

417.    Plaintiff timely requested Dr. Henson-Mack to extend the Incomplete because

Plaintiff was not fully recovered.

418.    By e-mail dated January 31, 2019 (within Exhibit 11), Dr. Henson-Mack

responded to Plaintiff and she also left a voicemail that even if the Incomplete grade changes to

fail grade, she could do an F-override for Plaintiff later on. However, the default Fail-grade

would negatively impact Plaintiff's GPA in the meantime. (Plaintiff may produce the voicemail

on CD-ROM for the Court later in a motion for declaratory relief).

419.    Dr. Henson-Mack did not impose any deadline upon Plaintiff as to the time-frame

she could do the F-override for Plaintiff. She left it open for Plaintiff putting into perspective that

Plaintiff needs time to recover his health.

420.    Around July 2019, when Plaintiff got well, Plaintiff contacted Dr. Henson- Mack

to submit the remaining coursework for MATH 533 so that she could do the F- Override she

indicated (Ex. 11A8).

*Plaintiff's Complaint.*

421.    To Plaintiff's surprise, Dr. Henson- Mack copied Defendant Agresta on her July 11, 2019 reply email (Ex.11A.8) and she demonstrated a change of mind about the F- override she had previously indicated in her voicemail to Plaintiff.

422.    In previous communications about the Incomplete grade, Dr. Henson-Mack never copied defendant Agresta. So, by copying defendant Agresta on that July 11, 2019 email suddenly, it suggests that a conspiracy or discussion took place between Dr. Henson-Mack and defendant Agresta.

423.    Whereupon, Dr. Henson–Mack changed her mind from what she previously stated on the on her voicemail and asked Plaintiff to rather file a grade appeal specifically to Defendant Agresta, and not to any of the many Assistant Deans at Keller. *Id.*

424.    As relevant background, in June 2019, the same defendant Agresta who previously characterized Plaintiff's filing of grade appeal and incomplete grade as "past incident of character reference" and subjected Plaintiff to disciplinary action for that within Exhibit 1A, Page 2 under "past incidents of character reference" was now asking Plaintiff to file a grade appeal to him.

425.    Plaintiff asked Defendant Agresta to recuse himself from the MATH 533 issues and grade appeal because of his systemic bias and prejudice against grade appeals. Agresta declined to recuse himself.

426.    Defendant Agresta asked Plaintiff to go outside of procedure and appeal the MATH 533 grade directly to him instead of the required electronic filing of grade appeals through the canvas system. Plaintiff filed an email grade appeal out of procedure to Defendant Agresta and Agresta definitely denied it (Exhibit 11A.10 - Exhibit 11 A.11).

*Plaintiff's Complaint.*

427.    In denying the grade appeal, defendant Agresta cited pretextual excuses that are misplaced against the fact that the course instructor (Dr. Henson-Mack) said she would do an F-override for Plaintiff later on.

428.    Defendant Agresta is not named as Plaintiff's New Jersey Complaint Administrator in the Student Handbook at Pages 50-61 for him to adjudicate Plaintiff's grade appeal.  So, Agresta  forced himself into grade appeal procedure  in which he is not  authorized to adjudicate.

429.    The University's formal procedure for filing grade appeals is to file it electronically and then it gets assigned to an Academic Specialist who will then act as a Coordinator or Ombudsman of the grade appeal, submit it from faculty chairs to Deans, and ultimately to the University Provost, just as it was done in 2016 when Plaintiff  appealed the ACCT 504 grade to Provost Dr. Lorraine Rekau. *See* also exhibit 16A

430.    Plaintiff believes and therefore  infers that defendant Agresta asked Dr. Henson-Mack to tell Plaintiff to file the grade appeal specifically to him (Agresta), so that he can carry out his malice and bad-faith activity to deny the grade appeal.

431.    Inasmuch as Dr. Henson-Mack is not just a mere course instructor, Plaintiff avers that the voicemail decision of a *tenured* Associate Professor and course instructor for MATH 533 Dr. Henson-Mack to do an F-override  should not be altered or influenced by a third party such as Defendant Agresta, who is not a tenured Professor.

432.    Plaintiff avers that Defendant Agresta, was motivated with bad-faith, deep-seated antagonism, and ill-will against Plaintiff, when he conspired with Dr. Henson-Mack to stop her and change her mind from going forward to do the F-override in the best interests of Plaintiff to pass the MATH 533 class.

*Plaintiff's Complaint.*

*433.*    Plaintiff avers that Defendant Agresta conspired to deprive Plaintiff of his civil right to his education when Defendant Agresta asked Dr. Henson-Mack to file a grade appeal to him and not to any other Assistant Dean and when Agresta refused to recuse himself despite his own professed deep-seated antagonism that filing grade appeals and incomplete grades is "bad character incident."

*434.*    Plaintiff avers that Defendant Agresta was motivated by bias, bad-faith, and deep-seated antagonism against Plaintiff when he directed Dr. Henson-Mack not to do the F-override and instead ask Plaintiff to file a grade appeal to him so that he can find any reason at all to deny Plaintiff's grade appeal to Plaintiff's detriment.

*435.*    To the extent that Defendant Agresta claims that Plaintiff did not meet his part of the incomplete grade contractual provisions for MATH 533 class, this is not true because according to the record, University's contractual incomplete grade policy required plaintiff to ask the course instructor to extend the incomplete  grade before  it expires and Plaintiff contacted Dr. Henson-Mack before the incomplete grade turned into Fail by default  and Dr. Henson-Mack responded by voice-message to Plaintiff's timely request that she could do an F-override later on for Plaintiff. Accordingly, Plaintiff did his part.

*436.*    To the extent that Defendant Agresta claims that it is too late in nine (9) months in October 2019 from the time the Incomplete grade for MATH 533 class was contracted, this is another pretextual excuse to deprive Plaintiff's right because under the University's contractual Catalogs, a grade can always be changed retroactively *before* a student graduates. (*see* Exhibits 11B & 11D).

*437.*    Plaintiff brings this lawsuit for this Court to uphold and enforce the original decision of the tenured course instructor (Dr.Henson-Mack) to do the F-Override for Plaintiff

and enjoin the University to unlock the MATH 533 class for Plaintiff to submit outstanding

coursework within two weeks of this Court's Order. A locked online Keller class can always be

unlocked.

438.    The University should be enjoined by this Court to allow Dr. Henson-Mack to

apply the F-override she offered to Plaintiff before she was unduly influenced with bad-faith by

Defendant Agresta to change her mind to Plaintiff's peril.

439.    Given that Plaintiff  eligible to graduate since January 2020 session (Exhibit 9A)

and MATH 533 is an outstanding class, Plaintiff requests for declaratory relief, preliminary and

permanent injunctive relief enjoining the University to unlock the MATH 533 November 2019

Class for Plaintiff to submit any outstanding and change the grade.

440.    By direct and  proximate cause, this dispute regarding the MATH 533 has created

an indelible gap within Plaintiff's continued education, delayed Plaintiff's graduation for his

MBA degree since January 2020 session, and caused loss salary.

441.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against

Defendants DeVry University; Keller Graduate School of Management; Adtalem Education

Group Inc., jointly, severally and/or severally, for compensatory, exemplary, and punitive

damages in an amount in excess of $10 million exclusive of interest and costs; declaratory relief,

preliminary and permanent injunctive relief; an award of reasonable Attorneys' fees, costs and

other costs and disbursements in this action; and such other and further relief as the Court may

deem just and equitable.

*Plaintiff's Complaint.*

## COUNT TWELVE

### RETALIATION UNDER TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000d;
### &
### RETALIATION AGAINST RIGHT TO PETITION

### (Michael O. Livingstone v. Adtalem Education Group, Inc., DeVry University, Keller)

*442.*    Plaintiff incorporates herein by reference each and every one of the allegations contained in the preceding paragraphs as though fully set forth at length herein.

*443.*    The conduct of Defendants, as set forth hereinabove, constitutes conduct under color of law which deprived Plaintiff's rights in the following manner under each count.

*444.*    As part of Plaintiff's MBA degree requirements, Plaintiff enrolled and completed DeVry University's Business Economics ("ECON 545") graduate level class during the November 2017 session. Dr. William Mapp was the course instructor for ECON 545 class.

*445.*    Plaintiff completed ECON 545 class with final "A-" grade. Plaintiff ended on good terms with Dr. Mapp in 2017. There was no misconduct complaints against Plaintiff in 2017 from Dr. Mapp to the University's student conduct board at all in 2017.

*446.*    To Plaintiff's surprise, within the June 14, 2019 conduct hearing packet (Exhibits 1A, 3A-3I), Defendant Agresta cited an email correspondence that was exchanged between Plaintiff and Dr. Mapp during the 2017 ECON 545 class. (*See* Exhibit 1A, pp.4-5; *see* also actual attached rebuttal email thread with Exhibit 2A).

*447.*    No part of Plaintiff's 2017 email (Ex. 1A, pp.4-5; Ex.2A) to Dr. Mapp expresses any actionable threat of physical violence or intimidation at all that can be considered as violating Article III of the University's Student Code Of Conduct. Plaintiff only asserted his right to complain against discrimination to the OCR within that email.

*Plaintiff's Complaint.*

448.    In 2017, Dr. Mapp never took issue with that email and he never alleged any misconduct against Plaintiff in 2017 or in 2019 regarding that 2017 email.

449.    Dr. Mapp never reported that 2017 email from Plaintiff to the University Conduct Board for any misconduct. Plaintiff never engaged in any misconduct whatsoever during the 2017 ECON 545 class with Dr. Mapp.

450.    In search for anything to use against Plaintiff in June 2019 for adverse disciplinary action, Defendant Agresta impermissibly accessed Plaintiff's DeVry University email account without Plaintiff's knowledge and without Dr. Mapp's knowledge to retrieve that 2017 email and used it to injure Plaintiff in the June 2019 disciplinary proceedings all because Defendant Agresta noticed in that 2017 email that Plaintiff reported discrimination, or Plaintiff asserted his right to report discrimination to the OCR, and Plaintiff actually copied the OCR.

451.    Dr. Mapp was not even aware of any disciplinary conduct proceedings happening in June 2019 over Plaintiff's previous 2017 email to Dr. Mapp at all.

452.    Plaintiff avers that the University retaliated against him under the Civil Rights Act when Defendant Agresta summoned and sanctioned Plaintiff for disciplinary action in June 2019 on grounds that Plaintiff's 2017 email to Dr. Mapp alleges and complained against appearance of civil rights discrimination and copied a federal anti-discrimination enforcement agency (OCR) on it (Exhibit 1A, pp.4-5; Exhibit 2A).

453.    Apart from that, on June 13, 2019, Defendant Kristine Kearney allegedly reported Plaintiff to the University's Student Conduct Board for adverse disciplinary action on grounds that Plaintiff "threatened to sue Keller" for his money (*See* Ex. 1A, p.2 for the statement of Kristine Kearney).

*Plaintiff's Complaint.*

*454.* On June 14, 2019, during a follow-up telephone call from Plaintiff to Defendant Agresta, Defendant Agresta specifically expressed his animosity to the fact that Plaintiff said he would sue the University.

*455.* In a June 14, 2019 email to Defendant Agresta, Plaintiff issued rebuttals in email Exhibit 2B to Defendant Agresta that Plaintiff has a constitutional civil right to assert his rights. Plaintiff has a right to petition and assert that he would sue the University. Asserting to sue the University is neither actionable threat of physical violence nor intimidation under Article III of the University's student code of conduct.

*456.* Notwithstanding those rebuttals in Exhibit 2B, Defendant Agresta proceeded with the conduct hearing on June 2019 and imposed an adverse disciplinary sanction against Plaintiff to tarnish Plaintiff's reputation and liberty interests.

*457.* Plaintiff avers that by subjecting him to disciplinary action for asserting his rights to sue the University, the University retaliated against Plaintiff's constitutionally-protected right to petition for redress of his grievances.

*458.* Plaintiff avers that as a pretextual excuse to retaliate against Plaintiff with adverse disciplinary action for complaining about discrimination in the 2017 email that Plaintiff sent to Dr. Mapp and copied to the OCR and for Plaintiff asserting his right to sue the University to defendants Kearney and Agresta, defendant Agresta attached Exhibits 3A-3I to the disciplinary hearing packet (Exhibit.1A) charging Plaintiff for violating Article III of the student Code of Conduct.

*459.* Plaintiff avers that as another pretextual excuse to retaliate against his with adverse disciplinary action for complaining about discrimination in the 2017 email Plaintiff sent to Dr. Mapp that was copied to the OCR, and for Plaintiff asserting his right to defendant

*Plaintiff's Complaint.*

Kearney to sue the University, within the June 2019 conduct zip file packet (Exhibits 1A, 3A-3I), Defendant Agresta charged Plaintiff for code of conduct violation on grounds that Plaintiff reached out beyond his March 2019 ACCT 504 Course instructor to the University's designated ADA accommodations Officer to seek extended ADA accommodations (*see* Exhibit 1A, p.2).

460.    Plaintiff avers that this was another pretextual excuse to retaliate against him because consistent with the University's own Catalogs, it was Plaintiff's responsibility to seek ADA accommodations by reaching out to the ADA Officer, directly, not through course instructors, because Course Instructors are not designated as ADA officers to process requests for ADA accommodations. Plaintiff denies any misconduct for properly reaching out to the University's designated ADA Accommodations Officer.

461.    As another pretextual excuse to retaliate with adverse disciplinary action against Plaintiff under the Civil Rights Act and under the right to petition, Defendant Agresta charged and sanctioned Plaintiff with code of conduct violation on grounds that it is bad "incident of character reference" for Plaintiff to reach out to DeVry's Professor John Kavouras (Ex.1A, p.2). In support of this allegation of bad character reference, defendant Agresta attached Exhibit 3D as evidence. *See* also Exhibit 2C for full details about this.

462.    Plaintiff avers that this was pretextual excuse because email Exhibit 4B shows Professor Kavouras never took issue with Plaintiff reaching out to him for administrative and academic guidance. *See* also attached email Exhibits 4A & 4B for historical background evidence in 2018 as to why Plaintiff reached Professor Kavouras in particular in 2019.

463.    As another pretextual excuse to discriminate or retaliate against Plaintiff with adverse disciplinary action for complaining against discrimination in 2017 email to Dr. Mapp and asserting his right to sue the University in 2019, without any evidential record of an alleged

*Plaintiff's Complaint.*

June 13 phone call, Defendant Agresta charged and sanctioned Plaintiff for being rude in a telephone call Plaintiff allegedly placed to DeVry University Central phone on June 13, 2019 to defendants Deb Koffman and Kristine Kearney regarding delayed processing of Plaintiff's textbook credit balance refund. Plaintiff denies being rude to anybody and Plaintiff denies saying defendant Deb Koffman was stupid doing a stupid job.

464.    *Assuming arguendo* Plaintiff said defendant Koffman was doing a stupid job, usage of the word "stupid" is not a subjective rude word. Even US Supreme Court Justices used the word "stupid" to describe "stupid defendants" in the case of *TXO Production Corp. v. Alliance Resources* (92-479), 509 U.S. 443 (1993), for example, to describe "really stupid" defendants eligible for punitive damages.

465.    As another pretextual excuse to retaliate against Plaintiff with adverse disciplinary action, within the June 2019 conduct hearing packet (emails Exhibits 1A, 3A-3I), Defendant Agresta also charged Plaintiff for student conduct violation for sending so-called "intimidation emails" to the March 2019 ACCT 504 course instructor (Dr. Goodman) and copying multiple deans, a Professor, and the Provost of the University on or around April 27, 2019 (i.e. Exhibit.3I). The alleged "intimidation emails" were included in the Zip file. The first one is purely about a detected ambiguity within a multiple choice question in the ACCT 504 class.

466.    Plaintiff avers that this was a pretextual excuse to retaliate and discriminate him because Plaintiff has a right to voice his academic concerns to University Administrators in authority to deal with it. Plaintiff copied administrators on that email because the University administration always seek Plaintiff's feedback such as Ex. 4C. Moreover, both DeVry University President (Defendant Bartholomew) and Provost (Defendant Bose) have stated in their opening messages published in the Keller Catalog that they are here to support Students.

*Plaintiff's Complaint.*

467.    As another pretextual excuse to retaliate against Plaintiff, Defendant Agresta attached another alleged intimidation email within the June 2019 conduct packet (Exhibits 1A, 3A-3I) regarding Plaintiff reporting a technical glitch to the University's IT help desk when the ACCT 504 course portal prevented Plaintiff from submitting his schoolwork. Plaintiff reached out to IT Help Desk and Dr. MacCatherine about what to do and they re-opened the portal for Plaintiff to submit his work (*see* email thread Exhibit 3C for details).

468.    Plaintiff believes and therefore avers that this was pretextual excuse because there was no actionable intimidation of physical violence. Plaintiff has duty to report perfunctory educational systems affecting his academic work.

469.    As another pretextual excuse to retaliate against Plaintiff with disciplinary action for asserting his rights to sue the University and for complaining about discrimination to the OCR in the 2017 email, within the June 2019 conduct zip file packet (Exhibits 1A, 3A-3I), Defendant Agresta charged and sanctioned Plaintiff for violating Article III of the student code of conduct on grounds that Plaintiff has past character reference incident of filing grade appeals or seeking Incomplete grades (*see* Ex.1A, p.3).

470.    This was pretextual excuse to retaliate against Plaintiff because the University's own Catalog at Pages 102 & 104 contractually provides Grade Appeals and Incomplete Grade, as required by the Education Amendments Act of 1972, https://www.devry.edu/content/dam/devry_edu/d/Keller_Catalog.pdf. *See* also Exhibit 3C at Page 1 where DeVry's own Assistant Dean, Dr. John MacCatherine, directs Plaintiff in an April 28, 2019 email to "file a grade appeal" over the ACCT 504 class. *See* also Exhibit 11A for email dated July 11, 2019 at 5:59 PM where DeVry's tenured Associate Professor Kathrine Henson-Mack, Ph.D tells Plaintiff *inter alia* to file an official grade appeal about the MATH 533 class.

*Plaintiff's Complaint.*

471.    As another pretextual excuse to retaliate against Plaintiff with disciplinary action for asserting his rights to sue the University and for complaining against discrimination to the OCR, Defendant Agresta accused and sanctioned Plaintiff for conduct violation by attaching to the June 2019 conduct a full year old August 17, 2018 allegation claiming that Plaintiff was "rude" when he "refused to verify his identity" and Plaintiff was "unable to end a live chat session" on the University's website with defendant Megan Mihelich when Plaintiff requested information about who is Keller's new "Main Dean" (i.e. National Dean) and Center Dean for Philadelphia Campus. Plaintiff denies any misconduct in that.

472.    Plaintiff believes and therefore avers that this was a pretextual excuse because if indeed Plaintiff refused to "verify his identity" at the time during the live chat online then it is questionable how Ms. Mihelich thinks it was actually Plaintiff who did that live chat to begin with.

473.    As another pretextual excuse to retaliate against Plaintiff with disciplinary action for asserting his rights to petition to sue the University and for complaining against discrimination to the OCR, during the June 20, 2019 disciplinary hearing, the University ultimately claimed that Plaintiff has violated Article III of the student conduct code because Plaintiff copied University administrators and the University's Provost, i.e. Defendant Shantanu Bose, to express his academic concerns. Hence, that is intimidation.

474.    Plaintiff avers that this was a pretextual excuse to retaliate against him because imposing disciplinary sanctions against Plaintiff for copying the Provost Defendant Shantanu Bose to express his academic concerns is not actionable intimidation or misconduct because of the following:

*Plaintiff's Complaint.*

(i)      Defendant Bose did not personally take any issue with Plaintiff writing him an email about his academic concerns;

(ii)     Defendant Shantanu Bose is the University's Chief Academic Officer who is well-vexed in the academic processes of the University that are used for teaching at the University; [12]

(iii)    Defendant Bose is ultimately responsible for the University's academic policies;

(iv)     Defendant Bose welcomes Plaintiff in his welcome message in Page 3 of the Keller Catalog.[13]

(v)      Defendant Bose did not take personal issue or report Plaintiff for disciplinary action for merely copying him on that email Exhibit 3I.

(vi)     Defendant Bose was not even aware that a disciplinary hearing was happening on June 20, 2019 to Plaintiff merely for copying him about an academic concern related to a perfunctory Accounting software the University uses to teach ACCT 504 class.

(vii)    Plaintiff copied the Provost because at DeVry University, course instructors do not design their own courses, but rather, the courses are designed by the University's Academic curriculum development team, which falls under the executive portfolio of the University's Chief Academic Officer. So, the Course Instructor, Dr. Goodman, is not the one who designed her ACCT 504 course and she is not the one who chose Pearson Publisher's MAL software for her ACCT 504 class. Plaintiff therefore copied Provost Shantanu Bose because he is published in the University's Catalog as the current academic

---

[12]      See the profile of Provost Bose on the DeVry University website affirming these responsibilities, here http://newsroom.devry.edu/administration--live/administration/shantanu-bose-phd-provost-devry-university.htm

[13]      See Page 3 off the Keller Catalog, https://www.devry.edu/d/Keller_Catalog.pdf, Where Provost Bose welcomes students and signs off as Chief Academic Officer.

*Plaintiff's Complaint.*

Provost or the University's Chief Academic Officer with ultimate responsibility or vicarious responsibility for academic issues, concerns, software, and curriculum design in the University. *See* Page 3 off the Keller Catalog,

https://www.devry.edu/d/Keller_Catalog.pdf

(viii)   Plaintiff had reason to believe that copying the Provost in the April 2019 email Exhibit 3I at issue regarding the perfunctory nature of the Pearson MAL software that was used during the ACCT 504 class, Provost Bose would have specific context and example of what academic software students are having issues and concerns with instead of random general solicitation of student feedback.

Categorically, copying defendant Shantanu Bose on an email (Ex. 3I) full of academic content was not intimidation or rudeness on Plaintiff's part.

*475.*   Moreover, Dr. Goodman, who was the original recipient of that email copied to defendant Bose (Ex. 3I) did not express any personal issue with Plaintiff copying the Provost or administrators on that email at all, as demonstrated by a follow-up email dated April 27, 2019, 9:34 PM where Dr. Goodman asked Plaintiff to include additional administrators on his email such as her own Dean (Dr. MacCatherine) and the University's ADA administrator when she wrote:

> ... Additionally - you failed to omit my Dean which I have now included - and also your ADA coordinator…

This shows that  the original recipient of the email (Dr. Goodman) did not have a problem with Plaintiff "copying" administrators such as Provost Bose  and other Deans on it because she wanted Plaintiff to copy more administrators.

*476.*   Dr. Goodman never reported that by copying the Provost on emails Exhibit 31, Plaintiff has intimidated her and so Plaintiff should be subjected to disciplinary action.

*Plaintiff's Complaint.*

477.    Dr. Goodman, the original course instructor, and the original recipient of the emails (Ex. 3I) in April 2019, was not even aware of the June 2019 adverse disciplinary proceedings orchestrated by Defendant Agresta in retaliation to Plaintiff.

478.    To the extent that Plaintiff  sent the emails (Exhibit 3I) in April 2019 and Defendant Agresta was copied directly on it; yet, defendant Agresta took no action until June 2019 after he was informed by Defendant Kearney that Plaintiff has asserted to sue Keller, Plaintiff alleges that Defendant Agresta was motivated by retaliatory animus to find anything to use against Plaintiff; therefore, he resorted to use those outdated April 2017 emails against Plaintiff in June 2019.

479.    To the extent that Plaintiff was sanctioned with adverse disciplinary action for copying the University Provost (defendant Bose) on a purely academic concern in the email Exhibit 3I, the University has created a hostile educational environment for Plaintiff at the University.

480.    To the extent that Defendant Shikowitz upheld Plaintiff's conduct appeal (Exhibit 6A) which also presented the argument that the Student Conduct Board had imposed disciplinary action against Plaintiff in June 2019, Defendant Shikowitz also supported retaliation against Plaintiff's right to petition.

481.    As a direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Livingstone has suffered, and continues to suffer irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable Attorneys' fees under the Civil Rights Act.

*Plaintiff's Complaint.*

482.     As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff has been caused and will continue indefinitely into the future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

483.     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants DeVry, Keller, Adtalem jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $20 million, exclusive of interest and costs; preliminary, declaratory, and injunctive relief to vacate and expunge the June 2019 disciplinary sanction and record without making references to it; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT THIRTEEN

### FAILURE OF THE UNIVERSITY TO FOLLOW ITS OWN RULES; BREACH OF CONTRACT; HIGHER EDUCATION LAW

### (Michael O. Livingstone v. DeVry, Keller, Adtalem)

484.     Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

485.     The conduct of Defendants, as set forth hereinabove constitutes conduct under color of law that deprived Plaintiff's rights in the manner described in the following paragraphs.

486.     Although the University is not a state actor, the University has promulgated and published Student Handbook and Catalogs containing procedures, rules, and policies for which the University must be held to compliance.

*Plaintiff's Complaint.*

*487.* Plaintiff avers that the University did not follow its own rules during the November 2019 student conduct proceedings because Pages 55-61 of the DeVry Student Handbook Code of conduct designates Student Code Administrators by States, not by region. Plaintiff raised procedural objections on the record (*See* Exhibit 14A) that Defendant Agresta should recuse himself from the proceedings because he is not the designated Code of Conduct Administrator for Online and New Jersey Students such as Plaintiff Michael Livingstone. Defendant Agresta is named as the *Pennsylvania* Student Code Administrator, not *New Jersey.* Plaintiff believes and therefore aver that motivated by bad-faith, animosity, retaliatory animus, and racial hatred against Plaintiff, Agresta declined to recuse himself; thereby, forcing himself to handle the proceedings against the authority of the contractual provisions in the Code or Handbook.

*488.* During the November 2019 student conduct proceedings, Plaintiff also asked Defendant Agresta to recuse the hearing Panelists (i.e. Defendants Russell, D'Souza, and Schmitz) and empanel a new one because of they are the same panelists from prior June 2019 conduct hearing becoming the November 2019 conduct hearing panelists too (*See* Exhibit 14A). Hence, the risk of systemic bias and prejudice stemming from familiarity in June 2019's conduct hearing proceedings causing the November 2019 hearing to be unfair and partial. Agresta did not recuse the Panelists either. Indeed, the Panelists quickly recollected Michael Livingstone and therefore compromised fair hearing.

*489.* Plaintiff avers that the University did not follow its own rules during the June 2019 disciplinary proceedings because Article IV, section 5(e) of the University's published 2018-2019 Student Handbook Code of Conduct, https://www.devry.edu/d/student-handbook.pdf,

*Plaintiff's Complaint.*

provides for **cross-examination of both** Complainants and Respondents during Conduct

hearings. Specifically, the Student Conduct procedures provides the following in Page 17:

> "…The University, the complainant, the respondent and the conduct panel shall
> be allowed to present witnesses and evidence, subject to the **right of cross-
> examination** by the conduct panel…"

(Emphasis added)

490.    The identified complainants or witnesses (Defendants Koffman, Mihelich, and

Kearney) in Page 2 of the June 2019 conduct hearing packet (Ex. 1A) were not summoned by the

University to attend the hearing; they did not attend the June 19, 2019 disciplinary hearing; and

they were not cross-examined for credibility of their statements at all.

491.    This deprived Plaintiff's procedural safeguards of fundamental fairness in the

absence of the Complainants.

492.    The absence of the witnesses prevented Plaintiff and the hearing panel from

assessing the credibility of the Complainants' allegations against Plaintiff especially in this case

where it was the mere statement of defendants Koffman and Kearney against Plaintiff's

statement without any evidence of the actual telephone conversation.

493.    As another deviation from the University's own rules, by email dated June 21,

2019, 12:14 PM, Defendant Agresta asked Plaintiff to submit his conduct sanction appeal against

the adverse June 2019 disciplinary action directly to him (Exhibit 6A). Meanwhile, the Student

Handbook's proscribes the following rule in Page 18 regarding Appeals of disciplinary hearings:

> …Appeals must be processed by an individual with **no prior
> involvement** in initial determination or hearing…

(Emphasis added)

*Plaintiff's Complaint.*

By asking Plaintiff to send the appeal to him, Defendant Agresta, who chaired the conduct hearing was involved in the processing of the appeal in contravention to the University's own rules, *supra*.

494.    Plaintiff avers that inasmuch as Defendant Agresta participated in the June 20, 2019 disciplinary hearing, the University did not follow its own rules when Defendant Agresta asked Plaintiff to submit his June 2019 appeal to him even if the same defendant Agresta did not adjudicate the appeal.

495.    As another departure from the University's own rules, by compelling Plaintiff to submit the June 2019 conduct appeal to the same Defendant Agresta who previously participated in the June 20, 2019 hearing and acted as complainant per se, the University used a procedure not authorized by the Student Code of Conduct.

496.    As another departure from the University's own rules, the same defendant Agresta acted as a complainant during the June 2019 conduct proceedings because it was Defendant Agresta who impermissibly went into Plaintiff's official DeVry University email inbox to retrieve 2017 emails exchanged between Plaintiff and ECON 545 Professor (Dr. Mapp), as well as 2019 emails exchanged between Plaintiff and Plaintiff's March 2019 ACCT 504 class Professor (Dr. Goodman) to use it against Plaintiff. Defendant Agresta acted as a both Complainant and witness because he is the one who accessed and presented those emails against Plaintiff without the knowledge of Dr.Mapp, for example. Indeed, both Drs. Mapp and Goodman did not even know that a conduct hearing was happening on June 20, 2019 involving the aforementioned emails Plaintiff sent to them years ago.

497.    As another departure from the University's own rules during the June 2019 conduct proceedings, Plaintiff was summoned and subjected to disciplinary action for filing

*Plaintiff's Complaint.*

grade appeals and/or seeking incomplete grades. *See* specifically conduct hearing packet Exhibit

1A at Page 3 stating the following:

> "… there are multiple instances of this behavior, some of which can be seen
> below. With a thorough review of his academic history, the conduct administrator
> noted multiple repeated instances of grade appeal and incomplete requests (8 such
> cases on file) throughout his academic career."

Filing grade appeals and seeking Incomplete grades is not a "behavior" or "misbehavior" at all.

*Grade appeal* and *incomplete grades* are provided as part of the University's contractual

procedures and policies within the University's own published Catalogs,

https://www.devry.edu/d/Keller_Catalog.pdf, Pages 102-104, as well as the University's

Published Student Handbook.

498.    As another departure from the University's own rules, defendant Agresta

characterized Plaintiff's grade appeal as punishable [mis]behavior. Plaintiff followed the

University's catalog and  properly went through the University's administrative channels to

process grade appeals and incomplete grades where necessary. *See* emails Exhibit 12B.2, for

example, where former Keller National Dean, Dr. Oscar Gutierrez, approved Plaintiff's grade

appeal and authorized a change of grade for Plaintiff in 2016. *See* also email Exhibit 11A where

Dr. Henson-Mack approved Incomplete grade and advised Plaintiff to file a grade appeal.

499.    As a graduate student enrolled in a Masters degree program at DeVry University

and Keller Graduate School of Management since 2015, Plaintiff had a protected liberty interest

in his good name and reputation that is now tarnished by disciplinary sanctions on his record for

properly filing grade appeal and incomplete grade under the contractual provisions of the Student

Handbook and the Catalogs.

500.    For each of the above-stated reasons, Plaintiff was entitled to the protections of

the law during the June 2019 disciplinary proceedings that was unilaterally scheduled by

*Plaintiff's Complaint.*

Defendants and which resulted in adverse disciplinary sanctions that deprives or impairs of Plaintiff's constitutionally-protected property and liberty interests.

*501.* The University departed from its own policies and rules by formulating, implementing, and applying aberrant policies and procedures, which deprived Plaintiff of the right to a fair hearing by an impartial and unbiased tribunal because Plaintiff did not get a chance to cross-examine Defendants Deb Koffman, Megan Michelich, and Kristine Kearney; thereby denying fundamental fairness to Plaintiff.

*502.* Defendants forced Plaintiff to undergo disciplinary proceedings which denied Plaintiff fundamental fairness in the following manner:

a) Plaintiff did not receive adequate notice of the nature of the charges against him and the evidence to be presented. Indeed, during the June 2019 hearing, the Panelists were confused about exactly what was the conduct charge against Plaintiff.

b) Plaintiff was not afforded adequate opportunity to prepare to meet the June 2019 conduct charges even after he informed Defendant Agresta that he was sick and so he cannot effectively represent himself for the June 20, 2019 hearing. Plaintiff's request for continuance was denied. *See* Exhibit 2B at pp.11-13 for email dated June 20, 2019 at 11:48 AM.

c) Plaintiff had no right of confrontation to his alleged accusers, in particular Defendants Koffman, Mihelich, and Kearney, who failed to attend the June 2019 conduct hearing by internet or phone.

d) The University failed to provide a proper hearing within a proper forum without barriers to communication such as a physical hearing at any of its many local campuses.

*Plaintiff's Complaint.*

e)  Plaintiff was judged by Defendant Agresta who not only had personal knowledge of Plaintiff

and of the facts of his case, but also, Defendant Agresta demonstrated the following: (i)

Agresta displayed extreme animosity toward Plaintiff for saying that he would sue the

University; (ii) Agresta recommended Plaintiff's disciplinary action on the basis of alleged

independent "research" to which he gave no testimony during the disciplinary phase of the

hearing; (iii ) Agresta recommended Plaintiff's disciplinary action over conduct for which

Plaintiff was not being subjected to disciplinary proceedings, without offering testimony for

which he would have been subject to cross-examination to support the commission of such

conduct; (vi) Agresta recommended disciplinary action against Plaintiff for conduct that

clearly falls within the realm of constitutionally-protected speech under New Jersey State

Law; (vii) Agresta recommended disciplinary action against Plaintiff for conduct that

violated no provision of the Student Code of Conduct or any other positive enactment; (viii)

Agresta recommended disciplinary action against Plaintiff for conduct for which Plaintiff

was not charged such as fling grade appeals ; (ix) Agresta recommended adverse disciplinary

action against Plaintiff for alleged past conduct by Plaintiff for which Plaintiff had never

previously been criticized or subjected to disciplinary proceedings and as to which no

reasonable evidence was presented at the hearing such as filing grade appeals and Incomplete

grades.

*503.*    As a direct and proximate result of Defendants' unlawful conduct as described

herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully

compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and

permanent injunctive relief as well as damages in an amount to be determined by the Court and

reasonable costs of this lawsuit, including reasonable attorneys' fees.

*Plaintiff's Complaint.*

504.     As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff has been caused and will continue indefinitely into the future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

505.     WHEREFORE, Plaintiff Michael O Livingstone demands judgment against Defendants DeVry University, Keller Graduate School of Management, Adtalem Global Education, Inc., named in the caption of this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $3 million exclusive of interest and costs; preliminary, declaratory, and injunctive relief Order to vacate and expunge both the June 2019 and November 2019 disciplinary sanctions and records, an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT FOURTEEN

**TITLE IX OF THE EDUCATIONAL AMENDMENTS ACT OF 1972;
BREACH OF CONTRACT
(Michael O. Livingstone v. DeVry University; Keller Graduate School of Management;
Adtalem Global Education Inc.)**

506.     Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

507.     The conduct of Defendants, as set forth hereinabove constitutes conduct under color of law that deprived Plaintiff's rights in the manner described in the following paragraphs.

508.     DeVry University is required to publish grade appeal procedures.

*Plaintiff's Complaint.*

509. The Provost or Chief Academic Officer of a University is the ultimate final arbiter of grade appeals in every University after lower Administrators have reviewed the grade appeal stepwise from the course instructor to faculty chairperson, to Dean, and then to the Provost.

510. DeVry University has published Grade Appeal Procedures in its Student Handbooks and Catalogs at Pages 102-104, see https://www.devry.edu/d/Keller_Catalog.pdf

511. In 2018, the University deliberately, intentionally failed to process and address Plaintiff's grade appeal Case No. 08314829, which Plaintiff formally filed with the University regarding the March 2017 session MIS 535 class. The University's Student support center assigned that grade appeal to Dr. Brent Ward and Dr. Virgil Mensah-Dartey.

512. Plaintiff informed Dr. Mensah-Dartey that he needs a final decision letter from the University regarding the MIS 535 class grade appeal to show external accreditation boards that he has exhausted internal administrative remedies with the University so that the accreditation board can review the matter.

513. To date, Plaintiff never received a formal decision letter regarding the MIS 535 class grade appeal from lower administrators or from the University's Provost, defendant Shantanu Bose.

514. The University deliberately, maliciously, and intentionally failed to address Plaintiff's grade appeal Case No. 08878845 that Plaintiff formally filed with the University regarding the March 2019 session ACCT 504 class grade appeal was filed with the University and assigned by the Student Support Center to Dr. John MacCatherine who actually requested that Plaintiff should file a grade appeal (*See* Exhibit 3A, Page 1). Yet, as of this day, Plaintiff has received no formal decision letter about the grade appeal from Dr. MacCatherine or from the University's Provost (Defendant Bose).

*Plaintiff's Complaint.*

515.    Plaintiff believes and therefore avers that it was the same Defendant Agresta acting with extreme animosity against Plaintiff who conspired with Dr. MacCatherine to ignore Plaintiff's grade appeal Case No. 08878845 regarding the March 2019 ACCT 504 class, as evidenced by Defendant Agresta's mischaracterizations of Plaintiff filing of grade appeals as "past character incident" and "bad behavior" in the June 2019 conduct hearing packet. Defendant Agresta was aware that Plaintiff filed a grade appeal to Dr. MacCatherine.

516.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants DeVry University, Keller Graduate School of Management, Adtalem Global Education, Inc., jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $5 million exclusive of interest and costs; preliminary, declaratory, and injunctive relief enjoining Defendants to change Plaintiff's grades to straight "A" grades for which Plaintiff appealed in both 2017 MIS 535 class and March 2019 ACCT 504 class; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

**COUNT FIFTEEN**

**CHARACTER ASSASSINATION; DEFAMATION; FALSE LIGHT**
**(Michael O. Livingstone v. DeVry University**

**Keller Graduate School of Management; Jonathan Agresta)**

517.    Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

518.    At all times mentioned herein, Plaintiff was a law-abiding Citizen of the United States, the State of New Jersey, and a law-abiding graduate student of Defendant Keller Graduate

*Plaintiff's Complaint.*

School of Management who enjoyed the respect, confidence, and esteem of his neighbors, as well as all others in the community, and has never been guilty of any crime, offense, or violation of the law which would tend to lessen the respect, confidence, and esteem which he has enjoyed, and to which he was entitled.

