## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **MICHAEL O. LIVINGSTONE,** | |
| **Plaintiff,** | **No. 20 C 5567** |
| **v.** | |
| **DEVRY UNIVERSITY, ET AL.,** | **Magistrate Judge Beth W. Jantz** |
| **Defendants.** | |

## REPORT AND RECOMMENDATION

*Pro se* Plaintiff, Michael O. Livingstone ("Plaintiff"), brings this action against Defendants DeVry University, Inc. ("DeVry"), Adtalem Global Education, Inc. ("Adtalem"), and numerous other individuals on claims of civil rights violations among other things. On November 20, 2020, a settlement conference was held before the Magistrate Judge, in which Plaintiff, counsel for DeVry and Adtalem (collectively, "Defendants"), and a corporate representative of DeVry participated. [Dkt. 58, Nov. 20, 2020 Settlement Conference Trans. ("SC Trans.")] Immediately thereafter, the parties' terms of a now disputed settlement agreement were memorialized on the record and agreed to by the parties. [*Id.*] Before the Court is Defendants' motion to enforce the settlement agreement [dkt. 68, Def.'s Mot.], and Plaintiff's motion to quash it [dkt. 83, Pl.'s Mot.]. Also before the Court is Plaintiff's motion to postpone a status conference and for recusal of the Magistrate Judge [dkt. 59, Pl.'s Mot. to Postpone & Recuse], and his motion to produce a transcript of the entire settlement conference or to require the Magistrate Judge to agree with his position as to the settlement agreement's unenforceability. [Dkt. 86, Pl.'s Mot. to Produce or Agree.]

For the reasons that follow, the Court: (1) denies Plaintiffs' motion to postpone and recuse; (2) denies Plaintiff's motion to produce or agree; (3) recommends that Defendants' motion to enforce be granted and Plaintiff's motion to quash be denied; and (4) recommends that the case be dismissed with prejudice.

## BACKGROUND

Michael Livingstone, a Masters of Business Administration candidate at DeVry, brought this action in September 2020 against DeVry, Adtalem, and more than 20 additional individual defendants in a 190-page complaint containing 39 counts of civil rights violations and other claims. [Dkt. 10, Am. Compl.]  On October 16, 2020, the case was referred to the Magistrate Judge for a settlement conference, and shortly thereafter, this Court held an initial status conference and set dates for the submission of settlement position statements.  [Dkt. 28, Oct. 16, 2020 Minute Entry.] On November 6, 2020, Plaintiff submitted his settlement position statement to opposing counsel and this Court's confidential settlement inbox, outlining his demands and attaching a proposed settlement agreement.  On November 12, 2020, Defendants submitted their responsive position statement, outlining among other things their assessment of the case and the portions of Plaintiff's proposed agreement to which they were willing to agree.  On November 20, 2020, the Magistrate Judge conducted the settlement conference, beginning at approximately 10:30 a.m., and continuing until a settlement was reached at approximately 5:30 p.m.  [*See* Nov. 20, 2020 Minute Entry.] Consistent with this Court's practice, the terms of the parties' agreement[1] were then recited on the record as follows:

---

[1] This Report and Recommendation discloses the settlement terms because the parties did so in their respective submissions and because such disclosure is necessary to explain the Court's reasoning in its recommended rulings.  *See Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 834 (7th Cir. 2013) ("[S]ettlement terms are of potential public interest only when . . . the settlement

2

DEFENDANTS: The settlement will include those provisions set forth in the proposed settlement that was provided by Mr. Livingstone on November 6, 2020 that defendants agreed to as indicated in their confidential settlement position statement submitted on November 11th, subject to some revisions.

In particular, we agreed to accept, with minor revisions, the provisions No. 1, 2, 3, 6, 7, 9, 10, 12, 13, 14, 16, 17, 18. We did not agree to accept provision numbers 4, 5, 8, 11 and 15.[2]

Additionally, we agreed that Mr. Livingstone will have to retake course number Math 533 in order to graduate from DeVry University unless DeVry determines otherwise, in which case Mr. Livingstone may only need to complete the coursework he previously started.

While enrolled in Math 533, Mr. Livingstone agrees to abide by all of DeVry's policies, procedures and rules.

DeVry will not hold any further code of conduct hearings for the allegations asserted but will not delete or remove any existing records. Upon Mr. Livingstone's gradation from DeVry, DeVry will close the pending code of conduct hearing.

The settlement will include a provision that DeVry will not release Mr. Livingstone's student records without his consent other than as required by law, rules or regulations or in the ordinary course of its business operations.

Defendants will also continue to comply with the provisions of the Family Education Rights and Privacy Act, commonly known as FERPA, and the confidentiality provisions that it provides regarding student records.

Defendants agree to pay Mr. Livingstone a sum of $20,000 in exchange for his release of all claims asserted against all defendants.

---

is sought to be enforced"); *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view[.]").

[2] Plaintiff's proposed provisions to which Defendants agreed with minor revisions were: (1) statement of background; (2) no admission of liability; (3) voluntary withdrawal from DeVry; (6) no right to future enrollment or employment at DeVry; (7) non-disparagement of Plaintiff; (9) general release of all Defendants; (10) voluntary dismissal of all claims; (12) acknowledgment of understanding of terms and voluntariness of settlement; (13) acknowledgment of release of all claims; (14) applicable law; (16) completeness of agreement; (17) no modifications unless written and mutual; and (18) caption of agreement is for convenience only. The provisions to which Defendants did not agree are: (4) the closure of disciplinary proceedings against Plaintiff and the promise of no disciplinary sanctions against him; (5) removal of adverse academic dismissal and probation actions from Plaintiff's record; (8) changes of disputed grades; (11) consent to seal court records; and (15) monetary demand.

The settlement will release all defendants in the lawsuit, including all of defendants'
employees and their students.

[SC Trans. at 3-4.]