519.    Defendant Agresta, knowing the facts set forth in the preceding paragraph concerning Plaintiff's reputation in the DeVry University community and with invidious intent to injure Plaintiff and bring him into public scandal and disgrace, knowingly and maliciously, or with reckless disregard for the truth or negligently and carelessly published or caused to be published the scandalous, defamatory, and libelous statements of, and concerning Plaintiff Livingstone.

520.    Specifically, Defendant Agresta stated this in the June 2019 conduct hearing packet as "past incidents of character reference" against Plaintiff Livingstone ( Ex.1A, page 2) that:

> "… there are multiple instances of this behavior, some of which can be seen below. With a thorough review of his academic history, the conduct administrator noted multiple repeated instances of grade appeal and incomplete requests (8 such cases on file) throughout his academic career." (Exhibit 1A, Page 3)

Defendant Agresta says it is a "past incident of character reference" and misbehavior that Plaintiff filed grade appeals and sought incomplete grades in some classes he completed at the University.

521.    Filing grade appeals and seeking incomplete grades is not misbehavior and it cannot be considered as "past incident of character reference."

522.    Grade appeals and incomplete grades are provided as part of the University's own procedures and policies in the University's own Catalogs

*Plaintiff's Complaint.*

https://www.devry.edu/d/Keller_Catalog.pdf, Pages 102-104, as well as the University's Student Handbook.

523. The University's Catalog at Pages 102 & 104 contractually provides for Grade Appeals and Incomplete Grade procedures as required by the Education Amendments Act of 1972. See https://www.devry.edu/content/dam/devry_edu/d/Keller_Catalog.pdf. *See* also Exhibit 3C, Page 1 where DeVry's Asst. Dean, Dr. John MacCatherine, directs Plaintiff in an April 28, 2019 email to "file a grade appeal to me" over the ACCT 504 class. If indeed filing grade appeals is misbehavior, then the University's own administrator, Asst. Dean Dr. John MacCatherine told Plaintiff to misbehave.

524. Throughout Plaintiff's academic work at the University since 2015, there are times when some DeVry Course instructors themselves assigned incomplete grades to Plaintiff to give themselves time to complete grading, for example.

525. Plaintiff avers that it is within his right under Higher Education Law for Plaintiff to request for incomplete grade when Plaintiff was sick around the end of a class. That cannot be construed as misbehavior or bad character reference.

526. By describing Plaintiff's grade appeals and incomplete grades as "bad character incidents," defendant Agresta should be held liable for assassinating Plaintiff's character.

527. The aforementioned statements of Defendant Agresta contained in the written communications in i emails Exhibit 1A, pp.2-3 and described above are entirely false insofar as they reflect upon Plaintiff's conduct as well as his character and reputation because filing grade appeal and seeking incomplete grades is <u>not</u> misbehavior or bad character. Defendant Agresta knew that the statements contained in the written communication identified and described above were false when made and published them either intentionally and maliciously, or with reckless

disregard for their truth or falsity, or negligently and carelessly to assassinate and injure the character of Plaintiff.

528. The false statements contained within the written communication identified and described above applied to Plaintiff Livingstone and was understood by recipients of the statements to have a defamatory meaning against Plaintiff's good character.

529. To the extent Defendants may attempt to assert in their own defense the privileged character of the occasion on which the false and defamatory statements were published, any such conditional privilege was abused by Defendants and thereby waived and forfeited.

530. The aforementioned false and defamatory statement maliciously, intentionally, recklessly, and falsely, by words, innuendo, inference and manner in which they were presented holds Livingstone out to public scorn and ridicule and attributes irresponsible conduct to Livingstone.

531. The aforementioned false and defamatory statements were in no manner privileged nor constitutes fair comment on matters of public concern or interest.

532. The aforementioned false and defamatory statements were published with knowledge that said statements; innuendo, inference and manner in which they were presented were false and/or with reckless disregard for whether said material was false or constitutes actual malice with intent to injure Livingstone.

533. The statements and implications set forth above constitute defamatory publications that are actionable *per se* and were published with actual malice.

534. The above statement has severely injured and caused special harm to Plaintiff Livingstone in that they have tended to (a) blacken his reputation; (b) expose him to hatred,

*Plaintiff's Complaint.*

contempt, ridicule, and humiliation; and (c) ascribe to him characteristics incompatible with the

proper conduct expected of a law abiding and trustworthy citizen.

535.     The publication of the false and defamatory statements contained in the written

communications identified and described above and other similar false and defamatory

statements of which Livingstone is not yet aware may have been and may continue to be

republished, and so Plaintiff Livingstone demands presumed, compensatory, economic and

punitive damages for the harm flowing from any and all such republications of the false and

defamatory statements in addition to damages for the harm flowing from their initial publication.

536.     As a direct and proximate result of the intentional, malicious, reckless, negligent

and/or careless statements and charges contained in the written communications identified and

described above and their publication to third parties, Plaintiff's reputation and esteem in the

community has been adversely affected.

537.     As a further direct and proximate result of Defendants' unlawful conduct as

described herein, Livingstone has suffered, and continues to suffer, irreparable injury which

cannot be fully compensated by an award of monetary damages for which Livingstone is entitled

to preliminary and permanent injunctive relief as well as damages in an amount to be determined

by the Court and reasonable costs of this lawsuit, including reasonable attorneys' fees.

538.     As a further direct and proximate result of Defendants' unlawful conduct as

described herein, Plaintiff Livingstone has been caused and will continue indefinitely into the

future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or

psychological distress, all with associated physical symptoms.

539.     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all

Defendants named in the caption of this instant complaint jointly, severally and/or severally, for

*Plaintiff's Complaint.*

compensatory and punitive damages in an amount in excess of $300,000, exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT SIXTEEN

### INVASION OF PRIVACY

**(Michael O. Livingstone v. Jonathan Agresta; DeVry University; Keller Graduate School of Management; Adtalem)**

*540.* Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

*541.* The conduct of Defendants, as set forth hereinabove constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs:

*542.* Defendant Agresta has never been Plaintiff's Course Instructor in any of the many classes Plaintiff has completed at Defendant DeVry University and its Keller graduate School Of Management since 2015.

*543.* Plaintiff believes and therefore aver that Defendant Agresta was motivated by retaliatory animus and deep-seated antagonism against Plaintiff's assertions to sue the University. So, Defendant Agresta impermissibly accessed Plaintiff's official DeVry email account to find any emails at all that he could use against Plaintiff as conduct violation.

*544.* Without Plaintiff's permission, without Course Instructors' permission, and without any conduct violation complaint from the original recipients of emails, in June 2019, Defendant Agresta impermissibly accessed Plaintiff's official DeVry email account to find any emails at all that he can use to injure Plaintiff for conduct violation.

*Plaintiff's Complaint.*

545. Specifically, in June 2019, Defendant Agresta impermissibly went into Plaintiff's DeVry student email account and retrieved past 2017 emails between Dr. Mensah-Dartey and Dr. Mapp and cited it in the June 2019 conduct packet and referenced it as "past incident of character references" against Plaintiff (Exhibit 1A, p.3).

546. Plaintiff has attached herewith the actual email thread and its responses as "Exhibit 2A." None of these identified emails show any bad character against Plaintiff under Article III of the Student Code of Conduct. They contain Plaintiff's assertions of his rights.

547. No part of these identified emails (Exhibit 2A) were reported in 2017 as misconduct or bad character by the true recipients of that email (i.e. Dr. Mapp, and Dr. Mensah – Dartey, of DeVry University).

548. No part of those emails (Exhibit 2A) constitutes misconduct or bad character.

549. None of the original recipients of those emails (i.e. Dr. Mapp and Dr. Mensah – Dartey of DeVry University) reported those emails as misconduct in 2017 or thereafter when they received it.

550. None of the original recipients of the identified emails in 2017 were aware that those emails were being used against Plaintiff at a code of conduct violation hearing in June 2019.

551. To the extent that Defendant Agresta may argue that anybody can file a code of conduct violation complaint against anybody at the University, it does not fall within the province of Defendant Agresta to take anybody's conflict unto himself whereas the original recipients of those emails in 2017 are equally able people who could file their own conduct complaint against Plaintiff if those emails was problematically misconduct in-fact the recipients.

*Plaintiff's Complaint.*

552.     To the extent that Defendant Agresta may argue that he can also file a code of conduct complaint against anybody at all in the University, given his official capacity as a Student Code of Conduct Administrator, he cannot do that because Defendant Agresta is supposed to be an impartial and neutral arbiter of the student conduct code, not a Complainant on behalf of any capable person in the University who can make their report.

553.     As a direct and proximate result of the Defendant's disruptive, malicious activity, and invasion into Plaintiff's student email account, Plaintiff feels invaded and insecure to use his DeVry Student email account anymore. This has created a hostile educational environment for Plaintiff. Plaintiff has been severely injured with special harm.

554.     As a further direct and proximate result of the intentional, malicious, reckless, negligent and/or careless invasion into Plaintiff's student email account, Plaintiff now feels he exists and operates in a hostile educational environment where his email communications with administrators and faculty will be invaded and used against him with abuse of power.

555.     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against defendants Jonathan Agresta, DeVry University, Keller Graduate School Of Management jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $500,000, exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to vacate and expunge the June 2019 disciplinary record; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

*Plaintiff's Complaint.*

## COUNT SEVENTEEN

**ACADEMIC FREEDOM;**
**FIRST AMENDMENT FREE SPEECH UNDER N. J. CONSTITUTION**

**(Michael O. Livingstone v. Jonathan Agresta; DeVry; Keller; Adtalem)**

556.     Plaintiff incorporates herein by reference each and every one of the allegations

contained in preceding paragraphs as though fully set forth at length herein.

557.     The conduct of Defendants, as set forth hereinabove constitutes conduct which

deprived Plaintiff's rights to academic freedom in the manner described in the following

paragraphs:

558.     Although defendant DeVry University and its Keller Graduate School of

Management is a private University, the University has published in its Catalogs and Handbooks

that it provides Academic Freedom and freedom of expression to students and members of the

community. *See* Page 136 of the 2019-2020 Keller Academic Catalog [14] stating this:

> …**Academic Freedom**
> DeVry University supports development of autonomous thought and
> respect for others' ideas. As such, members of the DeVry community,
> including students and faculty, should feel free to discuss their questions
> and express their opinions both publicly and privately…

559.     Plaintiff believes and therefore avers that all the contents of his email

communications (Exhibits 1A; 3I) that formed the basis of the June 2019 disciplinary

proceedings and sanctions falls within the protected boundaries of academic freedom and

freedom of speech.

560.     During the June 2019 disciplinary proceedings, the University took issue

especially with email Exhibit 3I that was copied to the Provost although Plaintiff only expressed

---

[14]       https://www.devry.edu/d/Keller_Catalog.pdf

*Plaintiff's Complaint.*

"academic concerns" about Pearson Publisher's MAL software that was being used in the ACCT

504 March session class, for example, without making any true threats of physical violence at all.

561.    None of the email exhibits contained within the June 2019 disciplinary hearing

packet presents any actionable true threat of physical violence or actionable intimidation of

physical harm under the First Amendment's speech clause against Article III of the University's

Student Code of Conduct. (*See* Exhibits B, 3H, 4C, 2C, 3A, 3B, 3G, 4B, 2A, C, 3I, 3E, 3F, 1A,

3D, 3C).

562.    None of Plaintiff's email communications that were also contained in the October

-November 2019 disciplinary hearing package (Exhibits 8A-8M) falls outside the boundaries of

academic freedom and freedom of speech at all.

563.    By subjecting Plaintiff to adverse disciplinary proceedings and sanctions in June

2019 for copying the University's Chief Academic Officer or Provost (defendant Shantanu Bose)

on that email (Exhibits 1A; 3I) containing communications that are purely within the boundaries

of academic freedom and academic concerns without making any true threats of violence, this

Court should conclude that Defendants have deprived Plaintiff of his right to academic freedom

and freedom of speech.

564.    Plaintiff avers that Defendant Agresta deprived Plaintiff of his right to freedom of

expression by way of "content discrimination" when defendant Agresta failed to act as a neutral

code administrator to pass-on Plaintiff's apology letter (Exhibit 3E) in June 2019. Defendant

Agresta claimed in an email within Exhibits 1A, Page 2 and Exhibit 2B that Plaintiff's apology

letter (Ex.3E) does not sound good to his ears.

*Plaintiff's Complaint.*

565.    The Student Handbook procedures for disciplinary action only requires the code administrator to pass-on the apology letter to the complainants and use it to mediate between the parties, not to pass judgment upon it.

566.    Defendants deprived Plaintiff of his right to freedom of expression under the First Amendment by discriminating against Plaintiff on the basis of the points of view expressed in the content of his protected speech within the June 2019 conduct hearing packet and November 2019 conduct hearing packet.

567.    As a direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Michael O. Livingstone was deprived of his New Jersey constitutional rights and Plaintiff has otherwise sustained legal injury.

568.    As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff was caused to suffer other, non-economic losses, all to Plaintiff's great financial, psychological, and emotional detriment and loss.

569.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants named in the caption of this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $300,000, exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to vacate, stay, remove the disciplinary records; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

*Plaintiff's Complaint.*

## COUNT EIGHTEEN

### CONSUMER FRAUD ACT (Federal and State Law) ;
### 20 U.S. Code § 1015b (Textbook)

### (Michael O. Livingstone v. Defendants DeVry; Keller; Adtalem)

*570.*    Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

*571.*    The conduct of Defendants, as set forth hereinabove, constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs:

*572.*    Around 2015, the University maintained a policy that imposed mandatory electronic textbook upon all students for every class for mandatory fees payable to the University.

*573.*    Effective July 2016, the University promulgated a new policy to give students the option to decline the mandatory electronic textbook and acquire the textbook elsewhere for classes (*see* Exhibit 5A).

*574.*    Plaintiff enrolled in the online graduate class "ENTR 550" - Entrepreneurial Marketing for the May 2019 Session that run between May 6, 2019 - June 29, 2019 at the University.

*575.*    ENTR 550 required a mandatory Textbook.

*576.*    Plaintiff declined the University's eBook option so that he can use the money to buy his own colored hardcopy textbook for the class.

*577.*    When Plaintiff declined the mandatory electronic textbook option for the ENTR 550 Class, this resulted in a $30 credit balance on Plaintiff's student account and the University

*Plaintiff's Complaint.*

notified Plaintiff by email dated Jun 7, 2019, 10:08 AM that Plaintiff's billing statement reflects the $30 credit balance.

578.    When Plaintiff waited for a number of days and the University still did not issue a refund of the $30 credit balance on their own for Plaintiff to purchase his own textbook for the ENTR 550 class, on June 13, 2019, Plaintiff contacted DeVry Central Student Support Center by telephone to tell them to release the $30 refund for him to buy his own textbook for the ongoing ENTR 550 class.

579.    Defendant Koffman was the first person to pick up the Phone to verify Plaintiff's student information and transferred it to Defendant Kristine Kearney. (It is part of the DeVry Central Student Support Center telephone practices that someone else first answers the caller and then transfer the call to a Student Support Adviser and the financial aid department.

580.    Defendant Kearney started contending with Plaintiff arguing that although Plaintiff has a credit balance of $30 stemming from his decline to purchase the University's electronic textbook for the ENTR 550 class, it is the University's practice to carry over such credit balance to the next session.

581.    Plaintiff argued that he is the one who determines what to do with his money, not the University, and so the University should not have applied the $30 credit balance towards the next session of school for their financial gain without Plaintiff's authorization.

582.    Plaintiff  argued that every 8-week session of each semester at the University has its own class and its own book and its own bill. Hence, every session's $30 textbook credit balance should be refunded automatically to Plaintiff if he declines to buy the University's own textbook.

*Plaintiff's Complaint.*

583. Plaintiff argued that he declined the University's electronic textbook option so that he can use the $30 to buy his own textbook from elsewhere and so it is wrong for Defendant Kearney to carry over the $30 money on her own prerogative for the gains of the University instead of Plaintiff whereas Plaintiff expected the money to buy his own textbook for the class.

584. Plaintiff stated that he is a recipient of federal student financial aid that has been disbursed and applied to the July 2019 session for the ENTR 550 class. Title IV of the Higher Education Act ( HEA) is what governs what to do with credit balances on student accounts of federal student financial aid recipients, not the University's personal interest or practices.

585. Plaintiff argued that Title IV of the HEA does not permit participating Universities like DeVry to do whatever it wants with student refunds or to carry it over to another session's bill without the student's authorization first.

586. Plaintiff argued that it will be different if the $30 credit balance resulted from DeVry's own funds. However, the $30 credit balance did not stem from DeVry money or DeVry scholarship, but rather, Plaintiff's own student loan, and so DeVry does not have a right to keep it or carry over the money to another session without student's prior authorization.

587. Plaintiff demanded that his $30 credit balance should be refunded for him to buy his own required textbook for the ongoing ENTR 550 class. Plaintiff asserted that he will sue the University for holding his money.

588. Plaintiff added that he would sue the University if the University ever holds back or carries his $30 stemming from his decline to purchase the University's version of textbooks instead of purchasing his own from somewhere else.

589. Whereupon, Defendant Kearney obliged to refund the $30 credit balance to Plaintiff and by email dated Jun 14, 2019, 3:54 PM.

*Plaintiff's Complaint.*

590.    The University notified Plaintiff that the $30 credit balance payment has been issued to Plaintiff.

591.    To Plaintiff's surprise, between June 13-14, 2019, Defendant Agresta notified Plaintiff that he has received a June 13, 2019 complaint from Defendant Kristine Kearney seeking disciplinary action against Plaintiff regarding Plaintiff's prior June 13, 2019 telephone interaction over the $30 credit balance. *See* Page 2 of Exhibit 1A showing the statement of Defendant Kearney about the June 13, 2019 phone call interaction.

592.    When Plaintiff called Defendant Agresta on June 13, 2019 to follow up, Defendant Agresta expressed strong disdain to the fact Plaintiff has asserted that "he would sue Keller."

593.    Plaintiff affirmed to Defendant Agresta that he was not disrespectful to Defendant Kearney, but rather, Plaintiff has a right to say he would sue Keller for redress of his grievances, and that is not misconduct for disciplinary action because the right to petition is a constitutional right.

594.    Defendant Agresta urged Plaintiff to apologize. Plaintiff said he can apologize as a Courtesy only for any misconception of disrespect without admitting any fault because he has not violated the code for saying that he would sue Keller for mishandling his money because that is within Plaintiff's constitutional right to assert his right to petition.

595.    Without admitting fault, Plaintiff wrote an apology letter (Exhibit 3E) for purposes of mediation only under the student handbook code of conduct process and for Defendant Agresta to pass it on to Defendant Kearney to drop the matter. See Page 16, at No.2 of the Student Handbook, https://www.devry.edu/d/student-handbook.pdf, providing that:

> …Once charges have been filed, the conduct administrator will investigate to determine if charges have merit and/or if they can be resolved by

*Plaintiff's Complaint.*

> mutual consent of the complainant and the respondent on a basis
> acceptable to the conduct administrator (such as mediation)…

596.     Defendant Agresta declined to perform the mediation duties provided under the code of conduct procedures of the University's student handbook because he claims he did not like the content of the apology letter ( Ex.1A, p.2), perhaps because Plaintiff did not apologize for saying that he would sue Keller. Defendant Agresta attached Plaintiff's apology letter to the Zip file contained in the hearing packet, which is now attached herewith as Exhibit 3E.

597.     Plaintiff asked Defendant Agresta to produce a copy of June 13, 2019 telephone interaction he had with Defendant Kearney so that Defendant Agresta and the hearing panel can hear exactly what was said for themselves to determine whether Plaintiff was disrespectful or not (Exhibit 5C, page 2). However, Defendant Agresta claims he does not have the recorded telephone conversation.

598.     The disciplinary hearing took place and Defendant Agresta did not have the attendance of Defendant Kearney and the telephone conversation at issue for credibility. Yet, he proceeded.

599.     The foregoing shows that Plaintiff was subjected to adverse disciplinary action for challenging the University's attempt to keep his $30 credit balance after Plaintiff declined to purchase the University's own version of the textbook for ENTR 550 class and for demanding a refund of his $30 credit balance to buy his own book.

600.     It is within Plaintiff's province to demand his credit balance and to stand up against misuse of his money at the University.

601.     By attempting to keep the $30 credit balance for themselves stemming from Plaintiff's decline to buy the mandatory textbook directly from the University, Plaintiff alleges that Defendants violated the Consumer Fraud Act and 20 U.S. Code § 1015b.

*Plaintiff's Complaint.*

602.    To the extent that the June 2019 disciplinary proceedings stem from that June 13 telephone interaction between Defendant Kearney and Plaintiff over the University's own perfunctory and malicious attempt to keep Plaintiff's $30 credit balance for declining to buy the textbook from the University, Plaintiff pleads that this Court should hold the University liable and vacate the sanction.

603.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants Adtalem, DeVry University, Keller Graduate School Of Management; Board of Trustees named in this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $ 2million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to vacate and remove the June 2019 disciplinary records; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT NINETEEN

### STATUTORY NEGLIGENCE
### (Michael O. Livingstone v. Defendants DeVry; Keller)

604.    Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

605.    The conduct of Defendants, as set forth hereinabove, constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs:

606.    Plaintiff is not bringing a private right of action under Title IV of the Higher Education Act ("HEA") here, . Instead, Plaintiff is pointing this Court to the statute under which Defendants have been negligent as Title IV of the HEA.

*Plaintiff's Complaint.*

607.     The University policy is clear that students can decline to buy the mandatory course textbook from the University for their classes. This resulted in $30 credit balance on Plaintiff's account from Plaintiff's federal student financial aid.

608.     Plaintiff avers that Title IV of HEA statute guidelines governs how a University should handle credit balances on student accounts, not the University's own choice.

609.     Notwithstanding the statutory imperatives of Title IV of HEA for participating Universities to get the permission of the student borrower to carryover credit balances, DeVry attempted and argued that they determine what to do with student's money to apply it to the next session's bill.

610.     Plaintiff avers that this was negligent practice and this negligent practice was the root cause of the in June 13, 2019 telephone interaction with Defendant Kearney, which in turn resulted in disciplinary action to Plaintiff's detriment.

611.     Plaintiff complains for this Court to hold the University liable for statutory negligence. Just as the University needs money on time, Student also need their money on time. Here, the University was intentionally keeping the $30 whereas Student also needed it to buy his own textbook.

612.     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants Adtalem, DeVry University, Keller Graduate School Of Management; Board of Trustees named in this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $150,000, exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to vacate and expunge and remove the June 2019 disciplinary record; an award of reasonable Attorneys' fees, costs and other costs and

*Plaintiff's Complaint.*

disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT TWENTY

**Title IX of Education Amendments Act of 1972;
Consumer Fraud;
Detrimental Reliance;
Constructive Trust;
20 U.S. Code § 1015b**

**(Michael O. Livingstone v. Defendants DeVry ;Keller; Board Of Trustees Of DeVry University; Online Bookstore)**

*613.* Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

*614.* Plaintiff enrolled and completed the graduate level online class, Financial Accounting ACCT 504-16107 in May 2016 session at DeVry University and its Keller Graduate School of Management DeVry University.

*615.* ACCT 504-16107 was an eight-week graduate level online class from May 2, 2016 - June 26, 2016.

*616.* Ms. Malinda Marsh was the Course Instructor for ACCT 504-16107, May 2016 session.

*617.* Ms. Malinda Marsh did not provide any lecture to explain the course material from expertise to perform her paid tuition duties. Instead, Ms. Marsh relied upon online student discussions as tuition.

*618.* Plaintiff alleged that he has been ripped-off his tuition money because he paid tuition to be taught from the expert knowledge of the course instructor, not amateur students.

*619.* The Textbook for that ACCT 504 May 2016 session class was mandatory.

*Plaintiff's Complaint.*

620. It was also mandatory at that time for students to purchase that required textbook from the University's online Bookstore only.

621. The required electronic textbook was available online. Students who preferred a hardcopy version could order a black-and-white print-on-demand hardcopy from the University's Bookstore for additional fee.

622. Plaintiff does not read electronic textbooks on computer screens due to eye problems when he sustains his eyes to computer screens, but rather, Plaintiff reads hard copies.

623. Plaintiff ordered the print-on-demand hardcopy of the mandatory online textbook for the ACCT 504 May 2016 session class.

624. The University updated the Textbook to a newer edition during the first few weeks of that May 2016 session ACCT 504 class.

625. The University's online Bookstore sent the outdated version of the Textbook when Plaintiff purchased the print-on-demand hard copy.

626. The University's online bookstore never sent the corrected version when Plaintiff brought this to their attention (*See* generally attached Exhibit 5B for email thread correspondence with the Bookstore.)

627. Plaintiff did not succeed in that ACCT 504 May 2016 session class.

628. Having exhausted remedies with the course instructor, by email dated July 5, 2016, at 2:20 PM, Plaintiff filed a timely formal grade appeal in the form of an electronic Memorandum to the *then*-Senior National Dean of DeVry's College of Business and Management, Oscar Gutierrez, PhD, cc'd to his Assistant National Dean, Mike Wasson.

629. Plaintiff brought up the discrepancy with the wrong textbook in Page 8 of his July 5, 2016 Memorandum grade appeal *inter alia* stating this:

*Plaintiff's Complaint.*

> "…Wrong or outdated Textbook Edition was sent by the mandatory Print On Demand at the time; thus student was unbeknownst studying wrong information in the course."

630.    Without explanation, by email dated Wed, July 6, 2016 at 2:43 PM, Mike Wasson, who was DeVry University's then-National Associate Dean for the College of Business & Management issued an arbitrary decision that failed to address the discrepancy with the textbook:

> Hi Michael – I wanted to get back to you as soon as possible. After reviewing your case and all the documentation DeVry University is denying your appeal to change the grade in your ACCT504 course. I recommend that you retake the course.

631.    In his capacity as Associate National Dean, Mike Wasson is not the final arbiter of grade appeals, but rather, the Provost for Academic Affairs is the final arbiter of grade appeal in every University.

632.    Plaintiff informed Mike Wasson and Dr. Gutierrez that he would further appeal the grade to the Provost of the University to exhaust all internal remedies.

633.    Whereupon, the grade appeal against that ACCT 504 class was assigned to Ms. Kelly Day, Academic Affairs Specialist, to coordinate the grade appeal process or to act as Ombudsman for further appeal to the University's Provost for Academic Affairs. (Exhibit 16A)

634.    By emails, Ms. Kelly Day initially informed Plaintiff that there would be a hearing regarding the grade appeal whereby faculty members will also hear and review the matter as required by grade appeal due process. However, without explanation, Ms. Kelly Day later informed Plaintiff that there would be no hearing. (Exhibit 16A)

635.    By email dated July 7, 2016, 12:05 PM, Ms. Kelly Day and Plaintiff submitted the grade appeal to Donna Rekau, Ph.D., who was DeVry University's then-Interim Vice President, Academic Affairs/Provost (Exhibit 16A).

*Plaintiff's Complaint.*

636.    By email letter dated July 20, 2016, Dr. Donna Rekau addressed the grade appeal without addressing Plaintiff's issue pertaining to the discrepancy involving the wrong Textbook that was sent to Plaintiff by the University's Bookstore.

637.    Whereas a Provost for Academic Affairs is the ultimate arbiter of grade appeals in every University under the mandates of Title IX of Education Amendments Act of 1972 and Higher Education Law, Plaintiff has exhausted all internal administrative remedies with DeVry University. So, Plaintiff has standing to bring this matter before this Court for compliance involving the May 2016 session ACCT 504 class.

638.    Plaintiff repeated the ACCT 504 class in March 2019 session and this time Plaintiff received an A- final grade when the correct textbook for that same class was sent to him in 2019.

639.    Defendant DeVry University online Bookstore, on their part, addressed the previous 2016 discrepancy with the ACCT 504 Textbook by declining to charge Plaintiff for it again when Plaintiff repeated the class in 2019. *See* generally Exhibit 5B.

640.    The conduct of Defendants, as set forth hereinabove, constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs regarding the first ACCT 504 May 2016 class:

641.    The textbook was mandatory for the class and it was mandatory at the time for Plaintiff to purchase the textbook from DeVry University Bookstore only.

642.    Defendant DeVry University Online Bookstore ("Bookstore") initially sent the wrong textbook for that ACCT 504 May 2016 session class full of wrong information for the class at the time in 2016 (Exhibit 5B).

*Plaintiff's Complaint.*

643. Despite a number of follow-ups, the Bookstore ("Bookstore") never sent the correct textbook for Plaintiff to use for that 2016 ACCT 504 class thereby causing Plaintiff to use the wrong information for the class at the time in 2016. (Exhibit. 5B).

644. By sending Plaintiff the wrong textbook for the 2016 ACCT 504 class, Plaintiff was caused to use wrong information from the textbook to his detriment that directly and proximately caused Plaintiff's failure in the May 2016 ACCT 504 class (Exhibit 5B).

645. When Defendant DeVry University online Bookstore sent the correct textbook to Plaintiff in 2019 (Exhibit 5B) when Plaintiff repeated the same ACCT 504 class during the March 2019 session, Plaintiff succeeded with "A-" final grade. Consequently, Defendants should be held liable for detrimental reliance, Consumer Fraud, and 20 U.S. Code § 1015b.

646. The bad grade for the first ACCT 504 March 2016 class still stigmatizes Plaintiff's excellent academic record at DeVry.

647. As a graduate student and U.S. Citizen, Plaintiff has constitutionally-protected liberty interest and property interest in his academic record for which Plaintiff is entitled to due process of law regarding the grade appeal for the first ACCT 504 May 2016 session class.

648. DeVry University failed to provide fair grade appeal to Plaintiff in this manner (Exhibit 16A):

649. First, Ms. Kelly Day and DeVry did not provide due process grade appeal hearing by a panel of neutral faculty members to review Plaintiff's grade appeal at all despite her initial indication that she would summon a grade appeal hearing that includes faculty members and she would disclose their credentials (Exhibit 16A)

650. Second, then-Associate National Dean (Mike Wasson) and the Provost for Academic Affairs (Dr. Donna Rekau), who adjudicated Plaintiff's grade appeal at the time,

*Plaintiff's Complaint.*

intentionally and maliciously failed to address the discrepancy involving the wrong textbook which caused Plaintiff's failure in the class despite the fact that the textbook was imposed upon Plaintiff and Plaintiff was forced by the University to buy it directly from the University's bookstore (Exhibit 16A).

*651.*    Third, Ms. Marsh, the ACCT 504 May 2016 class session course instructor, did not teach the class. Plaintiff paid tuition money for expert tuition from the course instructor, not mere discussing positing by amateur students. Plaintiff avers that discussions with other students is not tuition and it does not substitute the duty to teach the course material by the course instructor. Peer Discussions only supplement and augment teaching. It does not replace the duty to teach.

*652.*    Defendants should be held liable because they are reprehensible for Plaintiff's failure in that ACCT 504 May 2016 session class inasmuch as defendants sent Plaintiff the wrong textbook that was not being used for the class.

*653.*    Plaintiff brings each of these COUNTS separately under this cause of action for the Court to enjoin defendants DeVry University and its Keller Graduate School Of Management to retroactively remove the ACCT 504 May 2016 class from Plaintiff's academic record and the associated tuition and costs should be returned to Plaintiff as Constructive Trust.

*654.*    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants DeVry University and its Keller Graduate School Of Management; Board Of Trustees named in this instant complaint jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $150,000 exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to remove the March 2016 ACCT 504 class from his academic records; an award of reasonable Attorneys' fees, costs and other costs

*Plaintiff's Complaint.*

and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT TWENTY ONE

1. **Title IX of Education Amendments Act of 1972;**
2. **Violation of Due Process (during Grade Appeal for MIS-535);**
3. **Consumer Fraud Act**

**(Michael O. Livingstone v. Gordon Jacobs; DeVry University; Keller Graduate School of Management; Board of Trustees of DeVry University)**

*655.* Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

*656.* The conduct of Defendants, as set forth hereinabove, constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs:

*657.* The University and its defendant Board of Trustees failed to promulgate timelines for the University's respondents at each level of the grade appeal procedures into the grade appeal procedures in the University's academic Catalogs and Student Handbooks.

*658.* Plaintiff enrolled and completed the graduate level online class called Managerial Applications of Information Technology, MIS-535-62245 ("MIS 535") during the March 2017 session at Keller Graduate School of Management of DeVry University.

*659.* The MIS-535 class was an accelerated eight-week online class between February 27, 2017 - April 23, 2017.

*660.* The Course Instructor for that MIS-535 class was defendant Mr. Jacob Gordon ("defendant Gordon").

*661.* Plaintiff observed that a wrongful "D+" final grade was posted for him by the University Registrar, which was inconsistent with a "B" final grade on his grade book ledger in the course page. (*See* within email thread Exhibit 16B).

*Plaintiff's Complaint.*

662.     Whereupon, by email dated April 30, 2017, 11:35 PM, Plaintiff brought this to the

attention of Defendant Gordon Jacob. (*See* within email thread Exhibit 16B).

663.     By reply email dated May 2, 2017, 12:42 AM, defendant Gordon expressed his

surprise and wrote this to Plaintiff:

> Michael, do you go by another name? There is no Michael Osei in the
> last MIS535 class - and no Michaels in the class received a grade of D.
> Regards, Rick

664.     Plaintiff explained that his legal name is Michael Osei Livingstone. Regardless, if

"No Michaels in the class received a grade of D" at all as defendant Gordon claimed, then a D+

grade should not have been posted for Plaintiff at all whether he is "Michael Osei" or "Michael

Osei Livingstone" because either way, Plaintiff's name starts with Michael. (*See* within email

thread Exhibit 16B).

665.     In a further email dated May 2, 2017, 1:03 AM, defendant Gordon wrote this to

Plaintiff:

> "…The course grade I submitted for you is a 'B'. I will try to contact the
> registrar or someone else at DeVry regarding a correction if it is not
> showing properly in your record. I may need your student number due to
> the name - please let me know
> J. R. (Rick) Gordon
> Visiting Professor
> DeVry University…"

666.     Whereupon the erroneous D+ grade was changed to a "B" grade.

667.     Consistent with the University Catalog's grade appeal timeline to submit grade

appeal to Course instructors by the beginning of the next 8-week session of School, by email

dated May 11, 2017, 10:50 AM, Plaintiff submitted a timely grade appeal to Defendant Gordon

that he is appealing the final grade for higher grade.

*Plaintiff's Complaint.*

668.     In reply email dated May 12, 2017, 12:33 PM, Defendant Gordon did not address

any of the academic issues raised within in Plaintiff's grade appeal. Instead, defendant Gordon

wrote that he has already solved the prior technical discrepancy with the grade whereby a D+

grade was erroneously posted for Plaintiff instead of the B grade, as he wrote this (*See* within

email thread Exhibit 16B):

> "Michael, as I noted earlier, I turned in a grade change request for you. I
> do not know the timing of its acceptance, but I believe it will be processed
> sooner than later."

669.     Whereupon, Plaintiff stated to defendant Gordon that he is not appealing the

technically- erroneous previously posted D+ grade that was already admitted by Defendant

Gordon in cited May 2, 2017 emails above that it was a technical error and that "no Michaels in

the class received a D+ at all."

670.     By further email dated May 15, 2017, 2:48 AM, Plaintiff asserted his right to

appeal the grade and the duty of Defendant Gordon to comply with University policy and

procedures to address the academic issues raised in his grade appeal.

671.     In that May 15, 2017 email, Plaintiff cited to Defendant Gordon the case of

*Wozniak v. Conry*, 236 F.3d 888 (7th Cir.), *cert. denied,* 121 S.Ct. 2243 (2001) where the Court

held that "No teacher has a fundamental right to hand in random or skewed grades…" Defendant

Gordon ignored Plaintiff's grade appeal. (*See* within email thread Exhibit 16B).

672.     Having exhausted the MIS 535 grade appeal remedies directly with the course

instructor, Plaintiff's next recourse under the DeVry grade appeal process was to file a formal

grade appeal to the University.

*Plaintiff's Complaint.*

673.    By email dated December 1, 2017, 11:38 PM to Dr. Virgil Mensah-Dartey,

DeVry University's Assistant Dean of Academic Excellence, South East Group, Plaintiff

indicated his intent to appeal the Grade to a Dean.

674.    Having recovered from illness, on September 11, 2018, Plaintiff contacted the

DeVry University Student Central and discussed the matter with Dwone Ross Jr., Student

Support Advisor I, DeVry University, about moving the grade appeal forward.

675.    By email dated September 11, 2018, 8:22 PM, Mr. Dwone Ross Jr., wrote this to

defendant Gordon and copied Plaintiff Livingstone on that email:

> Good evening Professor Gordon,
> My name is Dwone Ross Jr. and I'm a Student Support Advisor here with DeVry. I'm emailing you tonight regarding a student that you taught in your MIS 535 – 62245 course back in March 2017. Michael Livingstone…contacted us regarding the grade in this course showing as a B, when he believes that he earned an A in the course.
> Michael also did mention that back near the time that the course first ended, he was originally awarded a grade of D, which he spoke with you and he stated that you input that grade accidentally, and then updated that to the B that is now showing. Again, the student believes he earned an A in this class. This being the case, I have sent over a Grade Change form via DocuSign that we would like you to complete with either your approval or denial of updating the grade as well as a brief explanation as to why. All of this can be completed on the document. Feel free to reach out to me with any questions or concerns. I've also Cc'd the student on this email to make sure we are all on the same page.
> Thank you,
>
> Dwone Ross Jr.| *Student Support Advisor I*
> P 877.883.3879 | E drossjr@devry.edu
> 1200 E. Diehl Rd | Naperville, IL 60563 | devry.edu

676.    Without copying Plaintiff, by email dated Wednesday, September 12, 2018 9:46

PM, Defendant Gordon replied directly to Mr. Dwone Ross stating the following:

> "Attached is the grade change form from 2017. The 'D' was not a mistake. I accepted a late major project report from the student and submitted the change to a 'B'.
> Regards, Rick "

*Plaintiff's Complaint.*

Mr. Dwone Ross forwarded this reply email directly to Plaintiff on Sep 13, 2018, 3:09 PM.