After this recitation, the following exchange took place:

THE COURT: . . . Mr. Livingstone, anything you'd like to add or change?

PLAINTIFF: No, you Honor. I think it's understandable to me.

[*Id.* at 5.]

The Court then questioned both Plaintiff and DeVry's corporate representative, confirming

that each had heard and understood the agreement terms, and that each agreed to be bound by

them. [*Id.* at 5-9.] Plaintiff confirmed his understanding as follows:

THE COURT: And you understand, sir, that even though you're not signing anything
today, the terms are binding today. You can't change your mind tomorrow. Do you
understand that, sir?

PLAINTIFF: Yes, your honor…

The Court: And do you agree to be bound by those terms as of today?

Plaintiff: Yes, your Honor.

[*Id*. at 7.]

Plaintiff affirmed that he felt competent in his ability to represent himself, was not on any

medications that adversely affected his judgment, had not been forced, threatened, or otherwise

pressured into settling, and knew of no reason why he couldn't agree to a binding settlement. [*Id.*

at 6-7.] DeVry's corporate representative made similar statements. [*Id.* at 8-9.] Accordingly, the

Court found that the parties had knowingly and voluntarily entered into a binding oral settlement

agreement. [*Id.* at 9.] The Court explained, "[I]f there's any disagreement over the terms, the oral

terms on the record control. They're binding on the parties as of right now, as this Court has found

that there is a binding settlement agreement." [*Id.* at 10.] The following colloquy then took place:

4

> THE COURT: . . . And so what I'll do then is I'm going to let [District] Judge Wood know that we have a binding settlement agreement as of today. . . . And what I'll do is I'll set a status date in I would say mid-December. If the dismissal papers are filed before then, you don't need to call in for that status date, but it just kind of keeps it on track. But I expect you'll be able to file those dismissal papers before then, and we'll strike that for you. . . .
>
> PLAINTIFF: So I have to file a stipulation for dismissal after we execute the settlement judgment agreement in writing?
>
> THE COURT: That's correct, sir.

[*Id.* at 10-11.] Thereafter, and while still on the record, Plaintiff returned to the topic of his last math class required for his graduation, reiterating his preference not to retake it in its entirety, and the following exchange took place:

> THE COURT: Well sir, Mr. Livingstone, the terms are on the record now and they're binding, and so it's set in stone as of what they were on the record. And 533 was addressed so that will be the term as it was put on the record. Does that make sense sir?
>
> PLAINTIFF: Yes, your Honor.

[*Id.* at 13.] At the Magistrate Judge's direction, Defendants' counsel then repeated the settlement term as it related to the math class, and the following colloquy took place:

> THE COURT: And that's the terms, sir. Okay with you?
>
> PLAINTIFF: Yes, your Honor.
>
> THE COURT: Very good. . . . Any other questions or concerns before we go off of the record, sir?
>
> PLAINTIFF: No, I'm good. Thank you.

[*Id.* at 14.] Later that day, the Magistrate Judge entered an order noting that the parties had "reached a binding agreement to settle the case, as to all defendants." [Nov. 20, 2020 Minute Entry.] Ten days later, the District Judge entered an order confirming the Magistrate Judge's report. [Dkt. 53, Nov. 30, 2020 Minute Entry.]

Over the days that followed the settlement conference, Plaintiff and counsel for Defendants worked out revisions to the written settlement agreement that Plaintiff had proposed in advance of the conference. [Dkt. 68-5, Gonsalves Decl., Ex. C, Emails.] On November 24, 2020, Plaintiff emailed counsel for Defendants, noting that the tax implications of the settlement had not been discussed at the conference, and asking for an additional payment to cover that liability. [*Id.*] In a subsequent email that day, Plaintiff also proposed revising the agreement to exclude from his release his previously filed motions for return of the Court's filing fee and reimbursement of process server costs (collectively, "Plaintiff's filing fee and costs motions"). [*Id.*] Defense counsel declined both requests, noting the binding nature of the oral agreement that had been reached at the conference. [*Id.*] Plaintiff responded by email, "OK, I took out that statement. You are very persuasive." [*Id.*] Plaintiff attached to his email the signed settlement agreement and a W-9 tax form, both dated November 24, 2020, and asked defense counsel to expedite payment of the settlement amount in advance of the Thanksgiving holiday. [*Id.*; dkt. 68-4, Gonsalves Decl., Ex. B, Signed Agreement.]

Six days later, however, Plaintiff emailed another version of the agreement to Defendants' counsel, asserting that the agreement should be modified in four ways: (1) to require that Defendants carry the tax liability for the settlement; (2) to require DeVry to close its disciplinary proceeding against Plaintiff with Plaintiff's dismissal of the lawsuit instead of upon his graduation; (3) to accelerate the settlement payment date; and (4) to exclude from Plaintiff's general release his filing fee and costs motions. [Dkt. 84, Pl.'s Mem., Ex. O, Nov. 30, 2020 Email.] Plaintiff requested that Defendants instead sign this new written agreement "so that we can declare this mater finalized, as there are many thoughts I am having that can cause me to repudiate the settlement and move on to full-blown litigation and subpoena some people and things from

DeVry." [*Id.*]  On November 30, 2020, Defendants nevertheless signed the version of the agreement that Plaintiff had signed on November 24, and subsequently issued Plaintiff's settlement checks (dated December 2 and 3, 2020) to him.  [Gonsalves Decl., Ex. B, Signed Agreement; dkt. 68-6, Gonsalves Decl., Ex. D, Endorsed Checks.]  Plaintiff thereafter cashed his payment. [Gonsalves Decl., Ex. D, Endorsed Checks.]