677.    Defendant Gordon misrepresented the grade because in his prior May 2, 2017
emails to Plaintiff cited above, the same defendant Gordon told Plaintiff that the D+ grade was
technical error committed by the University Registrar because "no Michaels in the class received
a 'D' grade at all" in the class. Yet, in his September 11, 2018 reply email to Dwone Ross,
Defendant Gordon stated that the "D+" grade was not a mistake because he actually submitted
that grade.

678.    Plaintiff replied by email dated Sep 13, 2018, 4:27 PM to Dwone Ross and cc'd
defendant Gordon on it. Plaintiff briefed Dwone Ross about the prior May 2, 2017 email
interaction regarding erroneous D + grade. (*See* within email thread Exhibit 16B).

679.    In that September 13, 2018 email, Plaintiff urged Dwone Ross to advise
Defendant Gordon to copy Plaintiff on all his future correspondence regarding the grade appeal
to promote transparency in the grade appeal process. (*See* within email thread Exhibit 16B).

680.    By email dated September 17, 2018, 10:40 AM, Plaintiff submitted a 5-page
Memorandum with seven exhibits to Defendant Dr. Dartey-Mensah and cc'd defendant Gordon
and Mr. Dwone Ross. (*See* within email thread Exhibit 16B).

681.    When Plaintiff did not hear from defendant Dr. Dartey-Mensah, on October 1,
2018, Plaintiff contacted the DeVry Central Student Support center to reach Mr. Ross again for
the next steps forward. However, in his absence, another Student Support Adviser, Ms. Colleen
Phelps, assisted Plaintiff.

682.    By email dated Monday, Oct 1, 2018, 4:25 PM sent through the DeVry Student
support email system, i.e. DVU Online Student Finance dvuonlinesf@adtalem.com, Ms. Colleen
Phelps, wrote this to Plaintiff(*See* within email thread Exhibit 16B):

*Plaintiff's Complaint.*

> Dear Michael,
>
> I am sorry you were not able to work out the grade dispute with your professor. As we discussed, you now have the option to file a formal grade appeal by submitting a request before Week 8 of the session following the course.
> Follow these steps to submit your grade appeal as soon as possible:
>> Log into the student portal at [my.devry.edu / my.keller.edu]
>> Select **Contact Us** on the left menu and click **Create Academic Case**
>> Click the **Cases** tab and click the **New Case** button
>> Select **DeVry & Keller Registrar Services** for the Department
>> Select **Grade Appeal** for the Request Detail
>> Fill in all of the information in the blank fields and click submit
> Note: By submitting a grade appeal, the entire body of your work for the class may be reviewed and your final grade has the potential to be raised, lowered or remain the same…

*683.* To the extent that anybody might claim that the formal grade appeal was time-barred because Plaintiff submitted it one-year after the class was over, this claim is misplaced as a matter of fact because Plaintiff started the grade appeal directly with the course instructor in 2017. Further, Mr. Dwone Ross and Ms. Colleen Phelps, speaking for the University, permitted Plaintiff to file the formal grade appeal in 2018.

*684.* Plaintiff filed his formal grade appeal to the University following the steps provided by Ms. Colleen Phelps and it was assigned a Case No. 08314829 at DeVry University.

*685.* By email dated October 11, 2018, 1:17 PM, Dr. Dartey-Mensah got back to Plaintiff's prior September 17, 2018 email *supra* and stated as follows:

> Hi Michael,
> Good to hear from you. Sorry for not getting back with a response earlier. I've been out of the country. I'll look into this and let you know as soon as possible.
> Regards,
> Virgil Mensah-Dartey, Ph.D. | *Assistant Dean of Academic Excellence, SE Group*
> P 404.270.2921 | VOIP 274.2921 | E vmensah-dartey@devry.edu

*Plaintiff's Complaint.*

1 W. Court Square | Decatur, GA 30030 | devry.edu

686.    By email dated October 16, 2018, 3:55 PM, Dr. Brent Ward wrote this to Plaintiff

that the grade appeal is assigned to him:

> Plaintiff Mike:
> My name is Brent Ward. I am a faculty chair and I handle student
> concerns like your grading concerns regarding MIS-535 from 2017.
> I am looking over your emails, and your course (just got access since it
> was before Canvas) and will keep you informed of the outcome.
> Thanks,
> Brent Ward, PhD
> Faculty Chair
> South East Group

687.    In a number of phone calls, Dr. Mensah-Dartey informed Plaintiff that Plaintiff's

grade appeal has been assigned to him.

688.    Plaintiff informed Dr. Mensah-Dartey that he needs written decision letter

addressing the issues in the memorandum he has submitted as grade appeal and if unfavorable

decision, then Plaintiff wants to appeal it to the external Accreditation Board, which requires

exhausting all internal administrative remedies at the University first.

689.    Dr. Mensah-Dartey called Plaintiff on the phone a number of times.

690.    In a January 5, 2019 phone call to Plaintiff, Dr. Mensah- Dartey calculated

Plaintiff's grade and observed that Plaintiff would get a final straight "A" grade for the class if

the 0/75 points for the only outstanding course project PowerPoint recording was submitted and

changed to 75/75 points.

691.    In a January 8, 2019 phone call, Dr. Mensah-Dartey asked Plaintiff to send him

evidence that Plaintiff in fact told Defendant Gordon that he was sick during the MIS 535 class.

By email dated Jan 7, 2019, 8:00 PM, Plaintiff sent the evidential email to Dr. Dartey-Mensah,

*Plaintiff's Complaint.*

which he replied: "Thanks, Michael! I'll continue to look into this and keep you updated." (*See* within email thread Exhibit 16B).

692.    During that January 8, 2019 phone call, Dr. Mensah-Dartey informed Plaintiff that he contacted defendant Gordon and he has sent him an email. Plaintiff objected on grounds of transparency and fair due process because Plaintiff previously advised that for transparency of procedures, Defendant Gordon should copy Plaintiff on all matters regarding the grade appeal because defendant Gordon falsified the grade in his prior May 2, 2017 emails to Plaintiff cited above unbeknownst to Plaintiff; the same defendant Gordon told Plaintiff that the D+ grade was technical error committed by the University Registrar because "no Michaels in the class received a D grade at all" in the class; yet, in his September 11, 2018 reply email to Dwone Ross, Defendant Gordon stated that the "D+" grade was not a mistake because he actually submitted that grade.

693.    In another January 8, 2019 telephone call, Dr. Mensah- Dartey told Plaintiff that the grade appeal has received a lot of visibility within the administration and administration has predetermined and instructed him to simply ignore Plaintiff and close the grade appeal without addressing it.

694.    Whereupon, Plaintiff asked Dr. Dartey-Mensah to give him a written decision letter in one week stating what he said on official DeVry letterhead so that Plaintiff can Appeal that letter to the Accreditation Board or to the Court. However, the decision letter was never written or sent to Plaintiff to date.

695.    After Plaintiff did not hear from Dr. Mensah- Dartey, Plaintiff sent email dated Jan 10, 2019, 5:37 PM to Dr. Mensah-Dartey cc'd to defendant Gordon and decried the unfair grade appeal procedures, lack of transparency, and expressed his regret.

*Plaintiff's Complaint.*

696.    In that January 10, 2019 email, Plaintiff finally requested written decision letter about the grade appeal to be sent to him in one week. However, DeVry never did that and so as of this day, the University has intentionally, maliciously, politically, and negligently chosen to ignore Plaintiff's grade appeal about MIS 535 all to Plaintiff's detriment.

697.    Whereas University Provosts are the Chief Academic Officers and final decision makers of grade appeals, to date, Dr. Mensah –Dartey never moved the grade appeal to the University Provost for review, the Provost never reviewed the MIS 535 grade appeal.

698.    Later, Dr. Mensah-Dartey told Plaintiff that the University says he should simply close the grade appeal without decision and if Plaintiff elects to sue, they have lawyers. Accordingly, the MIS 535 grade appeal was not adjudicated. It was ignored with bad-faith.

699.    The record shows that Plaintiff did his part to appeal the MIS 535 grade. Ultimately, the University did not give Plaintiff his due process grade appeal regarding MIS 535.

700.    As in Exhibit 16A, the final reviewer of a grade appeal should be the Provost or Chief Academic Officer of the University (Defendant Shantanu Bose). Yet, Dr. Mensah-Dartey failed to adjudicate the MIS 535 grade appeal and he also failed to refer it for final disposition by the Provost with letter from the provost like the one appended as the last page of Exhibit 16a.

701.    Plaintiff also brings this complaint for this Court to enjoin Defendants to publish into their grade appeal procedures timelines for the University's respondents to address grade appeals.

702.    The Keller Academic Catalog and the Student Handbook provides that grades can be changed retroactively any time before a student graduates. Accordingly, the MIS 535 grade can be changed.

*Plaintiff's Complaint.*

703.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against

Defendants DeVry University, Adtalem Global Education Inc. and its Keller Graduate School of

Management; Board Of Trustees, jointly, severally and/or severally, for compensatory and

punitive damages in an amount in excess of $150,000 exclusive of interest and costs;

preliminary, declaratory, and permanent injunctive relief to enjoin defendants to issue the default

straight "A" Grade for MIS 535 class within 1-2 weeks of the Court's order; an award of

reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other

and further relief as the Court may deem just and equitable.


## COUNT TWENTY-TWO

### NEGLIGENT FAILURE TO ACT UPON ALLEGATIONS OF DISCRIMINATION

**(Michael O. Livingstone v. DeVry University; Keller Graduate School of Management; Adtalem)**

704.    Plaintiff incorporates herein by reference each and every one of the allegations

contained in preceding paragraphs as though fully set forth at length herein.

705.    The conduct of Defendants, as set forth hereinabove, constitutes conduct which

deprived Plaintiff's rights in the manner described in the following paragraphs:

706.    In a number of emails, Plaintiff informed Dr. Mensah-Dartey that he has suffered

invidious discriminatory animus, black stereotypes, and deep-seated antagonism from defendant

Gordon (example: emails dated Jan 8, 2019, 1:05 PM; and email dated Jan 10, 2019, 5:37 PM).

707.    Dr. Mensah-Dartey did not address Plaintiff's allegations of discrimination,

neither did he refer the discrimination claim in that grade appeal to the University's designated

*Plaintiff's Complaint.*

Officer in charge of investigating and addressing reports of racial discrimination at DeVry at least.

708.    Plaintiff avers that anti-discrimination laws require Universities that participate in federal student financial aid programs to investigate and take action against complaints or allegations of discrimination when a student alleges discrimination. Yet, this never happened and cannot happen now in apparent response to this suit.

709.    Defendant Agresta impermissibly went into Plaintiff's DeVry private student email account and saw Plaintiff's emails to Dr. Mensah-Dartey wherein Plaintiff asserts his right to complain to the OCR about the discrimination he believes he experienced from Defendant Gordon. Defendant Agresta also failed to act upon the allegations and rather submitted the emails within the June 2019 conduct packet without the knowledge of Dr. Mensah-Dartey.

710.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants DeVry University, Adtalem Global Education Inc. and its Keller Graduate School of Management; Board Of Trustees, jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $2 million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief to enjoin defendants to issue the default straight "A" Grade for MIS 535 class within 1-2 weeks of the Court's order; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

*Plaintiff's Complaint.*

## COUNT TWENTY-THREE

### HIGHER EDUCATION LAW;
### NEGLIGENT COURSE REGISTRATION PRACTICE

**(Michael O. Livingstone v. Defendants DeVry, Adtalem, Keller, DeVry University Board of Trustees; Shantanu Bose)**

*711.*　Plaintiff incorporates herein by reference each and every one of the allegations contained in preceding paragraphs as though fully set forth at length herein.

*712.*　The conduct of Defendants, as set forth hereinabove, constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs:

*713.*　Plaintiff enrolled in the accelerated MATH 533-Applied Managerial Statistics o graduate course in the November 2018 session ("MATH 533") at DeVry University's Keller Graduate School of Management.

*714.*　MATH 533 was an 8-week accelerated online graduate course from October 29, 2018 – December 22, 2018.

*715.*　The course instructor for the MATH 533 class was Kathrine Henson-Mack, PhD, who is an Associate tenured Professor at DeVry University.

*716.*　All regionally-accredited Universities are required to provide students with a *drop-add* period after classes start. Yet, DeVry University, Keller Graduate School of Management and its Board of Trustees do not provide this drop-add period after classes start.

*717.*　The University only provides a one-week preview period for students to add or drop a class *before* classes start.

*718.*　The weekly content of every class is categorized into weekly modules. These modules only open each week of the ongoing class itself.

*Plaintiff's Complaint.*

719. By opening the weekly course content only after the class actually begins and without allowing students to add-drop a class after they have actually interacted with the course material and the Course instructor, students are deprived their right to add or drop a class on their own after interacting with the course material and the course instructor to decide whether the class and the teacher is a good fit for them, or to register for a different class section.

720. Initially, Plaintiff self-registered on time for ACCT 504 during that November 2019 session. Mr. Laurence Lazofson was the course instructor for that ACCT 504 class section.

721. Plaintiff met the requirements for Week 1 of ACCT 504 class with Mr. Lazofson. Plaintiff timely completed the textbook readings and weekly discussion postings.

722. By email dated October 31, 2018, 2:33 PM, Plaintiff submitted his Americans with Disability (ADA) accommodation letter to Mr. Lazofson. (*see* within Exhibit 16C).

723. Plaintiff perceived hostile educational environment/ADA discrimination after Plaintiff sent Mr. Lazofson his ADA accommodation letter which extended all weekly course assignment deadlines for the class to next Thursdays of each week, to avoid tensions, Plaintiff wanted to swap to another section of the same ACCT 504 with a different teacher during the November 2018 session.

724. Plaintiff contacted DeVry Central Student Support Center about the situation and he was registered for a different section of that ACCT 504 class without the approval of the course instructor. However, Plaintiff noticed that he is far behind the course material for that new section and so Plaintiff decided to return to the previous section of the same ACCT 504 Class with Mr. Lazofson.

725. Plaintiff contacted DeVry Central Student Support center and he was transferred to Mr. Jeffrey Greenberg, Director of Student Central, DeVry University.

*Plaintiff's Complaint.*

726.    Mr. Greenberg informed Plaintiff that although Plaintiff had met the course requirements on time, Plaintiff's weekly discussion postings might be lost in the course system even if Plaintiff returned to his original ACCT 504 class with Mr. Lazofson to continue the course.

727.    Mr. Greenberg further explained that given that the ACCT 504 class was ongoing, and Week 1 was almost ended, swapping to a different section of the same class was therefore considered as "late registration" for a class, which requires the written approval of both a faculty chair and the course instructor for that class, and so he would contact the previous course instructor, Mr. Lazofson, and faculty chairperson to seek their approval for Plaintiff to return to his original ACCT 504 class with Mr. Lazofson.

728.    In an email dated November 2, 2018, 3:35 PM, Mr. Greenberg replied to Plaintiff and explained that switching back to the previous ACCT 504 Class with Mr. Lazofson is considered as *late* class registration. Both the faculty chairperson and course instructor, Mr. Lazofson have declined to approve it all course work was already timely completed. (*See* within Exhibit 16C).

729.    Mr. Greenberg's November 2, 2018 email also informed Plaintiff that although Mr. Lazofson declines to allow Plaintiff to return to his class, Mr. Lazofson has retrieved and copied Plaintiff's timely discussion postings for Plaintiff to continue in a different section of the same ACCT 504 class with different course instructor. (*see* within Exhibit 16C).

730.    Notwithstanding the University's denial of Plaintiff's request to join the initial ACCT 504 class with Mr. Lazofson whereas Plaintiff had already completed weekly coursework on time, the University still late-registered Plaintiff for a different class altogether (i.e. MATH 533) in that November 2018 session without the requisite approval of the course instructor (Dr.

*Plaintiff's Complaint.*

Henson-Mack), rather than registering Plaintiff back into the initial ACCT 504 class with Mr. Lazofson where Plaintiff had completed course work on time.

*731.* Notwithstanding the University's policy that late class registration requires written approval of both the Course Instructor and a Faculty Chairperson, the University still registered Plaintiff late for a totally different class altogether (MATH 533) class in the November 2018 session without the written approval of the course instructor, Dr. Henson-Mack, and without a written approval of any faculty chairperson.

*732.* Plaintiff avers that logically; the University should have rather re-registered Plaintiff to return to the initial ACCT 504 class with Mr. Lazofson because Plaintiff had already met all course requirements that were retrieved by Mr. Lazofson despite Mr. Greenberg's concern that Plaintiff's timely completed coursework would be lost as a result of initially dropping that class with Mr. Lazofson.

*733.* Plaintiff was unable to catch up with speed in the late-registered MATH 533 class.

*734.* Plaintiff was ultimately unsuccessful in that MATH 533 Class such that even with an incomplete grade, Plaintiff was still unable to complete the course work.

*735.* Plaintiff avers that the University knowingly and recklessly late-registered Plaintiff for that MATH 533 class without the written approval of the course instructor, Dr. Kathrine Henson-Mack, and a faculty chairperson, all to the detriment of Plaintiff, which drastically –reduced Plaintiff's strong academic GPA.

*736.* Ultimately, what happened here is, on grounds of late registration and inability of student to perform after late class registration, the University declined to put Plaintiff back into his initial ACCT 504 class with Mr. Lazofson for Plaintiff to continue from where he left when

*Plaintiff's Complaint.*

he dropped that class upon perceiving some hostility against him from Dr. Lazofson over his ADA accommodation notice, despite the fact that both Jeffrey Greenberg and Mr. Lazofson were able to retrieve Plaintiff's timely completed work from the Lazofson ACCT 504 class.

737.    Yet, the same University ended up doing late registration for Plaintiff late to join a totally new class: MATH 533. Plaintiff did not succeed in MATH 533 with many outstanding coursework and the Incomplete- fail grade has drastically reduced his GPA.

738.    The University should be blamed for registering Plaintiff late MATH 533 knowing very well the risk of failure for such late class registrations.

739.    As a result, Plaintiff brings this suit for this Court to order the University to unlock the MATH 533 class for Plaintiff to complete the outstanding coursework without retaking and repaying tuition and fees again. So, that Plaintiff can also graduate on time.

740.    As a US Citizen and Graduate Student, Plaintiff has constitutionally- protected interest and liberty interest in his GPA.

741.    As a graduate student and U.S.Citizen, Plaintiff has a protected interest in his timely graduation for his MBA degree for which success in the MATH 533 class is core requirement to graduate.

742.    As a direct and proximate result of defendants' unlawful conduct as described herein of registering Plaintiff late for the MATH 533 class despite the University's own registration practices though Mr. Greenberg that such late registration requires both approval of the course instructor and a faculty chair, Plaintiff could not complete outstanding coursework in MATH 533. (*see* within Exhibit 16C).

743.    As a direct and proximate result of defendants' unlawful conduct as described herein Plaintiff's strong GPA has suffered, and continues to suffer, irreparable injury which

*Plaintiff's Complaint.*

cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief to retroactively remove the MATH 533 class from his record, as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable Attorneys' fees.

744.    As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Michael O. Livingstone has been caused and will continue indefinitely into the future to be caused severe mental anguish, humiliation, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

745.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants DeVry University, Keller Graduate School of Management, Adtalem Global Education Inc., jointly, severally and/or severally for compensatory and punitive damages in an amount in excess of $ 500,000 exclusive of interest and costs; preliminary, declaratory, and injunctive relief to enjoin the university to unlock the MATH 533 class for Plaintiff to submit all outstanding coursework for MATH 533 for the University to change the incomplete -fail grade within 1-3 weeks of the Court's Order in December 2019; an award of reasonable attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

## COUNT TWENTY-FOUR

### FRAUDULENT CONCEALMENT;
### HIGHER EDUCATION LAW

**(Michael O. Livingstone v. DeVry; Keller; Adtalem Education Group Inc.; Board of Trustees of DeVry University; Shantanu Bose)**

746.    Plaintiff incorporates the foregoing allegations herein as if fully set forth herein.

*Plaintiff's Complaint.*

747.    The conduct of Defendants, as set forth hereinabove, constitutes conduct which deprived Plaintiff's rights in the manner described in the following paragraphs:

748.    The University intentionally and knowingly concealed material facts from Plaintiff that were known by Defendants or should have been known by Defendants around 2015 when Plaintiff was being admitted or matriculating into the University.

749.    DeVry University and its Keller Graduate School of Management claim that the University's MBA program is "accredited."

750.    The fact is, the University's MBA program is not highly accredited by the Association to Advance Collegiate Schools of Business's (AACSB). [15]

751.    Defendants intentionally and knowingly concealed from their 2015 Catalogs and Handbooks that regardless of Grades, course credits earned from DeVry University's MBA program do not transfer to other highly accredited MBA programs by the AACSB.

752.    Around 2016, when Plaintiff wanted to transfer his MBA classes from DeVry University to Rutgers University in New Brunswick, New Jersey, or Vanderbilt University (Tennessee), for example, Rutgers informed Plaintiff that AACSB highly accredited MBA programs such as Rutgers MBA program do not accept any credits from non-AACSB accredited programs like DeVry University's MBA Program. [16] Consequently, Plaintiff will have to start all over again if he chose to transfer from DeVry to pursue the MBA degree from Rutgers University.

753.    Plaintiff was therefore forced and compelled to stay at DeVry to complete his MBA so that he would not lose his credits and the substantial debt he has incurred.

---

[15]    See, https://www.aacsb.edu/accreditation/accredited-schools

[16]    See, https://www.business.rutgers.edu/part-time-mba/frequently-asked-questions

*Plaintiff's Complaint.*

*754.* Similar issue with loss of transfer credits by failure to disclose happened to another DeVry student that resulted in the federal case of *Daghlian v. DeVry University, Inc.*, 582 F. Supp. 2d 1231 (C.D. Cal. 2008), and the Courts redress Daghlian's grievance about that.

*755.* Defendants have a duty to disclose the concealed information because Plaintiff did not know of the concealed facts prior to purchasing a DeVry education program and related services, nor could Plaintiff reasonably be expected to learn or discover such concealed facts prior thereto.

*756.* Plaintiff would not have purchased the education program and related services, nor would not have paid as much therefor, had Plaintiff known of the concealed information.

*757.* Plaintiff justifiably relied on the facts as he knew them at the time, and as a direct and proximate result of Defendants' fraudulent concealment of this material facts, Plaintiff has suffered actual injury-in-fact and damages, including but not limited to, monetary loss in connection with purchases of the education program and related services he would not have purchased absent Defendants' concealment, fraudulent omissions, and non-disclosures, or would not have paid as much for such purchases.

*758.* WHEREFORE, Plaintiff is entitled to, and hereby seek, actual damages, punitive damages, treble damages, reasonable attorneys' fees and costs, tuition and fees abatement and any and all further equitable relief that this Court deems appropriate.

*Plaintiff's Complaint.*

## COUNT  TWENTY FIVE

**OVERBREADTH & VAGUENESS OF ARTICLE II & ARTICLE III OF DEVRY UNIVERSITY STUDENT CODE OF CONDUCT**
**(Michael O. Livingstone v. DeVry; Keller; Adtalem,**
**Board of Trustees of DeVry University)**

*759.* Plaintiff incorporates the foregoing allegations herein as if fully set forth herein.

*760.* Plaintiff brings a constitutional challenge against Article II and Article III of the DeVry University's Student Conduct Code because it is unconstitutional and facially overbroad and vague, and problematic.

*761.* By charging a student with "threat" and "intimidation" without specifying that it is a "threat of physical violence," that is overbroad and vague in the sense that anything at all can be considered by anybody as threatening in violation of the Article III of Student Conduct Code. Hence, the University has repeatedly pursued disciplinary actions against Plaintiff's "threat to sue the University in Court" or Plaintiff's "threats to report racial discrimination," for example.

*762.* Similarly, Article II of the University's Student Code of Conduct is hereby challenged as unconstitutionally overbroad, vague, and problematic in the sense that by charging a student with piracy, the code simultaneously adds a charge of forgery. Nothing in Exhibits 8a-8M and Exhibit 12E constitutes piracy and forgery, for example. Yet, Plaintiff was charged for all of this.

*763.* Plaintiff avers that even if student codes are not criminal codes that require specificity, Articles II & III of the DeVry student code of conduct are still problematic in the sense that it is stigmatizing against constitutionally-protected liberty interests of students' record.

*764.* WHEREFORE, Plaintiff brings this complaint for the Court to enter an Order declaring that Articles II & III of DeVry University's Student Code of Conduct is

*Plaintiff's Complaint.*

unconstitutionally -vague and overbroad as written and as applied by DeVry University and that future enforcement is enjoined pending replacement with a provision that adequately protects students' rights to procedural and substantive due process and freedom of expression and liberty interests.

## COUNT TWENTY -SIX

### NEGLIGENCE OF DUTY

**(Michael O. Livingstone v. Arissa Bryant; DeVry University; Keller; Adtalem.; Agresta)**

*765.*    Plaintiff incorporates the foregoing paragraphs herein as if fully set forth herein.

*766.*    Plaintiff also brings this negligence of duty claim against Defendant Arissa Bryant, the DeVry University, and its subsidiaries.

*767.*    In June 2019, the University sanctioned Plaintiff with a disciplinary warning letter that outlines a "channel of communication" for Plaintiff to follow when there is a problem (Exhibit 5E).

*768.*    The June 2019 warning letter (Ex. 5E) specifically designated Ms. Arissa Bryant as Plaintiff's Student Support Adviser to reach when Plaintiff's direct attempts to resolve matters with a course instructor fails. *Id.*

*769.*    The University imposed a duty upon Defendant Bryant as the student support adviser for Plaintiff to reach when there is a problem for Ms. Bryant to connect Plaintiff to the correct complaint administrator (Exhibit 5E).

*770.*    By naming Defendant Arissa Bryant as Plaintiff's designated student support adviser to act as Plaintiff's coordinator and advocate to connect Plaintiff to the correct complaint

*Plaintiff's Complaint.*

administrator when there is a problem, defendant Bryant and the University had a duty to Plaintiff to the correct Complaint Administrator.

771.    In October 2019, when Plaintiff reached out to Ms. Bryant by emails and DeVry Central phone lines to seek her assistance and coordination regarding Dr. Havel, Ms. Bryant never responded to Plaintiff's emails and phone call (Exhibit 7D) knowing very well that something was going on; thereby, leaving Plaintiff to find his own appropriate administrator to address Plaintiff's concerns against Dr. Havel.

772.    During the November 14, 2019 conduct hearing and within Plaintiff's memorandum to the Panelists (Ex. 14B), Plaintiff informed Defendant Agresta that Ms. Bryant failed to get back to him despite the fact that Defendant Agresta named her on the warning letter (Ex. 5E) as Plaintiff's student support adviser to assist Plaintiff. Yet, Defendant Agresta and the Panelists (Defendants Russell, Schmitz, and D'Souza) did nothing about it.

773.    The adverse sanctions notice (Ex.14C) erroneously claims that Plaintiff did not follow proper channels of communication to reach the correct complaint administrator, but rather, the National Dean (Lenore Goldberg). Meanwhile, it was the duty of Defendant Arissa Bryant to find and connect Plaintiff to the correct Complaint Administrator (Ex.5E). Yet, she failed to perform that duty and Defendant Agresta and the University did nothing about her negligence.

774.    At the time, Plaintiff also contacted New Brunswick, NJ campus and they connected him to DeVry central and he created a case number for the University to connect Plaintiff to the correct complaint Administrator.

775.    Defendant Agresta should be held liable by this Court for imposing a perfunctory channel of communication upon Plaintiff Livingstone and for his reckless failure to take action

*Plaintiff's Complaint.*

against the non-performance of the Student support adviser and actors within that perfunctory channel of communication.

776.    By direct and proximate cause of the negligent failure of Ms. Bryant to respond to Plaintiff's emails and to assist him to find an appropriate complaint administrator to address Plaintiff's concerns against Dr. Havel at the time, this resulted in Plaintiff sending more emails and strings of emails to find solutions from other administrators including Plaintiff contacting the Keller's National Dean (Ms. Lenore Goldberg), which in turn led to adverse disciplinary action (Exhibit 14C).

777.    As a further direct and proximate result, this led to the University summoning, sanctioning, and seizing Plaintiff for disciplinary hearing (Exhibits 14C, 7F, 7D, 8A-8M), which has in turn wasted Plaintiff's time, stigmatized Plaintiff's record, and distracted Plaintiff's academic focus.

778.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants Adtalem, DeVry University, Keller Graduate School of Management, jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $1 million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief order by this Court enjoin the University to vacate and expunge Plaintiff's November 2019 disciplinary record and sanctions without making any references to it; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; and such other and further relief as the Court may deem just and equitable.

*Plaintiff's Complaint.*

## COUNT TWENTY-SEVEN

### FALSE ADVERTISING PER SE; PUFFING

### (Michael O. Livingstone v. Adtalem; DeVry University; Keller Graduate School of Management; Board of Trustees of DeVry University )

*779.*     Plaintiff incorporates herein by reference the foregoing paragraphs as if fully set forth herein.

*780.*     Defendants recklessly and erroneously use the big title "Professor" for anybody who teaches at the University.

*781.*     It is not clear who is a tenured Professor and who is not a tenured Professor at the University.

*782.*     To the best of Plaintiff's knowledge, both the published Academic Catalogs and the Handbook of the University are silent about who is a real and fully tenured Professor and who is not.

*783.*     The University also uses the Title "Visiting Professor" for most course instructors whereas it is not clear from the handbook what constitutes a "visiting Professor" and whether they are literally on a visit or not. Within the attached emails to this complaint, Defendant Havel, for example, signs off his emails as "Visiting Professor."

*784.*     When the title "Professor" is used within academic circles, it generally means a full "tenured Professor."

*785.*     Back in the year 2018, Defendant Agresta, for example, used to call himself "Professor" and sign-off on his emails as "Professor Agresta."

*786.*     In June 2019, when Plaintiff addressed Agresta as "Professor Agresta," he informed Plaintiff that he is "no longer Professor." Generally, once a tenured Professor, always a

*Plaintiff's Complaint.*

Professor. Real academic tenured Professors retire in their professorship as "Professor Emeritus."

787.    Part of tenureship metrics in academia is knowledge of University policy and procedures and ability to work with students. Real tenured Professors know University policies and University procedures, which minimizes problems such as the problems caused by the University to Plaintiff in this complaint.

788.    As a result of the misleading and reckless misuse of the title "Professor" within DeVry University and its Keller Graduate school of Management by any course instructor, Plaintiff has encountered many unnecessary problems with course instructors at DeVry University who call themselves big title "Professors." Yet, they are not tenured and they are not conversant with University policy.

789.    Defendant Havel, for example, claimed in October 2019 that he does not know how to make extensions in both Canvas and Cengage synchronized software that was being used for the Homework and Quizzes in FIN 515 and he ambiguously asked Plaintiff to tell IT helpdesk to mirror the extensions. Real tenured Professors are trained about technical software and they take charge of the systems that are used for their class without sending students out to software vendors to mirror anything.

790.    As a result of the misleading and reckless misuse of the title "Professor," Plaintiff has been misled to take classes with course instructors, who are not real Professors, thereby compromising the quality of education for which Plaintiff paid.

791.    Defendant Board of Trustees of DeVry University has recklessly failed to proscribe and distinguish to students what a Professor really means and what a Visiting Professor means.

*Plaintiff's Complaint.*

792.    Albeit, the University has some good tenured Professors such as MATH 533

Associate Professor, Dr. Henson-Mack. Plaintiff never had any issues with Dr. Henson-Mack.

793.    WHEREFORE, Plaintiff brings this cause of action for this Court to enjoin the

University to allow only course instructors on tenureship to use the title "Professor" including

award of such other and further relief as the Court may deem just and equitable.

## COUNT TWENTY EIGHT

### TORTS OF MALFEASANCE AND/OR MISFEASANCE
### AND/OR NONFEASANCE; ALTER EGO

### (Michael O. Livingstone v. ALL DEFENDANTS)

794.    Plaintiff incorporates herein all the foregoing paragraphs as if fully set forth

herein.

795.    Plaintiff avers that all Defendants, by not following the proper procedures

authorized by their own Handbooks, Catalogs, Letters, channels of communication, and the law,

as Officers, Supervisors, in the disciplinary proceedings and grade appeals, as well as inaction

and repeated inaction against Plaintiff's allegations of discrimination have committed the torts of

malfeasance and/or misfeasance and/or nonfeasance.

796.    Plaintiff avers that in the event whereby this Court admits any of the causes of

action in this complaint as a viable claim, then this cause of action should also stand as well.

*Plaintiff's Complaint.*

## COUNT TWENTY-NINE

### 42 U.S.C. § 1983) to vindicate Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99)
### (Michael O. Livingstone v. Jonathan Agresta, DeVry, Keller)

*797.*   Plaintiff incorporates herein all the foregoing paragraphs as if fully set forth herein.

*798.*   Plaintiff never asked anybody to designate his campus location to the University's Philadelphia, Pennsylvania, center campus in the University's systems at all.

*799.*   Under FERPA regulations, Plaintiff had to authorize or complete forms to authorize the University make him a Philadelphia location student. Plaintiff never authorized it and will never authorize it.

*800.*   In 2018, somebody changed Plaintiff's campus location as online student to Philadelphia campus without Plaintiff's FERPA authorization.

*801.*   Plaintiff only visited the Philadelphia campus sometime and he was not impressed by the limited hours of library and study areas and way of doing things. So, he did not complete any forms authorize anybody to change his campus location to Philadelphia at all.

*802.*   In 2019, Plaintiff authorized his DeVry campus location to be changed to New Jersey, as Plaintiff is based in New Jersey and online student.

*803.*   Plaintiff believes and therefore aver that Defendant Agresta has been manipulating the University's system to change Plaintiff's campus location and code Plaintiff to Philadelphia campus unto himself so that Plaintiff issues can be connected to him to carry out his deep-seated animosity and clandestine activities against Plaintiff.

*804.*   Plaintiff hereby denies and revokes his FERPA waivers from Defendant Agresta and Plaintiff declares that Defendant Agresta should never handle Plaintiff's files and records

*Plaintiff's Complaint.*

again except when necessary for issues that are pending before this court only for which he was involved.

805.    Plaintiff asserts that he wants to have nothing to do with Defendants Agresta going forward except for issues pending before this Courts.


## COUNT THIRTY

### RACIAL DISCRIMINATION UNDER CIVIL RIGHTS ACT OF 1964 WITH DISPARATE TREATMENT

### (Michael O. Livingstone v. Defendants Adtalem, DeVry, Keller)

806.    Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

807.    Plaintiff incorporates herein by reference Exhibit No. 31.

808.    In  July 2020-August 2020 session, Plaintiff enrolled in the  online accelerated eight (8) week module graduate level class called Business Planning Seminar ("MGMT 600") at Defendant Keller Graduate School of Management, DeVry University.

809.    Defendant Dr. Finlay was the course instructor for MGMT 600 class.

810.    Defendant Dr. Finlay placed all students into groups or teams to communicate and work together on a business simulation project called "CAPSIM capstone" through Weeks 3-7 modules of the MGMT 600 course.

811.    Plaintiff was part of a group of students in the MGMT 600 class called "Chester group" consisting of defendants Mr. Sean Mulhern; Ms. Ibironke Majekodunmi (aka "Ronke"); and Mr. Huynh Thanh Ho collectively called "Students."

812.    As part of the long-standing academic norms and culture of the University, the University requires all MGMT 600 class students within all groups to execute contractual

*Plaintiff's Complaint.*

agreements called a "Charter" committing to operate within certain rules the student group members themselves formulate including how the group would communicate (i.e. telephone, text messaging, and/or email), deadlines, tasks, and how the group would address and manage conflicts. *See* Exhibit 30.

813.     The University views, considers, and characterizes the Charter as a "contract" on the course pages.

814.     All members of the Chester group in the MGMT 600 class adopted a conflict management protocol within the contractual charter that makes provision that the Chester Group would address its own conflicts through a meeting with the group leader and if unresolved, then the group would escalate it to the course instructor defendant Dr. Finlay (Exhibit 30).

815.     Plaintiff's Chester group of students also committed to exercise "positivity" in all endeavors  with  group members (Exhibit 30).

816.     Defendant Dr. Finlay formed the Chester Group with students that are not geographically located within the same time zones. Defendants Ronke and Mulhern are within the Pacific time zone. Defendant Mr. Ho and Plaintiff Livingstone are within the Eastern Time Zone (EST).

817.     It was the norm of the Chester group to send and receive text messages anytime (*see* generally Exhibit No. 31).

818.     Around August 13, 2020, Plaintiff sent a text message to Defendant Mulhern and the Chester group around 1:00am EST which is about 9PM in PST time zone (Exhibit No. 31, at pp.41-43).

819.      Defendant Mr. Ho took angry issue with the 1:00amEST time and reported Plaintiff to Defendant Dr. Finlay (Exhibit No. 31 at pp.41- 43).

*Plaintiff's Complaint.*

820.    Around August 15, 2020, without asking for Plaintiff's side of the story, Defendant Dr. Finlay took adverse action and removed Plaintiff from the Chester group to work on his own regarding assignments for Weeks 7 & 8 modules of the MGMT 600. (*See* Exhibit 23). Defendant Finlay also stated that a formal student code of conduct complaint has been filed against Plaintiff. *See* Exhibit 23.

821.    On August 15, 2020, Defendant Finlay sent an email directing Plaintiff not to communicate with the students of Chester group. However, the three (3) students continued to copy and send text messages to Plaintiff. Plaintiff did not respond (ECF No. 22-1, pp.41-43).