Consistent with Plaintiff's initially proposed agreement and the parties' oral agreement at the settlement conference, the written settlement agreement requires that within two weeks of signing, Plaintiff will file a stipulation of dismissal to dismiss all claims in this action with prejudice. [Gonsalves Decl., Ex. B, Signed Agreement ¶ 8.]  Instead of seeking to dismiss this action, however, on December 10, 2020, Plaintiff filed with the Court what he styled as a "notice" asserting that no binding settlement had been reached because he had repudiated his signature on the written agreement before Defendants had signed it, and advising that although his filing fee and costs motions were "not even mentioned at all" during the settlement conference, he had not intended to include them in his general release of claims.  [Dkt. 55, Pl.'s Notice of No Good-Faith Settlement at 2-3.]  Plaintiff further asserted that DeVry's disciplinary matter against him should not remain open until his graduation, but should close with his dismissal of the lawsuit.  [*Id.*]  Finally, Plaintiff asserted, because DeVry was requiring him to take Math 533 in its entirety, he would not dismiss the case until the class was completed and he received his diploma.  [*Id.* at 5.]

The next week, on the day of a previously scheduled status on the settlement, Plaintiff moved to postpone the status and to recuse the Magistrate Judge, repeating the arguments he had raised in his filing of the previous week, and asserting for the first time that the settlement was also not binding because he had not agreed to take Math 533 as an independent study and because the Magistrate Judge had threatened and coerced him at the conference.  [Dkt. 59, Pl.'s Mot. to

Postpone & Recuse.] Plaintiff nevertheless participated in the status conference, reiterating his position that the settlement was not binding. [*See* Dkt. 57, Dec. 18, 2020 Minute Entry.] Accordingly, the Court set a schedule to bring motions on the settlement, and Defendants' motion to enforce the settlement and Plaintiff's motion to quash or strike it followed. [Dkt. 68, Defs.' Mot.; dkt. 83 Pl.'s Mot.[3]] Plaintiff subsequently also moved to produce the entirety of the settlement negotiation transcript or recording or to require the Magistrate Judge to agree with Plaintiff's position as to the agreement's unenforceability. [Dkt. 86, Pl.'s Mot. to Produce or Agree.][4] The District Judge expanded the scope of the referral to include preparation of this Report and Recommendation. [Dkt. 71, Jan. 11, 2021 Minute Entry; dkt. 88, Feb. 1, 2021 Minute Entry.]

## DISCUSSION

### *Plaintiff's Motion to Recuse [59], and His Motion to Produce a Transcript or Agree [86]*

At the threshold, the Court addresses Plaintiff's motion that the Magistrate Judge recuse herself from any further involvement in settlement-related proceedings because she is "not an expert in Higher Education Law." [Pl.'s Mot. to Postpone & Recuse at 5.] Specialized knowledge of education law is not required either to preside over settlement negotiations or to resolve the issues now before the Court. *See, e.g., Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. CPC Logistics, Inc.*, 698 F.3d 346, 350 (7th Cir. 2012) (noting, "Federal judges are generalists[.]"). Moreover, lack of specialized knowledge is not a proper basis for recusal. Under 28 U.S.C. § 455, recusal is required "in any proceeding in which [a judge's]

---

[3] Plaintiff also moved to strike his inadvertently filed draft motion to quash and his supporting memorandum. [Dkt. 89, Pl.' Mot. to Strike.] Because the Court already terminated the motion and took his amended filings under advisement, the motion to strike is denied as moot. [*See* dkt. 87, Jan. 31, 2021 Minute Entry.]

[4] Plaintiff's motions to postpone and recuse, to produce or agree, and to strike an earlier filing [dkt. 59, 86, 89] address non-dispositive matters within the scope of the Magistrate Judge's authority. *See* Fed R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

impartiality might reasonably be questioned," or under certain specified conditions such as the judge has "a personal bias . . . concerning a party," or "personal knowledge of disputed evidentiary facts[.]" Similarly, recusal is required under 28 U.S.C. § 144 upon a sufficient showing of "personal bias or prejudice either against him or in favor of any adverse party[.]" Plaintiff does not allege any of these factors, noting instead that the Magistrate Judge "is very professional, understanding, and diligent." [Pl.'s Mot. to Postpone & Recuse at 5.] *See also Montgomery v. Vill. of Posen*, 711 F. App'x 343, 345-46 (7th Cir. 2018) (affirming denial by magistrate judge of motion to recuse herself, as "expressions of doubts about the strength of a case do not establish bias or partiality"). Accordingly, Plaintiff's recusal request is denied.[5]

Plaintiff's motion to produce a transcript of the entire settlement conference or to require the Magistrate Judge to agree with Plaintiff's position as to the agreement's unenforceability is also denied. As Plaintiff acknowledges, he already has been advised that the Court has no recording of the entire settlement conference. [*See* Pl.'s Mot. to Produce or Agree at 2.] As is common practice, the parties' negotiations were held off the record, with recording beginning only "to document the terms of that agreement[.]" [*See* SC Trans. at 2.] *See Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 491 (7th Cir. 2002) (noting standard practice of conducting settlement negotiations off the record "to encourage candid exchanges of offers and arguments," followed by dictation of oral agreement into record). As to Plaintiff's request that the Magistrate Judge agree with his position on unenforceability, the motion is denied insofar as the recommendations made herein are made as a matter of law, and not because one side or the other has requested them.

---

[5] To the extent Plaintiff's motion also sought to postpone the status conference that took place on December 18, 2020, it is denied as moot.

*Defendants' Motion to Enforce [68], and Plaintiff's Motion to Quash [83]*

Turning to the heart of the parties' dispute as to settlement, Defendants argue that a binding oral settlement agreement was reached at the conference, Plaintiff further affirmed that agreement by signing the subsequent and equally binding written agreement, and further ratified the agreement by cashing his settlement payment. [Dkt 68-1, Defs.' Mem. at 2-8.] According to Plaintiff on the other hand, neither the oral agreement nor the subsequent written agreement is enforceable based on numerous grounds: a lack of jurisdiction over named defendants, lack of due process surrounding the settlement conference, lack of counsel or a waiver of counsel, mistake of fact, ambiguity, fraudulent omission, unconscionability, fraud in the execution, coercion, and certain technical infirmities. [Dkt. 84, Pl.'s Mem. at 13-47.] Additionally, Plaintiff argues, it is irrelevant that he signed the written agreement and cashed the settlement payment because he repudiated the agreement before Defendants signed it. [*Id.* at 41-44.] The Court addresses the parties' arguments in turn.