822.    On August 23, 2020, Plaintiff sent an email asking Dr. Finlay to equally direct the three students not to communicate with him after Plaintiff continued to receive text messages from them.

823.    On August 26, 2020, Plaintiff continued to receive a series of text messages from Defendants Mulhern and Ronke to all members of the Chester Group including Defendant Mr. Ho around 1:13am EST (*see* Exhibit No. 31, Pages 42-43).

824.    Plaintiff observed that defendant Mr. Ho did not complain after another member of the Chester group (Defendant Mulhern) also sent text message around **the 1:00am** EST to the Chester group members (Exhibit No. 31, Page 43).

825.    Plaintiff avers that if it was an offense to defendant Mr. Ho when a black student like Plaintiff Livingstone sent text message at 1:00am EST to the Chester group and so the adverse action was taken against Plaintiff for him to be removed from the group, then it should have equally been an offense to Defendant Mr. Ho when a similarly-situated white Caucasian student (i.e. defendant Mulhern) also sent text messages to the group around 1:00amEST.

*Plaintiff's Complaint.*

826.     When Defendant Mulhern (a Caucasian white male in the same Chester Group) also sent text messages around 1:13amEST of August 26, 2020, Defendant Mr. Ho did not complain to defendant Dr. Finlay for defendant Mulhern to be removed from the Chester Group as well. Instead, Defendant Mr. Ho sent a "thank you guys a lot" message in reply (see Exhibit No. 31, Page 43).

827.     Plaintiff avers that he experienced *white privilege* against him when Defendant Mr. Ho reported him to defendant Dr. Finlay for sending text messages around 1amEST. Yet, Defendant Mr. Ho did not complain or report Defendant Mulhern for sending text messages too around 1:00amEST in the Chester group.

828.     Plaintiff avers that he was stereotyped as a black male student when defendant Mr. Ho reported him for sending text messages in the Chester group around 1:00amET. Yet, defendant Mr. Ho appreciated it when defendant Mulhern sent text messages around 1:00am too.

829.     Plaintiff avers that no white privilege should exist at Defendant DeVry University and its Keller Graduate School of Management even among student groups.

830.     By email dated September 1, 2020, 4:27 PM (*see* "Exhibit 20"), Plaintiff presented a formal discrimination complaint and a code of conduct complaint to Defendant Finlay and the University regarding the alleged discriminatory and disparate treatment he experienced from defendant Mr. Ho (Exhibit 20).

831.     Plaintiff asked the University to let its designated Civil Rights Officer get back to him regarding his formal discrimination complaints in three (3) days (Exhibit 20). Nobody got back to Plaintiff.

832.     When defendant Ho reported Livingstone to defendant Finlay for sending text message around 1:00amET, defendant Finlay took adverse action against Livingstone by

*Plaintiff's Complaint.*

removing him from the Chester group to continue the rest of the MGMT 600 class on his own (*see* Exhibit 21). However, when Plaintiff Livingstone reported defendant Mr. Ho to Dr. Finlay and the University alleging racial discrimination and violation of the University's anti-discrimination policy in the Student Handbook and Catalogs, defendant Finlay and the University did not take any action at all.

833.    Dr. Finlay ignored Plaintiff's formal discrimination complaints.

834.    The University ignored Plaintiff's discrimination complaint.

835.    Plaintiff avers that all students should be treated the same way, receive the same adverse action for the same offense regardless of being black, white, Latino, Asian, male, or female.

836.     By direct and proximate cause of the alleged discriminatory and disparate treatment, Plaintiff's academic work and focus was immensely distracted in the MGMT 600 class  with  lower  B - grade  and other adverse effects.

837.    As a direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief order by this Court as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable Attorneys' fees

838.    By direct and proximate cause of the University's negligent failure to act upon Plaintiff's discrimination complaint, Plaintiff feels that the University has insulted his humanity.

839.    As a direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and

*Plaintiff's Complaint.*

permanent injunctive relief order by this Court against Weeks 7-8 scores as well as damages in

an amount to be determined by the Court and reasonable costs of this lawsuit, including

reasonable Attorneys' fees.

840.    As a further direct and proximate result of Defendants' unlawful conduct as

described herein, Plaintiff Michael O. Livingstone has been caused and will continue indefinitely

into the future to be caused severe mental anguish, anxiety, stress, and emotional and/or

psychological distress, all with associated physical symptoms.

841.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all

Defendants Adtalem, DeVry University, Keller Graduate School of Management, and Defendant

Havel jointly, severally and/or severally, for compensatory and punitive damages in an amount

in excess of $10 million exclusive of interest and costs; preliminary, declaratory, and permanent

injunctive relief to change the MGMT 600  grade to "A"; an award of reasonable Attorneys'

fees, costs and other costs and disbursements in this action; and such other and further relief as

the Court may deem just and equitable.

## COUNT THIRTY ONE

### NEGLIGENT FAILURE TO ACT UPON DISCRIMINATION COMPLAINT UNDER CIVIL RIGHTS ACT OF 1964

### (Michael O. Livingstone v. Defendants Adtalem, Keller, DeVry)

842.    Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully

set forth herein.

843.    Plaintiff avers that the U.S. Department of Education requires all Universities that

participate in Title IV programs to have a designated anti-discrimination officers.

*Plaintiff's Complaint.*

844.     By email dated September 1, 2020 at 4:27 PM Plaintiff presented a formal

discrimination complaint and a code of conduct complaint to Defendant Finlay and the

University alleging discriminatory and disparate treatment he experienced from defendant Mr.

Ho in the Chester Group of the MGMT 600 class.

845.     In that email Exhibit 20, Plaintiff asked the University to let its designated Civil

Rights Officer get back to him regarding his formal discrimination complaints in three (3) days.

Nobody got back to Plaintiff.

846.     Defendant Dr. Finlay ignored Plaintiff's formal discrimination complaints.

847.     The University ignored Plaintiff's discrimination complaint.

848.     Plaintiff reminded Assistant National Dean of Keller, Ms. Patti Meyer, that he

filed a formal discrimination complaint and so he would like his discrimination complaint to be

addressed as well (Exhibit 25). Yet, Plaintiff received no response regarding his discrimination

complaint.

849.     By direct and proximate cause of the alleged discriminatory and disparate

treatment, Plaintiff's academic work and focus was immensely distracted in the MGMT 600

class.

850.     By direct and proximate cause of the University's failure to act upon Plaintiff's

discrimination complaint, Plaintiff feels that the University has insulted his humanity.

851.     As a direct and proximate cause of Defendants' unlawful conduct as described

herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully

compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and

permanent injunctive relief order by this Court against Weeks 7-8 scores as well as damages in

*Plaintiff's Complaint.*

an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable Attorneys' fees.

852. As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff feels he is not counted as one of the human beings with rights at the University, and Plaintiff is not covered under the sense of community in the University.

853. Plaintiff brings this cause of action for this Court to enjoin Defendants to create the University's own neutral anti-discrimination officer and office.

854. WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants Adtalem, DeVry University, Keller Graduate School of Management, and Defendant Havel jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $10 million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; change of his MGMT 600 grade, and such other and further relief as the Court may deem just and equitable.

## COUNT THIRTY-TWO

### BREACH OF THE DUTY OF GOOD-FAITH & FAIR-DEALING; BREACH OF CONTRACT

**Michael O. Livingstone v. defendants Mulhern, Ho, Ronke, DeVry, Keller, Adtalem**

855. Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

856. As a part of the long-standing academic norms and culture of the University, the University requires all MGMT 600 class students within all groups to execute contractual agreements described as a "Charter" committing to operate within certain rules the student group

*Plaintiff's Complaint.*

members themselves formulate including how the group would communicate (i.e. telephone, text messaging, and/or email), deadlines, tasks, and how the group would address and manage conflicts. *See* "Exhibit 30."

857.  The University views, considers, and characterizes the group Charter as a "contract" on the course pages.

858.  The Charter also contains the words " I commit…" and all members agreed by signing the Charter to operate within the rules of the group.

859.  In Weeks 1-2 modules of the MGMT 600 class, the Chester Group completed a contractual Charter of a set of rules and submitted a copy to Dr. Finlay.

860.  All members of the Chester group within the MGMT 600 class adopted a conflict management protocol within the contractual charter that makes provision that the Chester Group would address its own conflicts through a meeting with the group leader and if unresolved, then the group would escalate it to the course instructor, defendant Dr. Finlay.

861.  Chester group of students also committed by signing the contractual Charter to exercise and demonstrate "positivity" in all endeavors.

862.  It was the norm of the Chester group to send and receive text messages anytime (*see* generally Exhibit No. 31).

863.  In August 13, 2020, Plaintiff sent a text message to Defendant Mulhern and the Chester group around **1:00am EST**, which is about 9PM in PST time zone. (Exhibit No. 31 at pp.41-43).

864.   Defendant Mr. Ho took angry issue with the 1:00amEST time and reported Plaintiff to Defendant Dr. Finlay (Exhibit No. 31 at pp.41-43).

*Plaintiff's Complaint.*

865.     Whereupon, around August 15, 2020, defendant Finlay took adverse action against Plaintiff and removed Plaintiff from the Chester group to work on his own regarding assignments for Weeks 7 & 8 modules of the MGMT 600 class. (Exhibit 23). Defendant Finlay also stated that a formal student code of conduct complaint has been filed against Plaintiff. *See* Exhibit 23.

866.     On August 26, 2020, Plaintiff continued to receive text messages from Defendants Mulhern and Ronke to all members of the Chester Group including Defendant Mr. Ho around **1:13am EST** (*see* Exhibit No. 31, Pages 42-43).

867.     Plaintiff observed that defendant Mr. Ho did not complain after another member of the Chester group (Defendant Mulhern) also sent text message around the **1:00am** EST to the Chester group members. (Exhibit No. 31 at Page 43).

868.     Plaintiff avers that it was against the conflict management provisions of the Chester group contractual Charter (Exhibit 30) when defendant Mr. Ho reported Plaintiff to Dr. Finlay for sending text messages around 1:00amEST to the Chester group members, instead of summoning a meeting with the group leader and the group members to address that conflict.

869.     Plaintiff avers that it was not fair and it was against the conflict management provisions of the Chester group contractual charter agreement of "*positivity*" in all endeavors when defendant Mr. Ho reported Plaintiff to Dr. Finlay for sending text messages around 1:00amEST to the Chester group members for Plaintiff to be removed from the group. Yet, when Defendant Mulhern (a Caucasian white male in the same Chester Group) also sent text messages around 1:13amEST of August 26, 2020, defendant Mr. Ho did not complain to Dr. Finlay to remove him from the Chester Group as well. Instead, defendant Mr. Ho sent a "thank you guys a lot" message in reply (Exhibit No. 31 at Page 43).

*Plaintiff's Complaint.*

870.    Plaintiff avers that it was not fair and it was against the University's own published anti-discrimination policies in the Catalogs and Student Handbooks when defendant Dr. Finlay and the University ignored and recklessly disregarded Plaintiff's formal discrimination complaint and Plaintiff's code of conduct complaint against Defendant Mr. Ho, whereas all students are under the covering the same rules and policies.

871.    When defendant Mr. Ho reported Livingstone to Dr. Finlay for sending text message around 1:00amET, defendant Dr.Finlay took adverse action against Livingstone by removing him from the Chester group for Plaintiff to continue the rest of the MGMT 600 class on his own (Exhibit 21).

872.    Conversely, when Plaintiff Livingstone reported defendant Mr. Ho to Dr. Finlay and the University alleging racial discrimination and violation of the University's anti-discrimination policy in the Student Handbook and Catalogs, defendant Finlay and the University did not take any action at all.

873.    Plaintiff avers that it was against the contractual charter agreement of the Chester group when defendant Ronke copied Plaintiff in an email dated Aug 3, 2020 at 1:41 AM to her student support adviser (Mr. Felix Caruso) and Defendant Finlay whereas the contractual protocol in the Chester group charter agreement requires that Chester group members themselves will attempt to manage their own conflicts through meeting as group with the leader and if unresolved, then the group leader would escalate it to the Course instructor  for a meeting (Exhibit 30).

874.    During a zoom meeting with the Chester Group members on August 4, 2020 to address a conflict, Dr. Finlay cautioned Chester group members to avoid escalating conflicts to her and others. It was therefore unfair when the same Dr. Finlay later entertained the August 15,

*Plaintiff's Complaint.*

2020 complaint by Defendant Mr. Ho claiming the Plaintiff Livingstone has sent text messages to the group around 1:00amET, without referring defendant Mr. Ho back to the group charter to attempt conflict resolution with the group itself. Instead, Defendant Finlay took adverse action against Livingstone by removing him from the Chester Group (Exhibit 23).

*875.* Around Week 3 module of the MGMT 600 class, Dr. Finlay addressed the class during a WebEx recorded session with the entire class that it is possible that students will fight in this class: "You will fight like cats and dogs but do not let it show up in front of your shareholder presentations." Plaintiff avers that it was therefore unfair when Dr. Finlay entertained complaints from defendants Ronke and Defendant Mr. Ho and escalated it to student conduct board, knowing very well that interpersonal conflicts would arise, and knowing well that the students have violated the group Charter.

*876.* Plaintiff believes and therefore aver that on August 10, 2020, it was against the group charter's positivity when Defendant Mulhern and all teams in the MGMT 600 class presented before Dr. Finlay via WebEx recorded class session. Defendant Mulhern advised the Chester group that he has to leave early from the class around 4:30pm PST and so he wants the group to go first (Exhibit No. 31, page 35). Prior to the class session, Livingstone sent text message to defendant Mulhern that he wants the group to go second because Plaintiff needs to find a spot around an Airport to do the presentation (text message was sent directly to defendant Mulhern at the time).

Defendant Mulhern ignored Plaintiff's request and insisted upon the group to do the presentation first before other groups. Livingstone allowed defendant Mulhern to have his way. After Chester group presented first, Livingstone observed that Defendant Mulhern was still in the class despite his claim that he cannot stay for the Chester group to present second. Livingstone

*Plaintiff's Complaint.*

observed that Mulhern stayed throughout the second group's presentations and he posted a comment afterwards. Livingstone avers that it is against the group's contractual charter of positivity when Mulhern said he cannot stay for Chester group to present second and he has to leave the class around 4:30pm PDT. Yet, Mulhern stayed throughout the second group's presentation.

877.     As a direct and proximate cause of Defendants' unlawful conduct of not following the terms and rules within the contractual charter agreement, Plaintiff has been misperceived as someone who caused conflict within the Chester Group and he was removed.

878.     As a direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff's academic work was distracted by unnecessary conflicts and quasi-judicial proceedings, which could have been prevented if members of the Chester group abided by the contractual commitments in the group charter.

879.     Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief order by this Court against Weeks 7 & 8 scores in the MGMT 600 class, as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable Attorneys' fees.

880.     As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Michael O. Livingstone has been caused and will continue indefinitely into the future to be caused severe mental anguish, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

881.     WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against all Defendants Adtalem, DeVry University, Keller Graduate School of Management, and

*Plaintiff's Complaint.*

Defendants Mulhern, Ronke, Finlay, Ho, jointly, severally and/or severally, for compensatory and punitive damages in an amount in excess of $10 million exclusive of interest and costs; preliminary, declaratory, and permanent injunctive relief; an award of reasonable Attorneys' fees, costs and other costs and disbursements in this action; change of his MGMT 600 grade, and such other and further relief as the Court may deem just and equitable.

### COUNT THIRTY-THREE

**DISCRIMINATION UNDER AMERICANS WITH DISABILITIES ACT; SECTION 504 OF THE REHABILITATION ACT OF 1973**

**(Michael O. Livingstone v. DeVry, Adtalem, Keller)**

*882.*    Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

*883.*    This cause of action pertains to MGMT 600 class.

*884.*    In July 2020, defendant Finlay received Plaintiff's ADA accommodation notice directly from the University's ADA office.

*885.*    Unlike what other Professors do at the University, Defendant Finlay did not acknowledge receipt of Plaintiff's ADA accommodation notice to Plaintiff.

*886.*    By email dated July 11, 2020 at 5:27 PM, Plaintiff rather reached out to Defendant Finlay to inquire whether she has received his ADA accommodation notice from the ADA officer. Whereupon, Dr. Finlay replied by email dated July 11, 2020, 5:41 PM that she received it.

*887.*    The ADA accommodation notice (Exhibit 4D) provides Plaintiff with one-week extension for all individually assigned tasks in every class at the University except group work and weekly discussion postings.

*Plaintiff's Complaint.*

888.    The MGMT 600 class was predominantly group work via CAPSIM simulation with the Chester group of students. As such, the ADA accommodation ( Ex.4D) was not applicable.

889.    Around Week 6 of the MGMT 600 class, Defendant Dr. Finlay removed Plaintiff from the Chester group for Plaintiff to work on his own (Exhibit 23).

890.    By email dated August 20, 2020, 11:45 AM, Plaintiff reminded Dr. Finlay that "…Since I am working on my own for Week 7 and 8, my ADA accommodation extension applies to Week 7."

891.    Defendant Finlay did not apply the one-week ADA accommodation extension to Week 7 module's CAPSIM assignment and she awarded 0/50 points by default to Plaintiff , thereby drastically reducing Plaintiff's final grade to "B."

892.    Plaintiff asked defendant Finlay to use the Chester group's Week 7 score as usual for the CAPSIM assignment. However, Dr. Finlay declined. Although Defendant Dr. Finlay claimed that Plaintiff should complete all Weeks 7 & 8 module assignments on his own including the Week 7 CAPSIM assignment, Defendant Finlay still used the Chester group's scores of 80/100 points for the "balanced scorecard component" of Week 7 assignments.

893.    Plaintiff avers that Defendant Finlay acted with actual malice against him when she failed to apply the one-week ADA accommodation extension to Week 7 CAPSIM scores so that she could hurt Plaintiff's grade as demonstrated by her bad-faith and abusive efforts to use the punitive student code of conduct against Plaintiff that was aborted by Dean Ruth Pineda (compare "Exhibit 22" with "Exhibit 23").

894.    By direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully

*Plaintiff's Complaint.*

compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and permanent injunctive relief order by this Court to change the MGMT 600 grade from "B" to "A." disciplinary record entirely, as well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit, including reasonable Attorneys' fees.

895.    As a further direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff Michael O. Livingstone has been caused and will continue indefinitely into the future to be caused severe mental anguish, anxiety, stress, and emotional and/or psychological distress, all with associated physical symptoms.

896.    WHEREFORE, because of the alleged intentional discrimination and malicious intent herein, pursuant to Section 504 of the Rehabilitation Act of 1973 damages, Plaintiff Michael O. Livingstone demands judgment against Defendants Adtalem, DeVry University, and Keller Graduate School of Management jointly, severally and/or severally for compensatory and punitive damages in an amount in excess of $5 million exclusive of interest and costs.

897.    WHEREFORE, consistent with damages under ADA statute, Plaintiff demands preliminary, declaratory, and permanent injunctive relief to vacate and expunge the adverse June 2019 disciplinary record and sanctions from Plaintiff's files at the University without making references to it; and such other and further relief as the Court may deem just and equitable; to change the MGMT 600 grade from "B" to "A" and enjoin defendants from further retaliations against Plaintiff regarding his ADA accommodations.

## COUNT THIRTY-FOUR

### NEGLIGENCE BY OMISSION, NEGLIGENCE, MALFEAANCE, MISFEASANCE, NONFEASANCE

### (Michael O. Livingstone v. Defendants Dr. Finlay, DeVry, Keller, Adtalem)

898.    This cause of action pertains to July-August 2020 session MGMT 600 class.

*Plaintiff's Complaint.*

899.    Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

900.    As a result of student feedback and numerous conflicts within student groups at the University, the University has implemented a tool at the beginning of every course for course instructors to place students into groups based on their geographic time zones.

901.    The MGMT 600 class reflects such a tool during Week 1 of the course within the discussion pages.

902.    Defendant Finlay failed to select students within the same time zones to form the Chester group.

903.    Defendants Ronke and Mulhern fall within Pacific Time Zone(PST), while Defendant Mr. Ho and Plaintiff Livingstone fall within the Eastern Standard Time Zone(EST).

904.    By direct and proximate cause of defendant Finlay's failure to select students within the same  time zone caused distracting conflicts within the Chester Group because when Plaintiff completed courses at the University where the Course instructors formed the student groups, Plaintiff performed excellently without any serious conflicts related to time of communication, unlike the MGMT 600 class and what happened in Exhibit No. 31, pp. 40-43 that led to Plaintiff being removed from the Chester group:

> May 2020 session, MIS-540, Innovation Through Technology, Final Grade "A".
> November 2019 session, INTL-500, Int'l Business Perspectives, Final Grade "A".
> May 2019 session, ENTR-550, Entrepreneurial Marketing, Final Grade "A".
> March 2019 session, ACCT-504, Acct Fin: Managerial Use, Analysis, Final Grade "A-".
> January 2019 Session, MGMT-520, Legal, Political, Ethical Dimensions of Business, Grade "A".
> January 2018 session, MGMT 570, Managing Conflict in Workplace, Final Grade "A."

Plaintiff  excelled in these other classes without any time zone conflicts with student group members.

*Plaintiff's Complaint.*

905.    By direct and proximate cause of Defendants' unlawful conduct as described

herein, Plaintiff has suffered, and continues to suffer, irreparable injury which cannot be fully

compensated by an award of monetary damages for which Plaintiff is entitled to preliminary and

permanent injunctive relief order by this Court.

906.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against

Defendants Dr. Finlay, Adtalem, DeVry University, and Keller Graduate School of Management

jointly, severally and/or severally for compensatory and punitive damages in an amount in excess

of $200,000 exclusive of interest and costs; preliminary and permanent injunctive relief order by

this Court to change the MGMT 600 grade from "B" to "A," expunge the disciplinary record; as

well as damages in an amount to be determined by the Court and reasonable costs of this lawsuit.


### COUNT THIRTY- FIVE

**ARBITRARY AND CAPRICIOUS ACADEMIC DISMISSALS
HIGHER EDUCATION LAW;
BREACH OF CONTRACT**

**(Michael O. Livingstone v. Defendants DeVry University Office of Registrar
Services; DeVry, Keller, Adtalem)**

907.    Plaintiff incorporates herein by reference the foregoing paragraphs as if fully set

forth herein.

908.    Since his enrollment at the University, Plaintiff has completed coursework that

are provided under the University's catalogs for his MBA degree and certificates.

909.    The University encourages students to earn more Degrees and Certificates under

what is called "stackables."

910.    In November 2019 and July 2020, Plaintiff maintained good academic standing

beyond the required 3.0 GPA.

*Plaintiff's Complaint.*

911.    In November 2019 and July 2020, the University's defendant Registrar notified Plaintiff that Plaintiff is academically dismissed (Exhibits 29 &30).

912.    By email dated July 6, 2020 at 1:24 PM, Ms. Danielle Murphy, DeVry central Manager, explained that Plaintiff was academically dismissed due to "maximum coursework."

913.    Upon further inquiry, in November 2019, defendant Agresta explained that Plaintiff was academically dismissed due to maximum coursework.

914.    In both November 2019 and July 2020, Plaintiff appealed the academic dismissals and the Registrar reversed them.

915.    Although the Registrar removed the dismissals, they are still part of Plaintiff's record and it stigmatizes Plaintiff's records as "institutional action" that would impact Plaintiff's prospective contractual interests.

916.    Plaintiff avers that it is against the University's contractual catalogs that the Registrar academically dismissed Plaintiff whereas Plaintiff has always completed academic coursework consistent with the provisions of the contractual catalogs for the University's degree and certificate programs.

917.    The University's Academic Catalog provides that MBA degree seeking students can complete three concentrations while earning other graduate certificates. Plaintiff avers therefore that it is against the University's catalogs that Defendant Registrar academically dismissed Plaintiff for "maximum coursework."

918.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants the office of the Registrar Services, DeVry University, and Keller Graduate School of Management jointly, severally and/or severally for compensatory and punitive damages in an

*Plaintiff's Complaint.*

amount in excess of $200,000 exclusive of interest and costs; preliminary and permanent

injunctive relief order by this Court to expunge the academic dismissals *ab arte, ab initio*

## COUNT TWENTY-EIGHT

### HIGHER EDUCATION LAW;
### INTENTIONAL DEPRIVATION OF ACCESS TO EDUCATIONAL MATERIALS

**(Plaintiff Livingstone v. Defendants Mulhern, Dr. Finlay, DeVry, Adtalem, Keller)**

*919.*     This cause of action pertains to July-August 2020 MGMT 600 class.

*920.*     Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully

set forth herein.

*921.*     After Defendant Dr. Finlay removed Plaintiff from the Chester group of students,

Plaintiff did not have access to the files and information that were necessary to complete his

Weeks 7 & 8 assignments.

*922.*     Plaintiff requested for access into the Google drive folder (GM600) that contains

important files in their original formats just as he had access like the Chester group members.

*923.*     Defendant Mulhern sent Plaintiff "zip files" instead of original access link to the

google drive files like every other student has access.

*924.*     Plaintiff told Defendant Dr. Finlay to ask Defendant Mulhern to give him access

like every student has access to those files in their original formats. Those requests were ignored

and /or declined.

*925.*     By direct and proximate cause of Defendants' unlawful conduct as described

 herein, Plaintiff was deprived access  and he did not have equal access to the original files and

*Plaintiff's Complaint.*

materials in their original formats to complete Weeks 7&8 assignments with excellence, precision, accuracy, and less stress.

926.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants Mulhern, Dr. Finlay, DeVry, Adtalem, Keller jointly, severally and/or severally for compensatory and punitive damages in an amount in excess of $200,000 exclusive of interest and costs; preliminary and permanent injunctive relief order by this Court to restore the full scores of Plaintiff's Weeks 7 & 8 MGMT 600 assignments to  full scores and change the  final grade to  "A."

## COUNT THIRTY SIX

### ARBITRARY & CAPRICIOUS GRADE; SYSTEMIC BIAS

### (Michael O. Livingstone v. Defendants Dr. Finlay, DeVry, Adtalem, Keller)

927.    This cause of action pertains to July-August 2020 MGMT 600 class.

928.    Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

929.    Plaintiff believes and therefore avers that at the beginning of the MGMT 600 class in July-August 2020 session, Defendant Finlay demonstrated deep-seated antagonism against plaintiff that can be attributed to the fact that Plaintiff has ADA accommodation extension because unlike what other Professors of the University do when they received Plaintiff's ADA notice, Dr. Finlay did not acknowledge receipt of Plaintiff's ADA accommodation notice to Plaintiff when she received it until Plaintiff followed up with her.

930.    In May 2020 session at the University, MIS 540 class, for example, it was the course instructor, Dr. Peter Newman, who reached out to Plaintiff as soon as he received the ADA accommodation notice from the University's ADA officer. Plaintiff excelled in Dr.

*Plaintiff's Complaint.*

Newman's class with a straight "A" final grade without any problems or animosity from Dr. Newman at all.

931.    Plaintiff avers that at all times, Dr. Finlay was biased and partial against Plaintiff and it reflects within his final grade.

932.    During the MGMT 600 class, Plaintiff posted a comment about the fact that the class operates with different schedule unlike other classes in the University and the published deadlines in the University's catalog that all assignments are due during weekends. Plaintiff also commented that forming student groups of students without the same aptitudes was a problem because the University never trained students about presentations. Yet, the University expects students to do weekly presentations. Defendant Mr. Ho, for example, and other students told the class that they were "shy" or "nervous" to do presentations. In "graduate school," this should not happen. Plaintiff believes and therefore aver that Dr. Finlay took offense against Plaintiff's comment and it impacted Plaintiff's final grade.

933.    During a recorded Zoom meeting on August 4, 2020 with the Chester group students to address a Chester group conflict, Dr. Finlay blamed Plaintiff alone and accused Plaintiff for "making a mistake" thinking that Felix Caruso (Ronke's student support adviser) was the same person as Felix Bill Caruso (University's General Counsel and then- interim President), whereas Ronke rather made a mistake to begin with when she copied Plaintiff on her email dated Aug 3, 2020, 5:03 PM to Felix Caruso notwithstanding the fact that FERPA educational privacy regulations protect student communications with their academic advisers. During that meeting, Dr. Finlay kept telling Plaintiff that "he would regret."

934.    Before the August 10, 2020 recorded WebEx class with the entire class, Plaintiff told defendant Mulhern that he is around an Airport and so the Chester group should not be the

*Plaintiff's Complaint.*

first to present this time so that Plaintiff can find a spot to do the presentation around the Airport. Defendant Mulhern indicated that he also has to leave at 4:30PST. Dr. Finlay interrupted with partiality and bias that since Mulhern has to leave, the group should present first. Meanwhile, both students had to leave. Mulhern did not leave after the presentation. He stayed through the second presentation and posted a comment feedback. When Plaintiff informed Dr. Finlay that Mulhern actually stayed for the second group's presentation, Dr. Finlay did not say anything about it. Plaintiff avers that this was a reflection of Dr. Finlay's systemic bias against Plaintiff and Plaintiff avers this bias was extrapolated unto his final grade too.

935. Around August 13, 2020, when defendant Mr. Ho reported Plaintiff to Dr. Finlay for sending text messages around 1amET to the Chester group (Exhibit No. 31), Dr. Finlay did not even bother to seek Plaintiff's side of the story. Instead, she acted with bias and partiality and filed a formal code of conduct complaint or formal complaint against Livingstone, which was aborted by Dean Ruth Pineda (Exhibits 22 and 23). When Plaintiff told Dr. Finlay that defendant Mulhern also sent text messages around 1amET, yet Defendant Mr. Ho took no issue with it, Dr. Finlay did not say or anything about that. Plaintiff believes this is a reflection of Dr. Finlay's systemic bias and partiality against him.

936. In the final Week 8 of the MGMT 600 class, Dr. Finlay asked students to post what they like or learned about the class. Plaintiff chose not to post it to course's open platform because he was disappointed by the many incoherencies, discrepancies, and distracting conflicts in the class. Dr. Finlay took malicious issue with that.

937. As a part of the MGMT 600 Week 8 course requirements, Plaintiff submitted 16-paged cumulative financial report he prepared individually from the Chester Group and PowerPoint with adequate citations and references (Exhibit No. 32). Defendant Dr. Finlay

*Plaintiff's Complaint.*

deducted about 20 points from Plaintiff's work claiming that Plaintiff did not "state what he learned from the class." Meanwhile, a financial report is a technical document "financial report" and it is not the platform to write personal praises for a course instructor especially if student was not satisfied with the quality of education provided in the MGMT 600 class. Plaintiff avers that this reflects Dr. Finlay's systemic bias against Plaintiff.

*938.* By direct and proximate cause of Defendants' unlawful conduct as described herein, Plaintiff's MGMT 600 class grade does not have integrity of grading and it reduces Plaintiff's GPA.

*939.* WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants Dr. Finlay, DeVry, Adtalem, Keller jointly, severally and/or severally for compensatory and punitive damages in an amount in excess of $500,000 exclusive of interest and costs; preliminary and permanent injunctive relief order by this Court to restore the full scores of Plaintiff's Weeks 7 & 8 MGMT 600 assignments and change the grade to " A."

## COUNT THIRTY-SEVEN

### CONSTRUCTIVE TRUST;
### COURSE REGISTRATION MALPRACTICE;
### HIGHER EDUCATION LAW;
### NEGLIGENCE, GROSS NEGLIGENCE

### (Michael O. Livingstone v. DeVry, Keller, Adtalem)

*940.* Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

*941.* In May-June 2020 session, Plaintiff enrolled and completed the online graduate level course "innovation in technology" (MIS 540) at the University with Dr. Newman and received a final grade "A" without any problems with Dr. Newman at all.

*Plaintiff's Complaint.*

942.     Plaintiff enrolled in the MIS 540 class because it is currently catalogued as a required class for his graduate certificate in Health Services Management.

943.     Plaintiff's then-designated student defendant Ms. Arissa Bryant, did not tell Plaintiff that the May 2020 MIS 540 class was a substitute class for MIS-535 class which Plaintiff had previously completed in March 2017 session (*see* emails Exhibit 26). It is just a change of course titles.

944.     Later that May 2020 session, Ms. Renuka Patel was installed as Plaintiff's new student academic adviser.

945.     Ms. Renuka Patel contacted Plaintiff to advise that MIS 540 does not count towards Plaintiff's degree program and so Plaintiff would not receive financial aid for it (*see* generally Exhibits 26 and 27). So, either the University would drop the MIS 540 course retroactively, or Plaintiff would have to pay out-of-pocket.

946.     Plaintiff indicated at that point in the session that he cannot drop the MIS 540 class because that would create a gap within his education and that would also place Plaintiff's student loans into repayment and it would create undue hardship for him (Exhibits 26, 27). So, dropping the class way down into the session is not an option.

947.     Plaintiff asserted that just as Ms. Renuka Patel observed and contacted Plaintiff that the MIS 540 class does not count towards his MBA degree requirements because Plaintiff has already completed MIS 535 in March 2017 session with defendant Jacob Gordon, defendant Ms. Bryant should have also noticed it and advised Plaintiff especially when Plaintiff exchanged emails with Defendant Bryant around the early weeks beginning of the course (Exhibit 26).

*Plaintiff's Complaint.*

948.    Ms. Patel referred the matter to her boss, Ms. Danielle Murphy, who recommended that Plaintiff can complete the MIS 540 class as a repeat class for the previous MIS 535 class, which will therefore be covered by financial aid.

949.    Plaintiff completed the MIS 540 class.

950.    Plaintiff avers that it was the duty of her student support academic adviser, defendant Ms. Bryant, to advise him at the beginning of the MIS 540 class that the MIS 540 class would not be counted as a part of his MBA degree program and so Plaintiff would therefore not receive financial aid.

951.    Plaintiff avers that it was the University's duty to publish accurate information in its current academic catalogs that the MIS 540 class substitutes the MIS 535 class.

952.    Plaintiff avers that he has wasted his time and incurred debt paying for his wasted time over the MIS 540 class and it was not his fault. Therefore, the entire cost of attendance for the MIS 540 class in May 2020 should be imposed upon the University as constructive trust.

953.    Plaintiff avers that the University and defendant Bryant should rather be caused by this Court to bear the costs of their negligence, not Plaintiff.

954.    Ms. Danielle Murphy agreed that it was not Plaintiff's fault. It was The fault of Ms. Bryant.

955.    In effect, plaintiff has been caused to waste to his time and still pay for it.

956.    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants DeVry, Adtalem, Keller, Bryant jointly, severally and/or severally for compensatory and punitive damages in an amount in excess of $200,000 exclusive of interest and costs; declaratory, preliminary, and permanent injunctive relief order by this Court imposing the full costs of attendance for the MIS 540 upon the University.

*Plaintiff's Complaint.*

## COUNT THIRTY-EIGHT

**MALICIOUS PROSECUTION; ABUSE OF PROCESS;
RETALIATION UNDER CIVIL RIGHTS ACT OF 1964;
N. J.CONSTITUTION FIRST AMENDMENT SPEECH, RETALIATION**

**(Michael O. Livingstone v. DeVry, Keller, Adtalem)**

*957.*    Plaintiff incorporates herein by reference all the foregoing paragraphs as if fully set forth herein.

*958.*    Plaintiff enrolled in the graduate online class called Managing Organizational Change ("HRM 587") for the September 2020-October 2020 session at the University as part of academic requirements for his second-degree track, Master of Public Administration ("MPA") degree.

*959.*    Around August 17, 2020, Plaintiff filed a copy of a cease-and-desist notice against Defendant Agresta and Plaintiff served the notice upon Defendant Agresta by email and copied University's General Legal Counsel, Mr. Bill Caruso, about it (Exhibit 21) Mr. Caruso also happens to be the University's Vice President. Plaintiff also sent the hard copy.

*960.*    In September 2020, Plaintiff received notification from the University's Ms. Patti Meyer and Mr. Chad Maldonado that he has been placed on interim suspension (Exhibit 25) for copying Mr. Bill Caruso, who is the University's General Legal Counsel, on the email Exhibit 21 to defendant Agresta because that allegedly violates the University's limited order sanction that was imposed upon Plaintiff last November 2019- January 2020 session.

*961.*    The University dropped Plaintiff from his HRM 587 class.

*962.*    Plaintiff explained that he cannot be placed on interim suspension for copying Mr. Caruso on his email (Ex. 21) because he is required by law to engage the attention of University Legal Counsel when serving a court document upon any of the University's officials.

*Plaintiff's Complaint.*

963.    Plaintiff also explained that he has a duty to report discrimination or harassment between him and defendant Agresta to a "higher management level official." The University's General Counsel who also happens to be the University's Vice President is qualified as a higher management level official with ability to take preventive actions.

964.    The notification of interim suspension also claims that Plaintiff sent threatening emails in violation of the student code of conduct because Plaintiff made references to a shooting in his emails to defendant Dr. Finlay (Exhibit 25). Plaintiff denied the allegations.

965.    Plaintiff avers that he cannot be suspended for serving legal documents filed with this court upon defendant Agresta and the University's legal counsel.

966.    Plaintiff avers that he cannot have adverse action for filing this federal lawsuit against defendant Agresta and the University.

967.    Plaintiff avers that in New Jersey, he has free speech privileges in a private institution.

968.    Plaintiff avers that this is another way defendant Dr. Finlay wants Plaintiff to regret, as she  previously stated to Plaintiff.

969.    Plaintiff avers that after Dr. Finlay's first malicious and abusive attempt to use the student conduct code against Plaintiff to carry out her agenda to make Plaintiff regret (Exhibit 23) was aborted by Dean Pineda (Exhibits 22), Dr. Finlay is using these new allegations as another avenue to fulfil her malicious intents against Plaintiff "to regret."

970.    Plaintiff requested for details in Exhibit 25 about who made the complaint that he copied Mr. Caruso on his email (Exhibit 21). However, Ms. Patti Meyer never addressed that inquiry.