"State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements." *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir 2016). "Under Illinois law, the existence of a valid and enforceable contract is a question of law when the basic facts are not in dispute." *Id.* "Oral settlement agreements are enforceable under Illinois law if there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506-07 (7th Cir. 2007) (internal quotations omitted); *accord County Line Nurseries & Landscaping, Inc. v. Glencoe Park Dist.*, 46 N.E.3d 925, 932 (Ill. App. Ct. 2015). "A meeting of the minds exists whenever the parties' conduct objectively indicates an agreement to the terms of the settlement, even if one or more parties did not subjectively intend to be bound." *County Line Nurseries*, 46 N.E.3d at 932.

10

An agreement is enforceable when the "essential terms" are sufficiently "definite and certain so that a court can ascertain the parties' agreement from the stated terms and provisions." *Dillard*, 483 F.3d at 507 (internal quotation omitted); *accord Beverly*, 817 F.3d at 333. "[T]he simple fact that a formal document will follow does not reduce an oral agreement to a negotiation if the ultimate contract will be substantially based upon the same terms[.]" *TRT Transp., Inc. v. Aksoy*, 506 Fed App'x 511, 513 (7th Cir. 2013) (internal quotation omitted).

Also, federal law additionally requires that when a settlement agreement resolves federal anti-discrimination claims like those raised by Plaintiff here, the settlement also must be "knowing and voluntary." *See, e.g., Dillard*, 483 F.3d at 507 and n.4 ("[T]he federal law 'knowing and voluntary' requirement in the employment discrimination context is a prerequisite to be satisfied after the existence of a binding agreement under state contract principles has been established."). Whether the "knowing and voluntary" standard is met is determined by a totality of the circumstances. *Id.* The Court makes this inquiry when the party challenging the agreement comes "forward with specific evidence sufficient to raise a question as to the validity of the release[.]" *Pierce v. Atchison Topeka & Santa Fe. Ry. Co.*, 110 F.3d 431, 438 (7th Cir. 1997). "[I]n the absence of a showing of fraud, duress, or other circumstances suggesting that the settlement was not knowing or voluntary, the district court need not examine the circumstances surrounding the settlement." *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008) (citations omitted); *see also Pierce*, 110 F.3d at 438 (party challenging validity of agreement bears burden of production; "bald assertion of misrepresentation by the employer, standing alone, is legally insufficient.").

In this case, Plaintiff does not dispute the basic facts surrounding the formation of the oral settlement agreement but rather only their legal consequence. [*See* Pl.'s Mem.; Pl's Notice.] An

evidentiary hearing is thus not required to determine enforceability. *See Wilson v. Wilson*, 46 F.3d 660, 665 (7th Cir. 1995) (no abuse of discretion in district court's determination that oral settlement agreement memorialized on the record was enforceable without an evidentiary hearing); *Singleton v. Amita Health*, No. 17 C 4514, 2018 WL 7050842, at *4 (N.D. Ill. Sept. 25, 2018) *report and recommendation adopted*, No. 17 C 4514, 2018 WL 6445161 (N.D. Ill. Dec. 10, 2018), *aff'd*, 799 F. App'x 942 (7th Cir. 2020) (finding an oral settlement agreement reached at settlement conference and recited on the record enforceable without an evidentiary hearing); *Voso v. Ewton*, No. 16 CV 190, 2017 WL 365610, at *4 (N.D. Ill. Jan. 25, 2017) (same).

The Court's transcription in this case memorializes that at the settlement conference, there was an offer and acceptance of the compromise, and a meeting of the minds as to the material terms of a settlement agreement. *See Dillard*, 483 F.3d at 507; *see also Lynch*, 279 F.3d at 490-91 (noting the general principle that oral dictation of the terms of a settlement, and the parties' oral agreement to them, creates a "solid, indeed an unimpeachable, basis" for finding that a case has been settled on certain terms). Specifically, DeVry and Adtalem offered to pay Plaintiff $20,000 in exchange for a general release of all claims against all Defendants, and Plaintiff agreed to that exchange. [Nov. 20, Trans. at 4-5.] The parties also agreed that Plaintiff was obligated to "retake course number Math 533 in order to graduate from DeVry University unless DeVry determines otherwise," and that Plaintiff would abide by DeVry's policies, procedures, and rules while he remained enrolled in the class. [*Id.* at 4.] Additionally, they agreed that Defendants would continue to comply with the Family Education Rights & Privacy Act and that although DeVry would hold no further hearings on the disciplinary proceeding that had been pending against Plaintiff, the matter would remain open until Plaintiff's graduation, at which point it would close. [*Id.*] Plaintiff explicitly affirmed that he understood the settlement terms, voluntarily agreed to

12

them, and they were binding on the parties as of that day. [*Id.* at 5, 7.] Accordingly, the record supports a finding that the essential terms of a settlement were sufficiently "definite and certain" to discern the parties' enforceable agreement. *See Beverly*, 817 F.3d at 333; *Dillard*, 483 F.3d at 507.

The fact that the parties contemplated the exchange of a subsequent written document does not change the binding nature of their oral agreement. *See Beverly*, 817 F.3d at 334; *Harmon v. Wisconsin Reg'l Training P'ship*, 833 F. App'x 1, 4 (7th Cir. 2020) (no error in enforcing oral settlement agreement reached at mediated conference where parties acknowledged binding nature of agreement in advance of written memorialization). The parties expressly agreed to be bound by their oral agreement, and did not condition their agreement upon the execution of the subsequent writing. [SC Trans. at 7-9.]