*Plaintiff's Complaint.*

*971.*    Plaintiff alerted Ms. Patti Meyer that his emails from which the statements were truncated such as Exhibit 20 also presents Plaintiff's formal complaint of racial discrimination to the University. Yet, no anti-discrimination officer of the University got back to Plaintiff to address the alleged discrimination. Ms. Patti Meyer ignored Plaintiff's concerns.

*972.*    Plaintiff's email communications with Ms. Patti within Exhibit 25 also suggest that the outcome of upcoming hearing is already decided to expel Plaintiff who is now 99% eligible to graduate for his MBA degree.

*973.*    To the extent that Plaintiff's discrimination complaints are ignored and they are contained in the emails being used against him, Plaintiff avers that the university is retaliating against him for filing this federal lawsuit and for complaining about discrimination in the Exhibits 20 and 21.

*974.*    To the extent that all of Plaintiff's procedural questions have been ignored in Exhibit 25, the outcome of the hearing is predetermined.

*975.*    To the extent that there is already a motion for preliminary injunction denied by this Court *without prejudice* pending Rule 4 process service (ECF No.9) where Plaintiff challenges the legitimacy of the disciplinary sanctions the University imposed around November 2019 - January 2020 against him, Plaintiff requests for TRO against the upcoming September 15, 2020 hearing, so that the Court can adjudicate the challenged sanctions in ECF No. 9 first.

*976.*    To the extent that Plaintiff has been dropped from his current HRM 587 class, an indelible gap has been created within Plaintiff's continued education.

*977.*    Plaintiff will seek continuance of the hearing in ECF No.25.

*978.*    WHEREFORE, Plaintiff Michael O. Livingstone demands judgment against Defendants DeVry, Adtalem, Keller jointly, severally and/or severally for compensatory and

*Plaintiff's Complaint.*

punitive damages in an amount in excess of $3million exclusive of interest and costs; temporary

restraining order, preliminary and permanent injunctive relief order by this Court against Exhibit.

### E. <u>RELIEF REQUESTED</u>

Plaintiff Michael O. Livingstone hereby declares that the relief requested for each count

are set forth under separate final paragraph(s) under the WHEREFORE clauses of each COUNT.

### F. <u>JURY TRIAL DEMAND</u>

Plaintiff Michael O. Livingstone hereby demands a jury trial with respect to all claims.

### G. <u>FEDERAL RULES OF CIVIL PROCEDURE 65 AFFIDAVIT</u>

To the extent that Plaintiff is moving the Court for preliminary injunction, Plaintiff

provides the following affidavit together with this instant complaint and exhibits for the purposes

of this complaint, this matter, or controversy only:

### H. <u>AFFIDAVIT OF PLAINTIFF MICHAEL O. LIVINGSTONE</u>

The within named Plaintiff, Mr. Michael O. Livingstone, hereby states under penalties of

perjury, that the facts set forth and incorporated in this Amended Complaint with Exhibits are

true and correct to the best of his knowledge, information, and belief.

*Plaintiff's Complaint.*

Respectfully submitted,



Michael O. Livingstone, *pro se*
1200 Haddonfield Road-1302
Pennsauken, New Jersey 08110

Mailing Address:
    P.O. Box 34246
    Philadelphia, Pennsylvania 19101

    Telephone: 856-676-6951

Emails: mikeosei@gmail.com (preferred)
          mikeliving40@gmail.com

Dated: September 18 , 2020

# Exhibit 1 A

## Description

13α

Copy of Hearing Packet Notice sent June 14, **2019**
email by Assistant Dean Jonathan Agresta containing
errors.

*6*
**pages**

## NOTE:

Pages 3-4 cites verbatim a **2017** email without including
the date of email sent dated Tuesday, December 19,
**2017** 1:13:18 PM. See exact copy of that 2017 email
contained in attached separate rebuttal emails thread
as Exhibit 2A.

*See* also Exhibit 2C as factual rebuttals against
allegations.

Redacted Personal Identifiers &
initialed by M. O. Livingstone

 Gmail

*Ex. 1A*

Michael Osei <mikeosei@gmail.com>

## Code of Conduct Hearing Packet - Michael Livingstone

Agresta, Jonathan <JAgresta@devry.edu>                    Fri, Jun 14, 2019 at 6:40 PM

Hello,

Attached you will find the Hearing Packet, as well as supplemental evidence, for Michael Livingstone's upcoming Code of Conduct Hearing. Please review all documents prior to the hearing (starting with the file titled, *Hearing Packet Michael Livingstone.pdf*).

If you have any questions, please let me know. Have a good weekend.

Regards,

**Jonathan A. Agresta, M.Ed.** | *Assistant Dean of Academic Excellence – Northeast Group*

**P** 215.591.5867 | **E** jagresta@devry.edu

1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu

 **DeVry University**
**Keller** Graduate School of Management

📎 **Hearing Packet Michael Livingstone.zip**
1710K

1

*Ex. 1A cont'd*

## Code of Conduct Hearing Packet

**Respondent**: Michael Livingstone, Keller Student



M.O.L

mikeosei@gmail.com

**Complainant**: Deb Koffman, Operations Support Coordinator II

**Conduct Administrator**: Jonathan Agresta, Asst. Dean of Academic Excellence, PA and OH

**Complaint**: On 6/13/19 around 2:29pm EDT, OSC Deb Koffman received an in-bound call from the respondent. After the call, Ms. Koffman called Dean Agresta to report the nature of the call. She informed him that the respondent was rude, calling her and her job stupid. She then informed him that another advisor from the National Group, also documented rudeness following the transfer. Case notes below.

*"Student called in and demanded to be TR to Finance. I asked for his information and he began screaming at me and telling me to stop asking him questions and do what he tells me to do. I explained that I am required to do this and he told me that's stupid and so am I for doing that. I TR the call to FA and let the SSA know of the behavior prior to the TR"*

— Deb Koffman 6/13/19 2:29pm EDT

*"stu was transferred from campus requesting the credit of ▇ to be issued to him from the May session that has been sitting on his account. He is very disrespectful and says that he will sue Keller if we apply his funds towards a future session going forward. Tried to explain to him how funds are applied and he said that I am wrong."*

— Kristine Kearney 6/13/19 2:34pm EDT

When asked about his remarks over the phone on 6/14 with Agresta, the respondent replied, "I said that was a stupid job", referring to the need to verify his identity with the OSC.

Multiple times during this phone call and after, he requested to have this hearing cancelled or postponed. He sent a "Letter of Apology" for Agresta to share with the complainant (attached), however, due to the nature of the content, Agresta did not feel it was appropriate to share with them.

Also attached is the respondent's formal requests to postpone the hearing and to have the hearing held in person with no technology present, which were denied.

---

### Past incidents for character reference:

Prior to this most recent incident, the respondent sent alleged intimidation emails to his professor copying multiple deans, a professor and the provost of the university on and around April 27th, 2019. When asked about this over the phone on 6/14/19 with Agresta, the respondent said that he CC'ed the administrators *"to let university administrators who have power know and change things."* When asked for clarification he used the words *"to intervene and set the right course"* and *"to step in"*. He also cited incidents at past universities where this tactic of CC'ing administrators led to him having courses removed. It is the conduct administrator's belief that by CC'ing administration the respondent is attempting to intimidate his professors or go over their heads to get what

1

*Ex. 1A cont'd*

he wants. In the supplied emails, you can see the requests he made of the professor citing past exceptions and allowances.

There are multiple instances of this behavior, some of which can be seen below. With a thorough review of his academic history, the conduct administrator noted multiple repeated instances of grade appeal and incomplete requests (8 such cases on file) throughout his academic career.

---

**Created By: MEGAN MIHELICH (8/17/2018 1:39 PM)**
Live Chat ID 4295645751

Student requested name of the "main" Dean for the Philadelphia campus. Refused to verify identity and was a bit rude.

Provided link to PA academic catalog with Group Dean and Center Dean information and advised that I do not know the name of every Dean over every campus. Student stated I should know this information.
Reached out to Bryan T (Asst. Director of SC) over the Philly campus who confirmed information in catalog is correct.

Valerie Senatoer is the Group Dean.
Waleed Yousef is the Center Dean.

Student ended chat after I inquired if there was anything else I could assist with. Unable to properly end session.

**Case: 07102381 12/19/18**

**Respondent sent this email to SE Assistant Dean CC'ing the Office of Civil Rights, his professor, and Student Central in order to get an Incomplete for a course dating back over a year. This request was eventually denied.**

**Subject:** Urgent Memo for immediate attention and intervention of Dean of Academic Excellence; Cc'd to Federal U.S.Department of Education Office of Civil Rights before formal complaints;Regarding ECON 545,Nov.2017 course instructor,for immediate INCOMPLETE grade

**Content:**

E-MEMORANDUM:

To:

Virgil Mensah-Dartey, Ph.D.
Assistant Dean of Academic Excellence, SE Group

Keller Graduate School of management of DeVry University

Decatur, GA 30030

CC'd:

Office for Civil Rights

3

Ex. 1A cont'd

U.S. Department of Education

Philadelphia Office

OCR.Philadelphia@ed.gov<mailto:OCR.Philadelphia@ed.gov>

Cc'd:

William Mapp, PhD,

ECON 545 Course Instructor, November 2017 session

Phone: 520.249.5926.

Email: WMapp@devry.edu

Cc'd: Keller Student Advising Center

Subject:
Notice to Keller of culpability against course instructor & immediate intervention of Dean of Academic Excellence requested today to direct course instructor to process submitted incomplete Grade form ( also attached) and extend time to take remaining Weeks 2 &5 ECONLab tests regarding just-ended ECON 545, November 2017 Session, Course instructor, William Mapp, PhD, Phone 520.249.5926.
==================================================================================================
========

First, this seriously places Keller Graduate School of Management on notice that if I die or in the event of my suicide, the course instructor, Dr. William Mapp, who was previously advised against this, should be blamed and be held culpable for that. My family is also informed about this and they will be holding Keller accountable at every level— publicly and legally.

Second, to be succinct, this email seeks your immediate intervention of the copied dean of academic excellence to direct the course instructor to process my Incomplete (I) grade request form, as per attached, that was already - submitted to him before final grades are due or posted, and reset the ECON LAB quizzes for Weeks 2 &5.

This email comes to the immediate attention of the dean because the course instructor has erroneously, prejudicially, maliciously, and discriminatorily claimed that because of "prior extensions" he gave for those two aforementioned tasks worth a total of 130 points, he cannot grant me the Incomplete grade.

This excuse fatally-fails and cannot survive rebuttal because under Higher Education Law and accreditation standards binding upon all universities including Keller, "prior extensions" is not legal grounds to deny Incomplete grades. In fact, prior extensions rather indicate that there has been persistent extenuating circumstances that support Incomplete grade.

Moreover, on my part, the course instructor was always briefed about the extenuating health and technical issues surrounding these tasks and he has all the IT tickets to that effect. Health and technical issues are legal grounds warranting incomplete grades and it is applicable to all other accredited Universities including Keller.

I believe and therefore aver that although I am a US Citizen, it is because of my ethnic background that makes the course instructor deny to assign Incomplete grade with such wickedness and discriminatory animus against me and my health despite what the law and the Keller catalog clearly provides for me to get incomplete grade under such circumstances. The course instructor has all the thread of communications regarding both the extenuating health issue and IT problems associated to this remaining task. If he claims he does not have them, please let me know.

Students are entitled to incomplete grades under the same circumstances the course instructor is aware of per University Catalog. Conversely, here, I have been treated differently and I have therefore copied the U.S. Department of Education Office of Civil Rights<https://www2.ed.gov/about/offices/list/ocr/addresses.html> and a formal complaint may follow. The University can be legally- liable for other several causes of actions including Breach of Contract claims.

4

Ex. 1A cont'd

I would the copied dean to know that I encountered health issues and other reported IT problems that affected my ability to complete the remaining tasks. The course instructor was well –briefed about all that. The IT report tickets are attached.

Administrative Deans can instruct course instructors. I will not file grade appeal on this. It will rather be taken up by the OCR in the event of a full-blown complaint. Consider this as my informal grade appeal. I will rather go to the OCR and U.S. Department of Health And Human Services if I elect to pursue it.

Also note that I did not have to deal with the numerous IT problems that affected my inability to do these two tasks. I spend countless hours dealing with your IT. This can affect the name and reputation of Keller. Nobody likes this especially when I am coming from some of the best competing Universities in PA you are aware about such as Drexel & Temple Universities, where such perfunctory things do not happen on people's paid education.

Moreover, I also take special issue with this because real teaching did not occur in this class. I paid tuition money to Keller to be taught by the course instructor who rather failed to prepare recorded lectures on the course material itself, and rather dumped on me numerous task-after- task with persistent technical issues.

Action Items:

Categorically, I respectfully urge you as an Associate Dean to immediately direct the course instructor to assign the Incomplete (I) grade and extend the time for me to complete the two remaining quizzes for all of us to put this matter to rest and move on.

IT help desk has advised that the course instructor is now capable to re-open the Quizzes for me to take them. I want the Dean to know that I consider it a serious personal insult by the course instructor against me when he sent me to IT to seek the extension of the quizzes whereas IT confirmed that the course instructor has the ability to reload the quizzes for me to take them
I look forward to hearing from you soon before I take addition formal steps with external authoritative agencies.

Sincerely,

Michael Osei Livingstone
Keller ID# D405[redacted]

M.O.L

 *Ex. 1A cont'd*

Michael Osei <mikeosei@gmail.com>

## Code of Conduct Hearing - Michael Livingstone
1 message

**Agresta, Jonathan** <JAgresta@devry.edu>
To: "D'Souza, Jeevan" <JDSouza@devry.edu>, "Warner-Lopez, Rochelle" <rwarner-lopez@devry.edu>, "RUSSELL, JOCELYN" <JRussell1@devry.edu>, "mikeosei@gmail.com" <mikeosei@gmail.com>

Fri, Jun 14, 2019 at 6:41 PM

The hearing packet is now attached to this meeting.

--- Do not delete or change any of the following text. --

Join Webex Meeting

Meeting number (access code): 808 034 854

## Join from a video system or application
Dial 808034854@devry.webex.com
You can also dial 173.243.2.68 and enter your meeting number.

## Join by phone
+1-646-992-2010 United States Toll (New York City)
+1-415-655-0001 US Toll
Global call-in numbers

Can't join the meeting?

If you are a host, go here to view host information.

IMPORTANT NOTICE: Please note that this Webex service allows audio and other information sent during the session to be recorded, which may be discoverable in a legal matter. By joining this session, you automatically consent to such recordings. If you do not consent to being recorded, discuss your concerns with the host or do not join the session.

**2 attachments**

📎 **Hearing Packet Michael Livingstone.zip**
1710K

📄 **invite.ics**
4K

6

# Exhibit 2A

## Description:

Rebuttal factual Email to Case No.07102381 contained within Exhibit 1 A hearing package.

5 pages

## Note:

Contrary to the allegation in Case No.07102381 of the attached hearing package Exhibit 1 A, pp.3-4, the actual 2017 email is contained in this thread of emails showing that Dr. Mapp actually granted the Incomplete Grade at the time in 2017. This was not in 2018. So, the hearing package notice is defective improper notice.



**Re: Urgent Memo for immediate attention and intervention of Dean of Academic Excellence; Cc'd to Federal U.S.Department of Education Office of Civil Rights before formal complaints;Regarding ECON 545,Nov.2017 course instructor,for immediate INCOMPLETE gr**

Mapp, William <WMapp@devry.edu>                                    *Ex · 2A*
Tue 12/19/2017 5:04 PM
**To:** mosei <mosei@my.keller.edu>

📎 1 attachments (603 KB)
ECON 545 Incomplete Form (D40530929).pdf;

Michael,

Please see the attachment for the signed Incomplete form for ECON 545 Business Economics. Please let me know once you have completed these tasks and/or if you have any problems accessing the work. I have been in contact with IT and have been assured that you should have access to the two assignments. Good luck and let me know if you have any questions.

Please remember that if you need additional support, you always have access to services that DeVry/Keller make available through Aspire. You can find more information about these services at http://vfolders.acieap.com/aspire/ or by calling 888-470-1531.

## ASPIRE Student Assistance Virtual Folder

vfolders.acieap.com

1-888-470-1531; info@myaspireonline.com; https://www.myaspireonline.com

**Eric Mapp, PhD** | *Visiting Professor III*
**P** 520.249.5926 (No Texts) | **E** wmapp@devry.edu | Oro Valley, AZ 85755 | devry.edu

**From:** mosei <mosei@my.keller.edu>
**Sent:** Tuesday, December 19, 2017 1:13:18 PM
**To:** Mensah-Dartey, Virgil
**Cc:** OCR.Philadelphia@ed.gov; Mapp, William; help; mikeosei@gmail.com
**Subject:** Urgent Memo for immediate attention and intervention of Dean of Academic Excellence; Cc'd to Federal

U.S.Department of Education Office of Civil Rights before formal complaints;Regarding ECON 545,Nov.2017 course instructor,for immediate INCOMPLETE grade

EX. 2A
cont'd

E-MEMORANDUM:

To:

Virgil Mensah-Dartey, Ph.D.
Assistant Dean of Academic Excellence, SE Group
Keller Graduate School of management of DeVry University
Decatur, GA 30030

CC'd:

Office for Civil Rights
U.S. Department of Education
Philadelphia Office
OCR.Philadelphia@ed.gov

Cc'd:

William Mapp, PhD,
ECON 545 Course Instructor, November 2017 session
Phone: 520.249.5926.
Email: WMapp@devry.edu

Cc'd: Keller  Student Advising Center

Subject:

Notice to Keller of culpability against course instructor & immediate intervention of Dean of Academic Excellence requested today to direct course instructor to process submitted incomplete Grade form ( also attached) and extend time to take remaining Weeks 2 &5 ECONLab tests regarding just-ended ECON 545, November 2017 Session, Course instructor, William Mapp, PhD, Phone 520.249.5926.

First, this seriously places Keller Graduate School of Management on notice that if I die or in the event of my suicide, the course instructor, Dr. William Mapp, who was previously advised against this, should be blamed and be held culpable for that. My family is also informed about this and they will be holding Keller accountable at every level-- publicly and legally.

Second, to be succinct, this email seeks your immediate intervention of the copied dean of academic excellence to direct the course instructor to process my *Incomplete* (I) grade request form, as per attached, that was *already - submitted* to him before final grades are due or posted, and reset the ECON LAB quizzes for Weeks 2 &5.

This email comes to the immediate attention of the dean because the course instructor has erroneously, prejudicially, maliciously, and discriminatorily claimed that because of "prior extensions" he gave for those two aforementioned tasks worth a total of 130 points, he cannot grant me the Incomplete grade.

Ex. 2A cont'd (3)

This excuse fatally-fails and cannot survive rebuttal because under Higher Education Law and accreditation standards binding upon all universities including Keller, "prior extensions" is not legal grounds to deny Incomplete grades. In fact, prior extensions rather indicate that there has been persistent extenuating circumstances that support Incomplete grade.

Moreover, on my part, the course instructor was always briefed about the extenuating health and technical issues surrounding these tasks and he has all the IT tickets to that effect. Health and technical issues are legal grounds warranting incomplete grades and it is applicable to all other accredited Universities including Keller.

I believe and therefore aver that although I am a US Citizen, it is because of my ethnic background that makes the course instructor deny to assign Incomplete grade with such wickedness and discriminatory animus against me and my health despite what the law and the Keller catalog clearly provides for me to get incomplete grade under such circumstances. The course instructor has all the thread of communications regarding both the extenuating health issue and IT problems associated to this remaining task. If he claims he does not have them, please let me know.

Students are entitled to incomplete grades under the same circumstances the course instructor is aware of per University Catalog. Conversely, here, I have been treated differently and I have therefore copied the U.S. Department of Education Office of Civil Rights and a formal complaint may follow. The University can be legally- liable for other several causes of actions including Breach of Contract claims.

I would the copied dean to know that I encountered health issues and other reported IT problems that affected my ability to complete the remaining tasks. The course instructor was well –briefed about all that. The IT report tickets are attached.

Administrative Deans can instruct course instructors. I will not file grade appeal on this. It will rather be taken up by the OCR in the event of a full-blown complaint. Consider this as my informal grade appeal. I will rather go to the OCR and U.S. Department of Health And Human Services if I elect to pursue it.

Also note that I did not have to deal with the numerous IT problems that affected my inability to do these two tasks. I spend countless hours dealing with your IT. This can affect the name and reputation of Keller. Nobody likes this especially when I am coming from some of the best competing Universities in PA you are aware about such as Drexel & Temple Universities, where such perfunctory things do not happen on people's paid education.

Moreover, I also take special issue with this because real teaching did not occur in this class. I paid ***tuition*** money to Keller to be taught by the course instructor who rather failed to prepare recorded lectures on the course material itself, and rather dumped on me numerous task-after- task with persistent technical issues.

**Action Items:**

Categorically, I respectfully urge you as an Associate Dean to immediately direct the course instructor to assign the Incomplete (I) grade and extend the time for me to complete the two remaining quizzes for all of us to put this matter to rest and move on.

IT help desk has advised that the course instructor is now capable to re-open the Quizzes for me to take them. I want the Dean to know that I consider it a serious ***personal insult*** by the course instructor against

Case: 1:20-cv-05567 Document #: 1 Filed: 09/18/20 Page 201 of 286 PageID #:201

④

me when he sent me to IT to seek the extension of the quizzes whereas IT confirmed that the course instructor has the ability to reload the quizzes for me to take them

I look forward to hearing from you soon before I take addition formal steps with external authoritative agencies.

Sincerely,

Michael Osei Livingstone
Keller ID# D405~

M . O . L

Ex. 2A
Cat'd

 Gmail

Michael Osei <mikeosei@gmail.com>

## William Mapp (Business Economics) just sent you a message in Canvas.

**William Mapp** <notifications@instructure.com>     Tue, Dec 19, 2017 at 2:19 PM
Reply-To: William Mapp via Canvas Notifications <reply+68f158403e227c8ea54bd55c7c1d4c997489ff57-9845~19605034@notifications.canvaslms.com>
To: mikeosei@gmail.com

**Update on Student with confidential documents.**

Michael,

Good afternoon! I will give you an "Incomplete" on this class (ECON 545 Business Economics- Nov/Dec 2017) and allow you one week to complete the following:

1. You will have one more attempt at the Week #2: Quiz #1 (your other 2 attempts were on 11/18 & 12/18).
2. Yow will have two more attempts at the Week #5: Quiz #2 (your other attempt was on 11/26).
I will contact Canvas to make sure you have access to the quizzes. The due date for all this work will be Tuesday, December 26, 2017 @ 11:59pm MST. In the meantime, I will put together the "Incomplete form" and get it to you this evening. Please let me know if you have any questions.

Thanks,

Eric Mapp, PhD

Eric Mapp, PhD | Visiting Professor III

P 520.249.5926 (No Texts) | E wmapp@devry.edu | Oro Valley, AZ 85755 | devry.edu

[https://outlook.office365.com/owa/service.svc/s/GetFileAttachment?id=
AAMkAGM1Y2M4YmZjLWY5MWMtNGQxMS1iNjY3LWE1YjJiYjY0MWZlNgBGAAAA
AAD%2BkisO79uGQ7AfmDFkNH3GBwBL9y9B
KC9hTresp0tFoSzOAAAAAAEMAABL9y9BKC9hTresp0tFoSzOAAEqn5SJAAAB
EgAQANu4BajtetVLkrulwew6HVI%3D&X-OWA-CANARY=
zyDk5BZpKkuboq2UD1K6zYCwc0prONUYvNV4a-uyIORoUoF_
CrN84wU2L9VylFTriQgDlClqLDY.&isImagePreview=True]

From: Michael Livingstone <notifications@instructure.com>
Sent: Monday, December 18, 2017 11:01:28 PM
To: Mapp, William
Subject: Michael Livingstone (Business Economics) just sent you a message in Canvas.

N Ý

# Exhibit 2B

Description:

Nine (9) Errors identified in hearing package notice Ex. 1A

26 pages

6/27/2019                    Gmail - Code of Conduct Hearing Packet - Michael Livingstone

 Gmail

*EX. 2B cat'd*

Michael Osei <mikeosei@gmail.com>

---

## Code of Conduct Hearing Packet - Michael Livingstone
13 messages

---

**Agresta, Jonathan** <JAgresta@devry.edu>                    Fri, Jun 14, 2019 at 6:40 PM

Hello,

Attached you will find the Hearing Packet, as well as supplemental evidence, for Michael Livingstone's upcoming Code of Conduct Hearing.  Please review all documents prior to the hearing (starting with the file titled, *Hearing Packet Michael Livingstone.pdf*).

If you have any questions, please let me know.  Have a good weekend.

Regards,

**Jonathan A. Agresta, M.Ed.** | *Assistant Dean of Academic Excellence – Northeast Group*

**P** 215.591.5867 | **E** jagresta@devry.edu

1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu

 DeVry University
Keller Graduate School of Management

---

📄 **Hearing Packet Michael Livingstone.zip**
1710K

---

**Michael Osei** <mikeosei@gmail.com>                    Fri, Jun 14, 2019 at 11:27 PM
To: "Agresta, Jonathan" <JAgresta@devry.edu>

Hello Dean Agresta,

### Please read with this with ardent meticulous to detail.

I reviewed the hearing packet emails you attached. I noticed some errors therein. I would appreciate you correcting those errors for accuracy of the record. You claim that it is your sense that I file grade appeals, seek incomplete grades, or copy university administrators on my emails as a tactic to "get over the head of course instructors to have my way." That is not true in light of same evidences you cited. If indeed I wanted to have my way, I would not copy administrators to seek their intervention or file grade appeals.

Case: 1:20-cv-05567 Document #: 1 Filed: 09/18/20 Page 205 of 286 PageID #:205

People who want to "have their way" usually resort to taking matters into their own hands as you know, which has not been the case with me here. The evidences you have attached shows that I never took matters into my own hands but I rather engaged university administrators or filed grade appeals or voiced my concerns, which is not rude or intimidating. I cannot be disciplined for doing the right thing in that regard.

As a neutral code administrator, I draw your attention to the fact all the evidence you cited also shows that I face disciplinary action in 2019 for filing grade appeals, seeking incomplete grades, and voicing my concerns or frustrations to university staff and administrators. Please be reminded that filing grade appeals, seeking incomplete grades, and voicing my concerns are provided in the Keller catalogs and it is a mandatory provision under Title IX of the Educational Amendments Act of 1972 required upon all universities of higher education and accreditation guidelines for redress of student academic grievances.

Moreover, I cannot be retaliated with disciplinary action for asserting to file a lawsuit or for copying the Office of Civil Rights in the mail evidences you cited. Accordingly, please be advised that pursuing this disciplinary hearing can be against the anti-retaliation clauses.

### Factual errors in the hearing package you sent me as email attachment:

- **Error No. 1**

With reference to Page 1 of the hearing packet where you cited the statement of Ms. Deb Koffman, Operations Support Coordinator II, please note that her statement is not accurate. That is not what I said at all. I deny the accuracy of that statement entirely.

You are a neutral code administrator who should review credibility on both sides without taking any sides. Accordingly, please obtain the recorded telephone conversation itself and listen to it for yourself. It should have been attached to her report. When we talked earlier today on telephone, you mentioned that the receiver of the June 13th transferred phone call you identified in the hearing package as Ms. Kristine Kearney also complained that I said I would sue Keller.

It was also in that telephone conversation that I said I would sue Keller. I cannot be disciplined for exercising my civil right today I would sue someone because it will be unlawful retaliation against my *right to petition*. Accordingly, for credibility and proper notice, please obtain that June 13 telephone conversations entirely so that everybody is on the same page for impartial judgment and please send me a copy on Monday June 17 in the afternoon.

- **Error No. 2**

On Page 1 of the hearing package, you wrote :

> …also attached is the respondent's formal requests to postpone the hearing and to have the hearing held in person with no technology present, which were denied.

Please note that I never asked that any technology to be present at the hearing. It is inaccurate to say that. Due process hearings like this must be recorded and I hope that you would record the hearing as required by due process. To be clear, I requested that the hearing be done in-person without communication barriers on a local campus, not that no technology be presented. Today, I request that the June 20 hearing, which is a due process hearing, should be fully recorded for transcription and done in-person as part of all procedural safeguards. I must see the faces of the hearing panel members to challenge them for bias, for example.

- **Error No. 3**

Ex. 2B cont'd

Still on Page 1 of the hearing package, you wrote:

"…He also cited incidents at past universities where this tactic of CC'ing administrators led to him having courses removed."

Please note that this is not a "tactic." Instead, it is the right thing for a student to seek administrative redress of grievances unlike those who rather take matters into their own hands. The administrators at DeVry, such as yourself and Dr. Kavouras have always encouraged me to reach out if I need assistance with anything and Dr. Kavouras has always been helpful to me even after he left his position as Chairperson. Copying him or you is not to get over a course instructor's head to get what I want also because the course instructor was copied in my email—nothing to hide.

You would agree with me that in life we must all fight for ourselves and I am quite sure you have pressed things to people in authority to fight for you too in this life. So, my approach to administrators is not punishable and not intimidating. I cannot be disciplined for fighting for myself.

- **Error No. 4**

You cited an email from the DeVry ADA officer, Ms. Adrienne Taylor, for example. That was an ADA matter provided under the federal ADA statute protecting disability. So, it had to go to the ADA officer and she clarified things and even extended my previous ADA extension accommodation extension by one more week.

Again, that is not to get over course instructor's head. If a matter involves the federal ADA statute, the rightful ADA office should handle it and I sent it to the Keller designated ADA officer. I cannot be disciplined now for doing the right thing to advocate for my ADA statute accommodations. By your citing of my ADA requests as punishable evidence against me, you are retaliating against me for seeking federal ADA accommodations.

Please note that I have right to obtain ADA accommodation extension and I went through the proper process to get ADA accommodations at Keller. I cannot be disciplined now for that.

- **Error No. 5**

You mentioned in the hearing package that:

I "…cited incidents at past universities where this tactic of CC'ing administrators led to him having courses removed."

As FYI, please find attached **Exhibit A.13** that casts context into what I meant:

Exhibit A.13 shows that when I was at La Salle University, for example, then-University Provost, Dr. Joseph Marbach, https://www.lasalle.edu/univcomm/2010/marbach.html, stepped into a discrepancy I had with a late-registered class and he authorized the Registrar and Faculty to retroactively drop a class for me. *See* the relevant first paragraph of the attached Exhibit A.13. University Provosts oversee all academic policies and they can step in to point faculty and student in the right direction. Provosts exist for all students and faculty. There is nothing rude or intimidation on my part to reach out to the DeVry Provost.

Provosts like to hear from students, which is why I copied the DeVry Provost on those email so that he might perhaps get involved to point the right direction and to see my grievance. It was not to be rude.

Let me recall your memory that attached **Exhibit C** is email dated Mon, Feb 11, 2019 at 12:30 PM that you sent me in back in February 2019 where you in particular randomly invited me for a round table with the DeVry Northeast University President to voice my concerns as voice for Keller students, which tell me even the University President wants to hear student concerns.
So, for you to now seek disciplinary action against for voicing my academic concerns to administrators like Provosts is in contravention to the true spirit of why you invited me for a round table. Again, copying

Provost or administrators is not rudeness or intimidation on my part for which I should now face disciplinary action.

- **Error No. 6**

*Ex. 2B*
*(cont'd)*

On Page 1 on the hearing package, you also wrote this:

> …There are multiple instances of this behavior, some of which can be seen below. With a thorough review of his academic history, the conduct administrator noted multiple repeated instances of grade appeal and incomplete requests (8 such cases on file) throughout his academic career.

Please note that this cannot be mis-characterized as "misbehavior" on my part because it is in the Keller catalogs and higher education guidelines that students can request for incomplete and file grade appeals or voice their concerns. That is the right thing to do. Please advise what students should do then if they have academic grievance. I did the right thing to appeal a grade or seek incomplete. I cannot be punished for asking for incomplete or filing a grade appeal.

- **Error No. 7**

In Page 2 of the hearing package, you wrote this:

> Created By: MEGAN MIHELICH (8/17/2018 1:39 PM) Live Chat ID 4295645751

Please note that I deny any rudeness to Ms. Megan Mihelich. Anybody can say someone has been rude to them.

- **Error No. 8**

In Page 2 of the hearing package, you wrote this:

> Case: 07102381 12/19/18
> Respondent sent this email to SE Assistant Dean CC'ing the Office of Civil Rights, his professor, and Student Central in order to get an Incomplete for a course dating back over a year. This request was eventually denied.

Here, you are actually referring to my grade appeal about MIS 535. Please note that I did not request for an incomplete to be given one year after that MIS 535 class. I had requested for an incomplete around the end of that class due to sickness and that is within my right and the Keller catalogs to seek incomplete grade. Please tell me if it is not in the catalog. That is not intimidation or rudeness to request for incomplete.

Of course, I did the right thing to file grade appeal about that MIS 535 class later on, which the University has not addressed the academic issues therein—a separate matter. In that grade appeal, I indicated that I requested for incomplete around the end of the class. I did not ask for incomplete grade but rather, retroactive change of the grade through a grade appeal process.

In fact, the grade appeal reviewer asked me if I did the right thing to seek incomplete grade if I was sick and he requested to see email evidence that I did tell the course instructor I was sick at the time. Still, a grade appeal is a proper remedy provided to students if there is academic grievance. I cannot be disciplined in retaliation for filing grade appeal, or, for seeking incomplete grade over that MIS 535 class.

- **Error No. 9**

*Ex. 2B cont'd*

In Pages 3-4, you wrote:

> Subject: Urgent Memo for immediate attention and intervention of Dean of Academic
> Excellence; Cc'd to Federal U.S.Department of Education Office of Civil Rights before
> formal complaints; Regarding ECON 545, Nov.2017 course instructor, for immediate
> INCOMPLETE grade

Here, you did not cite the date of this incidental email for proper chronology. Let me point out that you are
referring to my email dated back on Tuesday, Dec 19, 2017 at 3:13 PM. Please note that if this email was
truly a concern in 2017, the course instructor should have acted on it back in year 2017, not now in 2019.

A rebuttal to the email you have cited, please note that I have email evidence dated back on Dec 19, 2017,
2:19 PM that the Course Instructor worked with me and granted me an incomplete grade at the time because
my request for the incomplete was credible and I did the work and my final grade was A- for ECON 545.
Here is what the course instructor wrote in his email granting the incomplete grade at the time:

> Michael,
> Good afternoon! I will give you an "Incomplete" on this class (ECON 545 Business
> Economics- Nov/Dec 2017) and allow you one week to complete the following:
> 1. You will have one more attempt at the Week #2: Quiz #1 (your other 2 attempts were on
> 11/18 & 12/18).
> 2. Yow will have two more attempts at the Week #5: Quiz #2 (your other attempt was on
> 11/26).
> I will contact Canvas to make sure you have access to the quizzes. The due date for all this
> work will be Tuesday, December 26, 2017 @ 11:59pm MST. In the meantime, I will put
> together the "Incomplete form" and get it to you this evening. Please let me know if you have
> any questions.
> Thanks,
> Eric Mapp, PhD | Visiting Professor III

Accordingly, this was a matter that was resolved nicely back in the year 2017. So, contrary to what you
cited, the above email shows there was no rudeness or intimidation on my part for asking for incomplete
grade in ECON 545 for me to face disciplinary action over it in 2019.

Moreover, I copied the Federal U.S. Department of Education Office of Civil Rights (OCR) on that email
you cited and that is within my right to do. I cannot be retaliated against for that.

By pursuing disciplinary action against me over a 2017 email wherein I copied the Federal U.S. Department
of Education Office of Civil Rights to allege them about appearance of discrimination in my education, you
are retaliating against me despite the anti-retaliation laws and anti-discrimination laws that protects me
against such retaliations. Moreover, although I copied the OCR, I did not file a discrimination complaint
against DeVry.

Finally, please note the hearing notice you sent me quoted alleged incidents on April 28 & 29 and June 13.
However, the hearing package cites email dating back to 2017. That is improper notice in contravention to
due process.

Also bear in mind that a course instructor has been given incomplete grade before without my request for it
because the course instructor could not complete grading my work to meet the university's deadline for
grade submission. It is against due process and principles of fairness for you as a bystander, who does not
know the full circumstances of a matter, to seek disciplinary action against me whereas the course instructors
themselves did not ask you to seek this adversarial disciplinary action against me seeking incomplete grades.

Based on the foregoing, I request that you dismiss this matter by 11am EST of Monday June 17 because the record of evidences in the hearing package you have sent me shows you are motivated by retaliatory animus to pursue disciplinary action against me for asserting my rights to petition to sue for redress of my grievances, for voicing my concerns and frustrations, for filing grade appeals, and for seeking incomplete grade. None of this is misbehavior on my part., It the right thing for a student to do if they have a grievance.

Sincerely,

~ Michael O. Livingstone

Ex. 2B cont'd

[Quoted text hidden]

**3 attachments**

📄 **Exhibit A.13. Ancillary document showing that all accredited Universities such as La Salle Provost honor retroactive grade changes. See relevant paragraph 1 (1).pdf**
88K

📄 **Exhibit C. February Email from Dean Agresta inviting me for a Roudtable with Northeast President.pdf**
362K

📄 **Exhibit B. Email from Dean Waleed appreciating my feedback.pdf**
574K

---

**Agresta, Jonathan** <JAgresta@devry.edu>
To: Michael Osei <mikeosei@gmail.com>
         Mon, Jun 17, 2019 at 10:32 AM

Hello Michael,

Thank you for providing this information. It will be passed along to the hearing panel so that they can review prior to the hearing scheduled for Thursday. Please be aware that DeVry policy states all hearings are recorded.

Have a good day.