### Plaintiff Affirmed His Assent by Signing the Written Agreement and Cashing the Settlement Payment

Plaintiff further demonstrated his assent to the oral settlement agreement by executing the subsequent written agreement and cashing his settlement payment. [Gonsalves Decl., Ex. B, Signed Agreement; *Id.* at Ex. D, Endorsed Checks.] Plaintiff's assertion that the agreement is not binding because he repudiated it prior to Defendants signing the written agreement is based on a misunderstanding of the law. First, the parties' settlement agreement was binding upon its oral entry, so it is irrelevant that Plaintiff says he repudiated the written agreement before Defendants signed it. *See Elustra v. Mineo*, 595 F.3d 699, 709 (7th Cir. 2010) ("Post-acceptance conduct does not retract an earlier acceptance."); *Wilson*, 46 F.3d at 667 (noting well-settled rule "that a settlement agreement or stipulation voluntarily entered into cannot be repudiated by either party and will be summarily enforced by the Court.") (internal quotation omitted).

13

Second, Plaintiff's November 30, 2020 attempt to add new terms to the parties' agreement does not constitute repudiation. Specifically, he wrote "there are many thoughts I am having that can cause me to repudiate the settlement." [Dkt. 84-1, Pl.'s Mot. Ex. O, Nov. 30, 2020 Email.] Such equivocal language is not repudiation. *See Taylor v. Gordon Flesch Co*., 793 F.2d 858, 864 (7th Cir. 1986) (party's proposal of modified settlement language did not constitute repudiation where parties had orally agreed to settle, and party otherwise acted in accordance with the agreement).

Third, despite Plaintiff's subsequent statements insisting that he repudiated the parties' agreement, he nevertheless cashed his settlement payment and acknowledged as recently as February 1, 2021, that he still had not returned those funds. [*See* dkt. 90, Pl.'s Advisory Notice at 2-3.] Those acts are inconsistent with repudiation. *See Kaskel v. N. Tr. Co*., 328 F.3d 358, 360 (7th Cir. 2003) ("If the other party to your contract breaks it, and instead of walking away from it you act as if it remains in force, it *does* remain in force. You cannot later repudiate it.").

Likewise, Plaintiff's assertion that the written settlement agreement is invalid because it is not notarized and DeVry's General Counsel's title is handwritten does not change this Court's analysis. [*See* Pl.'s Mem. at 46-47.] Those things do not impact the determination of whether a valid settlement agreement exists. *See, e.g., Beverly*, 817 F.3d at 333 (enforcing handwritten agreement); *County Line Nurseries*, 46 N.E.3d at 932 (enforcing oral agreement).

Finally, Plaintiff's one-sentence argument that he was under medication at the time he signed the written agreement also does not change this Court's analysis. Plaintiff was bound by the material terms of the settlement agreement as of his oral acceptance at the conference, during which he specifically denied being on any medications at that time that might have adversely affected his judgment. [*See* SC Trans. at 6.]

14

***Knowing and Voluntary Agreement***

The record also supports the finding that Plaintiff's agreement to the settlement was both knowing and voluntary. *See Baptist v. City of Kankakee*, 481 F.3d 485, 491 n.3 (7th Cir. 2007), *as amended* (Mar. 26, 2007) (identifying factors to consider in assessing whether a settlement was knowing and voluntary). Plaintiff is a Masters of Business Administration candidate who obtained a substantial settlement after actively participating in the settlement conference, and affirming on the record that he felt competent to do so. [*See* SC Trans. at 6.] Plaintiff declared that he heard and understood the terms of settlement, had not been threatened or forced to settle, was not on medications that adversely impacted his judgment, and knew of no reason why the agreement could not be enforced. [*Id.* at 6-7.] He demonstrated sophisticated skills in extensive written filings in this action as well as in orally advocating for himself both in open court and during the settlement conference. Plaintiff expressed his preferences and opinions on the record at the conference, and denied having any questions when the terms of the agreement were recited for the record. [*Id.* at 7, 13-15.] Plaintiff originally proposed the written agreement that grounded the parties' settlement negotiations and oral agreement, as well as their subsequent written agreement. [*See* SC Trans. at 4, 6-7; Gonsalves Decl., Ex. B, Signed Agreement.] Although Plaintiff attempts to avoid the conclusion of a knowing and voluntary settlement by asserting claims of fraud and coercion among other things, the Seventh Circuit requires more than mere allegations. *See Pierce*, 110 F.3d at 438. Instead, Plaintiff must "come forward with specific evidence" supporting his allegations to trigger a totality of the circumstances analysis. *Id*. For the reasons discussed below, Plaintiff fails to meet the requisite standard, and in any case, the totality of the circumstances supports the finding of a knowing and voluntary settlement agreement.

*Plaintiff's Defenses to the Agreement*

Plaintiff argues that there could not have been a meeting of the minds and his agreement was not knowing or voluntary based on asserted fraud and coercion as well as numerous issues he says are unresolved and therefore demonstrate either a mutual mistake of fact, an ambiguity, or a misrepresentation that voids the agreement. [Pl.'s Mem.] Specifically, although Plaintiff did not raise the independent study nature of the Math 533 class in his first notice disputing the settlement [*see* Pl.'s Notice of No Good-Faith Settlement], Plaintiff now argues that structuring the class as an independent study prevents enforceability because it was only disclosed to him after the parties had signed the written agreement. [*Id.* at 27-37, 39-41, 44-46.] According to Plaintiff, he would not have accepted the settlement had he known of this requirement. Plaintiff's objection to the manner of delivery of Math 533, however, "do[es] not implicate the heart of [the parties' oral] settlement[,]" and is accordingly not a dispute over a material term that would defeat the parties' agreement. *Dillard*, 483 F.3d at 508 (noting disputes over immaterial terms do not defeat underlying oral agreement).