Regards,

**Jonathan A. Agresta, M.Ed.** | *Assistant Dean of Academic Excellence – Northeast Group*

**P** 215.591.5867 | **E** jagresta@devry.edu

1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu



Ex. 2B
Cant of

[Quoted text hidden]

---

**3 attachments**

📄 **Exhibit A.13. Ancillary document showing that all accredited Universities such as La Salle Provost honor retroactive grade changes. See relevant paragraph 1 (1).pdf**
88K

📄 **Exhibit C. February Email from Dean Agresta inviting me for a Roudtable with Northeast President.pdf**
362K

📄 **Exhibit B. Email from Dean Waleed appreciating my feedback.pdf**
574K

---

**Michael Osei** <mikeosei@gmail.com>            Tue, Jun 18, 2019 at 2:10 PM
To: "Agresta, Jonathan" <JAgresta@devry.edu>

Good Afternoon, Asst. Dean Agresta,

- Request for the University's Attorney or legal Counsel's information to serve legal documents upon between now and tomorrow.

I hereby request for the in-house University Counsel's information to serve some legal documents immediately between now and tomorrow, as required by the NJ federal courts. Because they are legal documents, the law requires that DeVry University's Attorney must receive them.

Please indicate who is the University's in-house Attorney for New Jersey and Pennsylvania area and their contact information, as I could not find that on the general DeVry website.

Also, thanks for passing on the information I gave you to the panel. I may have some additional factual documents for the panel before the hearing.

Please note that my telephone call last Friday and communications with you was out of courtesy and respect to you as Code administrator for you to know that there is no cause of alarm on my part and to facilitate your preliminary evaluation of merits for pre-hearing mediation to dismiss this matter because Article IV of the Code of Conduct itself says:

> …Once charges have been filed, the conduct administrator will investigate to determine if **charges have merit and**/or if they can be resolved by mutual consent of the complainant and the respondent on a basis acceptable to the conduct administrator (such as **mediation**).

I think mediation is part of the hearing itself.

The June 20, 2019 hearing is *a de novo* **due process hearing**. Anything I have said or written to you prior to the hearing is not part of the hearing and I was not sworn or speaking under oath when I spoke with you. My statements at the hearing are what should be judged, not my communications with you.

Please do not share any of my communications with the panel without my indication to share it, as that will prejudice and bias them because the panel must hear me first hand and they must be impartial.

Also, I note the names of the hearing panel members. I cannot ask for their recusal and to challenge their impartiality unless I see their faces. Also for the record, I have expressed that the hearing be conducted in-person for credibility and to avoid any technical glitches while it should be recorded and transcribed.

I note the names of the complainants and their alleged statements. Please ensure that they attend the hearing as I have a right under due process and the code of conduct to cross-examine the complainants. For the record, I have requested for the telephone recording for exactly what was said and been denied that the evidence does not exist. It is therefore my word against the complainant's word and side-taking should be avoided.

In the meantime, please give me the information for the University's legal Counsel for New Jersey region.

Thank you.

~ Michael O. Livingstone.

Ex. 2B cont'd

[Quoted text hidden]

---

**Agresta, Jonathan** <JAgresta@devry.edu>
To: Michael Osei <mikeosei@gmail.com>

Tue, Jun 18, 2019 at 5:15 PM

Hello Michael,

I do not have our legal counsel's information, but I sent a message to our Group Dean to see who we can get you in contact with. As it is the end of the business day, I may not have this information for you until tomorrow. If you have an immediate need to speak with our legal department, please call your advisor (or any advisor) and they can work with you.

I determined that mediation will not work in this case as the complainant did not want to speak with you again and your apology was not deemed appropriate.

As a reminder, the Code of Conduct hearing is not a legal or criminal hearing; it is an internal procedure facilitated for DeVry colleagues and students to ensure a safe, collegiate environment. I have followed the policy fully and will continue to do so. Any communication with the conduct administrator, can be referenced during this hearing. Especially since they contain your rebuttals to the claims of this hearing.

The complainant will not be attending the hearing as they already provided statements. DeVry policy does not allow any sort of cross-examination between the respondent and the complainant. From Article IV: Conduct Procedures, Section 5.f.:

"Parties should not ask each other questions directly but may propose questions at the

discretion of the conduct panel chair. Neither party should be compelled to testify in

front of the other. As necessary or requested, there should be a procedure in place so

they can hear the other's testimony without direct contact." – Student Handbook, page 17

I have provided you with their statements in accordance with policy.

*Ex. 2B cont'd*

You can speak with our hearing panel without seeing their faces in person. I recommend logging in with WebEx and connect your webcam.

Thank you and have a good evening.

[Quoted text hidden]

---

**Agresta, Jonathan** <JAgresta@devry.edu>           Tue, Jun 18, 2019 at 5:53 PM
To: Michael Osei <mikeosei@gmail.com>

Hello again, Michael,

Here is the email for our Ombudsman: ombudsman@devry.edu. You can discuss your legal concerns with them.

Regards,

**Jonathan A. Agresta, M.Ed.** | *Assistant Dean of Academic Excellence – Northeast Group*

**P** 215.591.5867 | **E** jagresta@devry.edu

1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu



**DeVry University**
**Keller** Graduate School of Management

[Quoted text hidden]

---

**Michael Osei** <mikeosei@gmail.com>           Wed, Jun 19, 2019 at 8:37 PM
To: "Agresta, Jonathan" <JAgresta@devry.edu>

Good Evening Asst. Dean J. Agresta,

- **A Couple of important things and procedural due process reservations for the record and my email evidences to be forwarded to the panel for the hearing tomorrow to supplement the record of the evidences I intend to use at the hearing.**

- **No need for the Panel to review all of the attached. They already have some from the packet you sent.**

Case: 1:20-cv-05567 Document #: 1 Filed: 09/18/20 Page 213 of 286 PageID #:213

1. First, thanks for sending me the information about the University Ombudsman. However, please note that the Ombudsman is not the University's designated General Legal Counsel. Instead, the appropriate person is Mr. F. Willis (Bill) Caruso, Jr., who is published in Page 143 of the Keller Catalog https://www.devry.edu/content/dam/devry_edu/d/Keller_Catalog.pdf, as the University's General Counsel, Secretary and Vice President, Regulatory Affairs. A General Legal Counsel for institutions are required to be trained and licensed Attorney as they are the institutional Executives recognized by the Federal Courts for the purposes of notice requirements for Rule 65 preliminary injunctions and TROs issued by Federal Courts issue under the Federal Rules of Civil Procedure, https://www.law.cornell.edu/rules/frcp/rule_65, without notice upon Motion by the oppressed as in my case here, for example, as the Federal Court might issue over this case soon.

Accordingly, both Ombudsman and Mr. F. Willis (Bill) Caruso, Jr., will be receiving the legal documents and they may receive an emergency federal court order soon for preliminary injunctions over this matter and they will tell you. Because Mr. Caruso is trained attorney, he will know what Rule 65 injunction means over this matter.

2. Second, before the hearing, please forward the attached Exhibits to the members of the hearing Panel to supplement evidences I intend to use at the hearing. They need not review it because not all of them may be necessary for the hearing. Each of the attached exhibits are emails and documents. Please be advised that a Federal Court will be reviewing all these Exhibits and the alleged injustice against me in this matter. Please be advised that the hearing panel may later have to testify as to why they still found me guilty under the code charges in the event they do not exonerate me. As such, as a neutral code administrator, please ensure that all members of the panel receive have these attached supplemental documents.

As a guide, I have appended a cover page to each of the exhibits as a description of the exhibits and what the allegation or misconception it is intended to rebut. Not all these exhibits may be useful tomorrow depending on how things go. However, I think it will be efficient that it is forwarded to the hearing panel so that we do not spend the hearing time to transmit and share email evidences. My objections remain on the record for review by the Court or not providing in-person hearing as procedural safeguard.

The documents in the zip file you attached to the June 14 hearing packet you sent me are relabeled here as Exhibits 1A & Exhibits 3A-3I. Please note that the front cover sheets provide descriptions on the Front Page of each exhibits.

The attached Exhibits 2A-2C are evidential rebuttals against some of the documents and emails you included in the Zip File labeled as 3A-3I.

Essentially, I would like to draw your attention more importantly to Exhibits 4A - 4C as evidential email rebuttals against your stated allegation, misconception, and sense that you think I copied administrators on emails with the intent "to intimidate Professors to get over their heads to have my way."(Ex. 1 A, p.2) Please note that you have prejudged me by thinking for me with assumptions. Think the same things. The word "intimidation" is legal word for higher form of physical threat. No parts of the hearing packet evidences show that I physically threatened anybody at all.

In that vein, I call forth evidential witness emails from 2018 showing the origin and rationale as why I copy DeVry administrators based on the original email advice that was given to me by DeVry's faculty Professor Mary Welsh, Ph.D who copied his then-faculty chair Professor Kavouras and many DeVry Student Advisers on it. Please read the highlighted yellow part of attached Exhibit 4A. This is also the historical background as to why I reached out to Professor Kavouras in 2019 and you attached my 2019 email to him in the hearing packet also attached herewith as Exhibit 3C, but see highlighted parts of Exhibit 4C

**Third,** for the record, I respectfully request for your ethical recusal from these proceedings because it appears you are a Complainant in this matter, and therefore you cannot be a neutral code administrator because you went into my DeVry email without my permission and obtained any email out-of-context to accuse me with misbehavior even from past year 2017 whereas you do not know the context in which those emails were exchanged and you were never my teacher whereas the recipients of the emails themselves are not complainants.

Please note that I do not always use my DeVry email for all correspondence. As such, I have attached rebuttal emails against the emails you retrieved from my DeVry email against me. You retrieved an email from 2017 regarding an incomplete grade with ECON 545 teacher Dr. Mapp wherein I also copied the OCR

to allege appearance of discrimination, for example. *See* Exhibit 1A at pp.4-5 of the hearing package citing it without quoting the chronological date of the email. I have therefore retrieved and attached the exact email and its contextual correspondence as Exhibit 2A. Please see that for yourself. Moreover, a request for incomplete grade is not misconduct on my part. It is provided in Page 102 of the Keller Catalog contract.

**Fourth,** you stated in your email that the complainants will not participate in the hearing tomorrow and so they will not be cross-examined. For the record, I reserve this as a procedural defect subject to review by the Federal Courts. Please note that Article IV, section 5(e) of the University's published Student Handbook Code Of Conduct, https://www.devry.edu/d/student-handbook.pdf, provides cross-examination of Complainants and the Respondent at the hearing where the Code says in Page 17 that:

> "The University, the complainant, the respondent and the conduct panel shall be allowed to present witnesses and evidence, subject to the **right of cross-examination** by the conduct panel…" (Emphasis added)

I agree with you though that the hearing is not a full-blown hearing such a criminal proceeding. However, this is due process hearing and quasi-judicial proceeding in University tribunal subject to review by a federal Court for procedural defects. Especially in this case where there is no evidence of the alleged telephone conversation and it is my word against the complainants' words, credibility cannot be assessed through cross-examination to avoid false accusations and accountability of Complainants.

**Fifth,** please note a change of my address from Pennsylvania to New Jersey address. This change also reflects on the DeVry Portal. The Federal Court will be using this New Jersey address for geographical jurisdiction: 1200 Haddonfield Road-1302, Pennsauken, NJ 08110. I have redacted my address on the hearing package you sent me as attached Ex.1 A because I am giving the same document to the Court as an Exhibit and so personal identifiers must be redacted.

**Sixth,** I do not use webcams. Bear in mind I have ADA accommodations at DeVry and there are thing you do not know about. So, please do not assume everybody can or should be able to use any technology. In the event of technical glitch and I lose connection during the hearing tomorrow, I state here in advance that do not construe that as rude on my part or absenting myself from the hearing. To avoid such things and for smooth proper hearings is why the courts evaluate the forum and the method of the hearing too. Even if the panel is from across the country, because you have put someone's education on the brink, the courts require proper hearing in a proper forum. I will later declare to the federal court that I did not have a proper hearing from that compromised my effective representation because it was not done in-person.

**Finally,** for the record, I reserve my right to remain silent at the hearing too even if I attend without the panel drawing any inferences against me.

Thank you for reading have a good night.

Sincerely,

Michael O. Livingstone.

[Quoted text hidden]

Ex. 2B
Cont'd

**18 attachments**

📄 **Exhibit 1A.pdf**
657K

📄 **Exhibit 3 F.pdf**
469K

📄 **Exhibit 2C.pdf**
403K

📄 **Exhibit 3A.pdf**
107K

Ex. 2B
cont'd

Exhibit 3 I.pdf
437K

Exhibit 2A.pdf
510K

Exhibit 2B.pdf
704K

Exhibit 3B.pdf
120K

Exhibit 3E.pdf
88K

Exhibit 3H.pdf
230K

Exhibit 3C.pdf
324K

Exhibit 4 A.pdf
708K

Exhibit 3G.pdf
126K

Exhibit 3D.pdf
245K

Exhibit B to Ex.2c.pdf
298K

Exhibit C to Ex. 2C.pdf
114K

Exhibit 4B.pdf
1401K

Exhibit 4C.pdf
1081K

---

Thu, Jun 20, 2019 at 11:46 AM

**Agresta, Jonathan** <JAgresta@devry.edu>
To: Michael Osei <mikeosei@gmail.com>

Thank you for sending these files, Michael. I have forwarded them to the panel. Yes, you have the right to not speak or not show up for the hearing. We will hold it regardless of your presence. Your objections and concerns about this process are documented. I promise you a fair and objection hearing in line with DeVry's policies. I am updating your address in the conduct file as you have requested. I hope to see you today so that we can resolve this issue and move forward.

[Quoted text hidden]

Thu, Jun 20, 2019 at 11:48 A

**Michael Osei** <mikeosei@gmail.com>
To: "Agresta, Jonathan" <JAgresta@devry.edu>

Good Morning, Asst. Dean Agresta,

- **Medical Condition after Short Storm last night that has also affected some of my technology to access the virtual hearing today.**

- **Request for a short continuance to postpone today's conduct hearing to Next Friday**

By reference to the attached, I am already under the specialty medical care and medical monitoring of Dr. Bruce Brod of Penn Medicine. He is also one of my Physicians who certified my permanent ADA

...ument&search=all&permthid=thread-f%3A1636357426591547730&simpl=msg-f%3A163635742...

accommodations on file at Keller.

As a result of a short storm last night, my symptoms were triggered and Dr.Brod has shown me what to do to manage the medical situation when that happens. Due the severe side effects of the medications and the pain, my effective representation at today's hearing will be compromised.

Plus, a short thunderstorm in the Pennsauken area where I live in the Camden County also destroyed the technology I need to use for today's virtual hearing.

As you know, I was prepared to do this hearing, and I have called you before and corresponded and sent you information that shows that I wanted to participate in the hearing today. However, under the present extenuating medical circumstances and the technological defects, it is a procedural safeguard to allow continuance to ensure my effective participation is not compromised.

Accordingly, I respectfully request for a short continuance to next Friday June 28, 2019 or perhaps tomorrow June 21, 2019.

This continuance will ensure my full effective participation in the hearing as procedural safeguard. This continuance will also allow the Panel to review the exhibits I sent you last evening to avoid erroneous misconceptions.

There is crucial content in the exhibits I sent you which you in particular should meticulously see, especially **Exhibit 4A** with highlighted yellow parts where faculty member Dr. Welsh actually sent me email to "reach out" and copy administrators and advisers in this school " going forward and seek ADA accommodation."

Please be also advised that a Federal Court will be reviewing( guaranteed) all these correspondences to ensure that requests for continuances were handled not to compromise any effective representation in the hearing especially since I have chosen not to have any adviser or Attorney with me for the hearing the Code gives me option to do the hearing with an Attorney with me.

Please let me know by **2pmEST** today about this request to postpone the hearing. You can keep the same hearing panel since they are familiar with the matter by now.

Thank you in advance.

~Michael Livingstone

[Quoted text hidden]

Ex. 2B cont'd

**2 attachments**

📄 **Exhibit M. Signed. Same  Doctor's Note..pdf**
1438K

📄 **Flash Flood Warning for Gloucester and Camden Counties, NJ.pdf**
652K

---

**Agresta, Jonathan** <JAgresta@devry.edu>
To: Michael Osei <mikeosei@gmail.com>

Thu, Jun 20, 2019 at 11:52 AM

Hello Michael,

The doctor's note you provided excuses you for the week following May 16th, 2019.  That was a month ago.  If you want to come to campus to attend the hearing, I can set you up  with a computer, webcam and microphone as our technology and power is up and running.

Regards,

**Jonathan A. Agresta, M.Ed.** | *Assistant Dean of Academic Excellence – Northeast Group*

**P** 215.591.5867 | **E** jagresta@devry.edu

1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu

Ex- 2B
cont'd



**DeVry University**
**Keller** Graduate School of Management

**From:** Michael Osei <mikeosei@gmail.com>
**Sent:** Thursday, June 20, 2019 11:48 AM
**To:** Agresta, Jonathan <JAgresta@devry.edu>
**Subject:** Re: FW: Code of Conduct Hearing Packet - Michael Livingstone

Good Morning, Asst. Dean Agresta,

- **Medical Condition after Short Storm last night that has also affected some of my technology to access the virtual hearing today.**

- **Request for a short continuance to postpone today's conduct hearing to Next Friday**

By reference to the attached, I am already under the specialty medical care and medical monitoring of Dr. Bruce Brod of Penn Medicine. He is also one of my Physicians who certified my permanent ADA accommodations on file at Keller.

As a result of a short storm last night, my symptoms were triggered and Dr.Brod has shown me what to do to manage the medical situation when that happens. Due the severe side effects of the medications and the pain, my effective representation at today's hearing will be compromised.

Plus, a short thunderstorm in the Pennsauken area where I live in the Camden County also destroyed the technology I need to use for today's virtual hearing.

As you know, I was prepared to do this hearing, and I have called you before and corresponded and sent you information that shows that I wanted to participate in the hearing today. However, under the present extenuating medical circumstances and the technological defects, it is a procedural safeguard to allow continuance to ensure my effective participation is not compromised.

Accordingly, I respectfully request for a short continuance to next Friday June 28, 2019 or perhaps tomorrow June 21, 2019.

This continuance will ensure my full effective participation in the hearing as procedural safeguard. This continuance will also allow the Panel to review the exhibits I sent you last evening to avoid erroneous misconceptions.

There is crucial content in the exhibits I sent you which you in particular should meticulously see, especially **Exhibit 4A** with highlighted yellow parts where faculty member Dr. Welsh actually sent me email to "reach out" and copy administrators and advisers in this school " going forward and seek ADA accommodation."

Please be also advised that a Federal Court will be reviewing( guaranteed) all these correspondences to ensure that requests for continuances were handled not to compromise any effective representation in the hearing especially since I have chosen not to be have any adviser or Attorney with me for the hearing the Code gives me option to do the hearing with an Attorney with me.

Please let me know by **2pmEST** today about this request to postpone the hearing. You can keep the same hearing panel since they are familiar with the matter by now.

Thank you in advance.

~Michael Livingstone

On Wed, Jun 19, 2019 at 8:37 PM Michael Osei <mikeosei@gmail.com> wrote:

Good Evening Asst. Dean J. Agresta,



- **A Couple of important things and procedural due process reservations for the record and my email evidences to be forwarded to the panel for the hearing tomorrow to supplement the record of the evidences I intend to use at the hearing.**

- **No need for the Panel to review all of the attached. They already have some from the packet you sent.**

1. First, thanks for sending me the information about the University Ombudsman. However, please note that the Ombudsman is not the University's designated General Legal Counsel. Instead, the appropriate person is Mr. F. Willis (Bill) Caruso, Jr., who is published in Page 143 of the Keller Catalog https://www.devry.edu/content/dam/devry_edu/Keller_Catalog.pdf, as the University's General Counsel, Secretary and Vice President, Regulatory Affairs. A General Legal Counsel for institutions are required to be trained and licensed Attorney as they are the institutional Executives recognized by the Federal Courts for the purposes of notice requirements for Rule 65 preliminary injunctions and TROs issued by Federal Courts issue under the Federal Rules of Civil Procedure, https://www.law.cornell.edu/rules/frcp/rule_65, without notice upon Motion by the oppressed as in my case here, for example, as the Federal Court might issue over this case soon.

Accordingly, both Ombudsman and Mr. F. Willis (Bill) Caruso, Jr., will be receiving the legal documents and they may receive an emergency federal court order soon for preliminary injunctions over this matter and they will tell you. Because Mr. Caruso is trained attorney, he will know what Rule 65 injunction means over this matter.

2. Second, before the hearing, please forward the attached Exhibits to the members of the hearing Panel to supplement evidences I intend to use at the hearing. They need not review it because not all of them may be necessary for the hearing. Each of the attached exhibits are emails and documents. Please be advised that a Federal Court will be reviewing all these Exhibits and the alleged injustice against me in this matter. Please be advised that the hearing panel may later have to testify as to why they still found me guilty under the code charges in the event they do not exonerate me. As such, as a neutral code administrator, please ensure that all members of the panel receive have these attached supplemental documents.

As a guide, I have appended a cover page to each of the exhibits as a description of the exhibits and what the allegation or misconception it is intended to rebut. Not all these exhibits may be useful tomorrow depending on how things go. However, I think it will be efficient that it is forwarded to the hearing panel so that we do not spend the hearing time to transmit and share email evidences. My objections remain on the record for review by the Court or not providing in-person hearing as procedural safeguard.

The documents in the zip file you attached to the June 14 hearing packet you sent me are relabeled here as Exhibits 1A & Exhibits 3A-3I. Please note that the front cover sheets provide descriptions on the Front Page of each exhibits.

The attached Exhibits 2A-2C are evidential rebuttals against some of the documents and emails you included in the Zip File labeled as 3A-3I.

Essentially, I would like to draw your attention more importantly to Exhibits 4A - 4C as evidential email rebuttals against your stated allegation, misconception, and sense that you think I copied administrators on emails with the intent "to intimidate Professors to get over their heads to have my way."(Ex. 1 A, p.2) Please note that you have prejudged me by thinking for me with assumptions. Think the same things. The word "intimidation" is legal word for higher form of physical threat. No parts of the hearing packet evidences show that I physically threatened anybody at all.

In that vein, I call forth evidential witness emails from 2018 showing the origin and rationale as why I copy DeVry administrators based on the original email advice that was given to me by DeVry's faculty Professor Mary Welsh, Ph.D who copied his then-faculty chair Professor Kavouras and many DeVry Student Advisers on it. Please read the highlighted yellow part of attached Exhibit 4A. This is also the historical background as to why I reached out to Professor Kavouras in 2019 and you attached my 2019 email to him in the hearing packet also attached herewith as Exhibit 3C, but see highlighted parts of Exhibit 4C

**Third,** for the record, I respectfully request for your ethical recusal from these proceedings because it appears you are a Complainant in this matter, and therefore you cannot be a neutral code administrator because you went into my DeVry email without my permission and obtained any email out-of-context to accuse me with misbehavior even from past year 2017 whereas you do not know the context in which those emails were exchanged and you were never my teacher whereas the recipients of the emails themselves are not complainants.

Please note that I do not always use my DeVry email for all correspondence. As such, I have attached rebuttal emails against the emails you retrieved from my DeVry email against me. You retrieved an email from 2017 regarding an incomplete grade with ECON 545 teacher Dr. Mapp wherein I also copied the OCR to allege appearance of discrimination, for example. *See* Exhibit 1A at pp.4-5 of the hearing package citing it without quoting the chronological date of the email. I have therefore retrieved and attached the exact email and its contextual correspondence as Exhibit 2A. Please see that for yourself. Moreover, a request for incomplete grade is not misconduct on my part. It is provided in Page 102 of the Keller Catalog contract.

**Fourth,** you stated in your email that the complainants will not participate in the hearing tomorrow and so they will not be cross-examined. For the record, I reserve this as a procedural defect subject to review by the Federal Courts. Please note that Article IV, section 5(e) of the University's published Student Handbook Code Of Conduct, https://www.devry.edu/d/student-handbook.pdf, provides cross-examination of Complainants and the Respondent at the hearing where the Code says in Page 17 that:

> "The University, the complainant, the respondent and the conduct panel shall be
>
> allowed to present witnesses and evidence, subject to the **right of cross-examination** by the conduct panel..." (Emphasis added)

I agree with you though that the hearing is not a full-blown hearing such a criminal proceeding. However, this is due process hearing and quasi-judicial proceeding in University tribunal subject to review by a federal Court for procedural defects. Especially in this case where there is no evidence of the alleged telephone conversation and it is my word and against the complainants' words, credibility cannot be assessed through cross-examination to avoid false accusations and accountability of Complainants.

**Fifth,** please note a change of my address from Pennsylvania to New Jersey address. This change also reflects on the DeVry Portal. The Federal Court will be using this New Jersey address for geographical jurisdiction: 1200 Haddonfield Road-1302, Pennsauken, NJ 08110. I have redacted my address on the hearing package you sent me as attached Ex.1 A because I am giving the same document to the Court as an Exhibit and so personal identifiers must be redacted.

**Sixth,** I do not use webcams. Bear in mind I have ADA accommodations at DeVry and there are thing you do not know about. So, please do not assume everybody can or should be able to use any technology. In the event of technical glitch and I lose connection during the hearing tomorrow, I state here in advance that do not construe that as rude on my part or absenting myself from the hearing. To avoid such things and for smooth proper hearings is why the courts evaluate the forum and the method of the hearing too. Even if the panel is from across the country, because you have put someone's education on the brink, the courts require proper hearing in a proper forum. I will later declare to the federal court that I did not have a proper hearing from that compromised my effective representation because it was not done in-person.

**Finally,** for the record, I reserve my right to remain silent at the hearing too even if I attend without the panel drawing any inferences against me.

Thank you for reading have a good night.

Ex. 2B
cont'd

Sincerely,

Michael O. Livingstone.

On Tue, Jun 18, 2019 at 5:53 PM Agresta, Jonathan <JAgresta@devry.edu> wrote:

Hello again, Michael,

Here is the email for our Ombudsman: ombudsman@devry.edu. You can discuss your legal concerns with them.

Regards,

Ex. 2B
cont'd

**Jonathan A. Agresta, M.Ed.** | *Assistant Dean of Academic Excellence – Northeast Group*

**P** 215.591.5867 | **E** jagresta@devry.edu

1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu



**DeVry University**
**Keller** Graduate School of Management

---

**From:** Agresta, Jonathan
**Sent:** Tuesday, June 18, 2019 5:16 PM
**To:** Michael Osei <mikeosei@gmail.com>
**Subject:** RE: FW: Code of Conduct Hearing Packet - Michael Livingstone

Hello Michael,

I do not have our legal counsel's information, but I sent a message to our Group Dean to see who we can get you in contact with. As it is the end of the business day, I may not have this information for you until tomorrow. If you have an immediate need to speak with our legal department, please call your advisor (or any advisor) and they can work with you.

I determined that mediation will not work in this case as the complainant did not want to speak with you again and your apology was not deemed appropriate.

As a reminder, the Code of Conduct hearing is not a legal or criminal hearing; it is an internal procedure facilitated for DeVry colleagues and students to ensure a safe, collegiate environment. I have followed the policy fully and will continue to do so. Any communication with the conduct administrator, can be referenced during this hearing. Especially since they contain your rebuttals to the claims of this hearing.

The complainant will not be attending the hearing as they already provided statements. DeVry policy does not allow any sort of cross-examination between the respondent and the complainant. From Article IV: Conduct Procedures, Section 5.f.:

"Parties should not ask each other questions directly but may propose questions at the

discretion of the conduct panel chair. Neither party should be compelled to testify in

front of the other. As necessary or requested, there should be a procedure in place so

they can hear the other's testimony without direct contact." – Student Handbook, page 17

*Ex. 2B*
*cont'd*

I have provided you with their statements in accordance with policy.

You can speak with our hearing panel without seeing their faces in person. I recommend logging in with WebEx and connect your webcam.

Thank you and have a good evening.

Regards,

**Jonathan A. Agresta, M.Ed.** | *Assistant Dean of Academic Excellence – Northeast Group*

**P** 215.591.5867 | **E** jagresta@devry.edu

1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu



**DeVry University**
**Keller** Graduate School of Management

**From:** Michael Osei <mikeosei@gmail.com>
**Sent:** Tuesday, June 18, 2019 2:11 PM
**To:** Agresta, Jonathan <JAgresta@devry.edu>
**Subject:** Re: FW: Code of Conduct Hearing Packet - Michael Livingstone

Good Afternoon, Asst. Dean Agresta,

- Request for the University's Attorney or legal Counsel's information to serve legal documents upon between now and tomorrow.

I hereby request for the in-house University Counsel's information to serve some legal documents immediately between now and tomorrow, as required by the NJ federal courts. Because they are legal documents, the law requires that DeVry University's Attorney must receive them.

Please indicate who is the University's in-house Attorney for New Jersey and Pennsylvania area and their contact information, as I could not find that on the general DeVry website.

Also, thanks for passing on the information I gave you to the panel. I may have some additional factual documents for the panel before the hearing.

Please note that my telephone call last Friday and communications with you was out of courtesy and respect to you as Code administrator for you to know that there is no cause of alarm on my part and to facilitate your preliminary evaluation of merits for pre-hearing mediation to dismiss this matter because Article IV of the Code of Conduct itself says:

Case: 1:20-cv-05567 Document #: 1 Filed: 09/18/20 Page 222 of 286 PageID #:222

…Once charges have been filed, the conduct administrator will investigate to
determine if **charges have merit and**/or if they can be resolved by mutual consent of the
complainant and the respondent on a basis acceptable to the conduct administrator (such as
**mediation**).

I think mediation is part of the hearing itself.

The June 20, 2019 hearing is **a de novo** due process hearing. Anything I have said or written to you prior to the
hearing is not part of the hearing and I was not sworn or speaking under oath when I spoke with you. My statements
at the hearing are what should be judged, not my communications with you.

Please do not share any of my communications with the panel without my indication to share it, as that will prejudice
and bias them because the panel must hear me first hand and they must be impartial.

Also, I note the names of the hearing panel members. I cannot ask for their recusal and to challenge their
impartiality unless I see their faces. Also for the record, I have expressed that the hearing be conducted in-person
for credibility and to avoid any technical glitches while it should be recorded and transcribed.

I note the names of the complainants and their alleged statements. Please ensure that they attend the hearing as I
have a right under due process and the code of conduct to cross-examine the complainants. For the record, I have
requested for the telephone recording for exactly what was said and been denied that the evidence does not exist.
It is therefore my word against the complainant's word and side-taking should be avoided.

In the meantime, please give me the information for the University's legal Counsel for New Jersey region.

Thank you.

~ Michael O. Livingstone.


On Mon, Jun 17, 2019 at 10:33 AM Agresta, Jonathan <JAgresta@devry.edu> wrote:

Hello Michael,


Thank you for providing this information. It will be passed along to the hearing panel so that they can review
prior to the hearing scheduled for Thursday. Please be aware that DeVry policy states all hearings are
recorded.


Have a good day.


Regards,

Ex. 2B
Cont'd

**Jonathan A. Agresta, M.Ed.** | *Assistant Dean of Academic Excellence – Northeast Group*

**P** 215.591.5867 | **E** jagresta@devry.edu

1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu




DeVry University
Keller Graduate School of Management

**From:** Michael Osei <mikeosei@gmail.com>
**Sent:** Friday, June 14, 2019 11:28 PM
**To:** Agresta, Jonathan <JAgresta@devry.edu>
**Subject:** Re: Code of Conduct Hearing Packet - Michael Livingstone

Ex. 2B
cont'd

Hello Dean Agresta,

**Please read with this with ardent meticulous to detail.**

I reviewed the hearing packet emails you attached. I noticed some errors therein. I would appreciate you correcting those errors for accuracy of the record. You claim that it is your sense that I file grade appeals, seek incomplete grades, or copy university administrators on my emails as a tactic to "get over the head of course instructors to have my way." That is not true in light of same evidences you cited. If indeed I wanted to have my way, I would not copy administrators to seek their intervention or file grade appeals.

People who want to "have their way" usually resort to taking matters into their own hands as you know, which has not been the case with me here. The evidences you have attached shows that I never took matters into my own hands but I rather engaged university administrators or filed grade appeals or voiced my concerns, which is not rude or intimidating. I cannot be disciplined for doing the right thing in that regard.

As a neutral code administrator, I draw your attention to the fact all the evidence you cited also shows that I face disciplinary action in 2019 for filing grade appeals, seeking incomplete grades, and voicing my concerns or frustrations to university staff and administrators. Please be reminded that filing grade appeals, seeking incomplete grades, and voicing my concerns are provided in the Keller catalogs and it is a mandatory provision under Title IX of the Educational Amendments Act of 1972 required upon all universities of higher education and accreditation guidelines for redress of student academic grievances.

Moreover, I cannot be retaliated with disciplinary action for asserting to file a lawsuit or for copying the Office of Civil Rights in the mail evidences you cited. Accordingly, please be advised that pursuing this disciplinary hearing can be against the anti-retaliation clauses.

**Factual errors in the hearing package you sent me as email attachment:**

- **Error No. 1**

With reference to Page 1 of the hearing packet where you cited the statement of Ms. Deb Koffman, Operations Support Coordinator II, please note that her statement is not accurate. That is not what I said at all. I deny the accuracy of that statement entirely.

You are a neutral code administrator who should review credibility on both sides without taking any sides. Accordingly, please obtain the recorded telephone conversation itself and listen to it for yourself. It should have been attached to her report. When we talked earlier today on telephone, you mentioned that the receiver of the June 13th transferred phone call you identified in the hearing package as Ms. Kristine Kearney also complained that I said I would sue Keller.

It was also in that telephone conversation that I said I would sue Keller. I cannot be disciplined for exercising my civil right today I would sue someone because it will be unlawful retaliation against my *right to petition*. Accordingly, for credibility and proper notice, please obtain that June 13 telephone conversations entirely so that everybody is on the same page for impartial judgment and please send me a copy on Monday June 17 in the afternoon.

- **Error No. 2**

On Page 1 of the hearing package, you wrote :

…also attached is the respondent's formal requests to postpone the hearing and to have the hearing held in person with no technology present, which were denied.

Please note that I never asked that any technology to be present at the hearing. It is inaccurate to say that. Due process hearings like this must be recorded and I hope that you would record the hearing as required by due process. To be clear, I requested that the hearing be done in-person without communication barriers on a local campus, not that no technology be presented. Today, I request that the June 20 hearing, which is a due process hearing, should be fully recorded for transcription and done in-person as part of all procedural safeguards. I must see the faces of the hearing panel members to challenge them for bias, for example.

- **Error No. 3**

$Ex. 2B$ cat d

Still on Page 1 of the hearing package, you wrote:

> "…He also cited incidents at past universities where this tactic of CC'ing administrators led to him having courses removed."

Please note that this is not a "tactic." Instead, it is the right thing for a student to seek administrative redress of grievances unlike those who rather take matters into their own hands. The administrators at DeVry, such as yourself and Dr. Kavouras have always encouraged me to reach out if I need assistance with anything and Dr. Kavouras has always been helpful to me even after he left his position as Chairperson. Copying him or you is not to get over a course instructor's head to get what I want also because the course instructor was copied in my email—nothing to hide.

You would agree with me that in life we must all fight for ourselves and I am quite sure you have pressed things to people in authority to fight for you too in this life. So, my approach to administrators is not punishable and not intimidating. I cannot be disciplined for fighting for myself.

- **Error No. 4**

You cited an email from the DeVry ADA officer, Ms. Adrienne Taylor, for example. That was an ADA matter provided under the federal ADA statute protecting disability. So, it had to go to the ADA officer and she clarified things and even extended my previous ADA extension accommodation extension by one more week.

Again, that is not to get over course instructor's head. If a matter involves the federal ADA statute, the rightful ADA office should handle it and I sent it to the Keller designated ADA officer. I cannot be disciplined now for doing the right thing to advocate for my ADA statute accommodations. By your citing of my ADA requests as punishable evidence against me, you are retaliating against me for seeking federal ADA accommodations.

Please note that I have right to obtain ADA accommodation extension and I went through the proper process to get ADA accommodations at Keller. I cannot be disciplined now for that.

- **Error No. 5**

You mentioned in the hearing package that:

> I "…cited incidents at past universities where this tactic of CC'ing administrators led to him having courses removed."

As FYI, please find attached **Exhibit A.13** that casts context into what I meant:

Exhibit A.13 shows that when I was at La Salle University, for example, then-University Provost, Dr. Joseph Marbach, https://www.lasalle.edu/univcomm/2010/marbach.html, stepped into a discrepancy I had with a late-registered class and he authorized the Registrar and Faculty to retroactively drop a class for me. *See* the relevant first paragraph of the attached Exhibit A.13. University Provosts oversee all academic policies and they can step in to point faculty and student in the right direction. Provosts exist for all students and faculty. There is nothing rude or intimidation on my part to reach out to the DeVry Provost.

Provosts like to hear from students, which is why I copied the DeVry Provost on those email so that he might perhaps get involved to point the right direction and to see my grievance. It was not to be rude.

Let me recall your memory that attached **Exhibit C** is email dated Mon, Feb 11, 2019 at 12:30 PM that you sent me in back in February 2019 where you in particular randomly invited me for a round table with the DeVry Northeast University President to voice my concerns as voice for Keller students, which tell me even the University President wants to hear student concerns.
So, for you to now seek disciplinary action against for voicing my academic concerns to administrators like Provosts is in contravention to the true spirit of why you invited me for a round table. Again, copying Provost or

Case: 1:20-cv-05567 Document #: 1 Filed: 09/18/20 Page 225 of 286 PageID #:225

administrators is not rudeness or intimidation on my part for which I should now face disciplinary action.

- **Error No. 6**

On Page 1 on the hearing package, you also wrote this:

*Ex. 2B*
*cont'd*

> …There are multiple instances of this behavior, some of which can be seen below. With a thorough review of his academic history, the conduct administrator noted multiple repeated instances of grade appeal and incomplete requests (8 such cases on file) throughout his academic career.

Please note that this cannot be mis-characterized as "misbehavior" on my part because it is in the Keller catalogs and higher education guidelines that students can request for incomplete and file grade appeals or voice their concerns. That is the right thing to do. Please advise what students should do then if they have academic grievance. I did the right thing to appeal a grade or seek incomplete. I cannot be punished for asking for incomplete or filing a grade appeal.