Moreover, the fact that it remained to be determined by DeVry how Plaintiff would complete Math 533 was known to the parties and explicitly memorialized in their oral agreement. [SC Trans. at 3-4.] Had Plaintiff desired to set additional specifications on the way in which the class would be administered, he was free to raise that issue during the parties' negotiations. After the settlement terms were recited on the record, Plaintiff was specifically asked whether there was anything he wanted to change or add and Plaintiff responded, "No, your Honor. I think it's understandable to me." [*Id.* at 5.]

Contrary to Plaintiff's argument, the fact that he now objects to DeVry's decision about the nature of delivery of the course does not make the issue material to the parties' settlement. *See*

*Dillard*, 483 F.3d at 508. Likewise, Plaintiff's preference to take the class along with other students does not make the agreement unconscionable or one-sided and oppressive as he suggests. *See*, *e.g.*, *Baptist*, 481 F.3d at 491 ("As long as the person receives something of value in exchange for her own promise or detriment, the courts will not inquire into the adequacy of the consideration.") (internal quotation omitted). Notably, Plaintiff cashed his settlement payments after he says he was already informed of the independent study nature of the course. [*Compare* Pl.'s Mem., Ex. P., Dec. 2, 2020 Email *with* Gonsalves Decl., dkt. 68-6, Ex. D, Endorsed Checks.]

Plaintiff argues further that requiring his completion of the course as an independent study violates both public policy and DeVry's course catalog, which he urges is "already an authoritative controlling contract" enforceable at law.[6] [Pl.'s Mem. at 31-35.] Because the parties agreed in their settlement that DeVry would decide how Plaintiff would complete the course, and a dispute over the specifics of that arrangement is not material to their agreement to settle, whether DeVry's course catalog is an enforceable contract does not control the issue before the Court. *See Dillard*, 483 F.3d at 508; *Pritchett v. Asbestos Claims Mgmt. Corp.*, 773 N.E.2d 1277, 1282 (Ill. App. Ct. 5th Dist. 2002) ("Every feasible contingency that might arise in the future need not be provided for in a contract for the agreement to be enforceable."). Indeed, the Seventh Circuit rejected an analogous challenge to enforceability in *Dillard*, reasoning that even where a disputed provision "likely would run afoul of public policy," and the disputing party's objection was therefore

---

[6] Beyond asserting that providing Math 533 as an independent study violates an unspecified provision of DeVry's course catalog and that Plaintiff's refusal to take the class in this way during the current semester has delayed his graduation, Plaintiff has not explained how structuring the class in this way imposes any harm on him. [*See* Pl.'s Mem. at 31-37.] Pursuant to the District Judge's inquiry, DeVry has confirmed that the independent study nature of the course will not be reflected on Plaintiff's student record. [*See* Dkt. 69, DeVry's Notice.]

"understandable," it would not defeat the underlying oral agreement where the dispute went to an immaterial term. *Dillard*, 483 F.3d at 508.

Equally unpersuasive is Plaintiff's argument that the agreement is ambiguous as to the scope of the released claims, or that any fraud, mistake of fact, or other wrongful act regarding Plaintiff's filing fee and costs motions prevents enforceability. [Pl.'s Mem. at 27, 41-44.] First, this issue has been mooted by Plaintiff's withdrawal of his filing fee motion and the District Judge's denial of his costs motion. [*See* dkt. 66, Pl.'s Notice of Withdrawal; dkt. 77, Jan. 22, 2021 Order.] Even if those motions remained pending, however, there is no basis to exclude the claims they raise from Plaintiff's general release, or to conclude that they otherwise prevent the parties' binding agreement from being enforced.

According to Plaintiff, the claims he presented in those motions were excepted from the settlement because he sought adjudication of them in advance of the conference and because they were not discussed at the conference. [Pl.'s Mem. at 27, 41-44.] While this Court understands that Plaintiff would have preferred his filing fee and costs motions to have been adjudicated in advance of the settlement conference, federal judges in this judicial district have extremely heavy caseloads, and there is no right to the determination of those motions in the order or speed that Plaintiff prefers. It is not unusual that motions are pending at the time a settlement is reached, and indeed, the uncertainty of litigation is often a substantial factor in a party's decision to settle. [*See also* dkt. 47, Nov. 5, 2020 Minute Entry ("Plaintiff's motion to stay settlement proceedings [45] is denied as moot based on Plaintiff's statements that he would participate in the settlement conference with an open mind, and regardless of whether the motions pending before the District Judge are ruled on in advance of the settlement conference date.").]

While Plaintiff may have intended to exclude the issues raised in his filing fee and costs motions from the settlement, he acknowledges making no mention of it at the settlement conference. [*See* Pl.'s Notice of No Good-Faith Settlement at 3, Pl.'s Mem. at 27.] Plaintiff notes that his filing fee and costs motions were "not even mentioned at all" during the parties' negotiations, and it was Plaintiff's own proposed agreement containing a general release of all claims against all defendants that the parties centered their negotiations around. [*See* Pl.'s Notice of No Good-Faith Settlement at 3; Pl's Mem., Ex. O.] The record from the conference similarly reflects the parties' express agreement that a settlement would release "all claims" and "all defendants." [SC Trans. at 4.] Plaintiff's objective conduct at the conference, therefore, including his express agreement on the record to release all claims and all defendants, makes clear that no exceptions were made to his general release. *See Cty. Line Nurseries*, 46 N.E.3d at 932; *see also Newkirk*, 536 F.3d at 774 (explaining that under Illinois law's objective theory of intent, the parties' "[s]ecret hopes and wishes count for nothing. The status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves.") (citation and internal quotation omitted). This is so even if Plaintiff mistakenly believed otherwise. *See Kim v. Alvey, Inc.,* 749 N.E.2d 368, 378 (Ill. App. Ct. 2001) (unilateral mistake does not render oral settlement agreement unenforceable or affect its validity).