- **Error No. 7**

In Page 2 of the hearing package, you wrote this:

> Created By: MEGAN MIHELICH (8/17/2018 1:39 PM) Live Chat ID 4295645751

Please note that I deny any rudeness to Ms. Megan Mihelich. Anybody can say someone has been rude to them.

- **Error No. 8**

In Page 2 of the hearing package, you wrote this:

> Case: 07102381 12/19/18

> Respondent sent this email to SE Assistant Dean CC'ing the Office of Civil Rights, his professor, and Student Central in order to get an Incomplete for a course dating back over a year. This request was eventually denied.

Here, you are actually referring to my grade appeal about MIS 535. Please note that I did not request for an incomplete to be given one year after that MIS 535 class. I had requested for an incomplete around the end of that class due to sickness and that is within my right and the Keller catalogs to seek incomplete grade. Please tell me if it is not in the catalog. That is not intimidation or rudeness to request for incomplete.

Of course, I did the right thing to file grade appeal about that MIS 535 class later on, which the University has not addressed the academic issues therein—a separate matter. In that grade appeal, I indicated that I requested for incomplete around the end of the class. I did not ask for incomplete grade but rather, retroactive change of the grade through a grade appeal process.

In fact, the grade appeal reviewer asked me if I did the right thing to seek incomplete grade if I was sick and he requested to see email evidence that I did tell the course instructor I was sick at the time. Still, a grade appeal is a proper remedy provided to students if there is academic grievance. I cannot be disciplined in retaliation for filing grade appeal, or, for seeking incomplete grade over that MIS 535 class.

- **Error No. 9**

In Pages 3-4, you wrote:

*Ex. 2B cont'd*

> Subject: Urgent Memo for immediate attention and intervention of Dean of Academic Excellence; Cc'd to Federal U.S.Department of Education Office of Civil Rights before formal complaints; Regarding ECON 545, Nov.2017 course instructor, for immediate INCOMPLETE grade

Here, you did not cite the date of this incidental email for proper chronology. Let me point out that you are referring to my email dated back on Tuesday, Dec 19, 2017 at 3:13 PM. Please note that if this email was truly a concern in 2017, the course instructor should have acted on it back in year 2017, not now in 2019.

A rebuttal to the email you have cited, please note that I have email evidence dated back on Dec 19, 2017, 2:19 PM that the Course Instructor worked with me and granted me an incomplete grade at the time because my request for the incomplete was credible and I did the work and my final grade was A- for ECON 545. Here is what the course instructor wrote in his email granting the incomplete grade at the time:

> Michael,
> Good afternoon! I will give you an "Incomplete" on this class (ECON 545 Business Economics-Nov/Dec 2017) and allow you one week to complete the following:
> 1. You will have one more attempt at the Week #2: Quiz #1 (your other 2 attempts were on 11/18 & 12/18).
> 2. Yow will have two more attempts at the Week #5: Quiz #2 (your other attempt was on 11/26). I will contact Canvas to make sure you have access to the quizzes. The due date for all this work will be Tuesday, December 26, 2017 @ 11:59pm MST. In the meantime, I will put together the "Incomplete form" and get it to you this evening. Please let me know if you have any questions.
> Thanks,
> Eric Mapp, PhD | Visiting Professor III

Accordingly, this was a matter that was resolved nicely back in the year 2017. So, contrary to what you cited, the above email shows there was no rudeness or intimidation on my part for asking for incomplete grade in ECON 545 for me to face disciplinary action over it in 2019.

Moreover, I copied the Federal U.S. Department of Education Office of Civil Rights (OCR) on that email you cited and that is within my right to do. I cannot be retaliated against for that.

By pursuing disciplinary action against me over a 2017 email wherein I copied the Federal U.S. Department of Education Office of Civil Rights to allege them about appearance of discrimination in my education, you are retaliating against me despite the anti-retaliation laws and anti-discrimination laws that protects me against such retaliations. Moreover, although I copied the OCR, I did not file a discrimination complaint against DeVry.

Finally, please note the hearing notice you sent me quoted alleged incidents on April 28 & 29 and June 13. However, the hearing package cites email dating back to 2017. That is improper notice in contravention to due process.

Also bear in mind that a course instructor has been given incomplete grade before without my request for it because the course instructor could not complete grading my work to meet the university's deadline for grade submission. It is against due process and principles of fairness for you as a bystander, who does not know the full circumstances of a matter, to seek disciplinary action against me whereas the course instructors themselves did not ask you to seek this adversarial disciplinary action against me seeking incomplete grades.

Based on the foregoing, I request that you dismiss this matter by 11am EST of Monday June 17 because the record of evidences in the hearing package you have sent me shows you are motivated by retaliatory animus to pursue disciplinary action against me for asserting my rights to petition to sue for redress of my grievances, for voicing my concerns and frustrations, for filing grade appeals, and for seeking incomplete grade. None of this is misbehavior on my part., It the right thing for a student to do if they have a grievance.

Sincerely,

~ Michael O. Livingstone

On Fri, Jun 14, 2019 at 6:40 PM Agresta, Jonathan <JAgresta@devry.edu> wrote:

Hello,

Attached you will find the Hearing Packet, as well as supplemental evidence, for Michael Livingstone's upcoming Code of Conduct Hearing. Please review all documents prior to the hearing (starting with the file titled, *Hearing Packet Michael Livingstone.pdf*).

If you have any questions, please let me know. Have a good weekend.

Regards,

**Jonathan A. Agresta, M.Ed.** | *Assistant Dean of Academic Excellence – Northeast Group*

**P** 215.591.5867 | **E** jagresta@devry.edu

1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu



$Ex \cdot 2B$
$cont'd$


image010.jpg
6K

---

**Michael Osei** <mikeosei@gmail.com>
To: "Agresta, Jonathan" <JAgresta@devry.edu>

Thu, Jun 20, 2019 at 12:35 PM

Hello Dean Agresta,

Thanks. You are correct about the date of the Doctor's note. Penn Medicine has it in the database for anybody who wants to verify. Please feel free to contact them.
The note also says I am under his care. As you are familiar with Penn Medicine, they have lengthy protocols for writing such notes, so Dr. Brod has directed me to give this.
I would prefer to come to campus as you suggest and I want to do the hearing because it is my right to be heard so that you do not make a mistake and to get this out of the way. However, I am vomiting continuously with severe migraines on the medications, which compromises my effective participation. So, please try to postpone it for short time.

Best Regards,

Michael

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

*Ex. 2B cont'd*

[Quoted text hidden]
[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

By pursuing disciplinary action against me over a 2017 email wherein I copied the Federal U.S. Department of Education Office of Civil Rights to allege them about appearance of discrimination in my education, you are retaliating against me despite the anti-retaliation laws and anti-discrimination laws that protects me against such retaliations. Moreover, although I copied the OCR, I did not file a discrimination complaint against DeVry.

Finally, please note the hearing notice you sent me quoted alleged incidents on April 28 & 29 and June 13. However, the hearing package cites email dating back to 2017. That is improper notice in contravention to due process.

Also bear in mind that a course instructor has been given incomplete grade before without my request for it because the course instructor could not complete grading my work to meet the university's deadline for grade submission. It is against due process and principles of fairness for you as a bystander, who does not know the full circumstances of a matter, to seek disciplinary action against me whereas the course instructors themselves did not ask you to seek this adversarial disciplinary action against me seeking incomplete grades.

Based on the foregoing, I request that you dismiss this matter by 11am EST of Monday June 17 because the record of evidences in the hearing package you have sent me shows you are motivated by retaliatory animus to pursue disciplinary action against me for asserting my rights to petition to sue for redress of my grievances, for voicing my concerns and frustrations, for filing grade appeals, and for seeking incomplete grade. None of this is misbehavior on my part., It the right thing for a student to do if they have a grievance.

Sincerely,

~ Michael O. Livingstone

On Fri, Jun 14, 2019 at 6:40 PM Agresta, Jonathan <JAgresta@devry.edu> wrote:

Hello,

Attached you will find the Hearing Packet, as well as supplemental evidence, for Michael Livingstone's upcoming Code of Conduct Hearing. Please review all documents prior to the hearing (starting with the file titled, *Hearing Packet Michael Livingstone.pdf*).

If you have any questions, please let me know. Have a good weekend.

Regards,

[Quoted text hidden]



image010.jpg
6K

$Ex \cdot 2B$
$Cont'd$

**Michael Osei** <mikeosei@gmail.com>                                    Thu, Jun 20, 2019 at 3:01 PM
To: "Agresta, Jonathan" <JAgresta@devry.edu>

Hi, I will still call in to the hearing and try to manage myself. Give me 5 minutes
[Quoted text hidden]

**Michael Osei** <mikeosei@gmail.com>                                    Fri, Jun 21, 2019 at 4:38 PM
To: "Agresta, Jonathan" <JAgresta@devry.edu>

Good Afternoon Mr. Agresta,

Please send me an audio or transcribed copy of the hearing we held yesterday. Please send it by end of Monday. Thanks.

Sincerely,
Michael Livingstone
[Quoted text hidden]

# Exhibit 2C

## Description

Rebuttal email to Exhibit 3D. Full thread of  pleasant  emails between Dr. Kovouras and Student Mr. Michael Livingstone  showing Prof. Kavouras was not intimidated to be  reached and  he willingly  offered necessary  assistance and referred Student to other Administrators who assisted.

Nothing intimidating or rude at all.

4 Pages

 Gmail                                     Michael Osei <mikeosei@gmail.com>

$Ex \cdot 2c$

## Your inquiry about grades and accommodations
3 messages

**Kavouras, John** <jkavouras@devry.edu>                              Sat, Apr 27, 2019 at 12:04 AM
To: Michael Osei <mikeosei@gmail.com>
Cc: "Sran, Bhupinder" <Bsran@devry.edu>

Michael,

Thanks for writing to me about this.

I am no longer a Faculty Chair, so I have refereed this to someone who can help you get to the
right place and get the issue resolved.

Dr. Bhupinder Sran is now a Faculty Chair for our group, so I have asked him to determine who
Professor Goodman's manager is and refer it to that person. Dr. Sran is copied on this email.

Even if this does not get resolved before grades are issued this session, it can still be resolved. If
your inquiry results in a higher grade, it can be changed retroactively.

Best wishes as you continue your education.


Regards,



*Professor John Kavouras*

*Professor, College of Liberal Arts and Sciences*



If you have questions or need further information, please contact me by telephone or email.



**John Kavouras** | *Professor*
**P** 216.520.5857 | **E** jkavouras@devry.edu
4141 Rockside Rd., Su. 110 | Seven Hills, Ohio 44131 | devry.edu


# DeVry
# University

*To unsubscribe from future marketing emails click here, note you may continue to receive emails from DeVry University regarding your student
account.*

Case: 1:20-cv-05567 Document #: 1 Filed: 09/18/20 Page 232 of 286 PageID #:232

Dear Professor Kavouras,      ②      Ex. 2C cont'd

I will call you.

This is Michael Osei Livingstone. I am a Keller student whom you assisted some time ago when I had a problem with a Course instructor last year around August 2018. I have remained at Keller since.

I am currently completing ACCT 504 class with Dr. Arlene Goodman this current March 2019 Session.

I need your intervention to speak to the course instructor of this class.

You may recall during our last interaction that I sought and obtained ADA accommodation, which I have attached herewith as **Item 1**. I gave this ADA accommodation to the Course instructor, which allowed me to get up to Thursdays of the following week to submit my work.

However, I have been under serious medical care and attention since January with some surgeries included and so per attached **Item 2**, I asked professor Goodman to grant me additional extensions for <u>Week 2</u> because my condition has been unstable. Dr. Goodman declined to extend it and she rather penalized my submitted work.

In <u>Week 4</u>, there was too much coursework due—Quiz, Homework, Case study, Discussion postings. By the attached email **Item 3A**, I asked Professor Goodman for extensions because of my condition. However, she has penalized my work.

It is the professor's position that I already have ADA accommodation extensions, so she will not give me additional extensions. However, Keller policies also allow course instructors to extend deadlines for students with extenuating circumstances regardless of ADA.

Nevertheless, the attached email **Item 3B** shows I contacted the ADA office and their coordinator, Ms. Adrienne Taylor, willingly offered to extend the ADA accommodations. However, she has been out of office every Friday and Monday according to her own email, plus she is still in contact with my specialty Doctors to complete forms.

As you know, ADA accommodation extensions are a lengthy process by itself. As of this day, my requested ADA additional extensions are not fully processed by that office and I must allow the process to take place. However, the course session is ending soon.

As you encouraged me to do last August, the main thing in such situations is to get the work done. I have already done all the work but they are graded with late penalties. My sickness shouldn't be punished and penalized by Keller. I would like the late penalties waived.

Here is how I need your help with this.

Based on the above and the attached records and emails, please reach out to the Course instructor Dr. Arlene Goodman and ask her to waive the late penalties she has imposed on my graded work specifically for Weeks 2, 4, 6, and 7.

Tomorrow is the last day of the class. So I would greatly appreciate your immediate intervention.

Thanks for your favorable consideration. I look forward to hear from you.

Sincerely,

③

EX. 2C
Cont'd

Michael O. Livingstone

Id No. D4053█████    m · o · L

---

**Sran, Bhupinder** <Bsran@devry.edu>         Sat, Apr 27, 2019 at 2:17 PM
To: Michael Osei <mikeosei@gmail.com>
Cc: "Maccatherine, John" <JMacCatherine@devry.edu>, "Kavouras, John" <jkavouras@devry.edu>

Michael,

I am forwarding this concern to Dean John Maccatherine, who Dr. Arlene Goodman works for.

As Prof. Kavouras mentions, grade changes can be considered after the session is over. For the time being please finish and submit any work that is left to be done for the course.

Thanks.

Prof. Sran

**Bhupinder S. Sran, Ph.D.** | Faculty Chair and Senior Professor - Northeast Group
**P** 732.729.3962 | **E** bsran@devry.edu
630 US Highway One | North Brunswick NJ  08902 | devry.edu



# DeVry University
## Keller Graduate School of Management

---

**From:** Kavouras, John
**Sent:** Saturday, April 27, 2019 12:04 AM
**To:** Michael Osei
**Cc:** Sran, Bhupinder
**Subject:** Your inquiry about grades and accommodations

[Quoted text hidden]

### 4 attachments

📄 **Item 3B. Gmail  from ADA  officer that she will be out of office.pdf**
65K

📄 **Item 3A. My email  to the Professor requesting for  Week 4 extension ADA officer  was out of office.pdf**
69K

📄 **Item No. 2. My Week 2 email to Professor for  extension because of extenuating medical condition. Ignored by  the Professor unless ADA extends.pdf**
202K

📄 **Item 1. Michael Osei Livingstone_DeVry Student Accommodation Notification.docx**
40K

**Michael Osei** <mikeosei@gmail.com>                                      Mon, Apr 29, 2019 at 3:08 PM
To: "Sran, Bhupinder" <Bsran@devry.edu>
Cc: "Maccatherine, John" <JMacCatherine@devry.edu>, "Kavouras, John" <jkavouras@devry.edu>

Professor Kavouras & Professor Sran,

Here is to say thank you so much for your positivity and for connecting me to Dr. John Maccatherine.

Dr. Maccatherine has stepped in with strong leadership and light and so everything is going nicely now.

You need not reply to this email because I just wanted to say i got your reponse and thanks.

Have a good week.

~ Michael

[Quoted text hidden]



Ex. 2c
cont'd

# Exhibit 3A

*1 page*

**Description:**

ADA Officer's April 4, 2019 email to Mr. Livingstone regarding ADA accommodation extensions in ACCT 504 class.

This is ANOTHER email evidence contained in the hearing Package Notice Exhibit 1 A that is being used as pretextual excuse for Retaliation under federal ADA accommodations statute against Livingstone.

**Note:**

The ADA Officer was not intimidated by Livingstone seeking ADA accommodations and she is not the one seeking adverse disciplinary action against Mr. Livingstone for properly obtaining ADA accommodations at DeVry



M Gmail

EX - 3 A

**ADA problem with current Professor**

Michael Osei <mikeosei@gmail.com>

**ADA** <ADA@devry.edu>
To: Michael Osei <mikeosei@gmail.com>
Cc: "Goodman, Arlene B" <AGoodman@devry.edu>

Thu, Apr 4, 2019 at 5:54 PM

Hi Michael,

I'm glad to hear that Professor Goodman is working with you.

Please let me know if you still need assistance from me. I will be out of the office on Friday and Monday. Should you wish to speak to me let me know what time I can reach you on Tuesday or any other day next week.

Wishing you well,

[Quoted text hidden]

# **Exhibit 3B**

**Description:**                    *1 page*

> Livingstone's April 4, 2019 email to DeVry ADA
> Officer: Ms. Adrienne Taylor regarding ADA
> accommodation extensions in ACCT 504 class.
>
> This is email evidence contained in the hearing
> Package Exhibit 1 A that is being used as
> pretextual excuse for Retaliation under federal
> ADA accommodations statute.

**Note:**

> Meanwhile, ADA accommodation forms were
> completed, processed, and approved by the ADA
> Officer and it is not the ADA Officer who is now
> seeking adverse disciplinary action against Mr.
> Livingstone for properly obtaining ADA
> accommodations at DeVry University.
>
> Instead, Asst. Dean Jonathan Agresta seeks
> adverse disciplinary action against Livingstone
> for seeking and obtaining ADA accommodations.

4/11/2019                                   Gmail - ADA problem with current Professor

 Gmail                   *Ex. 3B cont'd*                Michael Osei <mikeosei@gmail.com>

## ADA problem with current Professor

**Michael Osei** <mikeosei@gmail.com>                                    Thu, Apr 4, 2019 at 11:51 PM
To: ADA <ADA@devry.edu>
Cc: "Goodman, Arlene B" <AGoodman@devry.edu>

Hello Ms.Taylor,

Thanks for your well wishes. I will work with Dr. Goodman. I am sure she is understanding.

The only assistance I need is for today's due submissions( Week 4-- Quiz, Homework, and Case Study) to be extended
up to this Sunday because it has been very brutal this week, as you might perceive, coupled with doing my major project
because that should be on schedule without extensions with my group partner and my partner is very apprehensive
about accounting so my input to lead to assuage his fears has been very necessary.

When you return next week, in collaboration with my attending Physicians including Dr. Brod, we can work together to
extend the Thursday ADA extensions.

Thanks for being gracious.

Best,
Michael

[Quoted text hidden]

$1/1$

# Exhibit 3C

## Description:

April 28, 2019 Email evidence also included in Hearing Package Notice (Exhibit 1 A) being used to pursue adverse disciplinary action against Student Mr. Livingstone for properly reporting Technical glitch during the online ACCT 504 Class and engaging the administrative assistance of Asst. Dean John MacCatherine although Livingstone was referred to him for assistance and Dr. MacCatherine solved it and advised Student Mr. Livingstone to file grade appeal to him.

Student Mr. Livingstone is now facing adverse disciplinary process from Asst. Dean Jonathan Agresta for engaging administrators like Asst. Dean MacCatherine into the technical glitch problem whereas it was the Course instructor, Dr. Arlene Goodman, and other administrators who referred Livingstone to Dr. MacCatherine.

Student is also facing adverse Disciplinary action for grade appeal whereas this instant email thread itself shows that it was Dr. MacCatherine himself who asked Livingstone to file a grade appeal to him.

## NOTE:

Absolutely nothing rude or intimidating to report technical glitch during an online class and to file grade appeal. This is pretextual excuse to retaliate against Livingstone. Drs. MacCatherine and Arlene Goodman are not the ones who initiated disciplinary complainant against Livingstone, but rather, Asst. Dean Jonathan Agresta

3 Pages

**Agresta, Jonathan**

*Ex. 3C     Cont'd*

| | |
|---|---|
| **From:** | Michael Osei <mikeosei@gmail.com> |
| **Sent:** | Sunday, April 28, 2019 1:33 PM |
| **To:** | Maccatherine, John |
| **Cc:** | Goodman, Arlene B; Yousef, Waleed; RUSSELL, JOCELYN; Agresta, Jonathan; Sran, Bhupinder; Bose, Shantanu |
| **Subject:** | Re: ACCT 504: IT help desk ticket attached that technical glitches affected my timely completion of the Week 8 Homework and Quiz last night. Please re-open it for 1 day for me to complete and submit. |
| **Attachments:** | Still locked for all submissions.docx |

Hello Dean John,

Thanks for stepping in. I want to submit all the Week 8 outstanding requirements by the time specified tonight. However, I when I logged in, attached is the print screen around 1:30pm EST showing that the outstanding Week 8 Quiz and Homework are still locked to complete.
Accordingly, I respectfully request Dr. Goodman to re-open them immediately for me
to complete by the time specified tonight along the course project. Please alert me as soon as you re-open them. My computer is malfunctioning and my local Keller campus is closed today, but I have access to my former Local graduate schools' library that is open today.

Thanks again.

Sincerely,
Michael

On Sun, Apr 28, 2019 at 11:46 AM Maccatherine, John <JMacCatherine@devry.edu> wrote:
Michael:

Please submit all of you outstanding work by the time Dr. Goodman specified. In order for me to address your concerns, please work with your support advisor to submit a grade appeal along with any documentation you have to support your concerns. I will review everything in the context of the course requirements and your ADA accommodation and determine what if any adjustments can be made.

Thank you very much!

Dr. John

John MacCatherine, PhD PMP CPLP SPHR

Assistant Dean of Academic Excellence, Arizona and Nevada

P 602.749.4656 | E jmaccatherine@devry.edu

2149 W. Dunlap Ave. | Phoenix, AZ 85021 | devry.edu

Ex. 3c cont'd

**From:** Goodman, Arlene B
**Sent:** Sunday, April 28, 2019 7:51:40 AM
**To:** Michael Osei
**Cc:** Maccatherine, John; Yousef, Waleed; RUSSELL, JOCELYN; Agresta, Jonathan; Sran, Bhupinder; Bose, Shantanu; Delmore Buckle-Drummond
**Subject:** Re: ACCT 504: IT help desk ticket attached that technical glitches affected my timely completion of the Week 8 Homework and Quiz last night. Please re-open it for 1 day for me to complete and submit.

the course is open for 1 day - all work must be submitted by Sunday evening at 11:59 PM

**Arlene Goodman, DBA** *Associate Professor, College of Business & Management*

**P:** 480.610-3969; **M:** 954-829-1924; **E:** agoodman@devry.edu
**Onsite:** Thursday - Phoenix; **Remote:** Monday - Saturday

1201 S. Alma School Road, Suite 5450
Mesa, AZ 85210



**DeVry University**
**Keller** Graduate School of Management

http://devrytutors.com/

---

**From:** Michael Osei <mikeosei@gmail.com>
**Sent:** Sunday, April 28, 2019 4:07:54 AM
**To:** Goodman, Arlene B
**Cc:** Maccatherine, John; Yousef, Waleed; RUSSELL, JOCELYN; Agresta, Jonathan; Sran, Bhupinder; Bose, Shantanu; Delmore Buckle-Drummond; Michael Osei
**Subject:** ACCT 504: IT help desk ticket attached that technical glitches affected my timely completion of the Week 8 Homework and Quiz last night. Please re-open it for 1 day for me to complete and submit.

Dr. Goodman,

Attached is evidence that I reported technical issue to the IT help desk that prevented me from completing and submitting all the Week 8 Homework and Quiz and project.

Accordingly, please re-open the class for me for at least 1 day up to Monday to complete the Homework and Quiz on the Pearson system.

Also attached is prior email from Professor Bunkowske regarding what he did when I excellently completed a class with him last January 2019. He simply wrote back that he has opened the class for me to complete and submit. Please emulate him without giving me any problems over this too, just as other Course instructor never gave me problems

So, please do not give me problems with this too. DeVry's policy encourages students to report technical problems to IT help desk and then to the course instructor for remedy.

I have exhaustively addressed the issues you raised in a prior email today.

2

Apart from that, I also draw the attention of the administrators that despite the fact that I posted 4 substantial and timely postings in Week 1 discussions, you still took 3 points off my discussion posts scores and when I followed up, you said you took off those 3 points because some of my salutations said "hello class" instead of addressing it to a specific member of the class. My subsequent weekly postings began with salutes to individual members of the class.

DeVry's policy about discussion postings has nothing to do with salutations of the postings. Instead, all DeVry requires is three (3) timely substantial and relevant postings. I did that in week 1 with more than 3 postings. The administrators can see it when they log into the class. Accordingly, please restore those 3 points before grades are posted because every point counts.

I have copied for the last time my other group member because our collaboration was affected for the final week 8 course project submission given the technical glitch I had as well.

Please re-open the class lock for me to complete the Week 8 Homework and Quiz using the Pearson system and the Week 8 course project. Just as Professor Bunskowske did not give me problem but he re-opened the class for me to submit, I respectfully request that you also don't give me problem on this one too.

Sincerely,

~Michael O. Livingstone

Ex. 3 C

Cont'd

# Exhibit 3D

2 pages

## Description:

April 26, 2019 evidence included in hearing package notice (Ex.1 A) to pursue adverse disciplinary action against Student Mr. Michael Livingstone merely for reaching out to Dr. Kavouras as Administrator.

## NOTE:

*See* rebuttal as entire email thread attached as Exhibit 2C from Prof. Kavouras showing that he was happy to be reached as an administrator to assist student and he pointed Student Mr. Livingstone to the current faculty chair, who was also happy to assist and connect. As Background, in 2018, it was Dr. Kavouras who pointed Student Livingstone to the ADA office to process ADA accommodations and Student went through that process and was approved ADA accommodation. There is absolutely nothing rude or intimidating to reach an Administrator who has assisted Student in the right direction before.

Professor Kavouras is not the one pursuing any adverse disciplinary process against Student Mr. Livingstone at all, but rather Asst. Dean Jonathan Kavouras is using this as pretextual excuse to retaliate against Student Mr. Livingstone.

*Ex. 3D Cont'd*

according to her own email, plus she is still in contact with my specialty Doctors to complete forms.

As you know, ADA accommodation extensions are a lengthy process by itself. As of this day, my requested ADA additional extensions are not fully processed by that office and I must allow the process to take place. However, the course session is ending soon.

As you encouraged me to do last August, the main thing in such situations is to get the work done. I have already done all the work but they are graded with late penalties. My sickness shouldn't be punished and penalized by Keller. I would like the late penalties waived.

Here is how I need your help with this.

Based on the above and the attached records and emails, please reach out to the Course instructor Dr. Arlene Goodman and ask her to waive the late penalties she has imposed on my graded work specifically for Weeks 2, 4, 6, and 7.

Tomorrow is the last day of the class. So I would greatly appreciate your immediate intervention.

Thanks for your favorable consideration. I look forward to hear from you.

Sincerely,


Michael O. Livingstone
Id No. D40530929

②/2

# Exhibit 3E

**Description:**  1   page

**Apology Letter of Student Michael Livingstone contained in hearing Packet Zip File sent on June 14, 2019 as part of hearing Packet Ex.1A by Asst. Dean Jonathan Agresta**

**Note:**

**Rejected by Asst. Dean Agresta based on Content-discrimination.**

( redacted personal Identifier by
M. O. Livingstone

Ex. 3 E

June 14, 2019

Dean Waleed Youseff
Dean Jonathan Agresta
Keller Graduate School of Management
DeVry University

**Letter of APOLOGY to those offended**

I sincerely apologize to all who have been offended by my communications resulting in the June 20, 2019 conduct hearing. Computer- mediated and telephone-mediated communications can have many barriers. My communications were not meant to insult or be rude to you. This apology letter is not admission of guilt to the conduct charges brought against me, but it is to assuage the offense for us to move forward. In the future, I would exercise more precaution. In exchange, I respectfully request that you withdraw the matter immediately.

Sincerely,

Signed/ Michael Livingstone

M. O. L

# Exhibit 3F

**Description:**                                   6 pages

> June 14, 2019 follow up emails about due
> process factors from Michael Livingstone
> to Asst. Dean Agresta contained in the Zip
> File that was sent with the Hearing Packet
> in Ex.1 A.

**Agresta, Jonathan**                          *EX. 37 cont'd*

| | |
|---|---|
| **From:** | Agresta, Jonathan |
| **Sent:** | Friday, June 14, 2019 6:04 PM |
| **To:** | Michael Osei |
| **Subject:** | RE: Code of Conduct Hearing - Michael Livingstone |

Michael,

Your requests are noted. The hearing will still be held via WebEx on Thursday June 20th at 3pm EDT. As I stated before, I am not aware of any audio recording of the June 13 conversation. If there is one and if we are legally allowed to distribute it, it will be shared with all parties, yourself included. As of right now, there is no recording.

I'm not sure where your Monday 11am deadline is coming from; policy states 48-hours prior to the hearing, if I am not mistaken, which would be Tuesday at 3pm EDT. But you will have all evidence today before I leave the office with the exception of any new evidence that comes to light between now and Tuesday at 3pm EDT.

You have proper notice and the hearing will be held in accordance with policy.

Regards,

**Jonathan A. Agresta, M.Ed.** | *Assistant Dean of Academic Excellence – Northeast Group*
**P** 215.591.5867 | **E** jagresta@devry.edu
1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu



**DeVry University**
**Keller** Graduate School of Management

**From:** Michael Osei <mikeosei@gmail.com>
**Sent:** Friday, June 14, 2019 5:54 PM
**To:** Agresta, Jonathan <JAgresta@devry.edu>
**Subject:** Re: Code of Conduct Hearing - Michael Livingstone

Hi. Dean Agresta,

Thanks for your email.

As a part of procedural due process safeguards, we need to have a full audio copy of the June 13, 2019 telephone conversation at issue in this conduct matter.

The complainant should have sent that to you as part of evidence in support of her complaint because we will need to review that telephone conversation for credible evidence and Panel will need to listen to the full telephone conversation before they can pass a judgement. Please let me know if you have the audio telephone communication and please send me a copy of that telephone conversation as part of due process proper notice requirement by 11am EST on Monday June 17, 2019.

I see what you mean that the hearing panel members are spread across the region. However, this hearing is governed by procedural due process and so such due process conduct hearings must be done in-person. DeVry

1

*Ex. 37 cont'd*

maintains local campuses in NJ and PA. Due process requires proper notice and proper hearing. A proper hearing should be done in-person.

For such a due process disciplinary hearing, it is required and it is appropriate that it should be done in-person at one of the local campuses for credibility because of due process. All complainants, including the person who reported the alleged June 13 telephone call, should also be present in -person for credibility. For the record, please note that I have raised concerns about due process over this aspect of the hearing and it has not been changed.

Also, the June 13 complainant has a right to withdraw their own complaint. So, please pass- on the apology letter the complainant. Please let me know whether it is accepted by the complainant or not by 11am EST on Monday June 17, 2019.

You have indicated to me on telephone today that the April 28 and 29 email communications at issue in this matter is something you are pursuing yourself, nobody else. The ACCT 504 Professor is therefore not the complainant in that matter. Please validate this.

I ended that ACCT 504 class with an A- grade and the Professor and I ended in good terms after her Arizona Dean, Dr. John MaCatherine, intervened after I copied her on those same April 28 and 29 emails at issue and she took over the matter and appreciated my work. In fact, if you read the entire thread of emails, you would notice that the ACCT 504 Professor, Dr. Arlene Goodman, actually asked me to copy her Dean (Dr. John MaCatherine) on my emails too. Hence, I should not be punished for copying administrators especially when the Professor herself encouraged me to copy the administrators. Contrary to what you told me by phone today, It is not rude to copy you, Administrators, if there is something going on. DeVry encourages students to voice their concerns.

Essentially, the credible issue is why many administrators were copied on that same April 28 and 29 emails and none of them complained for my discipline in April, and one Administrator I copied ( Dr. MacCathrine) actually appreciated my work and pointed me in the right direction to file a grade appeal that a him to address any grievances I may have and he restored some penalized points to me.

Finally, you stated on the telephone today that you have had many previous complaints against me. Please note that every case should be treated on a case-by-case basis. It is important not to be pre-judgmental against me over other arbitrary matters I am not aware of. The notice you sent me references April 28 & 29 emails and June 13 communications. In all fairness, anything is not part of this instant matter. I am not that kind of person who causes trouble at Keller. However, as an American and student, I voice my concerns and frustrations within my rights and that is something Keller should encourage students to do.

I bring the foregoing to your attention as part of pre-hearing for you to dismiss this matter. Please let me know by Monday June 17, 2019 by 11amEST so that I can take some steps.

Sincerely,

Michael Livingstone


On Fri, Jun 14, 2019 at 4:26 PM Agresta, Jonathan <JAgresta@devry.edu> wrote:

Hello Michael,

Ex. 3F cont'd

Your request for an in-person (on campus) hearing is noted, but denied. As I mentioned on the phone, our panel members are spread out over the region and can connect via phone and video conferencing. If you would like to come to campus for the meeting, you are welcome to do so, but the panel members will not be physically present.

To your second point, there is no recording that I am aware of for the June 13th telephone conversation. I will look into it, but I cannot guarantee that one exists.

Again, your request for a continuance is denied. We agreed to 3pm on the 20th over the phone.

The evidence will be provided to you shortly, as I mentioned on the phone and in my earlier email. Please be patient as I organize the information.

I encourage you to read the Code of Conduct section of the student handbook (download here https://www.devry.edu/content/dam/devry_edu/d/student-handbook.pdf and attached to this message), it outlines the process and your rights. Let me know if you have any other questions.

Regards,


**Jonathan A. Agresta, M.Ed.** | *Assistant Dean of Academic Excellence – Northeast Group*

**P** 215.591.5867 | **E** jagresta@devry.edu

1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu




**DeVry University**
**Keller** Graduate School of Management


**From:** Michael Osei <mikeosei@gmail.com>
**Sent:** Friday, June 14, 2019 4:11 PM
**To:** Agresta, Jonathan <JAgresta@devry.edu>
**Subject:** Re: Code of Conduct Hearing - Michael Livingstone

3

*Ex. 3f cont'd*

Dear Dean Agresta,

For the record, I hereby request for an in-person hearing on a local campus without telephone, online, Webex, or email. To provide me with all my due process procedural safeguards, an in-person hearing will ensure that all barriers of communications are removed and the evidences, witnesses, and the June 13 telephone conversation at issue can be examined and heard by all without any issues.

Also, the June 20 hearing date is not good for me. So, I also respectfully request for continuance to the week thereafter. In the meantime, please send me full audio copies of the June 13 telephone conversation and the April 28 & 29 emails as evidence you have against me as part of due process when you get a chance today including the past of the evidence where I asserted to sue( (though I never sued).

Thank you.

~ Michael

On Fri, Jun 14, 2019 at 1:46 PM Agresta, Jonathan <JAgresta@devry.edu> wrote:

Michael,

Please be patient. I will have the hearing packet to you shortly.

Regards,

**Jonathan A. Agresta, M.Ed.** | *Assistant Dean of Academic Excellence – Northeast Group*

P 215.591.5867 | E jagresta@devry.edu

1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu

4

Ex. 3f cont'd



**DeVry University**
**Keller** Graduate School of Management

**From:** Michael Osei <mikeosei@gmail.com>
**Sent:** Friday, June 14, 2019 1:11 PM
**To:** Agresta, Jonathan <JAgresta@devry.edu>
**Subject:** Re: Code of Conduct Hearing - Michael Livingstone

Hello Dr. Agresta,

Thanks for sending this. It does not contain the evidence you have against for the hearing. I am not sure if it is a downloading issue. I would appreciate to have the email evidence today and the telephone conversation at issue so that I have full notice.

Thank you.

~ Michael Livingstone

On Fri, Jun 14, 2019 at 12:53 PM Agresta, Jonathan <JAgresta@devry.edu> wrote:

The hearing packet will be sent shortly in a follow-up email.

-- Do not delete or change any of the following text. --



Meeting number (access code): 808 034 854

Join from a video system or application

Ex. 3F cont'd

Dial 808034854@devry.webex.com

You can also dial 173.243.2.68 and enter your meeting number.

## Join by phone

+1-646-992-2010 United States Toll (New York City)

+1-415-655-0001 US Toll

Global call-in numbers

Can't join the meeting?

If you are a host, go here to view host information.

IMPORTANT NOTICE: Please note that this Webex service allows audio and other information sent during the session to be recorded, which may be discoverable in a legal matter. By joining this session, you automatically consent to such recordings. If you do not consent to being recorded, discuss your concerns with the host or do not join the session.

6

# Exhibit 3G

*1 page*

## Description:

Student M. Livingstone's March 31, 2019 nice email about a **Medical Note** to DeVry's Prof. Goodman of ACCT 504 March 2019 session class. Contained in Conduct Hearing Package Zip File as evidence against Michael Livingstone.

## NOTE:

Absolutely No threat, intimidation, or misbehavior, misconduct of any kind can be found in this email evidence against Livingstone to violate Article III of the DeVry Student Code of Conduct in the Student Handbook's pp.16-17. *See* also Ex. 1A, page 7 stating the conduct charge.

Ex. 3 G

…From: Michael Livingstone <notifications@instructure.com>
Sent: Sunday, March 31, 2019 6:57:09 PM
To: Goodman, Arlene B
Subject: Michael Livingstone (Accounting and Finance: Managerial Use Analysis - 60045) just sent you a message in Canvas.

Quiz 3 and Homeworks 2 & 3

Hello Professor G,

Thanks for making this class exciting with good questions.

The attached medical note is one underlying cause for the ADA Accommodation. My ongoing eye problem under treatment, which presents a conundrum to Physicians, escalated into something else and it was very painful whenever I used computer screens for sustained hours. This affected my ability to complete the Week 3 Quiz. However, I managed to complete the homework.

I respectfully request for a one (1) day extension to complete the Week 3 Quiz and to waive the penalties for the completed Weeks 2 &3 Home works. I have managed to complete the discussions.

Thanks in advance for your kindness.

Best Regards,
Michael Osei Livingstone

# Exhibit 3H

## Description:

June 14, 2019 follow up emails about due process factors from Michael Livingstone to Asst. Dean Agresta contained in the Zip File that was sent with the Hearing Packet in Ex.1 A.