Moreover, not only did Plaintiff orally agree to release all claims, but when defense counsel disagreed with Plaintiff's first attempt to exclude the filing fee and costs motions days after the oral agreement was reached, Plaintiff again acquiesced stating "OK, I took out that statement. You are very persuasive." [Gonsalves Decl., Ex. C, Emails.]

Similarly, Plaintiff's asserted ambiguity or mutual mistake regarding when DeVry's code of conduct proceedings would close is plainly contradicted by the record. According to Plaintiff,

a mutual mistake or a "logical ambiguity" occurred when "the parties and the Court failed to recognize during the settlement conference that we cannot dismiss this case with prejudice while the adverse disciplinary matter remains open at the University until graduation." [Pl.'s Mem. at 28, 46.] The parties orally agreed, however, that DeVry would close its disciplinary proceeding against Plaintiff upon his graduation, not upon the dismissal of this case. [SC Trans. at 4.] Consistent with this recitation, the parties' subsequent written settlement agreement provides the same commitment. [Gonsalves Decl., Ex. B, Signed Agreement.] Plaintiff's post-agreement preference to close both matters simultaneously is not a mutual mistake or ambiguity, but rather a change of heart which is not a reason not to enforce a valid settlement agreement. "Once a valid settlement agreement has been made, buyer's remorse will not render the agreement unenforceable. A mere change of mind is not sufficient grounds for setting aside a settlement agreement." *Millard v. BNSF Ry. Co.,* No. 08 C 3752, 2010 WL 3515746, at *3 (N.D. Ill. Aug.31, 2010) (citation and internal quotations omitted).

Likewise, Plaintiff's assertion of fraud with regard to the tax implications of settlement is belied both by the record as well as Plaintiff's own assertions. [*See* Pl.'s Mem. at 37-39, 44-45.] Plaintiff urges the Court to find fraud here because he says none of the lawyers representing Defendants advised him of the tax implications in accepting a settlement payment, and once he had accepted the oral agreement, he was obliged to sign a W-2 tax form to get the money. [*Id.* at 37-38.] Defendants' counsel had no fiduciary obligation to Plaintiff, and as Plaintiff recites, "[T]he parties and the Court did not talk about tax liability during the settlement negotiations[.]" [Pl.'s Mem. at 37.] Plaintiff's unfamiliarity with the tax implications of obtaining a settlement does not equate to fraud. *See Taylor v. Gordon Flesch Co*, 793 F.2d 858, 863 (7th Cir. 1986) ("A party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement

is insufficient."); *see also Mia v. Potter*, 282 Fed. App'x 478, 479 (7th Cir. 2008) (noting that whether a settlement payment is taxable is not subject to the parties' discretion; if a plaintiff wishes to dispute the taxability of a settlement, he must do so with the IRS). Accordingly, Plaintiff's objection to this tax implication does not change the agreement's validity. *See Dillard*, 483 F.3d at 508.

Finally, Plaintiff's claim of coercion or threat is inadequate as a matter of law. Notwithstanding the fact that Plaintiff affirmed on the record that he had not been pressured or threatened in any way to settle [SC Trans. at 7], and that he made no such claims in his first challenge to the agreement's enforceability [Pl.'s Notice of No Good-Faith Settlement], Plaintiff now alleges that he was coerced into settling by the Magistrate Judge in three ways: (1) by telling Plaintiff during the conference that the Magistrate Judge could not get him more than $20,000, (2) by stating that Defendants' counsel was an experienced education attorney, and (3) by discussing with Plaintiff the likelihood of success of the Defendants moving to dismiss the complaint if the case did not settle. [*See* Pl.'s Mot. at 20-23.] Even accepting Plaintiff's factual description of the comments, none constitute coercion as a matter of law.

First, as Plaintiff's own cited authority recognizes, "Coercion occurs when a judge threatens to penalize a party that refuses to settle. But a judge may encourage settlement, and he or she is not prohibited from expressing a negative opinion of a party's claim during discussions as a means to foster an agreement." *Gevas v. Ghosh*, 566 F.3d 717, 719-20 (7th Cir. 2009) (internal citations omitted). Inherent in the nature of any settlement negotiation is the parties' contemplation of the value of a prompt and final resolution versus the costs and risks of continuing to litigate the case. *See, e.g., Montgomery v. Vill. of Posen*, No. 14 C 3864, 2017 WL 1093165, at *5 (N.D. Ill. Mar. 23, 2017), *aff'd*, 711 F. App'x 343 (7th Cir. 2018) (noting under Illinois law that duress does

not exist where consent to agreement is obtained by "hard bargaining positions" or "the pressure of financial circumstances" absent a showing of fraud or wrongdoing by the advantaged party). Moreover, settlement mediators routinely convey impressions of the flexibility of one party's position to the other, and an assessment of Defendants' willingness to pay and/or how much they might pay does not equate to coercion.

Similarly, discussing opposing counsel's experience is not coercion, and indeed, Plaintiff's own recitation of the conversation makes clear that he disagreed with the assessment and explained why he thought Defendants' counsel lacked subject matter expertise. [*Id.* at 21.] This does not suggest coercion.

Likewise, discussing the likelihood of success of a likely motion to dismiss is not coercion or a threat of dismissal, and Plaintiff could not reasonably have thought so. *See Gevas*, 566 F.3d at 719-20; *Montgomery*, 711 Fed. App'x at 345-46. Such conversations are by no means unusual in the context of settlement negotiations, and do not undo a freely negotiated settlement agreement. *See, e.g., Gevas*, 566 F.3d at 719-20 (no error in district court's enforcement of oral settlement, rejecting *pro se* plaintiff's claim of coercion by magistrate judge's comments that plaintiff's case was meritless); *Montgomery*, 711 Fed. App'x at 345 (no error in district court's enforcement of oral settlement agreement over plaintiff's claim that judge threatened that case was not worth much and would be dismissed). Moreover, the Magistrate Judge had referral authority at the time for settlement conference purposes only and not for any dispositive ruling, so the survivability of Plaintiff's complaint was not something that the Magistrate Judge could have in any case decided. [*See* dkt 28, Oct. 16, 2020 Minute Entry; dkt. 47, Nov. 5, 2020 Minute Entry.]