3 pages

Ex. 3 H cont'd

## Agresta, Jonathan

| | |
|---|---|
| **From:** | Agresta, Jonathan |
| **Sent:** | Friday, June 14, 2019 4:27 PM |
| **To:** | Michael Osei |
| **Subject:** | RE: Code of Conduct Hearing - Michael Livingstone |
| **Attachments:** | student-handbook (1).pdf |

Hello Michael,

Your request for an in-person (on campus) hearing is noted, but denied. As I mentioned on the phone, our panel members are spread out over the region and can connect via phone and video conferencing. If you would like to come to campus for the meeting, you are welcome to do so, but the panel members will not be physically present.

To your second point, there is no recording that I am aware of for the June 13th telephone conversation. I will look into it, but I cannot guarantee that one exists.

Again, your request for a continuance is denied. We agreed to 3pm on the 20th over the phone.

The evidence will be provided to you shortly, as I mentioned on the phone and in my earlier email. Please be patient as I organize the information.

I encourage you to read the Code of Conduct section of the student handbook (download here https://www.devry.edu/content/dam/devry_edu/d/student-handbook.pdf and attached to this message), it outlines the process and your rights. Let me know if you have any other questions.

Regards,

**Jonathan A. Agresta, M.Ed.** | *Assistant Dean of Academic Excellence – Northeast Group*
P 215.591.5867 | E jagresta@devry.edu
1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu



**DeVry University**
**Keller** Graduate School of Management

**From:** Michael Osei <mikeosei@gmail.com>
**Sent:** Friday, June 14, 2019 4:11 PM
**To:** Agresta, Jonathan <JAgresta@devry.edu>
**Subject:** Re: Code of Conduct Hearing - Michael Livingstone



Dear Dean Agresta,

For the record, I hereby request for an in-person hearing on a local campus without telephone, online, Webex, or email. To provide me with all my due process procedural safeguards, an in-person hearing will ensure that all barriers of communications are removed and the evidences, witnesses, and the June 13 telephone conversation at issue can be examined and heard by all without any issues.

Also, the June 20 hearing date is not good for me. So, I also respectfully request for continuance to the week thereafter. In the meantime, please send me full audio copies of the June 13 telephone conversation and

1

EX: 3 # cont

the April 28 & 29 emails as evidence you have against me as part of due process when you get a chance today including the past of the evidence where I asserted to sue( (though I never sued).

Thank you.

~ Michael

On Fri, Jun 14, 2019 at 1:46 PM Agresta, Jonathan <JAgresta@devry.edu> wrote:

Michael,

Please be patient. I will have the hearing packet to you shortly.

Regards,

**Jonathan A. Agresta, M.Ed. |** *Assistant Dean of Academic Excellence – Northeast Group*

**P** 215.591.5867 | **E** jagresta@devry.edu

1800 John F Kennedy Blvd Suite 200 | Philadelphia, PA 19103 | devry.edu



**DeVry University**
**Keller** Graduate School of Management

**From:** Michael Osei <mikeosei@gmail.com>
**Sent:** Friday, June 14, 2019 1:11 PM
**To:** Agresta, Jonathan <JAgresta@devry.edu>
**Subject:** Re: Code of Conduct Hearing - Michael Livingstone

Hello Dr. Agresta,

Thanks for sending this. It does not contain the evidence you have against for the hearing. I am not sure if it is a downloading issue. I would appreciate to have the email evidence today and the telephone conversation at issue so that I have full notice.

2

Thank you.

~ Michael Livingstone

On Fri, Jun 14, 2019 at 12:53 PM Agresta, Jonathan <JAgresta@devry.edu> wrote:

The hearing packet will be sent shortly in a follow-up email.

-- Do not delete or change any of the following text. --



Meeting number (access code): 808 034 854

## Join from a video system or application

Dial 808034854@devry.webex.com

You can also dial 173.243.2.68 and enter your meeting number.

## Join by phone

+1-646-992-2010 United States Toll (New York City)

+1-415-655-0001 US Toll

Global call-in numbers

Can't join the meeting?

If you are a host, go here to view host information.

IMPORTANT NOTICE: Please note that this Webex service allows audio and other information sent during the session to be recorded, which may be discoverable in a legal matter. By joining this session, you automatically consent to such recordings. If you do not consent to being recorded, discuss your concerns with the host or do not join the session.



# Exhibit

## 3 I

# Description:

Email Academic Challenge to Ambiguity in an Accounting Question being used as pretextual excuse grounds to pursue adverse disciplinary action against Student Mr. Livingstone by Asst. Dean Jonathan Agresta, not by the ACCT 504 Class Professor herself.

# NOTE:

Absolutely no rudeness or intimidation in this email. Ambiguity in multiple -choice question can be brought to light.

4 Pages

Ex. 3 I cont'd

**Agresta, Jonathan**

| | |
|---|---|
| **From:** | Michael Osei <mikeosei@gmail.com> |
| **Sent:** | Saturday, April 27, 2019 9:40 PM |
| **To:** | Goodman, Arlene B |
| **Cc:** | Bose, Shantanu; Yousef, Waleed; RUSSELL, JOCELYN; Agresta, Jonathan |
| **Subject:** | Re: ACCT 504. Discrepancy in Quiz 7 question No. 10.2-10a ; request for manual Re-grading of answer choice |
| **Attachments:** | Outlook-1490762835.png |

Dr. Goodman,

Although the question does not ask us verbatim to use T-Account, you also used a T-Account in your previous answer to me.
This question does not have to ask us to use T-Account to come up with the answer, but it is still a question that requires application of collective knowledge to solve it, and so such collective knowledge can include T-account. Moreover, the question asked me to show working.
To show working, I showed working by using a T-Account like the textbook teaches.
The question specifically asked for CREDIT SIDE. You and I know and  Dr. Russell may agree that  to show the CREDIT  side, T-Accounts are the way to show credit side and debit side.
As for who to blame for designing the Pearson program for the Quiz, that is irrelevant because you are the one using this program to teach your class. You still have administrative rights over the quiz  even though the book publisher designed the quiz.
In several graduate schools I have attended in the past such as Drexel University, which is a school faculty chair, Dr. Russell, knows very well, when Teachers use software from book publishers to teach and provide quizzes and a student is able to point out an error or ambiguity in question, they fairly discard the question and award the student the full points and  they appreciate that it was brought to their attention, rather than the course instructor shifting blames to the publisher.
Accordingly, please note the ambiguity in the question and award the credit because my shown work to that same question was accurate. The answer  choices were poorly worded.

Thanks.

~ Michael O.  Livingstone


On Sat, Apr 27, 2019 at 7:57 PM Goodman, Arlene B <AGoodman@devry.edu> wrote:
Mr. Livingstone

The question did not ask for the entire journal entry but would **Include - and there were four options.**  Additionally, I do not write the questions - they have been prepared by the book publisher and included by the course writers - not me - but the question is correctly worded to test the knowledge of the students


**Arlene Goodman, DBA** *Associate Professor, College of Business & Management*

1

*Ex. 3I*

**P:** 480.610-3969; **M:** 954-829-1924; **E:** agoodman@devry.edu
**Onsite:** Thursday – Phoenix: **Remote:** Monday – Saturday

1201 S. Alma School Road, Suite 5450
Mesa, AZ 85210



http://devrytutors.com/

---

**From:** Michael Osei <mikeosei@gmail.com>
**Sent:** Saturday, April 27, 2019 4:50 PM
**To:** Goodman, Arlene B
**Cc:** Bose, Shantanu; Yousef, Waleed; RUSSELL, JOCELYN
**Subject:** Re: ACCT 504. Discrepancy in Quiz 7 question No. 10.2-10a ; request for manual Re-grading of answer choice

Dr. Goodman, et al.

I re-submit this for reconsideration by the dean and chair, Dr. Russell too because vagueness and ambiguity in multiple choice questions is grounds to discard a question or give the credit to the student

What you wrote is not what the answer choice provided. Luckily, the program you used for this Quiz asked me to show working. My shown working used the correct T-account you have also given.

The salient issue now becomes what is the meaning of the dash (-) in the answer choice over here. It is a vague usage of the dash because a dash can have multiple meaning to a diversity of students. A dash means a minus or subtraction sign or it is simply a dash for punctuation. Moreover, there are different types of dashes such as the *en*-dash or the *em*-dash (*see* APA Manual of style for types of dashed and their usage, 2016 version).

The textbook teaches me to T-Accounts. In my shown working to this multiple choice question, I used a T-Account to show the accurate breakdown and you agree that is correct because you replied by using the same accurate T-account I used too.

Accordingly, please grade the accurate T-Account on my shown working, not the rather ambiguous and vaguely presented answer choice.

This is one reason I have decried using these Pearson multiple choice programs to teach and grade rather than teachers grading our work manually and looking at the student's approach and trend of thought in solving a problem, because in principle, if my shown work is accurate as in this case, but the final multiple choice answer is wrong, I should still get credit for that.

Also, please note that the use of the word "Common" is not right in this question. It is vague to say that. It has to say "Common Stock" because that is the right term in Accounting. *Common* is not the same as *Common Stock*

Ex- 3I (cont'd

Moreover, the system only told me the multiple choice answer is not accurate without giving me feedback as to why it is not correct.

The Pearson program failed to teach me to foster my learning process because it fails to tell me why the answer is not right. Please bear in mind as a teacher that my mastery of the principle for application is more important than the answer and scores because I must have feedback as to why it wrong so that I can tackle other questions on my own and get it right. I am not just here to get scores and grades, but to learn. As such, this question and the system you used are perfunctory at best.

Inasmuch as Keller's administrators are serious about taking student feedback to improve the quality of education, this is one specific instance I find to copy them to justify that the Pearson systems you use must be reviewed for quality, ambiguity, vagueness, and it must give students feedback if course instructors are not going to grade these things manually.

Accordingly, I re-submit this question for re-grading and to the attention of Dr. Russell who known and teach this course. DeVry's overall Provost of academic excellence is also cc'd.

Sincerely,

Michael O. Livingstone

D40530929


On Sat, Apr 27, 2019 at 4:27 PM Goodman, Arlene B <AGoodman@devry.edu> wrote:
Mr. Livingstone,

I am sorry but the question was graded correctly - the question is shown below -

If a corporation issues 8,000 shares of $5 par value common stock for $90,000 the journal entry would include a:

The correct answer is B - Paid in capital in excess of par -Common for $50,000


The entire entry would be:

Cash 90,000
    Common Stock   40,000
    APIC - Common  50,000

**Arlene Goodman, DBA** *Associate Professor, College of Business & Management*

**P**: 480.610-3969; **M**: 954-829-1924; **E**: agoodman@devry.edu
**Onsite**: Thursday - Phoenix: **Remote**: Monday - Saturday

1201 S. Alma School Road, Suite 5450
Mesa, AZ 85210

3



**DeVry University**
**Keller** Graduate School of Management

Ex. 3 I cont'd

http://devrytutors.com/

**From:** Michael Osei <mikeosei@gmail.com>
**Sent:** Saturday, April 27, 2019 1:16:22 PM
**To:** Goodman, Arlene B
**Subject:** ACCT 504. Discrepancy in Quiz 7 cuestion No. 10.2-10a ; request for manual Re-grading of answer choice

Good Afternoon Dr. G,

I hereby submit the attached Quiz 7 question No. 10.2-10a for manual re-grading and change of scores because of the inherent discrepancy therein.

The system asked me to show working for this particular question and I did. So, I showed working with a T-account as well. Please take a look at that. Re-grading is manually necessary because of the following:

The multiple choice question is specifically asking for the CREDIT side, not the DEBIT side.

In this case, the Credit side will have composite entry for two account entities, which only includes both:

1. Common Stock, and
2. Paid-In Capital.

These two account entities do not have the same amounts on the Credit side.Yet, the system graded the correct answer as choice B: Paid-In Capital in excess of Par-Common for $50,000 .

This cannot be the correct answer choice because the two account entities total balance on the Credit side will need to be equal to the balance of the Debit side of Cash for $90,000 as well, but Paid-In Capital in excess of par Common on the credit side is not $50,000 total. Only the paid-in capital is $50,000 on the debit side, but not the common stock.

Similar accurate breakdown journal entry can be seen in the Week 7 Homework Number E10-24A, attached herewith as Item 2. Please note that the Credit separate entries of Common Stock $ 2000 and Paid-In Capital on Par $31,000, that equal to the $33,000

Only Choices B or C can be correct. Indeed, my Choice Answer C should rather be the correct answer choice because it represents the total balance on the credit side with both Paid- in Capital and Common Stock mentioned. However, in principle, that can also be inaccurate because there are different amounts of Common Stock and Paid-In Capital although the total is $ 90,000.

Accordingly, I submit Quiz 7 question 10.2-10a for manual re-grading because the answer choice  is not accurate and does not reflect well–established principles of accounting journal entry in this area of stockholder's equity we were taught in the textbook and by the attached homework example.

Looking forward to hearing from you on this. Thanks for your attention to this discrepancy.

Sincerely,

~ Michael O. Livingstone.

4

N Y

# Exhibit "4.A"

4 pages

# Description

August 2018

First ADA Accommodation notification from
DeVry University's ADA Officer

 Gmail

Michael O. Livingstone <mikeosei@gmail.com>

Ed. 4 A Cont'd

## Accommodations Notification

**ADA** <ADA@devry.edu>
To: Michael Osei <mikeosei@gmail.com>

Fri, Aug 10, 2018 at 7:09 PM

Hello Michael,

Please see the attached accommodation notification letter which details the Online courses accommodations that have been approved for you. Your Professor has also been sent notification of your approved accommodations.

Please note that any questions or concerns you may have regarding this letter should be directed to the ADA officer mailbox at adaofficer@devry.edu.

Have a great session.

Thank you,

Adrienne

Adrienne Taylor

Accommodations Coordinator

1200 E. Diehl Rd.

Naperville, IL 60563

Phone: 877-496-9050

Fax: 630-929-9745

Email: adaofficer@devry.edu

www.devry.edu

 DeVry University
Keller Graduate School of Management



NOTICE: This message and/or any attachments contain confidential, non-public information. This message should not be forwarded or pasted into other systems. If you are not the intended recipient, please notify sender and delete this message from your system.

📄 **Michael Osei Livingstone_DeVry Student Accommodation Notification.docx**
40K

Ex. 4 A
cont'd




DeVry University
Keller Graduate School of Management

Ex: 4A
cont'd

**SUBJECT LINE: Accommodation Notification**

**Date:** 8/10/18

**Name:** Michael Osei Livingstone

**ID Number:** D405~~████~~     M.O.L

Dear Michael:

DeVry has received your request for accommodation(s) under the Americans with Disabilities Act and determined that the following accommodation(s) can be made for your online courses:

- <u>1.5x minutes on all tests/quizzes/exams-</u> **A student with this accommodation will get 1.5X the number of minutes to take the exam as the non-accommodated student population. This extension is a multiplier of minutes and does not allow for additional attempts or days. The student is still required to finish the exam by the latest 11:59 MT the last day of the exam. It is the student's responsibility to save periodically so that the examinations will not time out.**

  **\*For example, if the non-accommodated population of the class gets two hours to take a quiz and the accommodated student's letter states 1.5X, then they will receive 3 hours.**

- <u>1.5x on individual assignments, if needed, not to exceed course deadline (not threaded discussions)-</u>**This accommodation provides 1.5X the amount of time on assignments not threaded discussions and not to exceed the last day of the course. This does not cover those assignments in a group setting which must still be completed on time, according to the dates in the syllabus. You may request information from your professor concerning the last week's assignments starting Monday the week prior.**

  **\*For example if an assignment was due on Sunday then the student with this extension would have to turn in the assignment the following Thursday by noon MST.**

DeVry has received your request for accommodation(s) under the Americans with Disabilities Act and determined that the following accommodation(s) can be made for your campus courses:

- <u>**None requested at this time**</u>

Going forward the instructors of any courses you enroll in will be notified of your accommodation(s) automatically by Friday of week 1 of the session. You may provide this letter to the instructor should you need accommodations earlier in the week.

Please contact the Office of Student Disability Services for the status of your accommodation file, if you go back through the admission process after being away from class, or upon matriculating into a new degree. Also, if you would like to attend another location you will need to update your request. Due to setting and delivery of coursework accommodations can vary by location.

Please let us know if you have any questions or concerns.



Best Wishes,

*Adrienne Taylor*
*Accommodations Coordinator*
*1200 East Diehl Rd.*
*Naperville, IL 60563*
*Phone: 877-496-9050*
*Fax: 630-929-9745*
*Email: adaofficer@devry.edu*

EX · 4A cont'd

CONFIDENTIALITY NOTICE: The information contained in this electronic communication and any accompanying document or attachment is intended solely for the person or persons included in addressee portion of the message. If the reader of this email is not the intended recipient, you are hereby notified that reading is strictly prohibited. The information contained herein may be attorney-client communications that are privileged. The information is the property of and may be confidential and proprietary to DeVry Inc. and/or its subsidiary companies. Unauthorized use, disclosure or copying of this communication or any part of it is not authorized. If you have received this communication in error, please notify the sender and destroy this communication and any copies of it, including any attachment.



# Exhibit 4B

2 pages

## Description:

**Rebuttal Email evidence dated back in August 10, 2018 from then-faculty Chair Professor J. Kavouras extending open arms that DeVry Administrators are here to Assist Students. Hence, student should reach out to him.**

## NOTE:

**This rebuts conduct hearing packet evidence as to why Student M. Livingstone reached out on April 26, 2019 to Prof. Kavouras. This rebuttal defeats Exhibit 3D and Ex. 1A past character reference that absolutely not misconduct or intimidating to reach out.**

6/19/2019    Gmail - IMPORTANT: Immediate action required Against Discriminatory Hostile Educational Environment at Keller, etc.; cc'd to U.S. Offic...

Case: 1:20-cv-05567 Document #: 1 Filed: 09/18/20 Page 271 of 286 PageID #:271

 **Gmail**

$Ex \cdot 4B$

Michael Osei <mikeosei@gmail.com>

---

## IMPORTANT: Immediate action required Against Discriminatory Hostile Educational Environment at Keller, etc.; cc'd to U.S. Office of Civil Rights; Response for Managerial Decision-Making - 62290; attachment

**Kavouras, John** <jkavouras@devry.edu>                  Fri, Aug 10, 2018 at 4:42 PM
To: Michael Osei <mikeosei@gmail.com>, "Welsh, Mary" <MWelsh@devry.edu>
Cc: "Husbands, Tennille" <thusbands@devry.edu>, "Brown, Joseph" <jbrown1@devry.edu>, OCR <OCR@ed.gov>

Michael,

Thanks for writing. I want to let you know that I worked with Dr. Welsh to come up with a solution to your questions about making up assignments.

Let me say that I'm sure Drexel is a fine school. And if you check with any school in which you might be interested, I feel confident that school will supply you with information about their programs so you can compare.

Comparing it with Keller does not really pertain to the issue at hand. When you want to compare Keller's programs or classes, please contact your assigned Student Support Advisor (SSA), Rebecca Clapper <rclapper@devry.edu>

Professor Welsh has offered you a way to make up your late assignments. Please complete them and turn them in. I think her proposal is fair. However, if we revisit the question about late penalty, we can't do much without the work having been done.

The Keller ADA Officer has now followed up with me and she is in touch with my Physicians. Accordingly, federal ADA statute is now implicated in this matter in addition to violation of my HIPAA privacy by Dr. Welsh when she recklessly cc'd and electronically-transmitted my health record to Mr. John Kovouras without my permission.

I'd like to assure you that at no time did Dr. Welsh forward any health records. You may want to check your responsibility if you choose to share health information with Dr. Welsh or anyone else.

In Week 1 of this class, Dr. Welsh asked about "where I am from" whereas this MGMT 530 class has nothing to do with knowledge of anybody's ethnic background. Since I have been here from 2015, no Teacher at Keller has ever asked me that question about *where I am from*. So, the question becomes why Dr. Welsh wanted to know my ethnic heritage for the purposes of this MGMT 530 course that has nothing to do with anybody's ethnicity.

In Week 1 Introduction, Dr. Welsh wrote that, while preparing your introduction you "may want to touch upon the following points" and one of many points was "Where are you from?" I find that many people are proud of their heritage and want to share it with the class, but it was certainly not required.

Michael, ADA situations are very often personal. For that reason, there is an ADA Office with whom you work. Any accommodations are determined by that person and given to your professor, not for sharing information about you but to be sure you get any accommodations you need.

I do hope you'll take this opportunity to focus on the situation at hand, which is getting the work caught up and doing well in the class.

Ex. 4B cont'd

Regards,

*Professor John Kavouras*

*Faculty Chair, Northeast Group*

If you have questions or need further information, please contact me by telephone or email.

**John Kavouras** | *Associate Professor*

**P** 216.520. 5857 | **E** jkavouras@devry.edu

4141 Rockside Rd., Su 110 | Seven Hills, Ohio 44131 | devry.edu

*To unsubscribe from future marketing emails click here, note you may continue to receive emails from DeVry University regarding your student account.*

**From:** Michael Osei <mikeosei@gmail.com>
**Sent:** Friday, August 10, 2018 3:36:42 PM
**To:** Welsh, Mary; Kavouras, John
**Cc:** Husbands, Tennile; Brown, Joseph; OCR
**Subject:** IMPORTANT: Immediate action required Against Discriminatory Hostile Educational Environment at Keller, etc.; cc'd to U.S. Office of Civil Rights; Resporse for Managerial Decision-Making - 62290; attachment

[Quoted text hidden]

# Exhibit 4C

**Description:**           2 pages

Rebuttal Email evidence dated April 11, 2019 from Student M. Livingstone to DeVry's Prof. Goodman where student professionally stated that "I prefer to work directly with you rather than ADA office interventions…"

**NOTE:**

This rebuts the June 14, 2019 conduct hearing packet's mischaracterization in attached Exhibit 1A, Page 2 that "…by copying administrators, student is attempting to intimidate his Professors or go over their heads…"

No, not true. That is a misconception by the Code Administrator because this rebuttal evidence shows that Student rather preferred to work *directly* with his Professors such as Dr. Goodman even without ADA Accommodation Office interventions.

6/19/2019    Case: 1:20-cv-05567 Document #: 1 Filed: 09/18/20 Page 274 of 286 PageID #:274 in Canvas.

http://devrytutors.com/



Ex. 4C

From: Michael Livingstone <notifications@instructure.com>
Sent: Thursday, April 11, 2019 3:06 AM
To: Goodman, Arlene B
Subject: Michael Livingstone (Accounting and Finance: Managerial Use Analysis - 60045) just sent you a message in Canvas.

Updates, etc.

Good Morning, Prof. G,

Good Morning Prof. G,

I prefer to work directly with you rather than ADA office interventions. I wanted to give you a courtesy phone call. However, as part of pain management medical advice, I am unable to call.

I respectfully request that you kindly waive the penalties for my completed and submitted Week 4 assignments.

The one (1) day extension was not practically adequate for the in light of the circumstances I am dealing with for which you have been briefed. At the same time, I needed to keep making progress on the group project too, while learning too while doing
1. Week 4 Homework,
2. Quiz, and
3. Case Study Spreadsheet.
The technical modalities of the Pearson system Homework and Quiz also make it time- consuming to complete these tasks.

As for the case study, the adjusting entry postings were reserved for the adjusting entry tab since there is a separate tab for that by itself instead of the ledger tab. So, the adjusting entry for tax preparation revenue, for example, is on the adjusting entry tab, not the ledger tab. The ledger only shows the T- accounts, and the adjusting entries tab was used for the adjusting entries.

In good faith effort, I have completed and submitted all of Week 4 assignments with optimum academic input. It required a lot of work and numerous sleepless nights also because inventory accounting was quite confusing to my over-analytical mind and it is all self-taught.

Plus, per instructions of my Doctors, stress triggers a lot of symptoms while healing from the medical procedures. I have to pace myself, allow the *surgical pain* to relief, and allow all bleeding bandages to be replaced. My doctors have now removed some of the surgical sutures and placed me on some powerful medications that are working.

As you know, the designated ADA officer was away last Friday and Monday despite her willingness to review and extend the ADA extension. If you insist not to waive the late points, I will need to obtain the ADA extension to cover for that, but I believe you would understand and waive the penalties since both myself and the ADA offer have been communicating with you last week. So, you quite aware of what is going on.

SMAIL Arlene Goodman (Accounting and Finance: Managerial Use Analysis - 60045) just sent you a message in Canvas.

However, I do not think additional ADA extension would be necessary going forward because my Doctors have now removed some surgical sutures and placed me on new medications that are now working. So, I think I can now manage with the timelines for Thursday for the rest of the session.

To demonstrate, I have been able in good-faith to complete the Week 5 Homework and Quiz on time and I want to keep it that way now that I have been able to catch up. So, absent additional ADA extension, if you waive these penalties, and any other work is late, I would understand it attracts late penalties at my own risk.

In that same vein, please also reconsider restoring the penalties for Week 2. I would understand to work with you that no other late work for the remaining weeks of the class shall be pardoned.

Thanks for working with me.

Sincerely,

Michael Osei Livingstone.

[Michael Livingstone]

Michael Livingstone
<mailto:>

You can reply to this message in Canvas by replying directly to this email. If you need to include an attachment, please log in to Canvas and reply through the Inbox.

[https://du11hjcvx0uqb.cloudfront.net/dist/images/email_signature-ea0b2cda73.png]
View this message in Conversations <https://devryu.instructure.
com/conversations/2265374> | Update your notification settings<https://devryu.
instructure.com/profile/communication>

 **Arlene Goodman**

You can reply to this message in Canvas by replying directly to this email. If you need to include an attachment, please log in to Canvas and reply through the Inbox.

# Exhibit 4. D

3 pages

# Description

April 2019

Second updated ADA notification from DeVry University's ADA Officer.

 Gmail

$Ex \cdot 4 D$

Michael O. Livingstone <mikeosei@gmail.com>

---

## Updated Accommodations Notification Letter

---

**ADA** <ADA@devry.edu>
To: Michael Osei <mikeosei@gmail.com>

Tue, Apr 30, 2019 at 9:40 AM

Hello Michael,

Please see the attached, updated accommodation notification letter which details the Online accommodations that have been approved for you.

Please note that any questions or concerns you may have regarding this letter should be directed to the ADA officer mailbox at adaofficer@devry.edu.

Have a great session!

**Adrienne Farmby Taylor | Accommodations Coordinator**

**Phone:** 877-496-9050 Option 1

**Fax:** 630-929-9745

**Email:** adaofficer@devry.edu

**www.devry.edu**

1200 Diehl Road | Naperville, IL 60563

 DeVry University
Keller Graduate School of Management

NOTICE: This message and/or any attachments contain confidential, non-public information. This message should not be forwarded or pasted into other systems. If you are not the intended recipient, please notify sender and delete this message from your system.

---

📄 **Michael Osei Livingstone_Updated DeVry Student Accommodation Notification.pdf**
93K





**DeVry University**
**Keller** Graduate School of Management

**SUBJECT LINE: Accommodation Notification**

*Ex. 4 D cont'd*

**Date:** 4/30/19

**Name:** Michael Osei Livingstone

**ID Number:** D405▓▓▓     *M.O.L*

Dear Michael:

DeVry has received your request for accommodation(s) under the Americans with Disabilities Act and determined that the following accommodation(s) can be made for your online courses:

- <u>**1.5x minutes on all tests/quizzes/exams-.6**</u> A student with this accommodation will get 1.5X the number of minutes to take the exam as the non-accommodated student population. This extension is a multiplier of minutes and does not allow for additional attempts or days. The student is still required to finish the exam by the latest 11:59 MT the last day of the exam. It is the student's responsibility to save periodically so that the examinations will not time out.

  *For example, if the non-accommodated population of the class gets two hours to take a quiz and the accommodated student's letter states 1.5X, then they will receive 3 hours.

- <u>**2.0x on individual assignments, if needed, not to exceed week 8 deadline (not threaded discussions)-**</u> This accommodation provides 2.0X the amount of time on assignments not threaded discussions and not to exceed the last day of the course. This does not cover those assignments in a group setting which must still be completed on time, according to the dates in the syllabus. You may request information from your professor concerning Week 8 assignments starting Monday week 7.

  *For example if an assignment was due on Sunday then the student with this extension would have to turn in the assignment the following Sunday by 11:59 p.m. MST.

DeVry has received your request for accommodation(s) under the Americans with Disabilities Act and determined that the following accommodation(s) can be made for your campus courses:

- <u>**None requested at this time**</u>

Going forward the instructors of any courses you enroll in will be notified of your accommodation(s) automatically by Friday of week 1 of the session. You may provide this letter to the instructor should you need accommodations earlier in the week.

Please contact the Office of Student Disability Services for the status of your accommodation file, if you go back through the admission process after being away from class, or upon matriculating into a new degree. Also, if you would like to attend another location you will need to update your request. Due to setting and delivery of coursework accommodations can vary by location.

Please let us know if you have any questions or concerns.



Best Wishes,

*Adrienne Taylor*
*Accommodations Coordinator*
*1200 East Diehl Rd.*
*Naperville, IL 60563*
*Phone: 877-496-9050*
*Fax: 630-929-9745*
*Email: adaofficer@devry.edu*

Ex. 4D cont'd

CONFIDENTIALITY NOTICE: The information contained in this electronic communication and any accompanying document or attachment is intended solely for the person or persons included in addressee portion of the message. If the reader of this email is not the intended recipient, you are hereby notified that reading is strictly prohibited. The information contained herein may be attorney-client communications that are privileged. The information is the property of and may be confidential and proprietary to DeVry Inc. and/or its subsidiary companies. Unauthorized use, disclosure or copying of this communication or any part of it is not authorized. If you have received this communication in error, please notify the sender and destroy this communication and any copies of it, including any attachment.

3

# Exhibit 5A

3 pages

# Description

**New effective <u>July 2016</u> Textbook Policy by DeVry University no longer imposing or requiring Students to purchase required Course Textbooks from DeVry University itself.**

 Gmail

EX. 5A

Michael Osei <mikeosei@gmail.com>

## DeVry University eBooks Update

1 message

**DeVry University** <devrystudentcommunications@studentinfo.devry.edu>                Fri, Jun 17, 2016 at 2:34 PM
Reply-To: DeVry University <reply-fe951571746106757d-367_HTML-282953826-6241283-14@studentinfo.devry.edu>
To: mikeosei@gmail.com



Dear Michael,

We wanted to provide you with a reminder about updates to the eBook policy at DeVry University and its Keller Graduate School of Management effective July 2016.

Beginning with the July 2016 session, students who wish to have an optional printed version of a course eBook will be able to order a copy through the DeVry University Bookstore up to four weeks before the session begins (for the July 2016 session, printed eBooks are available). Please see our guide for ordering printed eBooks for more information.

This longer timeline will help ensure that you receive your printed eBook before the session begins. The cost for printed eBooks may now be added to your student account, or they can be paid for using a credit card.

Also beginning in July 2016, students will have the option to decline eBooks and receive a $30 electronic book fee credit for that course. To decline eBooks, you will need take a specific set of steps through the DeVry University Bookstore for each course, and you will be responsible for acquiring the textbook from another source. (Please note that if you order a printed copy of your course eBook or print pages from it, you may not decline eBooks.)

For more information, please see our frequently asked questions about ordering printed eBooks or declining eBooks, or contact your student finance consultant or student support advisor.

Best regards,

DeVry University

**Connect with DeVry:** Facebook  LinkedIn  Twitter

**Connect with Keller:** Facebook  LinkedIn  Twitter



This email communication was sent by:
DeVry University
Highland Landmark V
3005 Highland Pkwy
Downers Grove, IL 60515

**In New York, DeVry University operates as DeVry College of New York.** DeVry University is accredited by the Higher Learning Commission (HLC), hlcommission.org. Keller Graduate School of Management is included in this accreditation. DeVry is certified to operate by the State Council of Higher Education for Virginia. DeVry University is authorized for operation by the THEC, tn.gov/thec. Nashville Campus – 3343 Perimeter Hill Dr., Nashville, TN 37211.

 **Gmail**

Michael Osei <mikeosei@gmail.com>

*Ex. 5A cont'd*

## Keller Graduate School of Management - eBook Options

**DeVry University** <help@devry.edu>
To: "mikeosei@gmail.com" <mikeosei@gmail.com>

Mon, Mar 4, 2019 at 8:07 PM

     

Dear Michael,

Students who wish to have an optional, printed version of a course eBook are able to order a copy through the DeVry University Bookstore up to four weeks before the session begins (for the July 2016 session, printed eBooks are available). Please see our guide for ordering printed eBooks for more information.

This longer timeline will help ensure that you receive your printed eBook before the session begins. The cost for printed eBooks may now be added to your student account, or they can be paid for using a credit card.

Also beginning in July 2016, students will have the option to decline eBooks and receive a $30 electronic book fee credit for that course. To decline eBooks, you will need to take a specific set of steps through the DeVry University Bookstore for each course, **and you will be responsible for acquiring the textbook from another source.** *Please note that if you order a printed copy of your course eBook or print pages from it, you may not decline eBooks.*

For more information about declining eBooks, reference this step-by-step guide.

We are dedicated to helping you develop a personalized plan to reach your educational goals. If you have any questions, contact us at (877) 883-3879. You can reach us by phone Monday through Thursday, 7 a.m. - 8 p.m.; Friday, 7 a.m. - 7 p.m.; and Saturday, 8 a.m. - 4 p.m. (CT).

Sincerely,



**Kimberly Ford**
Student Support Advisor I

DeVry University
Keller Graduate School of Management

p: (877) 883-3879
www.keller.edu

This email communication was sent by:

DeVry University

1200 E. Diehl Rd

Naperville, IL 60563

Ex. 5A
Cont'd

**In New York, DeVry University operates as DeVry College of New York.** DeVry University is accredited by The Higher Learning Commission (HLC), www.hlcommission.org. Keller Graduate School of Management is included in this accreditation. DeVry is certified to operate by the State Council of Higher Education for Virginia. Arlington Campus: 2450 Crystal Dr., Arlington, VA 22202. DeVry University is authorized for operation as a postsecondary educational institution by the Tennessee Higher Education Commission, www.tn.gov/thec. Nashville Campus: 3343 Perimeter Hill Dr., Nashville, TN 37211. Unresolved complaints may be reported to the Illinois Board of Higher Education through the online compliant system http://complaints.ibhe.org/ or by mail to 1 N. Old State Capitol Plaza, Ste. 333, Springfield, IL 62701-1377.

Program availability varies by location. In site-based programs, students will be required to take a substantial amount of coursework online to complete their program. Important information about the educational debt, earnings, and completion rates of students who attended DeVry can be found at www.devry.edu/degree-programs/ge.html or www.keller.edu/graduate-degree-programs/ge.html.

We would like to continue sharing news about DeVry University with you, however, if you prefer not to receive any further emails, you may unsubscribe. Please do not reply to this email. View our privacy policy.

©2018 DeVry Educational Development Corp. All rights reserved.



# Exhibit 5E

# Description

DeVry University June 2019 disciplinary warning and channel of communication, etc.

 Gmail                    $Ex \cdot SE$                    **Michael O. Livingstone <mikeosei@gmail.com>**

---

## Results of Code of Conduct Hearing - Michael Livingstone
1 message

**Agresta, Jonathan** <JAgresta@devry.edu>                                   Fri, Jun 21, 2019 at 12:13 PM
To: "mikeosei@gmail.com" <mikeosei@gmail.com>

 DeVry
University

June 20, 2019

Michael Livingstone

$M_i \ell_i L$    

Phone: (215) 688-2190

Email: mikeosei@gmail.com

Dear Mr. Livingstone:

This letter is in follow up to the Notification of Charges sent to you on 6/13/19 and your Code of Conduct
hearing held on 6/20/19. The conduct panel has reviewed the available, presented evidence regarding
the following charges:

- ARTICLE III:

    o Paragraph 3: Physical abuse, verbal abuse, threats, intimidation, and harassment
    including, but not limited to, sexual harassment, gender –based harassment, coercion and/or
    other conduct that threatens or endangers the health and safety of any person, either on or
    off DeVry premises or at any University –sponsored activity.

    (*2018-2019 Student Handbook, pp.16-17*)

After careful consideration of the information presented during the hearing, you are found to have violated
the following charges:

- ARTICLE III:

    o Paragraph 3: Physical abuse, verbal abuse, threats, intimidation, and harassment
    including, but not limited to, sexual harassment, gender –based harassment, coercion and/or
    other conduct that threatens or endangers the health and safety of any person, either on or
    off DeVry premises or at any University –sponsored activity.

    (*2018-2019 Student Handbook, pp.16-17*)

As a result of being found in violation of the listed charges, the following sanction(s) will be imposed, <u>effective immediately</u>:

- ARTICLE IV, Sanctions, 1.a:

  o <u>Warning</u>–A verbal or written notice that the respondent has not met the University's conduct expectations.

  o Written Warning:

    ▪ The hearing panel has determined that the respondent's actions do not align with the acceptable behaviors expected of DeVry University and Keller Graduate School students. Since this is the first official offense, the panel has determined that a written warning acknowledging the violations serves as a learning opportunity.

    ▪ Please read the attached *Letter of Warning* for more details about this sanction.

    ▪ The panel is also providing you with resources on professionalism. Please see the attached files entitled, *10 Ways To Be Professional.pdf* and *10 ways to have a better conversation.pdf.*

You have the right to appeal this decision within seven days to the Conduct Administrator, Jonathan Agresta, via email: jagresta@devry.edu. If you choose to appeal, your appeal must be in writing using the form attached and follow the procedure as outlined in the Code of Conduct in the student handbook, which is available on DeVry University's website. Please review the complete process at https://www.devry.edu/d/student-handbook.pdf. The sanctions described above remain in effect pending any appeal.

If you have any questions concerning your hearing or the sanctions rendered, please feel free to contact me. I can be reached at jagresta@devry.edu.

Sincerely,

Jonathan A. Agresta, M.Ed.

Assistant Dean of Academic Excellence – Northeast Group

Conduct Administrator – Pennsylvania

jagresta@devry.edu

**6 attachments**

**image003.jpg**
1245K

Ex. 5 E
Cont'd