In any event, here too Plaintiff's own recitation of the conversation belies his claim of coercion and makes clear that he felt free to offer and pursue his own opinions on the strength of

his case. [Pl.'s Mem. at 23-24]  As Plaintiff recounts it, he explained at the time of the settlement conference why he believed his complaint would survive a motion to dismiss, and he supported his opinion with citations. [*Id.*]  Plaintiff's recitation neither describes coercion nor a threatened penalty. *See Gevas*, 566 F.3d at 719-20; *Montgomery*, 711 Fed. App'x at 345-46.

**Plaintiff's Additional Arguments Against Enforceability**

Plaintiff's other challenges to the settlement agreement are similarly unpersuasive. According to Plaintiff, the settlement agreement should be stricken on the asserted basis that the Court lacked personal jurisdiction over the defendants who had not appeared in the case and thus the settlement conference and subsequent settlement agreement lacked jurisdictional authority. [Pl.'s Mem. at 13-17.]  This argument misunderstands the law.  Although the parties' settlement agreement conferred a benefit on absent defendants in that it released Plaintiff's claims against them without them ever having appeared in the case, this does not bring them before the Court or make them parties to the contract.  Illinois law allows contracts that confer benefits on third parties who although they are not parties to the contract, are intended by the contracting parties to benefit from it. *American United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 930 (7th Cir. 2003). Accordingly, personal jurisdiction over the defendants who never appeared in this case is irrelevant.

Similarly, Plaintiff's assertion that Defendants should have provided a proposed settlement agreement in advance of the settlement conference, pursuant to the Magistrate Judge's standing order, misconstrues that order.  [*See* Pl.'s Mem. at 17-20.]  Contrary to Plaintiff's argument, this Court does not require the exchange of proposed settlement *agreements* in advance of a settlement conference, but instead requires only that each party submit a settlement *position statement,* which both parties did in this case.  [*See* Magistrate Judge Jantz's Standing Order for Settlement

23

Conferences, available at https://www.ilnd.uscourts.gov/judge-info.aspx?jFiF3V/1vVgbYdkrkDEciA==.] That Plaintiff chose to append a proposed agreement to his own position paper does not suggest it was error not to require Defendants to do the same. Similarly, Plaintiff's complaint that Defendants did not provide enough specificity in their settlement position statement fails to raise a due process concern. Indeed, the negotiation of the specific language of the written agreement occurred after the parties had already orally agreed to settle.

Likewise, Plaintiff's complaint that he lacked legal representation does not change the Court's analysis. "There is no constitutional or statutory right to counsel in federal civil cases." *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). Accordingly, there was no obligation to discuss a waiver of a right that Plaintiff did not possess. This judicial district provides multiple free resources to *pro se* litigants, and as Plaintiff acknowledges, both the District Judge and the Magistrate Judge advised him of his ability to request settlement assistance counsel through the Court's Settlement Assistance Program for *Pro Se* Litigants, or to seek limited legal assistance through the Court's William J. Hibbler Memorial *Pro Se* Assistance Program. [Pl.'s Mem. at 24-25.] It was Plaintiff's right and decision to conduct his own settlement negotiations, and Plaintiff affirmed on the record that he felt competent to do so. [SC Trans. at 6.] Plaintiff has demonstrated himself to be a relatively sophisticated litigant who advocated for himself in written filings, oral hearings, and during the settlement conference. He proposed a sophisticated written settlement agreement, and he negotiated a substantial settlement of his lawsuit in an early procedural stage of the case. Plaintiff's *pro se* status is no basis to undo his binding agreement.

For all of these reasons, the Court finds that the parties' settlement agreement is enforceable.

***Defendants' Request for Dismissal***

Consistent with enforcement of the settlement agreement, Defendants request dismissal of this action with prejudice.  [Defs.' Mem. at 3, 13.]  The parties agreed at the settlement conference that Plaintiff would voluntarily dismiss this action with prejudice after signing the subsequent written agreement, and Plaintiff expressly affirmed on the record his commitment to do so. [SC Trans. at 11.]  The settlement agreement that Plaintiff signed and dated November 24, 2020 provides that same promise.  [Gonsalves Decl., Ex. B, Signed Agreement ¶ 8.]  Because this Court has found that the parties' settlement agreement is binding and enforceable despite Plaintiff's objections, this Court also recommends that the action be dismissed with prejudice. *See, e.g., Lynch,* 279 F.3d at 490-91 (affirming dismissal of lawsuit based on enforceability of oral settlement agreement); *Singleton*, 799 F. App'x at 942 (same).

## CONCLUSION

For these reasons, the Court denies Plaintiff's motion to postpone and recuse [59] and his motion to produce a transcript or agree [86].  Plaintiff's motion to strike an inadvertently filed draft is denied as moot [89].  The Court recommends that Defendants DeVry University, Inc., and Adtalem Global Education Inc.'s Motion to Enforce Settlement Agreement [68] be granted, that Plaintiff's Motion to Quash and Strike the Settlement [83] be denied, and that the case be dismissed with prejudice.

Specific written objections to this Report and Recommendation may be filed within 14 days from the date that this recommendation is issued.  Fed. R. Civ. P. 72(a), (b)(2).  Failure to file objections with the district court within the specified time will result in a waiver of the right

to appeal all findings, factual and legal, addressed in the Report and Recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

E N T E R:

Dated: February 26, 2021

_____

BETH W. JANTZ
United States Magistrate Judge